**Nos. 23-11157, 23-11199, 23-11203, 23-11204, 23-40685**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————————

Case No. 23-11157

———————————

SECOND AMENDMENT FOUNDATION, INCORPORATED; RAINIER ARMS, L.L.C.; SAMUEL WALLEY; WILLIAM GREEN,

Plaintiffs-Appellants,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES; STEVEN DETTELBACH, *in his official capacity Director of the Bureau of Alcohol Tobacco Firearms and Explosives*; UNITED STATES DEPARTMENT OF JUSTICE; MERRICK GARLAND, *U.S. Attorney General*,

Defendants-Appellees

consolidated with

*caption continued on following page*

———————————

On Appeal from the United States District Court
for the Northern District of Texas in Nos. 3:21-cv-116, 4:23-cv-95, 2:23-cv-19, and 4:23-cv-578; and
from the United States District Court for the Southern District of Texas in No. 6:23-cv-13

———————————

## RECORD EXCERPTS

———————————

BRIAN M. BOYNTON
    *Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
ALAMDAR S. HAMDANI
    *United States Attorneys*

ABBY C. WRIGHT
SEAN R. JANDA
BEN LEWIS
    *Attorneys, Appellate Staff*
    *Civil Division, Room 7250*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*

Case No. 23-11199

———————————

WILLIAM T. MOCK; CHRISTOPHER LEWIS; FIREARMS POLICY COALITION, INCORPORATED, *a nonprofit corporation*; MAXIM DEFENSE INDUSTRIES, L.L.C.,

Plaintiffs-Appellees,

v.

MERRICK GARLAND, *U.S. Attorney General, in his official capacity as Attorney General of the United States*; UNITED STATES DEPARTMENT OF JUSTICE; BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES; STEVEN DETTELBACH, *in his official capacity as the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives,*

Defendants-Appellants

consolidated with

———————————

Case No. 23-11203

———————————

DARREN A. BRITTO; GABRIEL A. TAUSCHER; SHAWN M. KROLL,

Plaintiffs-Appellees,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES,

Defendant-Appellant

consolidated with

———————————

Case No. 23-11204

———————————

TEXAS GUN RIGHTS, INCORPORATED; NATIONAL ASSOCIATION FOR GUN RIGHTS, INCORPORATED,

Plaintiffs-Appellees,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES,

Defendant-Appellant

consolidated with

———————————————

Case No. 23-40685

———————————————

STATE OF TEXAS; GUN OWNERS OF AMERICA, INCORPORATED; GUN OWNERS FOUNDATION; BRADY BROWN,

Plaintiffs-Appellees,

v.

BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN M. DETTELBACH, *Director of ATF,*

Defendants- Appellants

———————————————

# TABLE OF CONTENTS

**Tab**

Docket Entries, No. 3:21-cv-00116 (N.D. Tex.) (*Second Amendment Foundation*),
ROA.23-11157.1-ROA.23-11157.20 .................................................................. Tab 1

Notice of Appeal (Nov. 13, 2023),
ROA.23-11157.1194 ....................................................................................... Tab 2

District Court Preliminary Injunction Opinion and Order (Nov. 13, 2023),
ROA.23-11157.1152-ROA.23-11157.1193 ..................................................... Tab 3

Docket Entries, No. 4:23-cv-00095 (N.D. Tex.) (*Mock*),
ROA.23-11199.1-ROA.23-11199.20 ............................................................... Tab 4

Notice of Appeal (Nov. 29, 2023),
ROA.23-11199.1313-ROA.23-11199.1314 ..................................................... Tab 5

District Court Preliminary Injunction Opinion and Order (Oct. 2, 2023),
ROA.23-11199.1083-ROA.23-11199.1120 ..................................................... Tab 6

Docket Entries, No. 2:23-cv-00019 (N.D. Tex.) (*Britto*),
ROA.23-11203.1-ROA.23-11203.11 ............................................................... Tab 7

Notice of Appeal (Nov. 29, 2023),
ROA.23-11203.1344-ROA.23-11203.1345 ..................................................... Tab 8

District Court Preliminary Injunction Opinion and Order (Nov. 8, 2023),
ROA.23-11203.1335-ROA.23-11203.1343 ..................................................... Tab 9

Docket Entries, No. 4:23-cv-00578 (N.D. Tex.) (*Texas Gun Rights*),
ROA.23-11204.1-ROA.23-11204.8 ............................................................... Tab 10

Notice of Appeal (Nov. 29, 2023),
ROA.23-11204.350-ROA.23-11204.351 ....................................................... Tab 11

District Court Preliminary Injunction Opinion and Order (Oct. 4, 2023),
ROA.23-11204.330-ROA.23-11204.339 ....................................................... Tab 12

Docket Entries, No. 6:23-cv-00013 (S.D. Tex.) (*Texas*),
ROA.23-40685.1-ROA.23-40685.12 ............................................................. Tab 13

Notice of Appeal (Nov. 29, 2023),
    ROA.23-40685.1062-ROA.23-40685.1063................................................... Tab 14

District Court Preliminary Injunction Opinion and Order (Oct. 27, 2023),
    ROA.23-40685.1025-ROA.23-40685.1053................................................... Tab 15

CERTIFICATE OF SERVICE

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
    *General*

LEIGHA SIMONTON
ALAMDAR S. HAMDANI
  *United States Attorney*

ABBY C. WRIGHT
SEAN R. JANDA

 *s/ Ben Lewis*
BEN LEWIS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7250*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2494*

January 2024

3

TAB 1

# U.S. District Court
## Northern District of Texas (Dallas)
## CIVIL DOCKET FOR CASE #: 3:21-cv-00116-B

| | |
|---|---|
| Rainier Arms LLC et al v. Bureau of Alcohol Tobacco Firearms and Explosives et al | Date Filed: 01/15/2021 |
| Assigned to: Judge Jane J Boyle | Jury Demand: None |
| Related Case:  4:23-cv-00578-O | Nature of Suit: 899 Other Statutes: Administrative Procedure Act/Review or Appeal of Agency Decision |
| Case in other court:  USCA5, 23-10707 | Jurisdiction: U.S. Government Defendant |
| USCA5, 23-11157 | |
| Cause: 05:551 Administrative Procedure Act | |

**Plaintiff**

| | | |
|---|---|---|
| **Second Amendment Foundation Inc** | represented by | **Charles Flores** |
| | | Flores Law PLLC |
| | | 917 Franklin Street |
| | | Suite 600 |
| | | Houston, TX 77002 |
| | | 713-893-9440 |
| | | Email: cf@chadflores.law |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Bar Status: Admitted/In Good Standing* |
| | | |
| | | **Caleb Rawls** |
| | | The Law Offices of Caleb Rawls |
| | | 19600 Copperoaks |
| | | Tyler, TX 75703 |
| | | 972/804-9068 |
| | | Fax: 214/723-5932 |
| | | Email: calebrawls@gmail.com |
| | | *TERMINATED: 07/11/2023* |
| | | *Bar Status: Admitted/In Good Standing* |
| | | |
| | | **Daniel Nolan Nightingale** |
| | | Beck Redden LLP |
| | | 1221 Mckinney St |
| | | Suite 4500 |
| | | Houston, TX 77010 |
| | | 713-951-3700 |
| | | Fax: 713-951-3720 |
| | | Email: dnightingale@beckredden.com |
| | | *TERMINATED: 01/21/2022* |
| | | *Bar Status: Admitted/In Good Standing* |
| | | |
| | | **David Michael Jones** |
| | | David Jones Law PC |
| | | 1701 W Northwest Hwy |
| | | Suite 100 |

Grapevine, TX 76051
817-305-0618
Fax: 817-796-2720
Email: djones@dmjlawfirm.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Hannah Lee Roblyer**
Beck Redden LLP
1221 McKinney Street
Suite 4500
Houston, TX 77010
713-951-6236
Fax: 713-951-3720
Email: hroblyer@beckredden.com
*TERMINATED: 06/01/2023*
*Bar Status: Admitted/In Good Standing*

**Matthew A Goldstein**
Clark Hill PLC
1001 Pennslvania Ave NW
Suite 1300 South
Washington, DC 20004
202-550-0040
Fax: 202-552-2371
Email: mgoldstein@clarkhill.com
*TERMINATED: 10/18/2022*
*PRO HAC VICE*
*Bar Status: Not Admitted*

**Plaintiff**

**Rainier Arms LLC**                    represented by    **Charles Flores**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Caleb Rawls**
(See above for address)
*TERMINATED: 07/11/2023*
*Bar Status: Admitted/In Good Standing*

**Daniel Nolan Nightingale**
(See above for address)
*TERMINATED: 01/21/2022*
*Bar Status: Admitted/In Good Standing*

**David Michael Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Hannah Lee Roblyer**

(See above for address)
*TERMINATED: 06/01/2023*
*Bar Status: Admitted/In Good Standing*

**Matthew A Goldstein**
(See above for address)
*TERMINATED: 10/18/2022*
*PRO HAC VICE*
*Bar Status: Not Admitted*

**Plaintiff**

**Samuel Walley**                   represented by   **Charles Flores**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Daniel Nolan Nightingale**
(See above for address)
*TERMINATED: 01/21/2022*
*Bar Status: Admitted/In Good Standing*

**David Michael Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Hannah Lee Roblyer**
(See above for address)
*TERMINATED: 06/01/2023*
*Bar Status: Admitted/In Good Standing*

**Matthew A Goldstein**
(See above for address)
*TERMINATED: 10/18/2022*
*PRO HAC VICE*
*Bar Status: Not Admitted*

**Plaintiff**

**William Green**                   represented by   **Charles Flores**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Caleb Rawls**
(See above for address)
*TERMINATED: 07/11/2023*
*Bar Status: Admitted/In Good Standing*

**Daniel Nolan Nightingale**
(See above for address)

*TERMINATED: 01/21/2022*
*Bar Status: Admitted/In Good Standing*

**David Michael Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Hannah Lee Roblyer**
(See above for address)
*TERMINATED: 06/01/2023*
*Bar Status: Admitted/In Good Standing*

**Matthew A Goldstein**
(See above for address)
*TERMINATED: 10/18/2022*
*PRO HAC VICE*
*Bar Status: Not Admitted*

V.

**Defendant**

| | | |
|---|---|---|
| **Bureau of Alcohol Tobacco Firearms and Explosives** | represented by | **Brian Walters Stoltz-DOJ**<br>DOJ-USAO<br>1100 Commerce St<br>Third Floor<br>Dallas, TX 75242-1699<br>214-659-8626<br>Email: brian.stoltz@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Admitted/In Good Standing* |

**Charles Edward Talmadge Roberts**
US Department of Justice
Civil Division
1100 L Street NW
Washington, DC 20005
202-305-8628
Fax: 202-616-8470
Email: charles.e.roberts@usdoj.gov
*TERMINATED: 01/21/2022*
*Bar Status: Not Admitted*

**Faith Lowry**
DOJ-Civ
Federal Programs Branch
1100 L Street
Washington, DC 20005
202-305-2532
Email: faith.e.lowry@usdoj.gov
*ATTORNEY TO BE NOTICED*

*Bar Status: Not Admitted*

**Jody Dale Lowenstein**
US Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-598-9280
Email: jody.d.lowenstein@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Drezner**
US Department of Justice
Civil Division, Federal Programs Branch
1100 L St
Washington, DC 20005
202-514-4505
Fax: 202-616-8470
Email: michael.l.drezner@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Taylor Pitz**
DOJ-Civ
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-305-5200
Email: taylor.n.pitz@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

**Regina Lombardo**
*in her official capacity as Acting Director of*
*the Bureau of Alcohol Tobacco Firearms*
*and Explosives*

represented by **Brian Walters Stoltz-DOJ**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Charles Edward Talmadge Roberts**
(See above for address)
*TERMINATED: 01/21/2022*
*Bar Status: Not Admitted*

**Faith Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jody Dale Lowenstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

*Bar Status: Not Admitted*

**Michael Drezner**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Taylor Pitz**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

| | | |
|---|---|---|
| **United States Department of Justice** | represented by | **Brian Walters Stoltz-DOJ** |

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Charles Edward Talmadge Roberts**
(See above for address)
*TERMINATED: 01/21/2022*
*Bar Status: Not Admitted*

**Faith Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jody Dale Lowenstein**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Drezner**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Taylor Pitz**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

| | | |
|---|---|---|
| **Jeffrey A Rosen** | represented by | **Brian Walters Stoltz-DOJ** |

*in his official capacity as Acting ATTORNEY GENERAL US Department of Justice*

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Charles Edward Talmadge Roberts**

(See above for address)
*TERMINATED: 01/21/2022*
*Bar Status: Not Admitted*

**Faith Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jody Dale Lowenstein**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Drezner**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Taylor Pitz**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

V.

**Movant**

**The National Rifle Association of America**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings.)*
*TERMINATED: 06/30/2023*

represented by **Matthew Hogan Davis**
Brewer, Attorneys & Counselors
1717 Main Street
Ste 5900
Dallas, TX 75201
214-653-4000
Email: mhd@brewerattorneys.com
*TERMINATED: 06/06/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Noah Barnett Peters**
Brewer Attorneys & Counselors
1717 Main Street
Suite 5900
Dallas, TX 75201
434-466-4641
Email: nbp@brewerattorneys.com
*TERMINATED: 06/30/2023*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**William A Brewer, III**

Brewer, Attorneys & Counselors
1717 Main Street
Suite 5900
Dallas, TX 75201
214-653-4000
Fax: 214-653-1010
Email: wab@brewerattorneys.com
*TERMINATED: 06/06/2023*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/15/2021 | 1 (p.21) | COMPLAINT against BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, Regina Lombardo, Department of Justice, Jeffrey Rosen filed by Second Amendment Foundation Inc, William Green, Samuel Walley, Rainier Arms, LLC. (Filing fee $402; Receipt number 0539-11521619) Clerk to issue summons(es). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.21) Cover Sheet) (Flores, Charles) (Attachment 1 replaced/flattened on 1/19/2021) (mjr). (Entered: 01/15/2021) |
| 01/15/2021 | 2 (p.41) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by William Green, Rainier Arms, LLC, Second Amendment Foundation Inc, Samuel Walley. (Flores, Charles) (Entered: 01/15/2021) |
| 01/15/2021 | 3 (p.43) | AMENDED COMPLAINT *INCLUDING EXHIBITS* against BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, Department of Justice, Regina Lombardo, Jeffrey Rosen filed by William Green, Second Amendment Foundation Inc, Samuel Walley, Rainier Arms, LLC. Clerk to issue summons(es). Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge., COMPLAINT against BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, Department of Justice, Regina Lombardo, Jeffrey Rosen filed by William Green, Second Amendment Foundation Inc, Samuel Walley, Rainier Arms, LLC. (Filer fee note- Clerk to add prior fee payment info here.) Clerk to issue summons(es). In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney |

| | | |
|---|---|---|
| | | <u>Information - Bar Membership</u>. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # <u>1 (p.21)</u> Exhibit(s) A, # <u>2 (p.41)</u> Exhibit(s) B, # <u>3 (p.43)</u> Exhibit(s) C, # <u>4 (p.100)</u> Exhibit(s) D, # <u>5 (p.102)</u> Exhibit(s) E, # <u>6 (p.126)</u> Exhibit(s) F, # <u>7 (p.136)</u> Exhibit(s) G, # <u>8 (p.138)</u> Exhibit(s) H, # <u>9 (p.139)</u> Exhibit(s) I, # <u>10</u> Exhibit(s) J, # <u>11 (p.144)</u> Cover Sheet) (Flores, Charles) (Entered: 01/15/2021) |
| 01/15/2021 | <u>4 (p.100)</u> | New Case Notes: A filing fee has been paid. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Horan). Clerk to provide copy to plaintiff if not received electronically. (mjr) (Entered: 01/19/2021) |
| 01/19/2021 | <u>5 (p.102)</u> | Summons issued as to Bureau of Alcohol Tabacco Firearms and Explosives, Regina Lombardo, Jeffrey Rosen, United States Department of Justice, U.S. Attorney, and U.S. Attorney General. (mjr) (Entered: 01/19/2021) |
| 02/05/2021 | <u>6 (p.126)</u> | SUMMONS Returned Executed as to Bureau of Alcohol Tabacco Firearms and Explosives, Regina Lombardo, Jeffrey Rosen, United States Department of Justice, US Attorney and US Attorney General; served on 01/27/2021. (Roblyer, Hannah) Modified event text on 2/8/2021 (jmg). (Entered: 02/05/2021) |
| 02/19/2021 | <u>7 (p.136)</u> | NOTICE of Attorney Appearance by Hannah Lee Roblyer on behalf of William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley. (Filer confirms contact info in ECF is current.) (Roblyer, Hannah) (Entered: 02/19/2021) |
| 02/22/2021 | <u>8 (p.138)</u> | ORDER TO SHOW CAUSE: After reviewing the papers and pleadings on file, the Court notes that no local counsel has appeared on behalf of Plaintiffs as Local Rule 83.10(a) requires. Therefore, the Court ORDERS the following: By Monday, 3/1/2021, Plaintiffs must obtain local counsel or otherwise SHOW CAUSE, in writing, why local counsel has not yet appeared on their behalf. Failure to comply with this Order may result in sanctions. (Ordered by Judge Jane J. Boyle on 2/22/2021) (ctf) (Entered: 02/22/2021) |
| 02/26/2021 | <u>9 (p.139)</u> | MOTION for Leave to File to Proceed Without Local Counsel and Response to <u>8 (p.138)</u> Order to Show Cause filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley. (Attachments: # <u>1 (p.21)</u> Proposed Order) (Roblyer, Hannah) Modified text on 3/1/2021 (mjr). (Entered: 02/26/2021) |
| 03/01/2021 | 10 | ELECTRONIC ORDER denying <u>9 (p.139)</u> Motion for Leave to Proceed Without Local Counsel. Per Local Rule 83.10(a), Plaintiffs must retain local counsel within fourteen days of the date of this order. (Ordered by Judge Jane J. Boyle on 3/1/2021) (chmb) (Entered: 03/01/2021) |
| 03/11/2021 | <u>11 (p.144)</u> | NOTICE of Attorney Appearance by Daniel Nolan Nightingale on behalf of William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley. (Filer confirms contact info in ECF is current.) (Nightingale, Daniel) (Entered: 03/11/2021) |
| 03/15/2021 | <u>12 (p.146)</u> | NOTICE of Attorney Appearance by Daniel Nolan Nightingale for J. Caleb Rawls on behalf of William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley. (Nightingale, Daniel) (Entered: 03/15/2021) |
| 03/15/2021 | <u>13 (p.148)</u> | DESIGNATION OF LOCAL COUNSEL filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley (Nightingale, Daniel) Modified text and linkage on 3/16/2021 (axm). (Entered: 03/15/2021) |

| | | |
|---|---|---|
| 03/18/2021 | 14 (p.150) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number 0539-11706573) filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley (Attachments: # 1 (p.21) Exhibit(s) Certificate of Good Standing)Attorney Matthew A Goldstein added to party William Green(pty:pla), Attorney Matthew A Goldstein added to party Rainier Arms LLC(pty:pla), Attorney Matthew A Goldstein added to party Second Amendment Foundation Inc(pty:pla), Attorney Matthew A Goldstein added to party Samuel Walley(pty:pla) (Goldstein, Matthew) (Entered: 03/18/2021) |
| 03/19/2021 | 15 | ELECTRONIC ORDER granting 14 (p.150) Application for Admission Pro Hac Vice of Matthew A. Goldstein. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Jane J. Boyle on 3/19/2021) (chmb) (Entered: 03/19/2021) |
| 03/29/2021 | 16 (p.154) | NOTICE of Attorney Appearance by Charles Edward Talmadge Roberts on behalf of Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Filer confirms contact info in ECF is current.) (Roberts, Charles) (Entered: 03/29/2021) |
| 03/29/2021 | 17 (p.156) | Consent Motion for Extension of Time to File Answer *and Set Briefing Schedule* filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice (Attachments: # 1 (p.21) Proposed Order) (Roberts, Charles) Modified on 3/30/2021 (svc). (Entered: 03/29/2021) |
| 03/29/2021 | 18 (p.162) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Roberts, Charles) (Entered: 03/29/2021) |
| 03/30/2021 | 19 (p.165) | ORDER granting 17 (p.156) Consent Motion for Extension of Time to File Answer and Set Briefing Schedule. (Ordered by Judge Jane J. Boyle on 3/30/2021) (svc) (Entered: 03/30/2021) |
| 03/31/2021 | 20 (p.167) | NOTICE of Attorney Appearance by Brian Walters Stoltz-DOJ on behalf of Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Filer confirms contact info in ECF is current.) (Stoltz-DOJ, Brian) (Entered: 03/31/2021) |
| 04/12/2021 | 21 | ELECTRONIC ORDER: It has come to the Court's attention that counsel for Plaintiff, Daniel Nolan Nightingale, is not admitted to practice in the Northern District of Texas. Mr. Nightingale is ORDERED to become admitted or seek admission pro hac vice on or before April 26, 2021. (Ordered by Judge Jane J. Boyle on 4/12/2021) (chmb) (Entered: 04/12/2021) |
| 04/23/2021 | 22 (p.169) | NOTICE of *Admission of Daniel N. Nightingale* re: 21 Order, filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley (Attachments: # 1 (p.21) Exhibit(s) A) (Nightingale, Daniel) (Entered: 04/23/2021) |
| 04/30/2021 | 23 (p.174) | NOTICE of filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice (Roberts, Charles) (Entered: 04/30/2021) |
| 05/21/2021 | 24 (p.177) | Consent MOTION to Stay filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice |

| | | |
|---|---|---|
| | | (Attachments: # 1 (p.21) Proposed Order) (Roberts, Charles) (Entered: 05/21/2021) |
| 05/24/2021 | 25 | ELECTRONIC ORDER granting 24 (p.177) Agreed Motion to Stay. The Court hereby STAYS this matter. The Court further ORDERS as follows: Pending deadlines are VACATED. The parties will file a joint status report on or before June 14, 2021, indicating whether the matter should remain stayed. If the parties propose at that time that the stay be lifted, the joint status report shall contain a proposed schedule for continuing the litigation. (Ordered by Judge Jane J. Boyle on 5/24/2021) (chmb) (Entered: 05/24/2021) |
| 06/14/2021 | 26 (p.181) | Joint STATUS REPORT filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Roberts, Charles) (Entered: 06/14/2021) |
| 06/15/2021 | 27 | ELECTRONIC ORDER: The Court has received the parties' 26 (p.181) joint status report. The Court agrees with the parties that this matter should remain stayed pending expiration of the public comment period for Defendants' proposed rule on "Factoring Criteria for Firearms With Attached 'Stabilizing Braces.'" Accordingly, the parties are hereby ORDERED to file a joint status report on or before September 21, 2021, indicating whether the matter should remain stayed. If the parties propose at that time that the stay be lifted, the joint status report shall contain a proposed schedule for continuing the litigation. (Ordered by Judge Jane J. Boyle on 6/15/2021) (chmb) (Entered: 06/15/2021) |
| 09/21/2021 | 28 (p.184) | Joint STATUS REPORT filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Roberts, Charles) (Entered: 09/21/2021) |
| 09/28/2021 | 29 | ELECTRONIC ORDER: The Court has received the parties' 28 (p.184) joint status report. The Court agrees with the parties that this matter should remain stayed while the Defendant processes the comments from the Defendant's proposed rule on "Factoring Criteria for Firearms With Attached 'Stabilizing Braces.'" Accordingly, the parties are hereby ORDERED to file a joint status report on or before December 27, 2021, indicating whether the matter should remain stayed. If the parties propose at that time that the stay be lifted, the joint status report shall contain a proposed schedule for continuing the litigation. (Ordered by Judge Jane J. Boyle on 9/28/2021) (chmb) (Entered: 09/28/2021) |
| 11/29/2021 | | Civil Case Administratively Closed per the direction of the U.S. District Judge. (ctf) (Entered: 11/30/2021) |
| 12/27/2021 | 30 (p.188) | Joint STATUS REPORT filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Roberts, Charles) (Entered: 12/27/2021) |
| 12/28/2021 | 31 | ELECTRONIC ORDER: The Court has received the parties' 30 (p.188) joint status report. The Court agrees with the parties that this matter should remain stayed while Defendant responds to the comments from the Defendant's proposed rule on "Factoring Criteria for Firearms With Attached 'Stabilizing Braces.'" Accordingly, the parties are hereby ORDERED to file a joint status report on or before March 28, 2022, indicating whether the matter should remain stayed. If the parties propose at that time that the stay should be lifted, the joint status report shall contain a proposed schedule for continuing the litigation. (Ordered by Judge Jane J. Boyle on 12/28/2021) (chmb) (Entered: 12/28/2021) |
| 01/20/2022 | | |

| | | |
|---|---|---|
| | 32 (p.192) | Unopposed MOTION to Withdraw as Attorney *for Daniel N. Nightingale of Beck Redden* filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley (Attachments: # 1 (p.21) Proposed Order) (Nightingale, Daniel) (Entered: 01/20/2022) |
| 01/20/2022 | 33 (p.196) | NOTICE of Attorney Appearance by Jody Dale Lowenstein on behalf of Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Filer confirms contact info in ECF is current.) (Lowenstein, Jody) (Entered: 01/20/2022) |
| 01/20/2022 | 34 (p.198) | Unopposed MOTION to Withdraw as Attorney filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice (Roberts, Charles) (Entered: 01/20/2022) |
| 01/21/2022 | 35 | ELECTRONIC ORDER granting 32 (p.192) Attorney Daniel Nolan Nightingale's Unopposed Motion to Withdraw as counsel for Plaintiffs. (Ordered by Judge Jane J. Boyle on 1/21/2022) (chmb) (Entered: 01/21/2022) |
| 01/21/2022 | 36 | ELECTRONIC ORDER granting 34 (p.198) Attorney Charles Edward Talmadge Roberts' Unopposed Motion to Withdraw as counsel for Defendants. (Ordered by Judge Jane J. Boyle on 1/21/2022) (chmb) (Entered: 01/21/2022) |
| 03/28/2022 | 37 (p.201) | Joint STATUS REPORT filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Lowenstein, Jody) (Entered: 03/28/2022) |
| 03/28/2022 | 38 | ELECTRONIC ORDER: The Court has received the parties' 37 (p.201) joint status report. The Court agrees with the parties that this matter should remain stayed while Defendant finalizes the proposed rule on "Factoring Criteria for Firearms With Attached 'Stabilizing Braces.'" Accordingly, the parties are hereby ORDERED to file a joint status report on or before June 27, 2022, indicating whether the matter should remain stayed. If the parties propose at that time that the stay should be lifted, the joint status report shall contain a proposed schedule for continuing the litigation. (Ordered by Judge Jane J Boyle on 3/28/2022) (chmb) (Entered: 03/28/2022) |
| 06/27/2022 | 39 (p.205) | Joint STATUS REPORT filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Lowenstein, Jody) (Entered: 06/27/2022) |
| 06/28/2022 | 40 | ELECTRONIC ORDER: The Court has received the parties' 39 (p.205) joint status report. The Court agrees with the parties that this matter should remain stayed while Defendant finalizes the proposed rule on "Factoring Criteria for Firearms With Attached 'Stabilizing Braces'" but not until January 6, 2023. Accordingly, the parties are hereby ORDERED to file a joint status report on or before September 26, 2022, indicating whether the matter should remain stayed. If the parties propose at that time that the stay should be lifted, the joint status report shall contain a proposed schedule for continuing the litigation. (Ordered by Judge Jane J Boyle on 6/28/2022) (chmb) (Entered: 06/28/2022) |
| 09/26/2022 | 41 (p.209) | Joint STATUS REPORT filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Lowenstein, Jody) (Entered: 09/26/2022) |
| 09/27/2022 | 42 | ELECTRONIC ORDER: The Court has received the parties' 41 (p.209) Joint Status Report. The Court agrees with the parties that this matter should remain stayed while Defendant finalizes the proposed rule on "Factoring Criteria for Firearms With |

| | | |
|---|---|---|
| | | Attached 'Stabilizing Braces,'" which is currently expected in December 2022. Accordingly, the parties are hereby ORDERED to file a joint status report on or before December 28, 2022 indicating whether the matter should remain stayed. If the parties propose at that time that the stay should be lifted, the joint status report shall contain a proposed schedule for continuing the litigation. (Ordered by Judge Jane J Boyle on 9/27/2022) (chmb) (Entered: 09/27/2022) |
| 10/17/2022 | 43 (p.213) | Unopposed MOTION to Withdraw as Attorney *for Matthew A. Goldstein of Clark Hill PLC* filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley (Attachments: # 1 (p.21) Proposed Order) (Goldstein, Matthew) (Entered: 10/17/2022) |
| 10/18/2022 | 44 | ELECTRONIC ORDER granting 43 (p.213) Motion to Withdraw as Attorney. Attorney Matthew A Goldstein is terminated. (Ordered by Judge Jane J Boyle on 10/18/2022) (chmb) (Entered: 10/18/2022) |
| 12/07/2022 | 45 | Court Request for Recusal: Magistrate Judge David L. Horan recused pursuant to Special Order 3-346. Magistrate Judge Renee Harris Toliver assigned for matters that may be referred in this case. (cea) (Entered: 12/07/2022) |
| 12/28/2022 | 46 (p.217) | Joint STATUS REPORT filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Lowenstein, Jody) (Entered: 12/28/2022) |
| 12/30/2022 | 47 | ELECTRONIC ORDER: The Court has received the parties' 46 (p.217) Joint Status Report. The Court agrees with the parties that this matter should remain stayed while Defendant finalizes the proposed rule on "Factoring Criteria for Firearms With Attached 'Stabilizing Braces.'" Accordingly, the parties are hereby ORDERED to file a joint status report on or before January 30, 2023, indicating whether the matter should remain stayed. If the parties propose at that time that the stay should be lifted, the joint status report shall contain a proposed schedule for continuing the litigation. (Ordered by Judge Jane J Boyle on 12/30/2022) (chmb) (Entered: 12/30/2022) |
| 01/30/2023 | 48 (p.220) | Joint STATUS REPORT filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Lowenstein, Jody) (Entered: 01/30/2023) |
| 02/01/2023 | 49 (p.224) | ORDER: The current stay on this case (Doc. 47, Order) shall be lifted on February 17, 2023. Amended Complaint due by 2/17/2023. Motion for preliminary injunction if any by 3/3/2023. Responses due by 3/24/2023. Replies due by 4/7/2023. Answer to amended complaint is extended until either (i) 21 days after the Court resolves any motion for a preliminary injunction; or (ii) March 24, 2023, in the event that plaintiffs do not file a motion for a preliminary injunction. (Ordered by Judge Jane J Boyle on 2/1/2023) (svc) (Entered: 02/02/2023) |
| 02/17/2023 | 50 (p.226) | AMENDED COMPLAINT *of the Second Amendment Foundation, Ranier Arms, and Individual Plaintiffs* against All Defendants filed by Samuel Walley, Rainier Arms LLC, William Green, Second Amendment Foundation Inc. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here:  Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Flores, Charles) (Entered: 02/17/2023) |
| 02/17/2023 | | Stay Lifted Per Order at Docket 49 (p.224) . (cea) (Entered: 06/09/2023) |

| | | |
|---|---|---|
| 03/03/2023 | 51 (p.252) | MOTION for Injunction filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley (Flores, Charles) (Entered: 03/03/2023) |
| 03/03/2023 | 52 (p.254) | Brief/Memorandum in Support filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley re 51 (p.252) MOTION for Injunction (Attachments: # 1 (p.21) Exhibit(s) 1, # 2 (p.41) Exhibit(s) 2, # 3 (p.43) Exhibit(s) 3, # 4 (p.100) Exhibit(s) 4, # 5 (p.102) Exhibit(s) 5) (Flores, Charles) (Entered: 03/03/2023) |
| 03/23/2023 | 53 (p.383) | Consent MOTION for Leave to File Oversized Brief filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Proposed Order) (Lowenstein, Jody) (Entered: 03/23/2023) |
| 03/24/2023 | 54 | ELECTRONIC ORDER granting 53 (p.383) Motion for Leave to File Oversized Brief. Defendants' Response to Plaintiffs' Motion for a Preliminary Injunction (Doc. 51) may now not exceed 40 pages. (Ordered by Judge Jane J Boyle on 3/24/2023) (chmb) (Entered: 03/24/2023) |
| 03/24/2023 | 55 (p.387) | RESPONSE filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice re: 51 (p.252) MOTION for Injunction (Lowenstein, Jody) (Entered: 03/24/2023) |
| 03/30/2023 | 56 (p.439) | NOTICE of *Supplemental Authority* filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice (Attachments: # 1 (p.21) Exhibit(s) A - Mock v. Garland Opinion) (Lowenstein, Jody) (Entered: 03/30/2023) |
| 04/06/2023 | 57 (p.459) | MOTION for Extension of Time to File Response/Reply to 51 (p.252) MOTION for Injunction , 56 (p.439) Notice (Other), 52 (p.254) Brief/Memorandum in Support of Motion, 55 (p.387) Response/Objection filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley (Attachments: # 1 (p.21) Proposed Order) (Flores, Charles) (Entered: 04/06/2023) |
| 04/07/2023 | 58 | ELECTRONIC ORDER granting 57 (p.459) Unopposed Motion to Extend Time to File a Reply. Plaintiffs' Reply in Support of the Motion for Preliminary Injunction is now due April 10, 2023. (Ordered by Judge Jane J Boyle on 4/7/2023) (chmb) (Entered: 04/07/2023) |
| 04/10/2023 | 59 (p.462) | REPLY filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley re: 51 (p.252) MOTION for Injunction (Flores, Charles) (Entered: 04/10/2023) |
| 05/24/2023 | 60 (p.476) | Brief/Memorandum in Support filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley re 59 (p.462) Reply, 51 (p.252) MOTION for Injunction , 56 (p.439) Notice (Other), 52 (p.254) Brief/Memorandum in Support of Motion, 55 (p.387) Response/Objection (Attachments: # 1 (p.21) Exhibit(s) A - Mock CA5 Decision, # 2 (p.41) Exhibit(s) B - Mock CA5 Motion, # 3 (p.43) Exhibit(s) C - Mock CA5 Response, # 4 (p.100) Exhibit(s) D - Mock CA5 Reply, # 5 (p.102) Exhibit(s) E - Mock CA5 Filing) (Flores, Charles) (Entered: 05/24/2023) |
| 05/25/2023 | 61 (p.571) | RESPONSE filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice re: 60 (p.476) Brief/Memorandum in Support of Motion (Lowenstein, Jody) Modified text on 5/26/2023 (mms). (Entered: 05/25/2023) |

| | | |
|---|---|---|
| 05/25/2023 | 62 (p.574) | ORDER: The Court GRANTS IN PART the 51 (p.252) Motion for Injunction and issues a preliminary injunction as to Plaintiffs in this case only, pending resolution of the expedited appeal in Mock v. Garland, No. 23-10319 (5th Cir.). Upon resolution of the appeal in Mock, the Court will address the remaining relief Plaintiff's request in their Motion. If necessary, the Court will order additional briefing at that time. (Ordered by Judge Jane J Boyle on 5/25/2023) (svc) (Entered: 05/25/2023) |
| 05/30/2023 | 63 (p.577) | MOTION Clarification of Preliminary Injunction re 62 (p.574) Order on Motion for Injunction, filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Exhibit(s) A - Mock Clarification - Order, # 2 (p.41) Exhibit(s) B - Mock Clarification - Motion, # 3 (p.43) Exhibit(s) C - Mock Clarification - Response, # 4 (p.100) Exhibit(s) D - Mock Clarification - Reply) (Flores, Charles) (Entered: 05/30/2023) |
| 05/31/2023 | 64 (p.616) | MOTION to Withdraw as Attorney - *Hannah Roblyer* filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley with Brief/Memorandum in Support. (Flores, Charles) (Entered: 05/31/2023) |
| 05/31/2023 | 65 (p.618) | ORDER granting 63 (p.577) Motion for Clarification of the Court's May 25 Preliminary Injunction Order. The Court confirms that its 62 (p.574) Preliminary Injunction Order applies to both the Second Amendment Foundation, Inc. and its members. (Ordered by Judge Jane J Boyle on 5/31/2023) (chmb) (Entered: 05/31/2023) |
| 06/01/2023 | 66 | ELECTRONIC ORDER denying 64 (p.616) Motion to Withdraw as Attorney. Plaintiffs have not included a certificate of conference. Plaintiffs may refile the motion pursuant to Local Rule 7.1(b). (Ordered by Judge Jane J Boyle on 6/1/2023) (chmb) (Entered: 06/01/2023) |
| 06/01/2023 | 67 (p.621) | Unopposed MOTION to Withdraw as Attorney filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley (Flores, Charles) (Entered: 06/01/2023) |
| 06/01/2023 | 68 | ELECTRONIC ORDER granting 67 (p.621) Motion to Withdraw as Attorney. Attorney Hannah Lee Roblyer has withdrawn as counsel for Plaintiffs in this case and is removed from the service list. (Ordered by Judge Jane J Boyle on 6/1/2023) (chmb) (Entered: 06/01/2023) |
| 06/06/2023 | 69 (p.623) | MOTION to Intervene *(Partially Unopposed)*, MOTION for Injunction *(Partially Unopposed)* () filed by The National Rifle Association of America. Party The National Rifle Association of America added. (Davis, Matthew) (Entered: 06/06/2023) |
| 06/06/2023 | 70 (p.628) | Brief/Memorandum in Support filed by The National Rifle Association of America re 69 (p.623) MOTION to Intervene *(Partially Unopposed)* MOTION for Injunction *(Partially Unopposed)* (Davis, Matthew) (Entered: 06/06/2023) |
| 06/06/2023 | 71 (p.659) | Appendix in Support filed by The National Rifle Association of America re 70 (p.628) Brief/Memorandum in Support of Motion, 69 (p.623) MOTION to Intervene *(Partially Unopposed)* MOTION for Injunction *(Partially Unopposed)* (Attachments: # 1 (p.21) Exhibit(s) Compiled Appendix) (Davis, Matthew) (Entered: 06/06/2023) |
| 06/07/2023 | | |

| | 72 (p.915) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by The National Rifle Association of America. (Clerk QC note: No affiliate entered in ECF). (Davis, Matthew) (Entered: 06/07/2023) |
|---|---|---|
| 06/08/2023 | 73 (p.917) | MOTION to Expedite *Briefing Schedule on Motion to Intervene and for a Preliminary Injunction [Doc. 69]* filed by The National Rifle Association of America with Brief/Memorandum in Support. (Davis, Matthew) (Entered: 06/08/2023) |
| 06/08/2023 | 74 (p.924) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-13799899) filed by The National Rifle Association of America (Attachments: # 1 (p.21) Exhibit(s) Certificate of Good Standing)Attorney Noah Barnett Peters added to party The National Rifle Association of America(pty:mov) (Peters, Noah) (Entered: 06/08/2023) |
| 06/08/2023 | 75 (p.929) | RESPONSE filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice re: 73 (p.917) MOTION to Expedite *Briefing Schedule on Motion to Intervene and for a Preliminary Injunction [Doc. 69]* (Drezner, Michael) (Entered: 06/08/2023) |
| 06/08/2023 | 76 (p.933) | NOTICE of Attorney Appearance by Michael Drezner on behalf of Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Filer confirms contact info in ECF is current.) (Drezner, Michael) (Entered: 06/08/2023) |
| 06/08/2023 | 77 (p.935) | REPLY filed by The National Rifle Association of America re: 73 (p.917) MOTION to Expedite *Briefing Schedule on Motion to Intervene and for a Preliminary Injunction [Doc. 69]* (Davis, Matthew) (Entered: 06/08/2023) |
| 06/08/2023 | 78 | ELECTRONIC ORDER granting in part and denying in part 73 (p.917) Motion to Expedite Response. Defendants' response to the NRA's 69 (p.623) Motion to Intervene and for a Preliminary Injunction is due June 22, 2023. Any reply is due seven (7) days from the date of the response. (Ordered by Judge Jane J Boyle on 6/8/2023) (chmb) (Entered: 06/08/2023) |
| 06/09/2023 | 79 | ELECTRONIC ORDER granting 74 (p.924) Application for Admission Pro Hac Vice of Noah Barnett Peters. If not already done, Applicant must register as an ECF User within 14 days (LR 5.1(f)). (Ordered by Judge Jane J Boyle on 6/9/2023) (chmb) (Entered: 06/09/2023) |
| 06/13/2023 | 80 (p.940) | MOTION to Stay *Proceedings* filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Proposed Order) (Lowenstein, Jody) (Entered: 06/13/2023) |
| 06/13/2023 | 81 (p.953) | Consent MOTION for Extension of Time to File Response to Complaint filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Proposed Order) (Lowenstein, Jody) (Entered: 06/13/2023) |
| 06/14/2023 | 82 | ELECTRONIC ORDER granting 81 (p.953) Unopposed Motion for Extension of Time to File Answer. The Defendants in this case have filed a 80 (p.940) Motion to Stay Proceedings. Defendants' deadline to answer the 50 (p.226) Amended Complaint, however, is June 15, 2023. Accordingly, the deadline for Defendants to respond to the Amended Complaint is stayed pending resolution of the 80 (p.940) Motion to Stay and further direction from the Court. (Ordered by Judge Jane J Boyle |

| | | |
|---|---|---|
| | | on 6/14/2023) (chmb) (Entered: 06/14/2023) |
| 06/22/2023 | 83 (p.958) | RESPONSE filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice re: 69 (p.623) MOTION to Intervene *(Partially Unopposed)* MOTION for Injunction *(Partially Unopposed)* (Attachments: # 1 (p.21) Exhibit 1) (Drezner, Michael) (Entered: 06/22/2023) |
| 06/29/2023 | 84 (p.998) | REPLY filed by The National Rifle Association of America re: 69 (p.623) MOTION to Intervene *(Partially Unopposed)* MOTION for Injunction *(Partially Unopposed)* (Attachments: # 1 (p.21) Exhibit(s) Frazer Declaration) (Davis, Matthew) (Entered: 06/29/2023) |
| 06/30/2023 | 85 (p.1013) | Memorandum Opinion and Order: 69 (p.623) Motion to Intervene is Denied filed by The National Rifle Association of America (Ordered by Judge Jane J Boyle on 6/30/2023) (svc) (Entered: 06/30/2023) |
| 07/03/2023 | 86 (p.1025) | NOTICE OF INTERLOCUTORY APPEAL as to 85 (p.1013) Memorandum Opinion and Order to the Fifth Circuit by The National Rifle Association of America. Filing fee $505, receipt number ATXNDC-13856732. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Attachments: # 1 (p.21) Exhibit(s) A) (Davis, Matthew) (Entered: 07/03/2023) |
| 07/05/2023 | 87 (p.1039) | RESPONSE filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley re: 80 (p.940) MOTION to Stay *Proceedings* (Flores, Charles) (Entered: 07/05/2023) |
| 07/10/2023 | 88 (p.1045) | Unopposed MOTION to Substitute Attorney, added attorney Charles Flores,David Michael Jones for Samuel Walley,David Michael Jones for Rainier Arms LLC,David Michael Jones for William Green,David Michael Jones for Second Amendment Foundation Inc. Motion filed by Samuel Walley, Rainier Arms LLC, William Green, Second Amendment Foundation Inc (Flores, Charles) (Entered: 07/10/2023) |
| 07/10/2023 | 89 (p.1047) | MEMORANDUM OPINION AND ORDER: The Court GRANTS the Motion to Stay Proceedings (Doc. 80 (p.940) ) and STAYS this case pending the Fifth Circuit's decision in Mock v. Garland, No. 23-10319 (5th Cir. filed Mar. 31, 2023) and further order from this Court. (Ordered by Judge Jane J Boyle on 7/10/2023) (svc) Modified text on 7/12/2023 (svc). (Entered: 07/11/2023) |
| 07/11/2023 | 90 | ELECTRONIC ORDER granting 88 (p.1045) Unopposed Motion to Substitute Attorney. Attorney Caleb Rawls is withdrawn as local counsel for Plaintiffs in this case and is substituted by David Jones. (Ordered by Judge Jane J Boyle on 7/11/2023) (chmb) (Entered: 07/11/2023) |
| 07/12/2023 | | USCA Case Number 23-10707 in USCA5 for 86 (p.1025) Notice of Appeal filed by The National Rifle Association of America. (svc) (Entered: 07/12/2023) |

| 07/21/2023 | | Record on Appeal for USCA5 23-10707 (related to 86 (p.1025) appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified,. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (mcrd) (Entered: 07/21/2023) |
|---|---|---|
| 08/24/2023 | 91 (p.1051) | STATUS REPORT ORDER: Status Report due by 9/4/2023. (Ordered by Judge Jane J Boyle on 8/24/2023) (svc) (Entered: 08/25/2023) |
| 09/04/2023 | 92 (p.1053) | Joint STATUS REPORT filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Drezner, Michael) (Entered: 09/04/2023) |
| 09/05/2023 | 93 (p.1056) | ORDER: Based on that joint status report, the Court ORDERS the following: 1. The Court's preliminary injunction and stay shall remain in place until the Fifth Circuits mandate is issued in Mock v. Garland, No. 23-10319 (5th Cir. filed Mar. 31, 2023). See Doc. 62, Prelim. Inj. Order; Doc. 89, Stay Order. 2. Plaintiffs will file an unopposed motion to amend the preliminary injunction motion and supplemental brief by September 8, 2023. 3. Defendants will file their responsive supplemental brief by September 15, 2023. (Ordered by Judge Jane J Boyle on 9/5/2023) (ndt) (Entered: 09/05/2023) |
| 09/08/2023 | 94 (p.1058) | Unopposed MOTION to Amend Plaintiffs' Motion for a Preliminary Injunction filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley re: 51 (p.252) MOTION for Injunction. (Flores, Charles) Modified text and linkage on 9/17/2023 (axm). (Entered: 09/08/2023) |
| 09/08/2023 | 95 (p.1061) | Supplemental Brief/Memorandum in Support filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley re 51 (p.252) MOTION for Injunction. (Flores, Charles) Modified text and linkage on 9/17/2023 (axm). (Entered: 09/08/2023) |
| 09/11/2023 | 96 | ELECTRONIC ORDER granting 94 (p.1058) Plaintiffs' Unopposed Motion to Amend Preliminary Injunction Motion and Supplemental Briefing. The Court notes 95 (p.1061) Plaintiffs' Supplemental Brief in Support of their Motion for a Preliminary Injunction was filed on September 8, 2023. (Ordered by Judge Jane J Boyle on 9/11/2023) (chmb) (Entered: 09/11/2023) |
| 09/15/2023 | 97 (p.1065) | Supplemental RESPONSE *in Opposition* filed by Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice re: 95 (p.1061) Brief/Memorandum in Support of Motion, (Lowenstein, Jody) (Entered: 09/15/2023) |
| 10/03/2023 | 98 (p.1077) | Request for an Immediate Ruling on Plaintiffs' Motion for Preliminary Injunction and Supplemental Brief in Support filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley re: 51 (p.252) MOTION for Injunction , 52 (p.254) Brief/Memorandum in Support of Motion, , 59 (p.462) Reply, 60 (p.476) Brief/Memorandum in Support of Motion, 94 (p.1058) Unopposed |

| | | |
|---|---|---|
| | | MOTION to Amend/Correct, 95 (p.1061) Brief/Memorandum in Support of Motion, 97 (p.1065) Response/Objection, (Attachments: # 1 (p.21) Exhibit(s) A) (Flores, Charles) Modified event text on 10/4/2023 (axm). (Entered: 10/04/2023) |
| 10/05/2023 | 99 | ELECTRONIC ORDER: The Court's preliminary injunction and stay shall remain in place until October 13, 2023. (Ordered by Judge Jane J Boyle on 10/5/2023) (chmb) (Entered: 10/05/2023) |
| 10/10/2023 | 100 (p.1126) | ORDER SETTING HEARING: An evidentiary hearing on Plaintiffs' Motion for a Preliminary Injunction is set for: 10/18/2023 at 10:00 AM in US Courthouse, Courtroom 1516, 1100 Commerce St., Dallas, TX 75242-1310 before Judge Jane J Boyle. No later than 10/17/2023, counsel for each party intending to offer exhibits shall exchange a complete set of marked exhibits (including demonstrative exhibits) with opposing counsel and shall deliver a set of marked exhibits to the Court's chambers (except for large or voluminous items that cannot be easily reproduced). A list of witnesses, if any, shall also be exchanged, with a copy delivered to the Court's chambers, by each party no later than 10/17/2023. The witness lists should provide: (i) the name and address of each witness; (ii) a brief narrative summary of the testimony to be covered by each witness; and (iii) the expected duration of direct or cross-examination of the witness. Each party will be limited to ninety (90) minutes to present its argument and evidence. The current injunction and stay will expire on 10/13/2023 (Doc. 99 ). (Ordered by Judge Jane J Boyle on 10/10/2023) (twd) (Entered: 10/10/2023) |
| 10/12/2023 | 101 (p.1128) | Emergency MOTION Clarification of the Injunction & Stay's End Date re 100 (p.1126) Order Setting Deadline/Hearing, filed by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley with Brief/Memorandum in Support. (Flores, Charles) (Entered: 10/12/2023) |
| 10/13/2023 | 102 | ELECTRONIC ORDER granting 101 (p.1128) Motion for Clarification. The current administrative injunction and stay will expire today, October 13, 2023. (Ordered by Judge Jane J Boyle on 10/13/2023) (chmb) (Entered: 10/13/2023) |
| 10/15/2023 | 103 (p.1130) | ADDITIONAL ATTACHMENTS to 51 (p.252) Motion for Injunction by Plaintiffs William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley. (Attachments: # 1 (p.21) Declaration(s) of Rainier Arms, # 2 (p.41) Declaration(s) of SAF, # 3 (p.43) Declaration(s) of Samuel Walley) (Flores, Charles) (Entered: 10/15/2023) |
| 10/17/2023 | 104 (p.1137) | NOTICE of Attorney Appearance by Faith Lowry on behalf of Bureau of Alcohol Tobacco Firearms and Explosives, Regina Lombardo, Jeffrey A Rosen, United States Department of Justice. (Filer confirms contact info in ECF is current.) (Lowry, Faith) (Entered: 10/17/2023) |
| 10/18/2023 | 105 | ELECTRONIC Minute Entry for proceedings held before Judge Jane J Boyle: Motion hearing held on 10/18/2023 re Plaintiffs' Motion for a Preliminary Injunction. Matter taken under advisement. Attorney Appearances: Plaintiff - Charles Flores; Defense - Jody Lowenstein; Faith Lowry; Taylor Pitz. (Court Reporter: Shawnie Archuleta) (No exhibits) Time in Court - 1:20. (chmb) (Entered: 10/18/2023) |
| 10/21/2023 | 106 (p.1195) | Notice of Filing of Official Electronic Transcript of Plaintiffs' Motion for Preliminary Injunction Proceedings held on October 18, 2023 before Judge Jane J. Boyle. Court Reporter/Transcriber Shawnie Archuleta, Telephone number shawnie_archuleta@txnd.uscourts.gov. Parties are notified of their duty to review |

| | | |
|---|---|---|
| | | the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (69 pages) Redaction Request due 11/13/2023. Redacted Transcript Deadline set for 11/21/2023. Release of Transcript Restriction set for 1/19/2024. (spa) (Entered: 10/21/2023) |
| 10/21/2023 | 107 | Notice of Filing of Official Electronic Transcript of Plaintiffs' Motion for Preliminary Injunction Proceedings held on October 18, 2023 before Judge Jane J. Boyle. Court Reporter/Transcriber Shawnie Archuleta, Telephone number shawnie_archuleta@txnd.uscourts.gov. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (69 pages) Redaction Request due 11/13/2023. Redacted Transcript Deadline set for 11/21/2023. Release of Transcript Restriction set for 1/19/2024. (spa) (Entered: 10/21/2023) |
| 11/10/2023 | 108 (p.1139) | Supplemental Document by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley as to 51 (p.252) MOTION for Injunction . (Attachments: # 1 (p.21) Exhibit(s) A) (Flores, Charles) (Entered: 11/10/2023) |
| 11/13/2023 | 109 (p.1152) | MEMORANDUM OPINION AND ORDER denying 51 (p.252) Motion for a Preliminary Injunction. (Ordered by Judge Jane J Boyle on 11/13/2023) (cfk) (Entered: 11/13/2023) |
| 11/13/2023 | 110 (p.1194) | NOTICE OF INTERLOCUTORY APPEAL as to 109 (p.1152) Memorandum Opinion and Order to the Fifth Circuit by William Green, Rainier Arms LLC, Second Amendment Foundation Inc, Samuel Walley. Filing fee $505, receipt number ATXNDC-14170240. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Flores, Charles) (Entered: 11/13/2023) |
| 11/15/2023 | | USCA Case Number 23-11157 in USCA5 for 110 (p.1194) Notice of Appeal filed by Samuel Walley, Second Amendment Foundation Inc, William Green, Rainier Arms LLC. (axm) (Entered: 11/15/2023) |

TAB 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECOND AMENDMENT FOUNDATION, INC., RAINIER ARMS, LLC, SAMUEL WALLEY, and WILLIAM GREEN, | § § § § | |
| | § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 3:21-cv-00116-B |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, STEVEN M. DETTELBACH, in his official capacity as Director of Alcohol of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, UNITED STATES DEPARTMENT OF JUSTICE, and MERRICK B. GARLAND, in his official capacity as Attorney General of the United States, | § § § § § § § § § § | |
| Defendants. | | |

---

**Notice of Appeal**

All Plaintiffs appeal to the United States Court of Appeals for the Fifth Circuit from ECF

Document number 109, the "Memorandum Opinion and Order" entered on November 13, 2023.

Respectfully submitted,

/s/ Chad Flores
Chad Flores
cf@chadflores.law
Flores Law PLLC
917 Franklin Street, Suite 600
Houston, Texas 77002
(713) 364-6640

TAB 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECOND AMENDMENT FOUNDATION, INC., RAINIER ARMS, LLC, SAMUEL WALLEY, and WILLIAM GREEN<br>   Plaintiffs,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, STEVEN M. DETTELBACH, in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, UNITED STATES DEPARTMENT OF JUSTICE, and MERRICK B. GARLAND, in his official capacity as Attorney General of the United States,<br><br>   Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:21-CV-0116-B |

## MEMORANDUM OPINION AND ORDER

Before the Court is Second Amendment Foundation, Inc. ("SAF"), Rainier Arms, LLC ("Rainier Arms"), Samuel Walley, and William Green ("Plaintiffs")'s Motion for a Preliminary Injunction (Docs. 51, 52, 55, 59, 95, 97).

Plaintiffs in this case challenge an administrative rule (the "Final Rule") regulating firearms equipped with a stabilizing brace ("brace-equipped firearms"). The Final Rule was published by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") on January 31, 2023. Plaintiffs contend the Final Rule is invalid because it: (i) is not a logical outgrowth of the Proposed Rule, (ii) is promulgated in excess of agency authority and contradicts the statute the ATF seeks to interpret, (iii) has an unlawful effective date, (iv) is unconstitutionally vague, (v) is arbitrary and capricious

for failure to consider the Second Amendment inquiry under *Bruen*, and (vi) is unconstitutional under the Second Amendment. Doc. 52, Pls' Br., 14–17 (citing *New York State Rifle & Pistol Ass'n, v. Bruen*, 142 S. Ct. 2111 (2022)); Doc. 95, Pls' Supp. Br., 2–3. The Final Rule, in its simplest terms, sets out a multi-factor test to define when statutory registration and taxation would apply to a brace-equipped firearm. Plaintiffs seek to enjoin the Final Rule's enforcement nationwide[1] and specifically against them until this case's resolution. Having considered the parties' briefing and oral arguments under the applicable law, the Court **DENIES** Plaintiffs' Motion for a Preliminary Injunction.

# I.

# BACKGROUND

## A. *The Final Rule and its Statutory Background*

The National Firearms Act of 1934 ("NFA") was enacted by Congress to deter the use of dangerous, concealable firearms associated with emerging organized criminal activity. 26 U.S.C §§ 5801–5872; *Lomont v. O'Neill*, 285 F.3d 9, 11 (D.C. Cir. 2002); *see also United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 517 (1992) (plurality op.). One category of firearms regulated by the NFA is a short-barreled rifle ("SBR"). 26 U.S.C. § 5845(a). Over thirty years following its enactment of the NFA, Congress enacted the Gun Control Act of 1968 ("GCA"), expanding federal firearms regulation. 18 U.S.C. §§ 921–31.

The NFA defines a rifle as:

> [A] weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of

---

[1] During the evidentiary hearing Plaintiffs' counsel represented that at this stage, Plaintiffs seek an "injunction, personalized that binds these plaintiffs and defendants." Doc. 106, Hearing Transcript, 5. However a "universal vacatur . . . . is pleaded for . . . ultimately. *Id.*

the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.

*Id.* § 5845(c).

The NFA and GCA define "rifle" almost identically. *Compare* 26. U.S.C. § 5845(c) *with* 18 U.S.C. § 921(a)(7). The statutory definitions of a "rifle" implicate the definitions of an SBR under the GCA and NFA. The GCA defines an SBR as "a rifle having one or more barrels less than 16 inches in length and any weapon made from a rifle (whether by alteration, modification, or otherwise) if such weapon, as modified, has an overall length of less than 26 inches." 18 U.S.C. § 921(a)(8). The NFA has a similar definition for SBRs. 26 U.S.C. §§ 5845(a)(3), (4).

The NFA imposes registration, taxation, and use requirements over SBRs. 26 U.S.C. §§ 5801–02, 5811–12, 5821–22, 5841, 5845(a). Specifically, SBRs "must be registered in the National Firearms Registration and Transfer Record ('NFRTR') to a person entitled to possess the firearm," they "require approval by the Attorney General before their transfer or making," and they "are subject to transfer and making taxes." Final Rule at 6,479 (citing 26 U.S.C. §§ 5811–12, 5821–22, 5841). Importers, manufacturers, and dealers of SBRs must register certain identifying information with the Attorney General and pay a special occupation tax for each place of business. 26 U.S.C. §§ 5801–02. SBRs are regulated by the NFA in part because they have firepower similar to an ordinary rifle but are more concealable than ordinary rifles. *See Thompson/Center Arms Co.*, 504 U.S. at 517 ("It is of course clear from the face of the [NFA] that the NFA's object was to regulate certain weapons likely to be used for criminal purposes, just as the regulation of short-barreled rifles, for example, addresses a concealable weapon likely to be so used."). Violations of both the NFA and GCA carry criminal penalties. Violations under the NFA are punishable by up to ten

years in prison and a fine of up to $10,000. 26 U.S.C. § 5871. Non-compliance with the GCA is

punishable by up to five years in prison and a fine of up to $250,000. 18 U.S.C. §§ 924(a)(1), 3571.

Recently, confusion has arisen about whether brace-equipped firearms constitute SBRs

under the NFA and GCA. Doc. 55, ATF Resp., 5–7. In response to this confusion, the ATF

engaged in rulemaking to creates framework to determine whether attaching a brace to a firearm

renders that brace-equipped firearm an SBR under the NFA. Factoring Criteria for Firearms with

Attached "Stabilizing Braces," 88 Fed. Reg. 6,478 (Jan. 31, 2023) ("the Final Rule"). The Final

Rule comes years after informal ATF classifications of various types of brace-equipped firearms. *Id.*

Stabilizing braces were originally designed to assist people with disabilities or limited

strength or mobility to safely and single-handedly fire heavy pistols. *Id.* at 5. In 2012, the ATF

received its first request to classify a brace prototype designed to attach onto one's forearm and a

receiving AR-15 type pistol, which the ATF concluded did not change the resulting device's

classification "into a weapon designed or intended to be fired from the shoulder" *Id.*

In the following years, the "ATF received an increasing number of classification requests"

for braced firearms that the ATF admits it did not resolve with "a standard set of criteria . . .

resulting in inconsistent (and occasionally incorrect) guidance." Doc. 55, ATF Resp., at 5–7

(discussing select classification responses between 2012-2020). In some instances, the ATF

concluded the brace-equipped firearm was not an SBR under the NFA. *Id.* In 2014, the ATF

started classifying certain brace-equipped firearms as SBRs. *Id.* But later classifications by the ATF

included limitations to when brace-equipped firearms could be considered SBRs. At the same time

brace-equipped firearms continued to evolve and many emerged that included characteristics

resembling shoulder stocks. *Id.*; Defs' Evidentiary Hearing Slides, 35–42. The ATF also learned

that manufacturers were widely marketing these "braces" to consumers as a means of creating

functional SBRs that avoided NFA requirements for SBRs, thereby allowing consumers to fire the brace-equipped firearms from the shoulder. Final Rule at 6,503, 6,527, 6,545–48.



Figure 1. The "forearm brace" prototype of 2012, which the ATF did not classify as a short-barreled rifle. Final Rule at 6,483.



Figure 2. Contemporaneously marketed heavy pistols equipped with a "stabilizing brace" (top) compared with contemporaneously marketed rifle by same company (bottom). Final Rule at 6,494.

To respond to this trend in manufacturing and consumer use, as well as its varied classifications, the ATF published a notice of proposed rulemaking ("Proposed Rule") in June 2021. 86 Fed. Reg. 30,826. The Final Rule was published on January 31, 2023. 88 Fed. Reg. 6,478. The Final Rule amends the definition of "rifle" under ATF regulations, which address the ATF's meaning for the term "rifle" in the NFA and GCA. 27 CFR §§ 478.11, 479.11. The Final Rule sets up a multi-factor criterion by which the ATF determines whether a brace-equipped firearm is

"designed or redesigned, made or remade, and intended to be fired from the shoulder" under the NFA and GCA's definition of "rifle." Final Rule at 6,574–75.

According to the Final Rule, "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder," is interpreted by the ATF to include any weapon "that is equipped with an accessory, component, or other rearward attachment," such as a stabilizing brace, "that provides surface area that allows the weapon to be fired from the shoulder, provided other factors . . . indicate that the weapon is designed, made, and intended to be fired from the shoulder." *Id.* The "other" factors used in this determination are:

> (1) Whether the weapon has a weight or length consistent with the weight or length of similarly designed rifles;
> (2) Whether the weapon has a length of pull, measured from the center of the trigger to the center of the shoulder stock or other rearward accessory, component or attachment (including an adjustable or telescoping attachment with the ability to lock into various positions along a buffer tube, receiver extension, or other attachment method), that is consistent with similarly designed rifles;
> (3) Whether the weapon is equipped with sights or a scope with eye relief that require the weapon to be fired from the shoulder in order to be used as designed;
> (4) Whether the surface area that allows the weapon to be fired from the shoulder is created by a buffer tube, receiver extension, or any other accessory, component, or other rearward attachment that is necessary for the cycle of operations;
> (5) The manufacturer's direct and indirect marketing and promotional materials indicating the intended use of the weapon; and
> (6) Information demonstrating the likely use of the weapon in the general community.

*Id.*

After the Final Rule's publication, anyone who newly acquired or transferred a brace-equipped firearm deemed an SBR under the Final Rule's criteria was required to follow the NFA's requirements over SBRs, namely, to register the device and pay a $200 tax. Final Rule at 6,481; 26 U.S.C. §§ 5801–02. While the Final Rule was "immediately effective," the Final Rule simultaneously states the ATF would not initiate any enforcement action over new acquisitions or transfers for at least 60 days from the date of publication. Final Rule at 6,481. The Final Rule also

states that, as of the publication date, individuals or Federal Firearms Licensees[2] who already possessed qualifying brace-equipped firearms had a 120-day registration period to comply with the NFA without paying the $200 tax.[3] Final Rule at 6,481, 6,570, 6,498. Importers, manufacturers, and dealers of qualifying brace-equipped pistols did not need to pay the $200 tax upon registration if they already paid the special occupation tax under the NFA. *Id.*; 26 U.S.C. §§ 5801–02. The ATF estimates the Final Rule applies to 99% of brace-equipped firearms, meaning the ATF considers those devices SBRs subject to the NFA. *Mock v. Garland*, 75 F.4th 563, 574 (5th Cir. 2023) (citing ATF FINAL REGULATORY IMPACT ANALYSIS AND FINAL REGULATORY FLEXIBILITY ANALYSIS at 21).

The ATF provides two justifications for its exercise of its rulemaking authority: regulatory clarity and public safety. First, the ATF asserts that the Final Rule provides regulatory clarity by rescinding the ATF's prior differing classifications—informal agency actions that the ATF admits did not rely on a standard criterion—and creates a publicly known framework for determining when a brace-equipped firearm is an SBR. Doc. 55, ATF Resp., 5–7, 10; *see also* Final Rule at 6,495 (referencing "criticism from various parties that [the] ATF had not widely published a definitive approach"). Second, the ATF justifies the Final Rule as protecting the public by attempting to remove from widespread circulation brace-equipped firearms that effectively function as SBRs, especially given their use in recent mass shootings. The ATF emphasizes recent mass shootings in Colorado, Ohio, and Tennessee involved gunmen using stabilizing braces with their firearms. Doc.

---

[2] This is a term used in the Final Rule to refer to licensed importers, manufacturers, dealers, or collectors, who are statutorily obligated to obtain authorization from the Attorney General to transport SBRs for interstate or foreign commerce. 18 U.S.C. §§ 922(a)(4), (b)(4).

[3] Brace-equipped firearms qualifying under the framework of the Final Rule are deemed SBRs, and thus subject to the NFA's existing taxation and registration requirements over SBRs. *See* 26 U.S.C. §§ 5801-5802, 5811-5812, 5821-5822, 5841, 5845(a)(3), 5845(c).

55, ATF Response, 20; Doc. 97, ATF Supp., 8 ("[B]race-equipped AR-type pistol killed nine people and injured at least fourteen others."). Some commenters to the Proposed Rule are former law enforcement officers echoing the concern that brace-equipped firearms "are unusually dangerous" due to their ability to "be easily concealed like a handgun but have the firepower and accuracy of a rifle." Final Rule at 6,498.

The ATF emphasizes the Final Rule does not ban brace-equipped firearms. Doc. 55, ATF Resp., 22–23, 25–26. Persons affected by the Final Rule have five options: (1) remove the short barrel of the firearm and attach a 16-inch or longer rifled barrel, (2) register the firearm with the ATF as an SBR, (3) permanently remove and destroy, or alter the "stabilizing brace" such that it cannot be reattached to a firearm, (4) forfeit the braced firearm to a local ATF office, or (5) destroy the entire braced firearm. Final Rule at 6,570.

B.  *Factual and Procedural Background*

This lawsuit commenced on January 15, 2021. There are four Plaintiffs in the instant case: (1) Rainier Arms is a Washington company selling firearms and accessories nationwide, (2) Second Amendment Foundation, Inc. ("SAF") is a Washington organization that promotes Second Amendment rights and has over 720,000 members and supporters, (3) Samuel Walley is a Georgia resident, a member of SAF, and a disabled veteran who owns multiple brace-armed pistols, and (4) William Green is a Texas resident, a member of SAF, and a disabled police officer who owns multiple brace-armed pistols. Doc. 50, Am. Compl., ¶¶ 6–7, 11, 20–21. In their initial complaint, Plaintiffs challenged the ATF's 2015 "Open Letter on the Redesign of 'Stabilizing Braces" as an invalid exercise of legislative power. Doc. 3, Compl. ¶ 47. Four months later, the Government requested the Court stay all proceedings as the ATF was initiating a notice and comment period

for the Proposed Rule. Doc. 24, Mot., 1. Through a series of orders, the Court stayed this case until the ATF promulgated the Final Rule over a year and a half later.

Shortly after the ATF published the Final Rule, Plaintiffs filed an Amended Complaint (Doc. 50) and preliminary injunction motion (Docs. 51–52) seeking to enjoin the Final Rule. A parallel case, *Mock v. Garland*, No. 4:23-cv-95 (N.D. Tex.), made its way up to the Fifth Circuit during the parties' preliminary injunction briefing. The Fifth Circuit granted the *Mock* plaintiffs an injunction pending appeal. Order, Mock v. Garland, No. 23-cv-10319, ECF No. 52. Pending the resolution of the appeal in *Mock*, this Court administratively stayed this case and administratively issued a preliminary injunction. Docs. 62, 65, 82, 93.

## C.  *The Fifth Circuit's Ruling in Mock v. Garland*

The *Mock* appellate decision addressed only the plaintiffs' logical outgrowth claim. In the Fifth Circuit, the logical-outgrowth rule requires a proposed administrative rule to provide "fair notice" of the eventual Final Rule. *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 381 (5th Cir. 2021). Failing to do so constitutes a procedural error. *Mock*, 75 F.4th at 586.  If a procedural error is found, a party must "demonstrate prejudice" to its own notice interests. *Id.* (citing *City of Arlington, Tex. v. F.C.C.*, 668 F.3d 229, 243 (5th Cir. 2012) ("The harmless error rule requires the party asserting error to demonstrate prejudice from the error."), *aff'd*, 569 U.S. 290 (2013)); *State of Tex. v. Lyng*, 868 F.2d 795, 799 (5th Cir. 1989) (addressing the "specific prejudice alleged by appellants in the procedure followed" by the agency).

In bringing their logical outgrowth claim, the *Mock* plaintiffs addressed certain differences between the Proposed Rule and the Final Rule. The ATF's Proposed and Final Rules laid out methodologies for determining if a brace-equipped firearm falls within the statutory definition of SBRs. The Proposed Rule's methodology was based on a total points system, which assigned points

to various design criteria to judge whether a brace-equipped firearm constituted an SBR under the NFA. Proposed Rule at 30,830–31. The Final Rule replaced the points system with a multi-factor test. Final Rule 6,574–75; *see also Mock*, 75 F.4th at 584.

A divided Fifth Circuit panel ultimately reversed the district court's denial of a preliminary injunction. *Mock*, 75 F.4th at 588. The Fifth Circuit found that the methodologies of the Proposed Rule and the Final Rule were "vastly different," such that the Final Rule should have been subject to a second notice and comment process. *Id.* 585–86 (finding the Final Rule to be legislative, not interpretive). The ATF's failure to "start the notice-and-comment process again and receive public comments on the new test" therefore constituted a procedural error. *Id.* at 584. Next, the majority found that the *Mock* plaintiffs "easily" illustrated prejudice from the procedural error by showing "through [their] briefing" several comments they would have made, but were not able to make, to the Final Rule. 75 F.4th at 586, n.58. Therefore, the Fifth Circuit found that the plaintiffs adequately demonstrated they were likely to succeed on their claim that the Final Rule was not a "logical outgrowth" of the Proposed Rule, in violation of the APA. *Id.* at 578–86.

Rather than holding the Final Rule unlawful and enjoining its enforcement, the Fifth Circuit remanded the case back to the district court for further findings as to the remaining preliminary injunction factors. *Id.* at 587 ("The Final Rule therefore must be set aside as unlawful *or* otherwise remanded for appropriate remediation. . . . [We] remand for a ruling on a preliminary injunction (emphasis added)). On remand, the district court issued a preliminary injunction to the *Mock* plaintiffs, their members, customers, and family members. 2023 WL 6457920, at *17 (N.D. Tex. Oct. 2, 2023) (O'Connor, J.).

Following the Fifth Circuit's ruling in *Mock*, this Court ordered the parties to submit supplemental briefing. Doc. 93, Order. Plaintiffs had not asserted their logical outgrowth claim in

- 10 -

their initial preliminary injunction briefing. *Compare* Doc. 52, Pls' Br. and Doc. 59, Reply *with* Doc. 50, Am. Compl. Therefore, in their supplemental brief, Plaintiffs raised their logical outgrowth claim to support an award of preliminary injunctive relief. Doc. 95, Pls' Supp. Br. However, without any substantive analysis, or showing of prejudice, Plaintiffs' four-page supplemental brief simply asserts that *Mock* "assured" success on their logical outgrowth claim. Doc. 95, Pls' Supp. Br., 2. The ATF emphasized in its supplemental brief factual and legal deficiencies in Plaintiffs' irreparable harm argument even if the logical outgrowth claim is likely to succeed. Doc. 97, ATF Supp. Br., 2–9. The Court held an evidentiary hearing on October 18, 2023, to ascertain whether Plaintiffs' logical outgrowth claim and asserted irreparable harm have sufficient factual support. The administrative stay and preliminary injunction in this case expired on October 13, 2023.

Multiple cases like the one currently before this Court continue to circulate through federal courts nationwide with varying outcomes.[4]

## II.

## LEGAL STANDARD

"Injunctive relief is an extraordinary and drastic remedy, and should only be granted when the movant has clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360

---

[4] *Mock v. Garland*, No. No. 4:23-CV-00095-O, 2023 WL 6457920, at *18 (N.D. Tex. Oct. 2, 2023) (J. O'Connor) (granting preliminary injunction motion); *Britto v. ATF*, No. 2:23-cv-00019 (N.D. Tex.) (Kacsmaryk, J.); *Nat'l Rifle Ass'n of Am., Inc. v. ATF*, No. 3:23-cv-01471 (N.D. Tex.) (Lindsey, J.); *Texas v. ATF*, No. 6:23-cv-00013, 2023 WL 7116844 (S.D. Tex. Oct. 27, 2023) (granting preliminary injunction motion); *Miller v. Garland*, 2023 WL 3692841 (E.D. Va., May 26, 2023) (denying preliminary injunction motion), *appeal filed*, (4th Cir. 2023); *Firearms Regul. Accountability Coal., Inc. v. Garland*, No. 1:23-CV-024, 2023 WL 5942365, at *5 (D.N.D. Sept. 12, 2023) (denying preliminary injunction motion), *appeal filed*, (8th Cir. 2023); *Colon v. ATF*, No. 8:23-cv-00223 (M.D. Fla.); *Watterson v. ATF*, No. 4:23-cv-00080 (E.D. Tex.) (Mazzant, J.).

(5th Cir. 2009) (internal quotation omitted). A plaintiff seeking a preliminary injunction must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth requirements "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). A preliminary injunction should only be granted if the party seeking the injunction has clearly carried the burden of persuasion on all factors. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

## III.

## ANALYSIS

As of October 18, 2023, none of the Plaintiffs are protected by the preliminary injunction issued in *Mock* on October 2, 2023. 2023 WL 6457920; Doc. 106, Hearing Transcript, 14–15. Therefore, the instant Motion is not mooted as to any Plaintiff.

The Court first addresses whether Plaintiffs are entitled to a preliminary injunction based on their logical outgrowth claim, given the Fifth Circuit's directive in *Mock*. Finding Plaintiffs are not likely to succeed on their logical outgrowth claim, the Court next addresses the likelihood of success on the merits of Plaintiffs' other claims in support of their preliminary injunction motion. The Court concludes Plaintiffs are not likely to succeed on the other claims. Finally, even assuming that Plaintiffs are likely to succeed on at least one of their claims, the Court addresses the irreparable harm and balance of the equities factors.

A. *Likelihood of Success as to Logical Outgrowth Claim*

The Court adheres to the Fifth Circuit's directive in *Mock*, and finds that the Final Rule is not a logical outgrowth of the Proposed Rule. *Mock*, 75 F.4th at 584–86. However, as the Fifth

Circuit recognized, procedural error alone is not sufficient to support a finding of likelihood of success on the merits. *Id.* at 586. The plaintiffs in *Mock*, like the Plaintiffs here, still needed to show that they were prejudiced by the procedural error in order to demonstrate likelihood of success as to their logical outgrowth claim. *Id.*

Plaintiffs have not met their burden of showing they were prejudiced by the procedural error raised in *Mock*. "The harmless error rule requires the party asserting error to demonstrate prejudice from the error." *City of Arlington, Tex.*, 668 F.3d at 243; *see also Shinseki v. Sanders*, 556 U.S. 396 (2009)). Moreover, that prejudice must be specific to the asserting party by a showing of some "new information they would have submitted to the agency if given the opportunity." *State of Tex. v. Lyng*, 868 F.2d at 800; *see City of Arlington, Tex.*, 668 F.3d at 244 (comparing party's asserted concerns with comments submitted during notice and comment period). The Fifth Circuit has recognized, however, that adequate notice from an agency's notice and comment period "may be achieved in cases where the agency's decision-making process centered on the identical substantive claims as those proposed by the party asserting error, even if there were APA deficiencies." *Id.* at 245 (discussing *United States v. Johnson*, 632 F.3d 912, 930 (5th Cir. 2011)).

Despite having the chance to submit a supplemental brief and present oral argument to raise and fully argue their logical outgrowth claim in support of a preliminary injunction, Plaintiffs merely concluded their claim "matches" the one raised in *Mock*, without delineating any reasons why their notice interests were harmed when the ATF did not conduct a second notice and comment process. Doc. 95, Pls' Supp., 2–4; Doc. 106, Hearing Transcript. Plaintiffs' counsel incorrectly asserted "*Mock* has already decided" prejudice as to Plaintiffs in this case. Doc. 106, Hearing Transcript, 64.

In *Mock*, the plaintiffs "suggested, through briefing, a number of comments they would have liked to have made against the Final Rule" if given the opportunity. 75 F.4th at 586 n.58. When pressed at the evidentiary hearing to explain the prejudice as to Plaintiffs, counsel made the broad assertion "we would have made due process comments." Doc. 106, Hearing Transcript, 16. But without more information, it is possible the Final Rule's "decision-making process centered on the identical substantive [due process] claims" as those broadly raised by Plaintiffs. *City of Arlington, Tex.*, 668 F.3d at 245; Final Rule at 6,549–52 (summarizing and addressing public comments regarding due process). Plaintiffs have not provided the Court with any examples or particular due process concerns Plaintiffs have between the Proposed Rule and the Final Rule, or any "new information they would have submitted to the agency" in another notice and comment period.[5] *Lyng*, 868 F.2d at 800; Doc. 97, Pls' Supp. Br., at 15-17. Although Plaintiffs need not have made comments to the Proposed Rule to show prejudice, they need to "explain what they would have said in response" to an agency's procedural error. *Lyng*, 868 F.2d at 799; *Mock*, 75 F.4th at 586.

The Court fully applies the Fifth Circuit's directive in *Mock*, but this case presents a different record than the one presented by the *Mock* plaintiffs. Based on the record here, the Court finds Plaintiffs have not shown prejudice. Therefore, Plaintiffs are not likely to succeed on the merits of their logical outgrowth claim.

The Court thus proceeds to assess the likelihood of success of Plaintiffs' remaining claims—none of which were analyzed by the Fifth Circuit in *Mock*.

---

[5] Plaintiffs' counsel "do[es]n't think" any Plaintiffs submitted comments during the notice and comment process. Doc. 106, Hearing Transcript, 15. Counsel attested SAF monitored the comment process and determined the organization did not need to submit comments because the comments submitted by others addressed SAF's concerns. *Id.* at 15–16. Counsel attested Rainier Arms, Green, and Walley "observed" comments submitted as well. *Id.*

- 14 -

B.  *Likelihood of Success as to Other Procedural Claims Arising Out of APA § 706(2)(A) and (C)*

Plaintiffs contend the Final Rule exceeds the ATF's rulemaking authority and contradicts

the statutes it was delegated to enforce in violation of APA § 706(2)(A) and (C). Doc. 52, Pls' Br.,

9–10. According to Plaintiffs, the Final Rule is also unlawful because it impermissibly went into

immediate effect without fitting a statutory exception. *Id.* at 17. Addressing each argument in turn,

the Court concludes Plaintiffs are not likely to succeed on the merits of these claims.

The Court first addresses the claim that the ATF has acted in excess of its authority. The

APA requires reviewing courts to "hold unlawful and set aside agency action, findings, and

conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations, or short of

statutory right." 5 U.S.C. § 706(2)(C). In this case, authority to administer and enforce the NFA

and GCA through "all needful rules and regulations" is vested in the Attorney General, who

properly delegated this responsibility to the ATF Director. 26 U.S.C. §§ 7801(a)(2)(A), 7805(a);

18 U.S.C. § 926(a); 28 C.F.R. § 0.130; *Guedes v. ATF*, 356 F. Supp. 3d 109, 129 n.3 (D.D.C. 2019)

(noting "ATF's clear authority to interpret" the NFA's definitions), *aff'd*, 920 F.3d 1 (D.C. Cir.

2019). When agencies are given the authority to administer and enforce a statute, they often must

interpret relevant provisions to ensure efficient and accurate implementation. *See Gonzales v.

Oregon*, 546 U.S. 243, 255 (2006).

The ATF has accordingly promulgated rules and regulations enforcing the NFA, including

by classifying particular weapons and devices as subject to or exempt from federal regulation. *E.g.*,

Definition of "Frame or Receiver" and Identification of Firearms, 87 FR 24652 (Apr. 26, 2022)

(revising and clarifying the definition of "frame or receiver"). The Court does not find the ATF's

promulgation of the Final Rule departs from the ATF's delegated authority to enforce the NFA

and GCA through "all needful rules and regulations." After careful review of the full administrative

and factual record, the Court does not find the Final Rule to be impermissibly exceeding its authority to enforce the statutory definition of "rifle" because, in the absence of Congressional guidance, the Final Rule appears "needful" to enforce the NFA and GCA definitional phrase "designed or redesigned, made or remade, and intended to be fired from the shoulder." 26 U.S.C. §§ 7801(a)(2)(A), 7805(a); 18 U.S.C. § 926(a); 28 C.F.R. § 0.130. In light of the evolution of manufactured braces, *see* Final Rule at 6,482–83, 6,493-94, 6,529, 6,543, the Final Rule provides, at the very least, some comprehensible standard for enforcement by placing brace-equipped devices that act like SBRs and are being marketed as SBRs into the statutory definition of SBRs. Final Rule 6,575; 26. U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7). Therefore, Plaintiffs are not likely to succeed on the merits of their excess of authority claim. *See Gonzales*, 546 U.S. at 255.

Next, the Court turns to the statutory contradiction argument. Even when acting within its authority, an agency is constrained by the language of the statute it must administer and may not rewrite or redefine terms in a way that contradicts the original statute.[6] *Texas v. United States*, 497 F.3d 491, 500-01 (5th Cir. 2007) (*citing Massachusetts v. EPA*, 549 U.S. 497 (2007)). According to Plaintiffs, the ATF improperly "expands" the definition of a "rifle" under the NFA by adding "elements to the definition that Congress never made part of the law." Doc. 52, Pls' Br., 9. But this legislative rule appears to pose an inquiry identical to the one posed by the NFA's definitional phrase "designed or redesigned, made or remade, and intended to be fired from the shoulder." 18 U.S.C. § 921(a)(7); 26 U.S.C. § 5845(c). For example, the Final Rule's third factor asks whether a brace-equipped firearm "is equipped with sights or a scope with eye relief that

---

[6] *Chevron* deference does not apply both because the ATF has not raised it and because the Final Rule interprets the NFA, which imposes criminal liabilities. *Cargill v. Garland*, 57 F.4th 447, 466 (5th Cir. 2023) (holding *Chevron* does not apply to regulations imposing criminal liability).

23-11157.1167

*requires the weapon to be fired from the shoulder* in order to be used as designed." This factor necessarily means one is looking to the brace-equipped firearm's intended use from the shoulder, just like the NFA's definitional phrase. And the first and second factors similarly pose an inquiry to identify a brace-equipped firearm whose use and design is akin to that of a rifle. Final Rule 6,757 (assessing whether design criteria are akin to "similarly designed rifles"). Indeed, all of the factors are textually grounded in the inquiry posed by the definitional phrase in "rifle" under the NFA. *E.g.*, Final Rule 6,757 ("provided other factors . . . indicate the weapon is *designed, made, and intended to be fired from the shoulder*." (emphasis added)).

Plaintiffs contend that the Final Rule's term "equipped" is a term that "must be different than 'made'" under the NFA, Doc. 52, Pls' Br., 9, without explaining why an "equipped" brace cannot be synonymous with the inquiries raised by the other statutory terms "remade," "redesigned," or "intended to be fired from the shoulder." The Government, on the other hand, illustrates reasonable decision-making behind the factors, however imperfect. *See FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016), as revised (Jan. 28, 2016) ("A court is not to ask whether a regulatory decision is the best one possible or even whether it is better than the alternatives."). Multiple demonstratives, pulled from the Final Rule, and the Government's briefing show a rational connection between the Final Rule's factors and the underlying factual record. Doc. 55, ATF Resp., 17–19; Doc. 106, Hearing Transcript, 53–54 (explaining marketing factor); *see also* Defs' Evidentiary Hearing Slides at 17-19 (images and videos from Final Rule at 6,494, 6,546, and 6,506 n.94)).

Relatedly, Plaintiffs argue that the Final Rule should be set aside as invalid under the rule of lenity. *See* Doc. 52, Pl's Br., 10. The rule of lenity is a principle of statutory construction that applies to laws imposing criminal penalties. *See Albernaz v. United States*, 450 U.S. 333, 342 (1981).

The "touchstone" of the rule of lenity "is statutory ambiguity." *Id.* However, the rule of lenity only applies in cases of genuine ambiguity. *Voisine v. United States*, 579 U.S. 686, 698 (2016). The Court does not find the rule of lenity applicable because Plaintiffs do not adequately explain how the Final Rule creates genuine ambiguity[7] nor does the Court find a grievous ambiguity or uncertainty regarding Congress's intent behind the meaning of the NFA's definitional phrase "designed or redesigned, made or remade, and intended to be fired from the shoulder." 26 U.S.C. § 5845(c); *United States v. Palomares*, 52 F.4th 640, 647 (5th Cir. 2022) ("Because we need not 'guess' at the statute's meaning, the rule of lenity does not apply."). The Court finds Plaintiffs unlikely to succeed on their claim arising out of APA § 706(2)(A).

Finally, the Court addresses Plaintiffs' argument that the Final Rule is unlawful under 5 U.S.C. § 553(d) because it expressly took effect "immediately." Doc. 52, Pls' Br., 17; Final Rule at 6,480. A substantive rule cannot be effective for at least thirty days following the rule's publication unless one of the following three exceptions applies: (i) the substantive rule "grants or recognizes an exemption or relieves a restriction;" (ii) the rule is an "interpretative rule[] or statement[] of policy;" or (iii) "as otherwise provided by the agency for good cause found and published with the rule." 5 U.S.C.A. §§ 553(d)(1)–(3). Section 533(d) "protects those who are affected by agency action taken during the 30-day waiting period without disturbing later action that is not the product" of a substantive rule's improper immediate effect. *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 5:21-CV-071-H, 2023 WL 2753978, at *7 (N.D. Tex. Mar. 31, 2023) (Hendrix, J.) (quoting *Prows v. Dep't of Justice*, 938 F.2d 274, 276 (D.C. Cir. 1991)). "[T]he purpose of the

---

[7] In their Reply, Plaintiffs argue the statutory phrase "intended to be fired from the shoulder" is "best read" to mean both the intent of the manufacturer and end user. Doc. 59, Reply, 7. There is not textual basis for limiting the statutory intent to that of a manufacturer and end user. The Final Rule also takes both sources of intent into account through the fifth and sixth factors. Final Rule at 6,574–75.

thirty-day waiting period is to give affected parties a reasonable time to adjust their behavior before the final rule takes effect." *City of Arlington, Tex.*, 668 F.3d at 245.

Neither party's briefing addresses the first exception. The second exception does not apply because the Fifth Circuit has held the Final Rule to be legislative. *Mock*, 75 F.4th at 578; *cf.* Doc. 55, ATF Resp., 33. Because the Government has not addressed whether the third exception applies, there is procedural error in violation of § 553(d). *See Black*, No. 5:21-CV-071-H, 2023 WL 2753978, at *5 (N.D. Tex. Mar. 31, 2023) ("The burden of establishing good cause is on the agency, and the exception is applicable in emergency situations, or where delay could result in serious harm.")

Such error is ultimately harmless because the Plaintiffs fail to explain how they would be "affected by agency action" during the 30-day period following the Final Rule's promulgation. *Black*, 2023 WL 2753978, at *7; *City of Arlington, Tex.*, 668 F.3d at 243 ("The harmless error rule requires the party asserting error to demonstrate prejudice from the error."). Although Final Rule was "immediately effective," it imposed a 120-day registration period for existing possessors of brace-equipped firearms—including Rainier Arms, Walley, Green, and certain SAF members—to comply with the Final Rule without facing any agency enforcement action. Final Rule at 6,481; Doc. 52-2, Gottlieb Decl., 1; Doc. 52-3, Green Decl., 1; Doc. 52-4, Walley Decl., 1. The certain SAF members who "would in the immediate future" following the Final Rule's publication acquire a stabilizing brace or brace-equipped firearm also were not "affected by agency action" because of an express 60-day waiting period before the initiation of any agency enforcement as to newly acquired or transferred devices. *Black*, 2023 WL 2753978, at *7; Final Rule at 6,481; Doc. 52-2, Gottlieb Decl., 1. Moreover, these members' alleged harm of wanting to purchase new brace-equipped firearms without agency interference does "not flow 'from the immediate effective date'"

but rather from choosing to purchase but not register a qualifying device under the Final Rule. *See Ctr. for Biological Diversity v. Regan*, No. CV 21-119, 2023 WL 5437496, at *3 (D.D.C. Aug. 23, 2023) (addressing source of alleged loss).

In any event, this Court issued an administrative stay and preliminary injunction for almost five months of the litigation, curing any potential prejudice arising from the procedural defect. Docs. 62, 65, 82, 93; *Black*, 2023 WL 2753978, at *7 (enjoining agency rule for thirty days as remedy for § 553(d) violation); *Jicarilla Apache Nation v. U.S. Dep't of the Interior*, 613 F.3d 1112, 1121 (D.C.Cir.2010) ("The harmless error rule applies to agency action because '[i]f the agency's mistake did not affect the outcome, if it did not prejudice the petitioner, it would be senseless to vacate and remand for reconsideration.'"). Therefore, Plaintiffs have not shown they are likely to succeed on the merits of their unlawful effective date claim.

C.  *Likelihood of Success as to Void for Vagueness Claim Under Constitution and APA § 706(2)(B)*

The Court next addresses Plaintiffs' facial vagueness challenge to the Final Rule. Plaintiffs argue the Final Rule uses "inherently amorphous terms" and "is so inherently subjective that it invites arbitrary enforcement." Doc. 52, Pls' Br., 14. A law is unconstitutionally vague if it does not "give [a] person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A facial challenge to a law considers only the text of the statute itself, not its application to the particular circumstances of an individual. *See Freedom Path, Inc. v. Internal Revenue Serv.*, 913 F.3d 503, 508 (5th Cir. 2019). A plaintiff can only succeed on a facial challenge by establishing "that no set of circumstances exists under which the Act would be valid." *Wash. St. Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (quotations omitted). Plaintiffs have not met their burden. Conversely, Defendants have shown that the Final Rule is likely valid because in at least

some circumstances the multi-factor framework allows a person of ordinary intelligence to assess whether his brace-equipped firearm is "designed or redesigned, made or remade, and intended to be fired from the shoulder." 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7).

The first focus of dispute is the Final Rule's phrase "provides surface area that allows the weapon to be fired from the shoulder," which Plaintiffs find vague because "surface area" does not have a quantifiable measurement. Doc. 52, Pl's Br., 15. But a test without "numeric thresholds" is not dispositively vague. *Cf. Texas v. EPA*, 983 F.3d 826, 839–40 (5th Cir. 2020) (upholding an agency's use of "a multi-factor balancing test" that included no "numeric thresholds"). Moreover, the language identifies a straightforward goal: identifying whether there is *a* surface area permitting a user to fire a firearm from the shoulder. And this goal appears to derive directly from the statutory definition of "rifle" as being "fired from the shoulder." 26. U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7). The Final Rule provides a pictorial example supporting that the language means the brace-equipped firearm has some surface area that one would use to fire from the shoulder like a rifle. Final Rule at 6,529. Defendants also provide examples supporting this interpretation. *See* Defs' Evidentiary Hearing Slides, 40. The record also suggests that it would be impractical, given the evolving variety of braces, to lay out a precise surface area in the Final Rule. *See generally* Non-Exhaustive List (illustrating braces); *see supra* Part I.A.

Plaintiffs argue the factor regarding the "weight or length consistent with the weight or length of similarly designed rifles" is also vague without "[s]pecific measurements." Doc. 52 Pls' Br., 15. Neither their cited cases nor the record supports Plaintiffs' argument. [8] The evolution of

---

[8] The Court declines to apply *Johnson v. United States*, 576 U.S. 591 (2015) because Plaintiffs fail to sufficiently explain how the case matters here. In *Johnson*, the Supreme Court invalidated a statutory clause for vagueness because it required court-derived interpretations of "conduct that presents a serious potential risk of physical injury to another" form prior cases to define a "violent felony." Plaintiffs are not challenging

braces supports the interpretation of this factor as covering modern-day braces that are long or heavy enough to be used as shoulder stocks, unlike initial brace prototypes that locked closer to the forearm. *Compare* Final Rule at 6,483 (2012 brace prototype) *with id.* at 6,494. While the Court agrees that this factor certainly could have been phrased with more precise language, the law does not require "perfect clarity and precise guidance." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

Plaintiffs further argue that no reasonable person can reliably infer the meaning of the "manufacturer's direct and indirect marketing" factor and the "general community" use factor. Doc. 52, Pls' Br., 15–16. The record suggests a contrary conclusion. During the evidentiary hearing, Defendants presented sample materials demonstrating applications of the marketing and community use factors. Doc. 106, Hearing Transcript, 53; Defs' Evidentiary Hearing Slides, 17–19 (citing materials published in Final Rule). Such examples illustrate that there are at least some circumstances in which these factors have meaning and are valid. Figure 3, below, is a sample marketing photo that illustrates the meaning of the marketing factor. Final Rule at 6,546. The Government explained that the brace-equipped firearm pictured was "marketed as a pistol even though it is so heavy [that] it is set up on a tripod, . . . [and], even though this individual has shouldered what is, for all intents and purposes, a buttstock into their shoulder." Doc. 106, Hearing Transcript, 53.

---

the terms of the NFA that impose criminal liability nor does this Court find the language at issue in *Johnson* relevant to the instant analysis. Plaintiffs' other supporting cases are likewise incongruent.

23-11157.1173



Figure 3. Marketing photo of Reece 11 MCMR 5.56 NATO caliber pistol with SBA3 stabilizing brace. Defs' Hearing Slide 18 (depicting picture in Final Rule at 6,546).

The example of the community use factor featured at the evidentiary hearing also shows there are at least some circumstances in which this factor has an understandable meaning. Doc. 106, Hearing Transcript, 54. The example, a YouTube video with 159,654 views and 235 comments, captures two firearm enthusiasts discussing brace-equipped firearms and demonstrating how a brace-equipped pistol can be fired from the shoulder. Defs' Evidentiary Hearing Slides at 19 (embedding link to video cited in Final Rule at 6,509 n.94); Doc. 106, Hearing Transcript, 54 (explaining community use factor goes to the same inquiry of whether a weapon is fired from the shoulder).

There are at least some instances in which a reasonable person can infer meaning from the Final Rule to determine whether a brace-equipped pistol is "designed, made, and intended to be fired from the shoulder" under the NFA. Final Rule at 6,574–75; 26. U.S.C. § 5845(c); *see Wash. State Grange*, 552 U.S. at 449. Therefore, the Court concludes that Plaintiffs are not likely to succeed on the merits of their vagueness claim.

23-11157.1174

*D.  Likelihood of Success as to Second Amendment Claims*

Plaintiffs contend the Final Rule is unlawful due to procedural and substantive Second Amendment violations. The Court reviews each argument and concludes Plaintiffs are not likely to succeed on the merits of their claims.

1.  Procedural Failure to Consider Claim (APA § 706(2)(A))

SAF brings a second "arbitrary and capricious" challenge under the APA, arguing the ATF failed to conduct a full Second Amendment inquiry under *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). Doc. 52, Pls' Br., 11. *Bruen* sets forth a two-step test for evaluating Second Amendment claims. 142 S. Ct. at 2126–34. First, a court must determine whether the regulated activity falls within the scope of the Second Amendment. *Id.* at 2126–27. If the activity implicates the Second Amendment, a court moves onto the second step, which asks "whether [the Final Rule] 'is consistent with this Nation's historical tradition of firearm regulation.'" *Id.* at 2126. "The APA's arbitrary-and-capricious standard requires that an agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). Here, Court finds that Plaintiff has not shown that the Final Rule inadequately addresses *Bruen*.

SAF argues the ATF did not conduct the second step of the *Bruen* analysis. In the Final Rule, the ATF describes the comments to the Proposed Rule that invoked the Second Amendment. Final Rule at 6,548. Certain commenters, for example, voiced their view that the Proposed Rule "attacked" and "infringed" on citizens' Second Amendment rights. *Id.* Many others specifically cited to the Supreme Court's *Heller* opinion to argue the Final Rule was unlawful. *Id.* (referencing *District of Columbia v. Heller*, 554 U.S. 570 (2008)). In response, the ATF discussed *Heller*'s holding and its application to SBRs—the weapon equivalent to brace-equipped firearms subject to the Final Rule. *Id.* The ATF also responded to these comments by addressing

implications from *Bruen*. First, the ATF explained that *Heller* confirms that Second Amendment rights are not absolute. *Id.* (citing 554 U.S. at 627). In *Heller*, the ATF explained, the Supreme Court recognized that Second Amendment rights are not absolute partly because of "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* (citing 554 U.S. at 627). The ATF interpreted that under *Heller*, "dangerous and unusual weapons" are unprotected by the Second Amendment. *Id.* Next, the ATF catalogued a number of post-*Heller* federal cases concluding that SBRs are "dangerous and unusual" weapons falling outside of the Second Amendment's protection. *Id.* The ATF concluded, based on *Heller* and its progeny, that weapons "regulated by the NFA, such as short-barrel rifles, were not historically protected by the Second Amendment and thus fall outside of the scope of the Second Amendment." *Id.* The ATF also concluded that "[n]othing in the Supreme Court's recent decision in . . . *Bruen* . . . changes this analysis." *Id.* Finally, the ATF summarized and applied *Bruen*'s legal test to the Final Rule. *Id.* n. 145. Based on its conclusion that brace-equipped firearms subject to the Final Rule are SBRs— "dangerous and unusual weapons" unprotected by Second Amendment—the ATF ended its analysis at *Bruen*'s first step.

Plaintiffs argue that "the record shows no *Bruen*-compliant considerations." Doc. 52, Pls' Br., 12. But their qualm is with the fact that the ATF did not reach the second step of *Bruen*, conducting an analysis of a firearm's historical tradition. Plaintiffs' argument poses a disagreement with the *outcome* of the ATF's consideration of *Bruen*, not a disagreement with an actual failure to consider *Bruen*. *See id.* (contending ATF's "premise" that SBRs are dangerous and unusual "is wrong"). The APA requires that agency action is "reasonably explained," which ATF has done here. 5 U.S.C. § 706(2)(A). The agency raised the operative law and applied it reasonably. Nothing in *Bruen* requires one to unconditionally proceed to the second step of the inquiry where the first

step is not met. Therefore, Plaintiffs are not likely to prevail on their claim that the Final Rule is arbitrary and capricious for failure to consider *Bruen*.

### 2.   Violation of Second Amendment Right

Plaintiffs also contend that the Final Rule is invalid because it violates the Second Amendment right to keep and bear arms. The Court concludes Plaintiffs are unlikely to succeed on their claim because the Final Rule does not implicate the Second Amendment.

The Fifth Circuit has at least tacitly recognized that, in the context of a facial challenge under the Second Amendment, the standard recognized in *Washington State Grange* and *United States v. Salerno* is superseded by the two-step process laid out in *Bruen*. *See United States v. Rahimi*, 61 F.4th 443, 453 (5th Cir.), *cert. granted*, 143 S. Ct. 2688 (2023) ("[I]f a statute is inconsistent with the Second Amendment's text and historical understanding, then it falls under any circumstances."). The Court therefore looks to *Bruen* to assess Plaintiff's facial challenge. [9]

Under the first step, a rule implicates the Second Amendment when the instrument at issue "constitute[s] [a] bearable arm." *Heller*, 554 U.S. at 582; *Hollis v. Lynch*, 827 F.3d 436, 447 (5th Cir. 2016). Courts have held that "arm" typically covers "[w]eapons of offence or armour of defence." *Heller* 554 U.S. at 581. If a regulated device is not encompassed by "arms," it falls outside the protection of the Second Amendment. The Supreme Court has additionally noted that the Second Amendment does not protect "dangerous and unusual weapons." *Id. at* 625 (explaining "historical tradition in prohibiting dangerous and unusual weapons" justified limiting Second

---

[9] Individual Plaintiffs assert constitutional injury in their declarations based on their individual constitutional rights being violated by the Final Rule if they were to destroy or surrender their brace-equipped weapons. Doc. 52-3, Green Decl.; Doc. 52-4, Walley Decl. The Court does not have a record of them intending to do so or having done so. Therefore, such harm is speculative, *supra* Part B.3, and the Court does not construe a viable as-applied challenge.

Amendment's protection); *Bruen*, 142 S. Ct. at 2162 (Kavanaugh, J., concurring). Where a rule does implicate a bearable arm, the Government must show that the rule "is consistent with the Nation's historical tradition of firearm regulation," by showing there is a "well-established and representative historical analogue." *Bruen*, 142 S. Ct. at 2130, 2133.

Plaintiffs contend that under *Bruen*, the Final Rule infringes on the Second Amendment right to keep and bear arms. Doc. 52, Pls' Br., 12. The parties' arguments require the Court to first determine Final Rule's scope, and whether that scope of regulation implicates the Second Amendment. Only after making these determinations can the Court proceed to assess whether a Second Amendment right is actually infringed upon.

### a. The Final Rule's Scope of Regulation

Plaintiffs argue the first step of *Bruen* is satisfied because the ATF "acted directly on the Second Amendment subject of a 'rifle,' [by] changing that term's definition." Doc. 59, Reply, 9. The Court has already ruled that Plaintiffs are unlikely to succeed on their claim that the Final Rule contradicts the NFA, and specifically the NFA's definition of a rifle. *Supra* Part III.B. By its plain function and text, the Final Rule acts on an "*accessory…(e.g., a 'stabilizing brace')*" and how an accessory can render a firearm an SBR. Final Rule at 6,480. No firearm on its own is suddenly being pulled under the ambit of the NFA. *See generally supra* Part I.A.

The Final Rule operates in two-tiers. The first tier indicates that accessories, namely stabilizing braces, are the focus. The Final Rule states that the NFA's definitional phrase "'designed or redesigned, made or remade, and intended to be fired from the shoulder" includes "a weapon *that is equipped* with an accessory, component, or other rearward attachment" providing surface area for the user to fire from the shoulder. Final Rule at 6,574–75 (emphasis added). The second tier of the Final Rule lays out six non-dispositive factors focusing on whether the resulting device—

the firearm *equipped with an accessory*—"is designed, made and intended to be fired from the shoulder." *Id.* Therefore, it is the addition of an accessory to a firearm that renders that firearm to be construed as a different device.

### b. *Stabilizing Braces Do Not Implicate the Second Amendment*

Laws that regulate the use of firearm accessories or attachments do not generally implicate the Second Amendment. *See, e.g.*, *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) (A silencer is a firearm accessory . . . . Accordingly, it can't be a 'bearable arm' protected by the Second Amendment."); *United States v. Saleem*, No. 3:21-cr-00086-FDW-DSC, 2023 WL 2334417, at *11 n. 9 (W.D.N.C. Mar. 2, 2023). The most salient example of an accessory not implicating the Second Amendment is a silencer. *See Cox*, 906 F.3d at 1186. Courts have routinely held that a silencer is not a bearable arm as defined in *Heller* because a silencer cannot cause harm on its own, nor is it of any use "independent of its attachment to a firearm." *United States v. Peterson*, No. CR 22-231, 2023 WL 5383664, at *2 (E.D. La. Aug. 21, 2023) (quotations omitted); *United States v. Al-Azhari*, No. 8:20-CR-206-T-60AEP, 2020 WL 7334512, at *3 (M.D. Fla. Dec. 14, 2020); *United States v. Hasson*, No. GJH-19-96, 2019 WL 4573424, at *4–5 (D. Md. Sept. 20, 2019), *aff'd*, 26 F.4th 610 (4th Cir. 2022) (collecting cases). Additionally, an "accessory" like a silencer does not implicate the Second Amendment because "a firearm remains an effective weapon without a silencer." *Hasson*, WL 4573424, at *4–5.

Applying the same logic, a stabilizing brace cannot cause harm on its own and is not useful independent of its attachment to a firearm. Nothing in record evidence indicates that braces are necessary for the actual use of a firearm. Indeed, both parties recognize only that stabilizing braces improve the "accuracy" or "efficacy" of one's firearm use. Final Rule 6,499, 6,557; Doc. 52, Pls' Br., 21; Doc. 52-4, Walley Decl., 1; Doc. 106, Hearing Transcript, 27–30. In the absence of additional

facts, the Court sees no other reason to believe that stabilizing braces are necessary to actually fire or operate a firearm. *Hasson*, WL 4573424, at \*4-5. The Court concludes that, like silencers, stabilizing braces are not "bearable arms" under the Second Amendment. *See Heller*, 554 U.S. at 582; *Cox*, 906 F.3d at 1186. Under *Bruen*, the analysis ends at the first step because the regulated activity does not fall within the scope of the Second Amendment. 142 S. Ct. at 2129–30.

### c. *"Brace-Equipped Pistols" Do Not Implicate the Second Amendment*

Plaintiffs assert the regulation of pistols as part of a brace-equipped firearm violates the Second Amendment. Doc. 52, Pls' Br., 12–14. No matter how the Court conceptualizes the scope of the regulation, however, the result is the same. The Final Rule does not implicate the Second Amendment. Plaintiffs' argument goes that when considering the Final Rule as covering the entire brace-equipped pistol, the Court should move to the second step of *Bruen* because brace-equipped pistols are within the Second Amendment's orbit. Doc. 52, Pls' Br., 13–14. But brace-equipped pistols subject to the Final Rule are equivalent to SBRs,[10] which are "dangerous and unusual weapons" outside of the protection of the Second Amendment.

The Fifth Circuit has established a two-step approach for determining when a device is "dangerous and unusual." *Hollis*, 827 F.3d at 446. First, a "dangerous and unusual" weapon is one that is "not in common use" at the time of founding. *Id.*; *United States v. Miller*, 307 U.S. 174, 178 (1939) (holding short-barreled shotguns fall outside the protection of the Second Amendment). Invoking *Jennings*, *Heller*, *Thompson/CTranscript Arms Co.*, and *Bruen*, at least one court within this District has concluded that short-barreled rifles are "dangerous and unusual." *United States v.*

---

[10] The parties do not dispute that the Final Rule addresses the definition of a "rifle" and SBRs under the NFA. *See* Part I.A, III.B (the inquiries are the same); Final Rule at 6,478–80, 6,494–95.

*Miller*, No. 3:23-CR-0041-S, 2023 WL 6300581, at *3 (N.D. Tex. Sept. 27, 2023) (Scholer, J.).
Other circuit courts have held there are sufficient similarities between SBRs and other weapons
deemed "dangerous and unusual," such that "possession of SBRs falls outside the Second
Amendment's guarantee." *Cox*, 906 F.3d 1170, 1185–86 (comparing to short-barreled shotgun and
sawed-off shotgun). Although the Fifth Circuit has not addressed whether SBRs are "dangerous
and unusual" weapons, the Circuit has noted the NFA, which regulates SBRs, was "designed to
target" weapons thar are "dangerous and unusual." *Mock*, 75 F.4th at 567–68. The Fifth Circuit
has also recognized Congress's "specific declaration and finding [when expanding the scope of the
NFA] that … short-barreled rifles are primarily weapons of war and have no appropriate sporting
use or use for personal protection." *United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999)
(citing S. REP. No. 90–1501, at 28 (1968)). The Supreme Court has also recognized that
Congress's object with passing the NFA was to regulate SBRs as "concealable weapon[s] likely to
be" used "for criminal purposes." *Thompson/CTranscript Arms Co.*, 504 U.S. at 517.

Plaintiffs do not contend that the NFA or its definition of SBRs is unconstitutional. And
no court has held that SBRs are no longer unusually dangerous, associated with criminal activity,
or otherwise contrary to Congress's stated position during the passing of the NFA. Therefore, this
Court does not take the tremendous step of finding otherwise as to traditional SBRs and brace-
equipped firearms equivalent to SBRs.

The Court's conclusion is also unchanged by Plaintiffs' assertion that brace-equipped pistols
are "in common use now." As the regulatory history reveals, the very point of promulgating the
Final Rule was the agency's discovery that there was an emerging evasion of the NFA through
evolving models of braces and brace-equipped pistols. *See supra* Part I.A. The fact that over this
same period, brace-equipped pistols that effectively operated as SBRs have been used by criminal

gunmen to successfully execute mass shootings of innocent people lends additional support to the conclusion that brace-equipped firearms deemed SBRs under the Final Rule are "dangerous and unusual." *See* Doc. 55, ATF Resp. 8–9, 26; Doc. 97, ATF Supp. Br., 8; Final Rule at 6,495–99, 6,508 ("[T]here have been at least two mass shooting incidents where the shooters reportedly shouldered their weapons by using purported 'stabilizing braces' as stocks, killing a total of 19 people."), 6,566. For the forgoing reasons, SAF is unlikely to succeed on the merits of the facial Second Amendment challenge.

E.  *Irreparable Harm*

In the event Plaintiffs are likely to succeed on any of their claims, Plaintiffs must still show they are likely to face irreparable harm. *Winter*, 555 U.S. at 20. Assuming Plaintiffs have shown prejudice through their assertion that their logical outgrowth claim entirely "matches" the logical outgrowth claim in *Mock*, the Court must still conduct an analysis of the remaining factors. Doc. 95, Pls' Supp. Br., 2; *see* 75 F.4th 563. Despite ample time and opportunity to evidence their asserted harm through briefing, supplemental briefing, declarations, and an evidentiary hearing,[11] Plaintiffs have failed to sufficiently establish they likely will face irreparable harm in the absence of a preliminary injunction. The Court first addresses the asserted compliance costs and business injuries, and next the asserted constitutional harm.

"To be considered irreparable, the injury in question must be imminent and cannot be speculative." *Terex Corp. v. Cubex Ltd.*, No. 3:06–CV–1639–G, 2006 WL 3542706, at *9 (N.D. Tex. Dec. 7, 2006) (Fish, J.). Costs arising from compliance with a regulation can also constitute irreparable harm, but they must also "be based on more than speculation." *Rest. L. CTranscript v.*

---

[11] No Plaintiff attended or participated in the evidentiary hearing to testify about the injuries they will or have suffered such that the injury is irreparable.

*United States Dep't of Lab.*, 66 F.4th 593 (5th Cir. 2023) (citing *Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022)). A party must show that its non-speculative compliance costs are more than *de minimis* and cannot be recovered in the ordinary course of litigation. *Id.* at 597–600. While a business injury, such as lost profits, may be sufficient to show irreparable harm, a party must meet a heavy burden showing such injury is "substantial," beyond the realm of everyday losses. *Cf. Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1142 (5th Cir. 2021); *Texas v. United States Env't Prot. Agency*, 829 F.3d 405, 433 (5th Cir. 2016). Finally, "[w]hile courts are willing to entertain a loss of customers or goodwill as a harm, the movant must come forward with evidence that such an injury is irreparable by showing that the loss cannot be measured in money damages." *Brink's Inc. v. Patrick*, No. 3:14-CV-775-B, 2014 WL 2931824, at *6 (N.D. Tex. June 27, 2014) (Boyle, J.) (citation omitted).

    1.  <u>Harm as to Rainier Arms</u>

    Rainier Arms asserts four types of injuries: (i) "substantial" lost profits from pending orders that were canceled "[i]mmediately" upon the Final Rule's issuance, (ii) "substantial" lost profits from fallen demand for "brace-equipped AR-style pistols and components thereof," (iii) "substantial" loss in customer goodwill caused by "a chilling legal cloud," and (iv) "substantial unrecoverable compliance costs." *See* Doc. 52-1, Hwang Decl. ¶ 5; Doc. 103-1, Hwang Add'l Decl., 1. The declarant for Rainier Arms, John Hwang, is the company's founder and CEO.

    As a preliminary matter, the lost profits from past, pending orders are never defined but even if they were, they cannot justify a forward-looking preliminary injunction. *See* Doc. 52-1, Hwang Decl.; *Mayo Found. for Med. Educ. & Rsch. v. BP Am. Prod. Co.*, 447 F. Supp. 3d 522, 534 (N.D. Tex. 2020) (Kacsmaryk, J.) ("Plaintiff's reference to *past* injuries . . . do not constitute the type of ongoing or probable future injuries requiring [a] preliminary injunction.").

Next, the nature of the asserted ongoing lost profits is unclear. Hwang's March 2023 declaration asserted the Final Rule "deprive[d] Rainier of substantial profits by making otherwise willing customers either legally ineligible or practical[ly] incapable of using Rainier's arm brace products." Doc. 52-1, Hwang Decl. ¶ 5. Rainier Arms does not provide any further context or supporting facts. Hwang's October 2023 declaration asserts for the first time that Rainier Arms that the continuing "lost revenue . . . easily exceed[s] tens of thousands of dollars per month." Doc. 103-1, Hwang Add'l Decl., 1. While Hwang's second declaration does provide the Court with a number, Rainier Arms fails to provide other contextual facts such as when this loss began, how the figure is calculated, or whether the figure represents total or product-specific lost revenue. Doc. 103-1, Hwang Add'l Decl., 1; *cf. Wages & White Lion Invs., L.L.C.*, 16 F.4th at 1142 (finding irreparable harm where party responding to agency order stopped all production of a product line representing 90% of its annual revenue). The Court cannot simply assume Rainier Arm's financial losses are "substantial" and support a finding of irreparable harm based only on the company's own conclusion. *Cf. Wages & White Lion Invs., L.L.C.*, 16 F.4th at 1142; *Texas v. EPA*, 829 F.3d at 433; Doc. 106, Hearing Transcript, 17.

The Court tried to ascertain whether the asserted monthly loss constituted irreparable harm or likely irreparable harm. During the evidentiary hearing, the Court asked for context from "Rainier Arms' total monthly sales revenue" or what percentage of Rainier Arms' "average monthly income derived from the sales of brace-equipped pistols" both before and after the Final Rule went into effect. Doc. 106, Hearing Transcript, 17–18. But Plaintiffs' counsel had no further information to share. Counsel effectively asks the Court to take Hwang's word that such asserted monthly losses are "substantial." Doc. 106, Hearing Transcript, 17–20.

In contrast, the manufacturer in *Mock*, Maxim Defense, showed irreparable harm by not only asserting drastic figures but by showing why those figures mattered. Maxim Defense had an estimated to-date loss of over $7 million attributed to braced pistol and stabilizing brace sales. *Mock v. Garland*, No. 4:23-CV-00095-O, 2023 WL 6457920, at *15 (N.D. Tex. Oct. 2, 2023) (O'Connor, J.). Further, Maxim Defense projected losing over $9 million in sales in 2023 due to the Final Rule, which represented more than half of the prior year's gross revenues. *Id.* Here, Rainier Arms' loss does not threaten the existence of its business and the company provides no other context for the asserted the monthly loss. Doc. 106, Hearing Transcript, at 18; *cf. Mock*, 2023 WL 6457920 at *15 (finding Maxim Defense would "not be able to sustain its business for any longer" absent an injunction); *Wages & White Lion Invs., L.L.C.*, 16 F.4th at 1142 (finding irreparable harm from ongoing losses "representing 90 percent of [party's] annual revenue, thereby requiring the company to make plans to lay off its employees [in] two weeks").

Rainier Arms' other asserted business harm lacks sufficient support. The company's asserted goodwill injury is speculative both as to actual loss of goodwill and its nexus to the Final Rule. *See Terex Corp.*, 2006 WL 3542706, at *9. Rainier Arms says it cannot measure goodwill nor a change in goodwill. Doc. 106, Hearing Transcript, 20. The Court cannot divine irreparable harm from Hwang's mere "inference" of lost goodwill. *Id.* Thus, Rainier Arms has not sufficiently established likely irreparable harm from unclear business losses.

Finally, Rainier Arms alleges it has hefty monetary or time compliance costs. *Id.* 20–21. Its asserted monetary compliance cost of "legal fees" is asserted without any estimated value or supporting caselaw that legal fees constitute compliance costs. *Id.* at 20; *but see United States v. Vineland Chem. Co.*, Civ. No. 86-1936, 1990 WL 157509, at *11 (D.N.J. Apr. 30, 1990) (suggesting legal fees and compliance costs are distinct), *aff'd*, 931 F.2d 52 (3d Cir. 1991). Plaintiffs are also

silent as to whether Rainier Arms has paid a special occupation tax, *supra* Part I.A., which would

negate compliance costs in terms of taxes.[12] The amount of time Rainier Arms has or will expend

to comply with the Final Rule is also unknown. Doc. 106, Hearing Transcript, 21. Rainier Arms

only asserts that it has a time burden of determining "what the [Final R]ule covers and what

[Rainier Arms] can't sell anymore." *Id.*; *cf. EPA*, 829 F.3d at 433 (finding "several irreparable

injuries" from $2 billion compliance cost affecting Petitioner power companies and downstream

third parties like everyday consumers, businesses, and unions members). And it is unclear why the

asserted need to determine "what Rainier Arms can't sell anymore" is a compliance cost at all since

the Final Rule does not ban Rainier Arms from selling anything. *See supra* Part I.A. The record

simply does not illustrate the nature of Rainier Arms' compliance costs, let alone that they are

more than *de minimis*. Therefore, Rainier Arms has not met its burden of showing likely irreparable

harm.

Separately, the Court concludes a preliminary injunction is not appropriate because such

relief would not prevent Rainier Arms' asserted business harms. The Final Rule has been in place

for nine months, with this Court imposing an administrative stay and preliminary injunction for

Plaintiffs for nearly five of those months pending the resolution of *Mock*. Docs. 62, 65, 82, 93.

Rainier Arms' asserted "substantial" lost profits during part of the administratively imposed relief

suggests a preliminary injunction would not prevent the threatened financial harm. *United States*

---

[12] If Rainier Arms turns out to be SOT payer, it would have no further tax obligation. Final Rule at
6,498 (explaining Form 2 registration notice is tax-free). Plaintiffs state without explaining that Rainier
Arms' compliance costs are unrecoverable. Doc. 52, Pls' Br., 19; Doc. 59, Reply, 12. While there's a strong
reason to believe that monetary compliance costs would be unrecoverable from the ATF, which enjoys
sovereign immunity for any monetary damages, *Alabama-Coushatta Tribe of Texas v. United States*, 757 F.3d
484, 488 (5th Cir. 2014), Plaintiffs have not sufficiently alleged monetary compliance costs such that they
would be unrecoverable. *Cf. Rest. L. CTranscript*, 66 F.4th 593 (addressing unrecoverable compliance cost
that was first found to represent significant monetary value).

*v. St. Bernard Par.*, 756 F.2d 1116, 1123 (5th Cir. 1985) ("It is black letter law that an injunction will not issue when it would be ineffectual."); Doc. 103-1, Hwang Add'l Decl.

### 2.  Harm as to SAF Members, Walley, and Green

Walley, Green, and other SAF members assert two types of harm arising out of the Final Rule: constitutional harms and compliance costs.[13] Doc. 52-2, Gottlieb Decl., 1; Doc. 103-2, Gottlieb Add'l Decl., 1; Doc. 52-4, Walley Decl. ¶ 5; Doc. 103-3, Walley Add'l Decl., 1; Doc. 52-3, Green Decl., 1; Doc. 106, Hearing Transcript, 28. The Court addresses the asserted constitutional harms under the Second Amendment in Part E. Plaintiffs assert three compliance costs: the time burden to understand the Final Rule, the practical injury of reduced efficacy from altering a brace-equipped firearm, and the $200 tax upon registration. *Id.*

As to their time burden, these Plaintiffs allege there is an "extraordinary" compliance cost of navigating the Final Rule's "complex" registration system that "requires specialized legal knowledge." *Id.* When asked for factual support behind the asserted harm, Plaintiffs' counsel simply replied the entire Final Rule is unclear. Doc. 106, Hearing Transcript, 22–23. Plaintiffs have also failed to tell the Court exactly what brace-equipped firearms they possess or wish to possess but cannot evaluate under the Final Rule. *See* Doc. 52-2, Gottlieb Decl., 1; Doc. 103-2, Gottlieb Add'l Decl., 1; Doc. 52-4, Walley Decl. ¶ 5; Doc. 103-3, Walley Add'l Decl., 1; Doc. 52-3, Green Decl., 1. Plaintiffs do not provide an estimate or any other metric for measuring an average SAF member's time cost to understand and comply with the Final Rule. Doc. 103-2, Gottlieb Add'l Decl., 1; Doc. 103-3, Walley Add'l Decl., 1; Doc. 52-3, Green Decl., 1; Doc. 106, Hearing Transcript, 22–24, 29; *cf. Rest. L. C Transcript*, 66 F.4th at 599–600 (finding district court erred when rejecting existence

---

[13] SAF asserts constitutional harms on behalf of itself and its members, as well as compliance costs on behalf of its members.

of compliance costs where "witnesses offered specific estimates of the additional time that managers would incur to comply with the rule"). Without more, the alleged costs are conclusory and therefore insufficient to establish a concrete, imminent harm. *See Wages & White Lion Invs., L.L.C.*, 16 F.4th at 1142.

The Court also finds the mere assertions of "complexity" unconvincing given that the registration form seeks basic information such as whether the registrant is a fugitive or intends to use the brace-equipped firearm to commit a felony. Doc. 106, Hearing Transcript, 59. Moreover, the ATF has published educational resources to address questions or concerns about the Final Rule. Doc. 55 at 10 n.4 (citing sources); Doc. 106, Hearing Transcript, 22. One of these documents is a "non-exhaustive" 38-page list with names and pictures of brace-equipped firearms that the ATF "has determined are short-barrel rifles." Doc. 55 at 10 n.4 (referencing *Commercially available firearms equipped with a "stabilizing brace" that are short-barrel rifles*, BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVE, https://www.atf.gov/rules-and-regulations/docs/undefined/bracefinalruleguidance-commerciallypdf/download (last accessed, Oct. 19, 2023) (hereafter "Non-Exhaustive List"). The Court asked but did not learn whether these resources alleviate these Plaintiffs' asserted time cost. *See* Doc. 106, Hearing, Transcript 23. Individuals still uncertain from the Final Rule and educational resources can also seek classification from the ATF. Doc. 55, ATF Resp., 31 (citing Final Rule at 6,552). While such classifications are not binding, there is a safe harbor protecting an individual's reliance on an ATF classification that later changes or is withdrawn. Doc. 106, Hearing Transcript, 59. The time compliance costs therefore have not been shown to be more than a *de minimis* amount.

Walley, Green, and SAF members additionally assert a "substantial practical injury" of reduced efficacy and safety from having to permanently separate the brace from their pistols. Doc.

52-4, Walley Decl. ¶ 5; Doc. 52-3, Green Decl. ¶ 7; Doc. 52-2, Gottlieb Decl. ¶ 6. Plaintiffs assert this harm without providing any case suggesting that such a "practical injury" can constitute irreparable harm or any factual support showing why the injury is "substantial." Doc. 52, Pls' Br., 19, 21. Green's asserted practical injury also appears to be undercut by his own statement that he can and does "utilize" other firearms as required by his job as a full-time police officer. Doc. 52-3, Green Decl. ¶ 7 (expressing Green's utilization of firearms but not brace-equipped firearms). Oral argument also suggests Green can handle a non-brace-equipped firearm. Doc. 106, Hearing Transcript., 29–30. The "practical" injury does not sufficiently show likely irreparable harm.

Finally, Walley, Green, and other SAF members say they face an alternative monetary compliance cost of $200—the tax on any newly acquired or transferred brace-equipped pistol. Doc. 106, Hearing Transcript, 23–24, 28; Doc. 52, Pls' Br., 20. Plaintiffs provide no case to support that a $200 tax is more than *de minimis*. SAF asserts the tax is "financially onerous, not *de minimis*" since many SAF members earn "near or below" the national average income.  Doc. 103-2, Gottlieb Add'l Decl., 1. When asked, Plaintiffs' counsel did not further explain why the $200 tax was "onerous" against his researched national average income figure of $70,000 per year. Doc. 106, Hearing Transcript, 24. The Court asked for the average cost of a brace-equipped pistol purchased by an average SAF member to see if the tax was proportionally "onerous." *Id.* at 26. But Plaintiffs' counsel did not have a number. *Id.* A search on Rainier Arms' website of AK-styled pistols without any add-ons or braces reveals a cost between $1,200 and $2,500. Search Results for AK-Style Pistols, Rainier Arms, https://www.rainierarms.com/athena/?q=pistols&page=5&product_list_order=price_desc. Stabilizing pistol braces on the same website range from $64 to $460. Search Results for "pistol brace," Rainier Arms https://www.rainierarms.com/athena/?q=pistol+brace&product_list_order=price_desc&page=4. Plaintiffs ultimately do not provide

23-11157.1189

evidence to support their contention that choosing, from multiple options, to pay a $200 tax is more than a *de minimis* compliance cost.[14] Accordingly, these Plaintiffs have not met their burden to show their monetary compliance costs likely cause them irreparable harm.

### 3. Constitutional Harms as to SAF and its Members

SAF asserts constitutional harm on behalf of itself and its members from compliance with the Final Rule. Doc. 103-2, Gottlieb Decl., 1 ("One of SAF's core functions is to vindicate the Second Amendment's right to keep and bear arms, including brace-equipped AR-style pistols that the Rule illegally regulates."); *id.* (explaining members are "similarly burdened by . . the Rule"). As SAF members, Green and Walley also assert constitutional harm arising from the Final Rule. Doc. 52-3, Green Decl., 1 ("Worst of all, compliance by way of firearm destruction or surrender inflicts the irreparable harm of abridging my Second Amendment right to keep and bear arms."); Doc. 52-4, Walley Decl., 1 (same); Doc. 103-3, Walley Add'l Decl., 1.

As a preliminary matter, it is not clear that the asserted individual harm is imminent or more than speculative. *Terex Corp.*, 2006 WL 3542706, at *9. Specifically, the Court does not understand Walley, Green, or any other SAF member to be choosing or seriously intending to choose either option at this time. Doc. 52-3, Green Decl., 1; Doc. 52-4, Walley Decl., 1; Doc. 103-3, Walley Add'l Decl., 1; Doc. 103-2, Gottlieb Decl., 1. The Final Rule does not impose a ban on brace-equipped firearm. *Supra* Part I.A.; *cf. Bruen*, 142 S. Ct. at 2138, n.9, 2162 (explaining licensing schemes "which often require applicants to undergo a background check," or similar reasonable measures are unlikely to pose a constitutional problem). The alleged constitutional

---

[14] The Court also does not know whether Walley, Green or any other SAF member has mitigated the $200 tax over their existing brace-equipped devices by registering during the registration grace period. *See Am. Telnet, Inc. v. GTE Corp.*, 1999 WL 242686, at *3 (N.D. Tex. Apr. 16, 1999) (Fitzwater, J.) (finding mitigation of costs undercuts finding of irreparable harm).

harm arises out of one's *choosing* to surrender or destroy a brace-equipped firearm out of the five options provided by the Final Rule. *See supra* Part I.A. For example, possessors are also free to continue to use their firearms without the brace if they do not want to register their brace-equipped firearm. *Id.*

It is also unclear whether allegations of Second Amendment violations alone are sufficient to establish irreparable harm is likely. *Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 689 (W.D. Tex. 2015), *aff'd sub nom. Def. Distributed v. United States Dep't of State*, 838 F.3d 451 (5th Cir. 2016). It is widely accepted that allegations of First Amendment violations can sufficiently show likely irreparable harm. *E.g., Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) ("Opulent Life has satisfied the irreparable-harm requirement because it has alleged violations of its First Amendment"); *see also* Wright & Miller, § 2948.1 Grounds for Granting or Denying a Preliminary Injunction—Irreparable Harm, 11A Fed. Prac. & Proc. Civ. § 2948.1, n.24–25 (3d ed.) (citing examples under the First Amendment). But the Fifth Circuit has never held that *allegations of Second Amendment violations alone* are sufficient to establish irreparable harm.

The Court is unaware of any circuit or district court finding an allegation of a Second Amendment violation alone to be sufficient to satisfy the irreparable harm prong. In the only relevant case this Court could find, *Defense Distributed*, the Fifth Circuit only assumed for purposes of appeal—but did not decide—that alleged deprivations of First and Second Amendment freedoms constituted irreparable harm. 838 F.3d at 457. Issuing a preliminary injunction based only on a "possibility" of irreparable harm is inconsistent with the principle that injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Accordingly, the Court concludes that Plaintiffs'

23-11157.1191

mere allegations that their Second Amendment rights were violated do not establish likely irreparable harm.

## F.  *Balance of the Harms*

While Plaintiffs have not sufficiently shown they face likely irreparable harm, the Court considers their asserted harms against the public interest in the Final Rule. *See Fisher v. Texas*, 556 F. Supp. 2d 603, 610 (W.D. Tex. 2008) (considering balance of equities despite no likelihood of success and no irreparable harm); *see also Winter*, 555 U.S. at 20–26; *Nken*, 556 U.S. at 435. Plaintiffs contend the balance tips in their favor because they are likely to succeed on the merits of their claims and there is no public interest in perpetuating an unlawful agency action. Doc. 52, Pls' Br., 22. The Court does not deem the Final Rule to be invalid, *see supra* Parts A-D, and the Fifth Circuit expressly declined to hold the Final Rule unlawful in *Mock*. 75 F.4th at 587. The purported harm to public interest is losing a standard enforcement criterion and reduced public safety. Doc. 55, ATF Resp., 24–25. The Court understands there to be a dual public safety justification: enforcing the existing public safety justification behind the NFA's requirements over SBRs, as well as deterring the use of brace-equipped firearms by mass shooters. The Court agrees the public has a safety interest in the continued enforcement of the NFA and its regulation of SBRs. The Court also finds that there is at least some public interest in having a standard regulatory criterion over brace-equipped firearms, given the evolution of stabilizing braces. *See supra* Part I.A. The Court does not find Plaintiffs' unclear or unsubstantiated harms outweigh the interests of the public. Plaintiffs' balancing arguments do not change the Court's finding given the forgoing analysis. The Plaintiffs therefore fail to establish that the balance of equities tips in their favor.

## IV

## CONCLUSION

The Court has conducted a thorough inquiry into several factual questions that required resolution before a ruling could be issued in response to the instant motion. The Court does not find Plaintiffs have established a likelihood of success on the merits of any of their claims. Even assuming likelihood of success on the merits of one of Plaintiffs' claims, the Court finds Plaintiffs have not met their burden to show they likely face irreparable harm from the Final Rule. Finally, Plaintiffs have not established that the harms they face without a preliminary injunction outweigh the interests of the public. Accordingly, the Court finds that Plaintiffs have failed to establish the factors necessary for the relief they seek and **DENIES** Plaintiffs' Motion for a Preliminary Injunction.

SO ORDERED.

SIGNED: November 13, 2023.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

23-11157.1193

TAB 4

APPEAL

# U.S. District Court
## Northern District of Texas (Fort Worth)
## CIVIL DOCKET FOR CASE #: 4:23-cv-00095-O

| | |
|---|---|
| Mock et al v. Garland et al | Date Filed: 01/31/2023 |
| Assigned to: Judge Reed C. O'Connor | Jury Demand: None |
| Related Case:  4:23-cv-00578-O | Nature of Suit: 899 Other Statutes: Administrative Procedure Act/Review or Appeal of Agency Decision |
| Case in other court:  United States Court of Appeals 5th Circuit, 23-10319 | Jurisdiction: U.S. Government Defendant |
| United States Court of Appeals 5th Circuit, 23-11199 | |
| Cause: 28:1331 Fed. Question | |

**Plaintiff**

**William T Mock**                                      represented by     **R Brent Cooper**
Cooper & Scully PC
900 Jackson Street, Suite 100
Dallas, TX 75202
214-712-9501
Fax: 214-712-9540
Email: brent.cooper@cooperscully.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Benjamin David Passey**
Cooper & Scully PC
900 Jackson Street
Suite 100
Dallas, TX 75202
214-712-9500
Fax: 214-712-9540
Email: ben.passey@cooperscully.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Bradley Alan Benbrook**
Benbrook Law Group PC
701 University Avenue
Suite 106
Sacramento, CA 95825
916-447-4900
Fax: 916-447-4904
Email: brad@benbrooklawgroup.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Cody J Wisniewski**

FPC Action Foundation
5550 Painted Mirage Road
Ste 320
Las Vegas, NV 89149
916-517-1665
Fax: 916-476-2392
Email: cwi@fpchq.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Nathan Curtis Flanigin**
Cooper & Scully P.C.
900 Jackson Street
Suite #100
Dallas, TX 75202
214-712-9550
Fax: 214-712-1540
Email: nathan.flanigin@cooperscully.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Stephen Michael Duvernay**
Benbrook Law Group PC
701 University Avenue
Suite 106
Sacramento, CA 95814
916-447-4900
Fax: 916-447-4904
Email: steve@benbrooklawgroup.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Plaintiff**

**Christopher Lewis**                 represented by  **R Brent Cooper**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Benjamin David Passey**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Bradley Alan Benbrook**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Cody J Wisniewski**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Nathan Curtis Flanigin**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Stephen Michael Duvernay**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Plaintiff**

**Firearms Policy Coalition Inc**          represented by    **R Brent Cooper**
*a nonprofit corporation*                                    (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Bar Status: Admitted/In Good Standing*

                                                             **Benjamin David Passey**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Bar Status: Admitted/In Good Standing*

                                                             **Bradley Alan Benbrook**
                                                             (See above for address)
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Bar Status: Not Admitted*

                                                             **Cody J Wisniewski**
                                                             (See above for address)
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Bar Status: Not Admitted*

                                                             **Nathan Curtis Flanigin**
                                                             (See above for address)
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Bar Status: Admitted/In Good Standing*

                                                             **Stephen Michael Duvernay**
                                                             (See above for address)
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*
                                                             *Bar Status: Not Admitted*

**Plaintiff**

**Maxim Defense Industries, LLC**                    represented by    **Cody J Wisniewski**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Benjamin David Passey**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Bradley Alan Benbrook**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Nathan Curtis Flanigin**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Stephen Michael Duvernay**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**R Brent Cooper**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

V.

**Defendant**

**Merrick Garland**                    represented by    **Jody Dale Lowenstein**
*in his official capacity as Attorney General*          US Department of Justice
*of the United States*                                  Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-598-9280
Email: jody.d.lowenstein@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Drezner**
US Department of Justice
Civil Division, Federal Programs Branch
1100 L St
Washington, DC 20005

23-11199.4

202-514-4505
Fax: 202-616-8470
Email: michael.l.drezner@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

**United States Department of Justice**                 represented by  **Jody Dale Lowenstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Drezner**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

**Bureau of Alcohol Tobacco Firearms and
Explosives**                                            represented by  **Jody Dale Lowenstein**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Drezner**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

**Steven Dettelbach**                                   represented by  **Jody Dale Lowenstein**
*in his official capacity as the Director of the*                       (See above for address)
*Bureau of Alcohol, Tobacco, Firearms and*                             *LEAD ATTORNEY*
*Explosives*                                                            *ATTORNEY TO BE NOTICED*
                                                                        *Bar Status: Not Admitted*

**Michael Drezner**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

V.

**Movant**

**Palmetto State Armory LLC**                           represented by  **Stephen Joseph Obermeier**
*Party and attorney are active (attorney has*                          Wiley Rein LLP
*been terminated to restrict access to sealed*                         2050 M Street NW
*filings*                                                              Washington, DC 20036
                                                                       202-719-7465

<span style="color:red">23-11199.5</span>

Email: sobermeier@wiley.law
*TERMINATED: 08/18/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Boyd Garriott**
2050 M Street NW
Washington, DC 20036
202-719-7000
Email: bgarriott@wiley.law
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jeremy J Broggi**
Wiley LLP
2050 M Street NW
Washington, DC 20036
202-719-3747
Email: jbroggi@jd14.law.harvard.edu
*TERMINATED: 08/18/2023*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**John E Leslie**
John Leslie PLLC
1805 West Park Row
Ste C
Arlington, TX 76013
817-405-7700
Fax: 817-505-1292
Email: arlingtonlaw@aol.com
*TERMINATED: 08/18/2023*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Michael D Faucette**
Wiley Rein LLP
2050 M Street NW
Washington, DC 20036
202-719-4587
Email: mfaucette24@gmail.com
*TERMINATED: 08/18/2023*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Movant**

| | | |
|---|---|---|
| **Firearms Regulatory Accountability Coalition Inc** | represented by | **Stephen Joseph Obermeier**<br>(See above for address) |

*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*

TERMINATED: 08/18/2023
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Boyd Garriott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jeremy J Broggi**
(See above for address)
*TERMINATED: 08/18/2023*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**John E Leslie**
(See above for address)
*TERMINATED: 08/18/2023*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Michael D Faucette**
(See above for address)
*TERMINATED: 08/18/2023*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

### Movant

**NST Global LLC**
*Party and attorney are active (attorney has been terminated to restrict access to sealed filings*
*doing business as*
SB Tactical

represented by **Stephen Joseph Obermeier**
(See above for address)
*TERMINATED: 08/18/2023*
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Boyd Garriott**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jeremy J Broggi**
(See above for address)
*TERMINATED: 08/18/2023*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**John E Leslie**
(See above for address)
*TERMINATED: 08/18/2023*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Michael D Faucette**
(See above for address)
*TERMINATED: 08/18/2023*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/31/2023 | 1 (p.21) | COMPLAINT against All Defendants filed by William T Mock, Firearms Policy Coalition Inc, Christopher Lewis. (Filing fee $402; Receipt number ATXNDC-13481974) Plaintiff will submit summons(es) for issuance. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.21) Exhibit(s) Exhibit 1, # 2 (p.92) Cover Sheet Civil Cover Sheet, # 3 (p.94) Cover Sheet Supplement Civil Cover Sheet Attachment) (Cooper, R) (Attachment 2 replaced to flatten pdf on 1/31/2023) (mms). Modified on 1/31/2023 (mms). (Entered: 01/31/2023) |
| 01/31/2023 | 2 (p.92) | Request for Clerk to issue Summons filed by Firearms Policy Coalition Inc, Christopher Lewis, William T Mock. (Cooper, R) (Main Document 2 replaced to flatten pdf on 1/31/2023) (mms). Modified text on 1/31/2023 (mms). (Entered: 01/31/2023) |
| 01/31/2023 | 3 (p.94) | Request for Clerk to issue Summons filed by Firearms Policy Coalition Inc, Christopher Lewis, William T Mock. (Cooper, R) (Main Document 3 replaced to flatten pdf on 1/31/2023) (mms). Modified text on 1/31/2023 (mms). (Entered: 01/31/2023) |
| 01/31/2023 | 4 (p.96) | Request for Clerk to issue Summons filed by Firearms Policy Coalition Inc, Christopher Lewis, William T Mock. (Cooper, R) (Main Document 4 replaced to flatten pdf on 1/31/2023) (mms). Modified text on 1/31/2023 (mms). (Entered: 01/31/2023) |
| 01/31/2023 | 5 (p.98) | Request for Clerk to issue Summons filed by Firearms Policy Coalition Inc, Christopher Lewis, William T Mock. (Cooper, R) (Main Document 5 replaced to flatten pdf on 1/31/2023) (mms). Modified text on 1/31/2023 (mms). (Entered: 01/31/2023) |
| 01/31/2023 | 6 (p.100) |  |

| | | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Firearms Policy Coalition Inc, Christopher Lewis, William T Mock. (Clerk QC note: No affiliate entered in ECF). (Cooper, R) (Main Document 6 replaced to flatten pdf on 1/31/2023) (mms). Modified text on 1/31/2023 (mms). (Entered: 01/31/2023) |
|---|---|---|
| 01/31/2023 | 7 (p.102) | NOTICE of Related Case filed by Firearms Policy Coalition Inc, Christopher Lewis, William T Mock (Cooper, R) Modified text on 1/31/2023 (mms). (Entered: 01/31/2023) |
| 01/31/2023 | 8 (p.104) | New Case Notes: A filing fee has been paid. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (Judge Rutherford). Clerk to provide copy to plaintiff if not received electronically. (mms) (Entered: 01/31/2023) |
| 01/31/2023 | 9 (p.106) | Summons issued as to Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice, U.S. Attorney, and U.S. Attorney General. (mms) (Entered: 01/31/2023) |
| 01/31/2023 | 10 (p.130) | New Case Notes: A filing fee has been paid. File to: Judge O Connor. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. Attorneys are further reminded that, if necessary, they must comply with Local Rule 83.10(a) within 14 days or risk the possible dismissal of this case without prejudice or without further notice. (tjc) (Entered: 01/31/2023) |
| 01/31/2023 | 11 (p.132) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Cody J. Wisniewski (Filing fee $100; Receipt number ATXNDC-13483464) filed by Firearms Policy Coalition Inc, Christopher Lewis, William T Mock (Attachments: # 1 (p.21) Proposed Order Admission for Pro Hac Vice, # 2 (p.92) Exhibit(s) Certificate of Good Standing) (Cooper, R) (Main Document 11 replaced on 1/31/2023) (tjc). (Entered: 01/31/2023) |
| 02/01/2023 | 12 | ELECTRONIC ORDER granting 11 (p.132) Application for Admission Pro Hac Vice of CODY J. WISNIEWSKI. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 2/1/2023) (chmb) (Entered: 02/01/2023) |
| 02/07/2023 | 13 (p.139) | AMENDED COMPLAINT *FIRST AMENDED PETITION FOR JUDICIAL REVIEW AND REQUEST FOR VACATUR OF AGENCY ACTION, AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF* against All Defendants filed by Firearms Policy Coalition Inc, Christopher Lewis, William T Mock, Maxim Defense Industries, LLC. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Cooper, R) (Entered: 02/07/2023) |
| 02/07/2023 | 14 (p.214) | AMENDED Certificate of Interested Persons/Disclosure Statement by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock. Amendment to 6 (p.100) Cert. Of Interested Persons/Disclosure Statement,. . (Cooper, R) Modified on 2/8/2023 (dgt). (Entered: 02/07/2023) |
| 02/09/2023 | 15 (p.216) | SUMMONS Returned Executed as to Bureau of Alcohol Tobacco Firearms and Explosives ; served on 2/3/2023. (Cooper, R) (Entered: 02/09/2023) |

| 02/09/2023 | 16 (p.219) | SUMMONS Returned Executed as to Merrick Garland ; served on 2/3/2023. (Cooper, R) (Entered: 02/09/2023) |
|---|---|---|
| 02/09/2023 | 17 (p.222) | SUMMONS Returned Executed as to Steven Dettelbach ; served on 2/3/2023. (Cooper, R) (Entered: 02/09/2023) |
| 02/09/2023 | 18 (p.225) | SUMMONS Returned Executed as to United States Department of Justice ; served on 2/3/2023. (Cooper, R) (Entered: 02/09/2023) |
| 02/09/2023 | 19 (p.228) | MOTION for Leave to File Brief in Excess of Page Limit filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock (Attachments: # 1 (p.21) Proposed Order) (Cooper, R) (Entered: 02/09/2023) |
| 02/14/2023 | 20 (p.235) | ORDER: Before the Court is Plaintiffs' Emergency Motion for Leave to File Brief in Excess of Page Limit (ECF No. 19), filed February 9, 2023. To expedite resolution of the motion, the Court ORDERS that Defendants' Response is due no later than February 21, 2023. Plaintiffs' Reply is due no later than February 23, 2024. Plaintiffs SHALL serve Defendants with notice of this Order no later than February 15, 2023 and inform that Court that it has done so. (Ordered by Judge Reed C. O'Connor on 2/14/2023) (tjc) (Entered: 02/14/2023) |
| 02/15/2023 | 21 (p.236) | SUMMONS Returned Executed as to Bureau of Alcohol Tobacco Firearms and Explosives ; served on 2/9/2023. (Cooper, R) (Entered: 02/15/2023) |
| 02/15/2023 | 22 (p.240) | SUMMONS Returned Executed as to United States Department of Justice ; served on 2/9/2023. (Cooper, R) (Entered: 02/15/2023) |
| 02/15/2023 | 23 (p.244) | SUMMONS Returned Executed. (Cooper, R) (Entered: 02/15/2023) |
| 02/15/2023 | 24 (p.248) | NOTICE of *Compliance of Court Order* re: 20 (p.235) Order Setting Deadline/Hearing,, filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock (Cooper, R) (Entered: 02/15/2023) |
| 02/17/2023 | 25 (p.249) | NOTICE of Attorney Appearance by Jody Dale Lowenstein on behalf of Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice. (Filer confirms contact info in ECF is current.) (Lowenstein, Jody) (Entered: 02/17/2023) |
| 02/17/2023 | 26 (p.251) | MOTION to Enter Proposed Briefing Schedule filed by Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice (Attachments: # 1 (p.21) Proposed Order) (Lowenstein, Jody) (Entered: 02/17/2023) |
| 02/20/2023 | 27 (p.256) | SUMMONS Returned Executed as to Bureau of Alcohol Tobacco Firearms and Explosives ; served on 2/10/2023. (Cooper, R) (Entered: 02/20/2023) |
| 02/20/2023 | 28 (p.262) | SUMMONS Returned Executed as to Steven Dettelbach ; served on 2/9/2023. (Cooper, R) (Entered: 02/20/2023) |
| 02/20/2023 | 29 (p.266) | SUMMONS Returned Executed as to Merrick Garland ; served on 2/10/2023. (Cooper, R) (Entered: 02/20/2023) |
| 02/20/2023 | 30 (p.270) | SUMMONS Returned Executed as to Steven Dettelbach; served on 2/9/2023. (Cooper, R) Modified on 2/21/2023 (dgt). (Entered: 02/20/2023) |

| | | |
|---|---|---|
| 02/20/2023 | 31 (p.276) | SUMMONS Returned Executed as to Merrick Garland ; served on 2/9/2023. (Cooper, R) (Entered: 02/20/2023) |
| 02/21/2023 | 32 (p.280) | ORDER granting 26 (p.251) the parties' motion and ORDERS the parties to comply with the following briefing schedule: On or before February 21, 2023, Plaintiffs will file their motion for preliminary relief; On or before March 10, 2023, Defendants will file their response to Plaintiffs motion; On or before March 17, 2023, Plaintiffs may file a reply in support of their motion. Both parties MAY file an initial brief that is at most 45 pages. Accordingly, the briefing schedule entered by this Court's Order of February 14, 2023 (ECF No. 20 (p.235) ), expediting responses to Plaintiff's motion for overlength briefing is thereby VACATED and the related motion (ECF No. 19 (p.228) ) is moot. (Ordered by Judge Reed C. O'Connor on 2/21/2023) (tjc) (Entered: 02/21/2023) |
| 02/21/2023 | 33 (p.281) | MOTION for Injunction *or, in the Alternative, for Postponement of the Effective Date of the Final Rule* filed by William T Mock, Christopher Lewis, Maxim Defense Industries, LLC, and Firearms Policy Coalition, Inc. (Attachments: # 1 (p.21) Proposed Order) (Cooper, R) Modified filers on 2/22/2023 (mmw). (Entered: 02/21/2023) |
| 02/21/2023 | 34 (p.287) | ***PLEASE DISREGARD PER ATTORNEY, PLEASE SEE DOC 36 (p.415) *** Brief/Memorandum in Support filed by William T Mock re 33 (p.281) MOTION for Injunction *or, in the Alternative, for Postponement of the Effective Date of the Final Rule* (Cooper, R) Modified on 2/22/2023 (sre). (Entered: 02/21/2023) |
| 02/21/2023 | 35 (p.343) | ***PLEASE DISREGARD PER ATTORNEY, PLEASE SEE DOC 36 (p.415) *** Brief/Memorandum in Support filed by William T Mock re 33 (p.281) MOTION for Injunction *or, in the Alternative, for Postponement of the Effective Date of the Final Rule* (Attachments: # 1 (p.21) Declaration(s), # 2 (p.92) Declaration(s), # 3 (p.94) Declaration(s), # 4 (p.96) Declaration(s)) (Cooper, R) Modified on 2/22/2023 (sre). (Entered: 02/21/2023) |
| 02/21/2023 | 36 (p.415) | Brief/Memorandum in Support filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock re 33 (p.281) MOTION for Injunction *or, in the Alternative, for Postponement of the Effective Date of the Final Rule* (Attachments: # 1 (p.21) Declaration(s) Brandon Combs, # 2 (p.92) Declaration(s) David Dahl, # 3 (p.94) Declaration(s) Christopher Lewis, # 4 (p.96) Declaration(s) William T. Mock) (Cooper, R) (Entered: 02/21/2023) |
| 03/10/2023 | 37 (p.487) | RESPONSE filed by Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice re: 33 (p.281) MOTION for Injunction *or, in the Alternative, for Postponement of the Effective Date of the Final Rule* (Lowenstein, Jody) (Entered: 03/10/2023) |
| 03/17/2023 | 38 (p.549) | REPLY filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock re: 33 (p.281) MOTION for Injunction *or, in the Alternative, for Postponement of the Effective Date of the Final Rule* (Attachments: # 1 (p.21) Declaration(s) Supplemental Declaration of David Dahl) (Wisniewski, Cody) (Entered: 03/17/2023) |
| 03/27/2023 | 39 (p.565) | Unopposed Motion for Extension of Time to File Answer filed by Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Proposed Order) (Lowenstein, Jody) (Entered: 03/27/2023) |
| 03/30/2023 | | |

| | | |
|---|---|---|
| | 40 (p.569) | OPINION & ORDER ON 33 (p.281) PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, FOR POSTPONEMENT OF THE EFFECTIVE DATE OF THE FINAL RULE: Having considered the parties' briefing and applicable law, the Court holds that Plaintiffs have not carried their burden to demonstrate their substantial likelihood of success on the merits of any of their claims and therefore DENIES 33 (p.281) Plaintiffs' motion for preliminary injunctive relief or, in the alternative, for postponement of the Final Rules effective date. (Ordered by Judge Reed C. O'Connor on 3/30/2023) (tjc) (Entered: 03/30/2023) |
| 03/30/2023 | 41 (p.585) | MOTION for Injunction *Pending Appeal* filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock (Attachments: # 1 (p.21) Proposed Order)Attorney Cody J Wisniewski added to party Maxim Defense Industries, LLC(pty:pla) (Wisniewski, Cody) (Entered: 03/30/2023) |
| 03/30/2023 | 42 (p.591) | Brief/Memorandum in Support filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock re 41 (p.585) MOTION for Injunction *Pending Appeal* (Wisniewski, Cody) (Entered: 03/30/2023) |
| 03/30/2023 | 43 (p.616) | NOTICE OF INTERLOCUTORY APPEAL as to 40 (p.569) Memorandum Opinion and Order,, to the Fifth Circuit by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock. Filing fee $505, receipt number BTXNDC-13629611. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Wisniewski, Cody) (Entered: 03/31/2023) |
| 03/31/2023 | 44 (p.619) | USCA Case Number 23-10319 in United States Court of Appeals 5th Circuit for 43 (p.616) Notice of Appeal, filed by Christopher Lewis, William T Mock, Firearms Policy Coalition Inc, Maxim Defense Industries, LLC. (tle) (Entered: 03/31/2023) |
| 03/31/2023 | 45 (p.623) | ORDER granting in part 39 (p.565) Motion for Extension of Time to File Answer. Having considered the motion and noting it is unopposed, the Court GRANTS the motion in part. Defendants' Answer shall be filed no later than April 28, 2023. (Ordered by Judge Reed C. O'Connor on 3/31/2023) (tjc) (Entered: 03/31/2023) |
| 03/31/2023 | 46 (p.624) | MEET AND CONFER ORDER REQUIRING SCHEDULING CONFERENCE AND REPORT FOR CONTENTS OF SCHEDULING ORDER: Proposed Scheduling Order due by 4/28/2023. Lead counsel for each party (or a designee attorney with appropriate authority) and any unrepresented party (except for a prisoner litigant proceeding pro se) shall confer (the "Scheduling Conference") as soon as practicable, but in any event no later than April 14, 2023. As a result of the Scheduling Conference, counsel shall prepare and submit a Report Regarding Contents of Scheduling Order ("Joint Report"). The Joint Report shall also include a status report on settlement negotiations but shall not disclose settlement figures. The Joint Report, which shall be filed on or before April 28, 2023. (Ordered by Judge Reed C. O'Connor on 3/31/2023) (tjc) (Entered: 03/31/2023) |
| 03/31/2023 | | |

| | | |
|---|---|---|
| | 47 (p.633) | ORDER expediting briefing on Plaintiffs' 41 (p.585) Motion for Injunction Pending Appeal. (Ordered by Judge Reed C. O'Connor on 3/31/2023) (chmb) (Entered: 03/31/2023) |
| 04/11/2023 | 48 (p.634) | Transcript Order Form: re 43 (p.616) Notice of Appeal, transcript not requested Reminder: If the transcript is ordered for an appeal, Appellant must also file a copy of the order form with the appeals court. (Wisniewski, Cody) (Entered: 04/11/2023) |
| 04/12/2023 | 49 (p.636) | RESPONSE filed by Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice re: 41 (p.585) MOTION for Injunction *Pending Appeal* (Lowenstein, Jody) (Entered: 04/12/2023) |
| 04/18/2023 | 50 (p.656) | REPLY filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock re: 41 (p.585) MOTION for Injunction *Pending Appeal* (Attachments: # 1 (p.21) Declaration(s) Third Declaration of David Dahl) (Wisniewski, Cody) (Entered: 04/18/2023) |
| 04/20/2023 | | Record on Appeal for USCA5 23-10319 (related to 43 (p.616) appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified,. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (tle) (Entered: 04/20/2023) |
| 04/28/2023 | 51 (p.671) | Proposal for contents of scheduling and discovery order *(Joint Report)* by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock. (Wisniewski, Cody) (Entered: 04/28/2023) |
| 05/01/2023 | 52 (p.680) | SCHEDULING ORDER: Before the Court is the parties' Joint Report Regarding Contents of Scheduling Order (ECF No. 51 (p.671) ), filed April 28, 2023. The dispute involves claims of various violations of the Administrative Procedure Act (APA), 5 U.S.C. § 706, and the U.S. Constitution. Having considered the parties' positions and noting that the dispute shall be resolved on dispositive crossmotions without trial (See Order Specific Dates). (Ordered by Judge Reed C. O'Connor on 5/1/2023) (tjc) (Entered: 05/01/2023) |
| 05/19/2023 | 53 (p.682) | Unopposed MOTION to Extend Time to Lodge the Administrative Record filed by Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Proposed Order) (Lowenstein, Jody) (Entered: 05/19/2023) |
| 05/20/2023 | 54 | ELECTRONIC ORDER granting 53 (p.682) Unopposed Motion to Extend Time to Lodge Administrative Record. Defendants shall lodge thecertified administrative record no later than May 23, 2023. (Ordered by Judge Reed C. O'Connor on 5/20/2023) (chmb) (Entered: 05/20/2023) |
| 05/22/2023 | | APPEARANCE FORM FILED at USCA5 by Attorney(s) Stephen Dean Stamboulieh for party(s) Amicus Curiae Gun Owners of America, Incorporated Amicus Curiae Gun Owners Foundation Amicus Curiae Brady Brown, in case 23-10319. Access to the EROA has been granted. (tle) (Entered: 05/22/2023) |

| | | |
|---|---|---|
| 05/22/2023 | | APPEARANCE FORM FILED at USCA5 by Attorney Ryan Baasch for Amicus Curiae State of Texas in 23-10319. Access to the EROA has been granted. (tle) (Entered: 05/22/2023) |
| 05/22/2023 | 55 (p.686) | NOTICE of *the Lodging of the Administrative Record* filed by Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice (Attachments: # 1 (p.21) Certification of the Administrative Record, # 2 (p.92) Index for the Administrative Record) (Lowenstein, Jody) (Entered: 05/22/2023) |
| 05/23/2023 | 57 (p.694) | NOTICE of Submission of 55 (p.686) Administrative Record on Flash Drive filed by United States Department of Justice (Flash drive located in Clerk's Office File Room). (tjc) (Entered: 05/24/2023) |
| 05/24/2023 | 56 (p.691) | ORDER of USCA No. 23-10319 as to 43 (p.616) Notice of Appeal, filed by Christopher Lewis, William T Mock, Firearms Policy Coalition Inc, Maxim Defense Industries, LLC. IT IS ORDERED that the appeal is EXPEDITED to the next available Oral Argument Calendar.IT IS FURTHER ORDERED that Appellants Opposed Motion For a Preliminary Injunction Pending Appeal is GRANTED as to the Plaintiffs in this case. See FED. R. APP. P. 8; Nken v. Holder, 556 U.S. 418 (2009). (Attachments: # 1 (p.21) USCA5 Cover Letter) (tle) (Entered: 05/24/2023) |
| 05/26/2023 | 58 (p.696) | ORDER of USCA as to 43 (p.616) Notice of Appeal, filed by Christopher Lewis, William T Mock, Firearms Policy Coalition Inc, Maxim Defense Industries, LLC. IT IS ORDERED that appellants opposed motion for clarification of the motion panels May 23, 2023, order is GRANTED.The motions panel majority ordered that Appellants Opposed Motion For a Preliminary Injunction Pending Appeal is GRANTED as to the Plaintiffs in this case. (Emphasis added.) On May 23, the appellants moved for clarification of the meaning and scope of the italicized language. As the merits panel that will be hearing oral arguments on June 29, 2023, we provide that clarification now. Any relief beyond what is explicitly requested, which arguably would be tantamount to a nationwide injunction, is DENIED (Attachments: # 1 (p.21) USCA5 Cover Letter) (tle) (Entered: 05/26/2023) |
| 06/08/2023 | | APPEARANCE FORM FILED at USCA5 by Attorney Stephen Obermeier for Amicus Curiae Palmetto State Armory, L.L.C. in 23-10319, Attorney Stephen Obermeier for Amicus Curiae NST Global, L.L.C. in 23-10319, Attorney Stephen Obermeier for Amicus Curiae Firearms Regulatory Accountability Coalition, Incorporated in 23-10319. Access to the EROA has been granted. (tle) (Entered: 06/08/2023) |
| 06/12/2023 | | APPEARANCE FORM FILED at USCA5 by Attorney(s) Autumn Hamit Patterson for party(s) Amicus Curiae Texas Public Policy Foundation, in case 23-10319. Access to the EROA has been granted. (tle) (Entered: 06/12/2023) |
| 06/12/2023 | | APPEARANCE FORM FILED at USCA5 by Attorney(s) Chance Weldon for party(s) Amicus Curiae Texas Public Policy Foundation, in case 23-10319. Access to the EROA has been granted. (tle) (Entered: 06/12/2023) |
| 06/12/2023 | | APPEARANCE FORM FILED at USCA5 by Attorney(s) Robert E. Henneke for party(s) Amicus Curiae Texas Public Policy Foundation, in case 23-10319. Access to the EROA has been granted. (tle) (Entered: 06/12/2023) |
| 06/13/2023 | | APPEARANCE FORM FILED at USCA5 by Attorney Stephen Klein for Amicus Curiae American Firearms Association in 23-10319. Access to the EROA has been granted. (tle) (Entered: 06/13/2023) |

| | | |
|---|---|---|
| 06/16/2023 | 59 (p.700) | MOTION to Stay *Proceedings* filed by Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice with Brief/Memorandum in Support. (Attachments: # 1 (p.21) Proposed Order) (Lowenstein, Jody) (Entered: 06/16/2023) |
| 06/16/2023 | 60 (p.711) | RESPONSE filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock re: 59 (p.700) MOTION to Stay *Proceedings* (Wisniewski, Cody) (Entered: 06/16/2023) |
| 06/19/2023 | 61 (p.714) | ORDER granting Defendants Merrick Garland et al.'s 59 (p.700) Motion to Stay. The case is STAYED pending the Fifth Circuit's resolution of Plaintiffs' expedited appeal from this Court's order denying Plaintiffs' motion for injunctive relief. See No. 23-10319 (5th Cir.). Summary Judgment briefing shall resume upon issuance of the Fifth Circuit's decision. See Order for details. (Ordered by Judge Reed C. O'Connor on 6/19/2023) (chmb) (Entered: 06/19/2023) |
| 06/27/2023 | | APPEARANCE FORM FILED at USCA5 by Attorney(s) Clayton Way Calvin for party(s) Amicus Curiae Texas Public Policy Foundation, in case 23-10319. Access to the EROA has been granted. (tle) (Entered: 06/27/2023) |
| 06/28/2023 | 62 (p.715) | A flash drive containing a corrected copy of the certified administrative record for Factoring Criteria for Firearms with Attached "Stabilizing Braces," filed by Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice. (Flash drive is on the shelf in the clerk's office) (fba) (Entered: 06/29/2023) |
| 08/01/2023 | 63 (p.717) | STATUS REPORT ORDER: Status Report due by 8/4/2023. (Ordered by Judge Reed C. O'Connor on 8/1/2023) (Judge Reed C. O'Connor) (Entered: 08/01/2023) |
| 08/04/2023 | 64 (p.718) | Joint STATUS REPORT filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock. (Wisniewski, Cody) (Entered: 08/04/2023) |
| 08/04/2023 | 65 (p.721) | ORDER: Supp. Pleadings due by 8/18/2023. Responses due by 9/1/2023. Replies due by 9/9/2023. (Ordered by Judge Reed C. O'Connor on 8/4/2023) (Judge Reed C. O'Connor) (Entered: 08/04/2023) |
| 08/14/2023 | 66 (p.722) | NOTICE of Attorney Appearance by R Brent Cooper for Bradley A. Benbrook and Stephen M. Duvernay on behalf of Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock. (Cooper, R) (Entered: 08/14/2023) |
| 08/15/2023 | 67 (p.725) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Bradley A. Benbrook (Filing fee $100; Receipt number ATXNDC-13956116) filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock (Attachments: # 1 (p.21) Proposed Order Proposed Order for Admission Pro Hac Vice) (Passey, Benjamin) (Entered: 08/15/2023) |
| 08/15/2023 | 68 (p.732) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Stephen M. Duvernay (Filing fee $100; Receipt number ATXNDC-13956199) filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock (Attachments: # 1 (p.21) Proposed Order Proposed Order for Admission Pro Hac Vice) (Passey, Benjamin) (Entered: 08/15/2023) |

| | | |
|---|---|---|
| 08/18/2023 | 69 (p.739) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-13967929) filed by Palmetto State Armory, LLC, Firearms Regulatory Accountability Coalition, Inc., NST Global, LLC (d/b/a SB Tactical). Party Palmetto State Armory, LLC, Firearms Regulatory Accountability Coalition, Inc., NST Global, LLC (d/b/a SB Tactical) added.Attorney Stephen Joseph Obermeier added to party Palmetto State Armory, LLC(pty:mov), Attorney Stephen Joseph Obermeier added to party Firearms Regulatory Accountability Coalition, Inc.(pty:mov), Attorney Stephen Joseph Obermeier added to party NST Global, LLC (d/b/a SB Tactical)(pty:mov) (Obermeier, Stephen) (Entered: 08/18/2023) |
| 08/18/2023 | 70 (p.744) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-13967987) filed by Firearms Regulatory Accountability Coalition, Inc., NST Global, LLC (d/b/a SB Tactical), Palmetto State Armory, LLC Attorney Jeremy J Broggi added to party Firearms Regulatory Accountability Coalition, Inc.(pty:mov), Attorney Jeremy J Broggi added to party NST Global, LLC (d/b/a SB Tactical)(pty:mov), Attorney Jeremy J Broggi added to party Palmetto State Armory, LLC(pty:mov) (Broggi, Jeremy) (Entered: 08/18/2023) |
| 08/18/2023 | 71 (p.749) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-13968000) filed by Firearms Regulatory Accountability Coalition, Inc., NST Global, LLC (d/b/a SB Tactical), Palmetto State Armory, LLC Attorney Michael D Faucette added to party Firearms Regulatory Accountability Coalition, Inc.(pty:mov), Attorney Michael D Faucette added to party NST Global, LLC (d/b/a SB Tactical)(pty:mov), Attorney Michael D Faucette added to party Palmetto State Armory, LLC(pty:mov) (Faucette, Michael) (Entered: 08/18/2023) |
| 08/18/2023 | 72 (p.754) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-13968035) filed by Firearms Regulatory Accountability Coalition, Inc., NST Global, LLC (d/b/a SB Tactical), Palmetto State Armory, LLC Attorney Boyd Garriott added to party Firearms Regulatory Accountability Coalition, Inc.(pty:mov), Attorney Boyd Garriott added to party NST Global, LLC (d/b/a SB Tactical)(pty:mov), Attorney Boyd Garriott added to party Palmetto State Armory, LLC(pty:mov) (Garriott, Boyd) (Entered: 08/18/2023) |
| 08/18/2023 | 73 (p.759) | Unopposed MOTION for Leave to File Brief as Amici Curiae filed by Firearms Regulatory Accountability Coalition Inc, NST Global LLC, Palmetto State Armory LLC (Attachments: # 1 (p.21) Amicus Brief, # 2 (p.92) Amicus Brief Ex. A - White Decl., # 3 (p.94) Amicus Brief Ex. B - Supp. Creamer Decl., # 4 (p.96) Amicus Brief Ex. C - Luce Decl., # 5 (p.98) Amicus Brief Ex. D - Creamer Decl., # 6 (p.100) Proposed Order) (Obermeier, Stephen) Modified docket text on 8/18/2023 (mms). (Entered: 08/18/2023) |
| 08/18/2023 | 74 (p.814) | NOTICE of Attorney Appearance by John E Leslie on behalf of Firearms Regulatory Accountability Coalition, Inc., NST Global, LLC (d/b/a SB Tactical), Palmetto State Armory, LLC. (Filer confirms contact info in ECF is current.) (Leslie, John) (Entered: 08/18/2023) |
| 08/18/2023 | 75 (p.816) | Brief/Memorandum in Support filed by Firearms Policy Coalition Inc, Firearms Regulatory Accountability Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock re 33 (p.281) MOTION for Injunction *or, in the Alternative, for Postponement of the Effective Date of the Final Rule Plaintiffs Supplemental Brief In Support Of Their Motion For Preliminary Injunction* |

| | | |
|---|---|---|
| | | (Attachments: # 1 (p.21) Declaration(s) Fourth Declaration of David Dahl, # 2 (p.92) Declaration(s) Declaration of Jahde Clark, # 3 (p.94) Declaration(s) Declaration of Bert Irslinger) (Benbrook, Bradley) (Entered: 08/18/2023) |
| 08/22/2023 | 76 | ELECTRONIC ORDER granting 67 (p.725) Application for Admission Pro Hac Vice of Bradley A. Benbrook. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 8/22/2023) (chmb) (Entered: 08/22/2023) |
| 08/22/2023 | 77 | ELECTRONIC ORDER granting 68 (p.732) Application for Admission Pro Hac Vice of Stephen M. Duvernay. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 8/22/2023) (chmb) (Entered: 08/22/2023) |
| 08/22/2023 | 78 | ELECTRONIC ORDER granting 69 (p.739) Application for Admission Pro Hac Vice of Stephen J. Obermeier. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 8/22/2023) (chmb) (Entered: 08/22/2023) |
| 08/22/2023 | 79 | ELECTRONIC ORDER granting 70 (p.744) Application for Admission Pro Hac Vice of Jeremy J. Broggi. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 8/22/2023) (chmb) (Entered: 08/22/2023) |
| 08/22/2023 | 80 | ELECTRONIC ORDER granting 71 (p.749) Application for Admission Pro Hac Vice of Michael Faucette. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 8/22/2023) (chmb) (Entered: 08/22/2023) |
| 08/22/2023 | 81 | ELECTRONIC ORDER granting 72 (p.754) Application for Admission Pro Hac Vice of Boyd Garriott. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 8/22/2023) (chmb) (Entered: 08/22/2023) |
| 08/22/2023 | 82 | ELECTRONIC ORDER granting 73 (p.759) Motion for Leave to File. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Reed C. O'Connor on 8/22/2023) (chmb) (Entered: 08/22/2023) |
| 08/30/2023 | 83 (p.860) | MOTION Unopposed Motion for Leave to File Notice of Supplemental Authority filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock with Brief/Memorandum in Support. (Benbrook, Bradley) (Entered: 08/30/2023) |
| 09/01/2023 | 84 (p.960) | RESPONSE filed by Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice re: 75 (p.816) Brief/Memorandum in Support of Motion,, (Lowenstein, Jody) (Entered: 09/01/2023) |
| 09/08/2023 | | |

| | | |
|---|---|---|
| | **85**<br>(p.981) | RESPONSE filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock re: 75 (p.816) Brief/Memorandum in Support of Motion,, 84 (p.960) Response/Objection, 65 (p.721) Order Setting Deadline/Hearing, 33 (p.281) MOTION for Injunction *or, in the Alternative, for Postponement of the Effective Date of the Final Rule* (Benbrook, Bradley) (Entered: 09/08/2023) |
| 09/12/2023 | **86**<br>(p.995) | NOTICE of *Supplemental Authority* filed by Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Firearms Regulatory Accountability Coalition Inc, Merrick Garland, United States Department of Justice (Attachments: # 1 (p.21) Exhibit(s) 1 - FRAC Opinion) (Lowenstein, Jody) (Entered: 09/12/2023) |
| 09/15/2023 | 87 | ELECTRONIC ORDER granting 83 (p.860) Motion (Ordered by Judge Reed C. O'Connor on 9/15/2023) (chmb) (Entered: 09/15/2023) |
| 09/25/2023 | **88**<br>(p.1022) | JUDGMENT/MANDATE of USCA No. 23-10319 as to 43 (p.616) Notice of Appeal, filed by Christopher Lewis, William T Mock, Firearms Policy Coalition Inc, Maxim Defense Industries, LLC. IT IS ORDERED and ADJUDGED that the judgment of the District Court is REVERSED and REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.IT IS FURTHER ORDERED that each party bear its own costs on appeal. Issued as Mandate: 9/25/2023. (Attachments: # 1 (p.21) USCA5 Cover Letter) (tle) (Entered: 09/25/2023) |
| 09/25/2023 | **89**<br>(p.1025) | Opinion of USCA No. 23-10319 in accordance with USCA judgment re 43 (p.616) Notice of Appeal, filed by Christopher Lewis, William T Mock, Firearms Policy Coalition Inc, Maxim Defense Industries, LLC. For the foregoing reasons, we REVERSE the order denying a preliminary injunction and REMAND with instruction to consider that motion expeditiously. To ensure relative stability, we MAINTAIN the preliminary injunction pending appeal that the motions panel issued on May 23, 2023, as clarified by this merits panel on May 26, 2023.63 This courts injunction will expire 60 days from the date of this decision, or once the district court rules on a preliminary injunction, whichever occurs first. We direct the district court to rule within 60 days.We place no limitation on the matters that the conscientious district court may address on remand, and we give no indication of what decisions it should reach, regarding a preliminary injunction or any other matter. (tle) (Entered: 09/25/2023) |
| 10/02/2023 | 90 | ELECTRONIC ORDER LIFTING STAY (Ordered by Judge Reed C. O'Connor on 10/2/2023) (chmb) (Entered: 10/02/2023) |
| 10/02/2023 | 91 | ELECTRONIC ORDER LIFTING STAY (Ordered by Judge Reed C. O'Connor on 10/2/2023) (chmb) (Entered: 10/02/2023) |
| 10/02/2023 | **92**<br>(p.1083) | OPINION & ORDER ON PLAINTIFFS' 33 (p.281) MOTION FOR PRELIMINARY INJUNCTION: Having considered the parties' briefing and applicable law, the Court GRANTS Plaintiffs' motion for preliminary injunction against the Government Defendants. (Ordered by Judge Reed C. O'Connor on 10/2/2023) (chmb) . Modified type on 10/4/2023 (mmw). (Entered: 10/02/2023) |
| 10/03/2023 | **93**<br>(p.1121) | ORDER: On October 2, 2023, the Court issued its Opinion & Order (ECF No. 92 (p.1083) ) on the Motion for Preliminary Injunction (ECF No. 33 (p.281) ) in this case. In light of that decision, the parties are hereby ORDERED to meet and confer and file a joint status report with the Court no later than October 31, 2023. (Ordered by Judge Reed C. O'Connor on 10/3/2023) (tjc) (Entered: 10/04/2023) |

| 10/31/2023 | 94 (p.1122) | NOTICE of Attorney Appearance by Michael Drezner on behalf of Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice. (Filer confirms contact info in ECF is current.) (Drezner, Michael) (Entered: 10/31/2023) |
|---|---|---|
| 10/31/2023 | 95 (p.1124) | Joint STATUS REPORT filed by Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice. (Drezner, Michael) (Entered: 10/31/2023) |
| 11/03/2023 | 96 (p.1127) | ORDER REGARDING JOINT BRIEFING SCHEDULE: Before the Court is the parties' Joint Status Report (ECF No. 95 (p.1124) ), filed October 31, 2023. The parties have conferred and jointly propose a briefing schedule on dispositive motions in this case. Accordingly, the Court ORDERS the parties to comply with the following briefing schedule: November 14, 2023, Plaintiffs will file their motion for summary judgment; December 18, 2023, Defendants will file their consolidated opposition and cross-motion for summary judgment; January 17, 2024, Plaintiffs will file their consolidated opposition and reply; February 7, 2024, Defendants will file their reply. (Ordered by Judge Reed C. O'Connor on 11/3/2023) (tjc) (Entered: 11/06/2023) |
| 11/14/2023 | 97 (p.1128) | NOTICE of Attorney Appearance by Nathan Curtis Flanigin on behalf of Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock. (Filer confirms contact info in ECF is current.) (Flanigin, Nathan) (Entered: 11/14/2023) |
| 11/14/2023 | 98 (p.1131) | MOTION for Summary Judgment filed by Firearms Policy Coalition Inc, Firearms Regulatory Accountability Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock (Benbrook, Bradley) (Entered: 11/14/2023) |
| 11/14/2023 | 99 (p.1136) | Brief/Memorandum in Support filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock re 98 (p.1131) MOTION for Summary Judgment (Benbrook, Bradley) (Entered: 11/14/2023) |
| 11/14/2023 | 100 (p.1189) | Brief/Memorandum in Support filed by Firearms Policy Coalition Inc, Christopher Lewis, Maxim Defense Industries, LLC, William T Mock re 98 (p.1131) MOTION for Summary Judgment (Attachments: # 1 (p.21) Proposed Order) (Benbrook, Bradley) (Entered: 11/14/2023) |
| 11/21/2023 | 101 (p.1244) | Unopposed MOTION for Leave to File Amici Curiae Brief in Support of Plaintiffs' Motion for Summary Judgment filed by Firearms Regulatory Accountability Coalition Inc, NST Global LLC, Palmetto State Armory LLC (Attachments: # 1 (p.21) Amicus Brief, # 2 (p.92) Proposed Order) (Obermeier, Stephen) (Entered: 11/21/2023) |
| 11/22/2023 | 102 | ELECTRONIC ORDER granting 101 (p.1244) Motion for Leave to File. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Reed C. O'Connor on 11/22/2023) (chmb) (Entered: 11/22/2023) |
| 11/22/2023 | 103 (p.1281) | Brief in Support filed by Firearms Regulatory Accountability Coalition Inc, NST Global LLC, Palmetto State Armory LLC re: 98 (p.1131) MOTION for Summary Judgment (bdb) (Entered: 11/22/2023) |
| 11/29/2023 | 104 (p.1313) | NOTICE OF INTERLOCUTORY APPEAL as to 92 (p.1083) Order, to the Fifth Circuit by Bureau of Alcohol Tobacco Firearms and Explosives, Steven Dettelbach, Merrick Garland, United States Department of Justice. T.O. form to appellant |

| | | electronically at <u>Transcript Order Form</u> or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions <u>here</u>. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Lowenstein, Jody) (Entered: 11/29/2023) |
|---|---|---|
| 12/01/2023 | <u>105</u> (p.1315) | USCA Case Number 23-11199 in United States Court of Appeals 5th Circuit for <u>104</u> (p.1313) Notice of Appeal, filed by Merrick Garland, Bureau of Alcohol Tobacco Firearms and Explosives, United States Department of Justice, Steven Dettelbach. (tle) (Entered: 12/01/2023) |

TAB 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| WILLIAM T. MOCK, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 4:23-cv-95-O |
| MERRICK B. GARLAND, *et al.*, | |
| *Defendants*. | |

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that all defendants hereby appeal to the United States Court of Appeals for the Fifth Circuit from this Court's opinion and order dated October 2, 2023, ECF No. 92, granting plaintiffs' motion for a preliminary injunction, ECF No. 33.

Dated: November 29, 2023   Respectfully submitted,

                  BRIAN M. BOYNTON
                  Principal Deputy Assistant Attorney General

                  BRIGHAM J. BOWEN
                  Assistant Branch Director

                  */s/ Jody D. Lowenstein*
                  JODY D. LOWENSTEIN (MT Bar No. 55816869)
                  MICHAEL DREZNER (VA Bar No. 83836)
                  TAYLOR PITZ (CA Bar No. 332080)
                  FAITH E. LOWRY (TX Bar No. 24099560)
                  Trial Attorneys
                  U.S. Department of Justice
                  Civil Division, Federal Programs Branch
                  1100 L Street NW
                  Washington, DC 20005
                  Phone: (202) 598-9280
                  Email: jody.d.lowenstein@usdoj.gov

                  *Attorneys for Defendants*

23-11199.1313

## CERTIFICATE OF SERVICE

On November 29, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice

TAB 6

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **WILLIAM T. MOCK, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00095-O** |
| | § | |
| **MERRICK GARLAND, et el.,** | § | |
| | § | |
| **Defendants.** | § | |

## OPINION & ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Before the Court are Firearms Policy Coalition, Inc., William T. Mock, Christopher Lewis, and Maxim Defense Industries, LLC's ("Plaintiffs") Motion for Preliminary Injunction (ECF Nos. 36, 75), filed February 21, 2023 and August 18, 2023; the Attorney General of the United States, the United States Department of Justice, the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, and the Bureau of Alcohol, Tobacco, Firearms and Explosives' (the "Government Defendants") Response in Opposition to Plaintiffs' Motion (ECF Nos. 37, 84), filed March 10, 2023 and September 1, 2023; and Plaintiffs' Replies (ECF Nos. 38, 85), filed March 17, 2023 and September 8, 2023. Having considered the parties' briefing and applicable law, the Court **GRANTS** Plaintiffs' motion for preliminary injunction against the Government Defendants.

## I.    BACKGROUND

### A.  Statutory and Regulatory Background

In the first major federal attempt to regulate firearms, Congress enacted the National Firearms Act of 1934 ("NFA"), 26. U.S.C. §§ 5801–5872, which focused particularly on dangerous and concealable weapons used in organized crime. *See Lomont v. O'Neill*, 285 F.3d 9, 11 (D.C. Cir. 2002) (internal citations omitted). To that end, the Act identifies eight specific

categories of "firearms" that are subject to certain registration and use requirements and associated taxes. 26 U.S.C. §§ 5801–02, 5811–12, 5821–22, 5841, 5845(a). Relevant to this dispute is the category of a short-barreled rifle ("SBR"), *i.e.*, "a rifle having a barrel or barrels of less than 16 inches in length" or "a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length." *Id.* § 5845(a)(3), (4). The Act defines a "rifle" as:

> [A] weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.

*Id.* § 5845(c). Given its focus on particular weapon categories, the NFA does not define every type of firearm, *e.g.*, handguns, and specifically exempts "a pistol or a revolver having a rifled bore" from its statutory purview. *Id.* § 5845(e).

Thirty years later, Congress enacted the Gun Control Act of 1968 ("GCA"), 18 U.S.C. §§ 921–931, which expanded federal firearms regulation in an effort to address the "widespread traffic in firearms and . . . their general availability to those whose possession thereof was contrary to the public interest." *Huddleston v. United States*, 415 U.S. 814, 825–26 (1974) (statutory references omitted). The GCA amended the NFA in some respects, defined additional terms, and reinforced the NFA in others. *See e.g.*, 18 U.S.C. §§ 921–22. Among other terms, the GCA defined "handgun" as "(A) a firearm which has a short stock and is designed to be held and fired by the use of a single hand; and (B) any combination of parts from which a firearm described in subparagraph (A) can be assembled." *Id.* § 921(a)(30). The GCA's definition of "rifle" is identical to that of the NFA. *Id.* § 921(a)(7).

23-11199.1084

Authority to administer and enforce the Acts is vested in the Attorney General, 26 U.S.C.
§§ 7801(a)(2)(A), 7805(a); 18 U.S.C. § 926(a), who delegated that responsibility to the Bureau of
Alcohol, Tobacco, Firearms, and Explosives ("ATF"). 28 C.F.R. § 0.130. The ATF has
subsequently promulgated rules and regulations in keeping with that delegation of authority,
including by classifying particular weapons and devices as subject to or exempt from federal
regulation. 27 C.F.R. parts 478, 479; *e.g.*, U.S. ATF, Open Letter on the Redesign of "Stabilizing
Braces" (Jan. 6, 2015) (indicating that using a stabilizing brace "as a shoulder stock" transforms a
pistol or handgun into "a NFA firearm"); U.S. ATF, Reversal of ATF Open Letter on the Redesign
of "Stabilizing Braces" (Mar. 21, 2017) (clarifying that purely "incidental, sporadic, or situational
'use'" of a stabilizing brace would not transform a pistol into an NFA-covered firearm).

Since 2012, the ATF has seen a proliferation of "stabilizing brace" devices, which were
originally designed "to assist people with disabilities or limited strength or mobility" to safely and
single-handedly fire heavy pistols.[1] With time, the devices began to include characteristics
resembling shoulder stocks and the ATF soon learned that manufacturers were widely marketing
these "braces" to consumers as a means of creating functional SBRs that avoid NFA requirements.[2]

In response to this trend, the ATF published a notice of proposed rulemaking ("NPRM")
in June 2021, which proposed amendments to 27 C.F.R. §§ 478.11 and 479.11 and identified
criteria by which the ATF would determine whether a weapon was a "rifle" for purposes of the
NFA and GCA. 86 Fed. Red. 30,826. After receiving more than 230,000 public comments on the
NPRM, the ATF published the Final Rule on January 31, 2023. Factoring Criteria for Firearms
with Attached "Stabilizing Braces," 88 Fed. Reg. 6,478 (Jan. 31, 2023). Consequentially, the Final
Rule modified the ATF's earlier regulations addressing how the agency would determine whether

---

[1] Pls.' Br. 6, ECF No. 36; Defs.' Opp. 4–6, ECF No. 37.
[2] Defs.' Opp 7–8, ECF No. 37.

a weapon is a "rifle" for purposes of the NFA and GCA. *Id.* at 6,480. Specifically, the Final Rule

indicates that ATF interprets the phrase "designed or redesigned, made or remade, and intended to

be fired from the shoulder" to include:

> [A] weapon that is equipped with an accessory, component, or other rearward
> attachment (e.g., a "stabilizing brace") that provides surface area that allows the
> weapon to be fired from the shoulder, provided other factors . . . indicate that the
> weapon is designed, made, and intended to be fired from the shoulder.

*Id.* (interpreting the identical definition of "rifle," which is defined similarly in both the

NFA and GCA, 26 U.S.C. § 5845(c); 18 U.S.C. § 921(a)(7)). The other factors relevant to

ATF's determination are:

> (1) Whether the weapon has a weight or length consistent with the weight or length
> of similarly designed rifles;
>
> (2) Whether the weapon has a length of pull, measured from the center of the trigger
> to the center of the shoulder stock or other rearward accessory, component or
> attachment (including an adjustable or telescoping attachment with the ability
> to lock into various positions along a buffer tube, receiver extension, or other
> attachment method), that is consistent with similarly designed rifles;
>
> (3) Whether the weapon is equipped with sights or a scope with eye relief that
> require the weapon to be fired from the shoulder in order to be used as designed;
>
> (4) Whether the surface area that allows the weapon to be fired from the shoulder
> is created by a buffer tube, receiver extension, or any other accessory,
> component, or other rearward attachment that is necessary for the cycle of
> operations;
>
> (5) The manufacturer's direct and indirect marketing and promotional materials
> indicating the intended use of the weapon; and
>
> (6) Information demonstrating the likely use of the weapon in the general
> community.

*Id.* While the NPRM had proposed a table (Worksheet 49999) allotting points for specific criteria,

the Final Rule did not implement the weighted point system. *Id.* at 6,479–80. The Final Rule took

effect immediately for newly made or transferred firearms, while individuals already in possession

of subject firearms were given a 120-day registration period (ending May 31, 2023) to come into

23-11199.1086

compliance with the Final Rule before the ATF began enforcing it. *Id.* at 6,478. For those in previous lawful possession of subject firearms that declined to register them by May 31st, the ATF demanded that before the registration window closed, they must have otherwise: removed the barrels from their firearms and attached 16-inch or longer barrels in their place; permanently altered or disposed of their stabilizing braces so that they could never be reattached to their firearms; divested themselves of their firearms by turning them in to the ATF; or permanently destroyed their firearms. *Id.* at 6,570.

But even despite laying out these alternative directives for firearm owners, the ATF shortly thereafter explained that it is still entirely plausible for none of these measures to suffice for compliance. To illustrate, the Final Rule specifies that a firearm owner can still be criminally charged under the NFA for constructively possessing an unregistered SBR if their pistol could be combined with any number of objects that the ATF believes are demonstrative of a firearm's design for shoulder fire. *Id.* at 6,574-75. The set of subjective criteria the ATF lists for potential constructive possession of an NFA rifle comprises open-ended, broadly articulated standards that are left largely undefined or underdeterminate. *Id.* The ATF has a decades-long history of pressing regulatory enforcement actions based on its own constructive possession theories in other NFA contexts, where the mere ease of creation of a subject firearm has been sufficient to support criminal liability for firearm owners under the NFA. *See, e.g.*, *United States v. One TRW, Model M14, 7.62 Caliber Rifle*, 441 F.3d 416, 421-24 (6th Cir. 2006).

The ATF barred compliance registration any time after May 31st—whereupon anyone still in possession of a braced firearm that did not submit to registration was then deemed, overnight, to have become a felon in possession of an unregistered NFA rifle. Final Rule at 6,481, 6,498. So too, it has since no longer been the case that any of the alternative compliance measures

23-11199.1087

enumerated by ATF (*i.e.*, barrel replacement, brace disposal or modification, firearm divestiture or destruction, etc.) will suffice for avoiding criminal prosecution under the NFA through the Final Rule's reinterpretaton of it. *Id.* Following the closing of its registration window, the ATF reported that its registration-compliance rate is a mere 8%, according to the higher end of its estimates.[3]

Liability under the federal firearm laws and regulations adopted pursuant thereto carries serious criminal penalties. For example, a violation of the GCA subjects a person to fines and a five-year maximum prison term. 18 U.S.C. § 924(a)(1). A violation of the NFA subjects a person to fines and a statutory maximum sentence of ten years imprisonment. 26 U.S.C. § 5871. On top of that, NFA liability exposes one to seizure and forfeiture of their firearms, *id.* § 5872, an assessment of tax liabilities, 27 C.F.R. § 479.191, hefty fines extending into the hundreds of thousands of dollars, 18 U.S.C. § 3571(b)-(c), and a total ban on the ownership of any and all firearms for life. 18 U.S.C. § 922(g)(1).

### B.  The Parties

The Firearms Policy Coalition, Inc. ("FPC") and a group of its dissatisfied members brought forth a challenge to the Final Rule against the Government Defendants: Attorney General Merrick Garland, in his official capacity; the United States Department of Justice; Director of ATF Steven Dettelbach, in his official capacity; and the ATF.[4] FPC is a nonprofit gun-rights organization whose membership encompasses individual gun owners, licensed firearms manufacturers and retailers, gun ranges, firearms trainers and educators, and many others.[5] Plaintiffs William T. Mock and Christopher Lewis are Texas residents who each own at least one

---

[3] *Mock v. Garland*, 75 F.4th 563, 576 (5th Cir. 2023) (citing Stephen Gutowski, *ATF Says a Quarter Million Guns Registered Under Pistol-Brace Ban*, THE RELOAD (Jun. 2, 2023), https://thereload.com/atf-says-a-quarter-million-guns-registered-under-pistol-brace-rule/.).
[4] Am. Comp., ECF No. 13.
[5] *Id.* at 5–6.

pistol with a stabilizing brace attached to it and plan to purchase more braced firearms at the present time but for the Final Rule's added regulatory obstacles.[6] Plaintiff Maxim Defense Industries, LLC ("Maxim Defense") is a firearms and firearms accessories manufacturer and retailer that specializes in stabilizing braces and braced pistols.[7] The majority of Maxim Defense's revenues are attributable to sales of products now subject to the added strictures of the Final Rule.[8] Plaintiffs Mock and Lewis are individual members of FPC, while Plaintiff Maxim Defense is a commercial member of FPC.[9]

### C.  Procedural History

Plaintiffs filed this lawsuit on the day the Final Rule was announced.[10] Three weeks later, on February 21, 2023, Plaintiffs moved the Court for a preliminary injunction against the Government Defendants' enforcement of the Final Rule. *See* 5 U.S.C. § 705.[11] Plaintiffs challenge the validity of the Final Rule on several grounds: (1) that it infringes on individual FPC members' Second Amendment Rights; (2) that it violates the First Amendment by chilling speech; (3) that it runs afoul of the Fifth Amendment's due process guarantee; (4) that it violates structural power-vesting provisions of the Constitution; (5) that it violates the Administrative Procedure Act ("APA") as it was issued in excess of ATF's statutory authority; and (6) that it violates the APA's procedural requirements because it was not a logical outgrowth of the Proposed Rule.[12] On March 30, 2023, the Court denied Plaintiffs' motion for preliminary injunction on grounds that Plaintiffs had failed to demonstrate a substantial likelihood of success on the merits of any of their claims.

---

[6] *Id.* at 3–4.
[7] *Id.* at 4–5.
[8] *See id.*
[9] *Id.*
[10] Compl., ECF No. 1. Plaintiffs filed their Amended Complaint on February 7, 2023. Am. Compl., ECF No. 13.
[11] Mot. for Prelim. Inj., ECF No. 33.
[12] *See generally* Pls.' Br., ECF No. 36.

23-11199.1089

*See Mock v. Garland*, No. 4:23-CV-00095-O, 2023 WL 2711630, at *8 (N.D. Tex. Mar. 30, 2023), *rev'd and remanded*, 75 F.4th 563 (5th Cir. 2023).

On August 1, 2023, the United States Court of Appeals for the Fifth Circuit reversed the Court's order denying a preliminary injunction and decided in favor of Plaintiffs' logical outgrowth APA claim, holding that (i) "it is relatively straightforward that the Final Rule was not a logical outgrowth of the Proposed Rule, and the monumental error was prejudicial," and that (ii) "[t]he Final Rule therefore must be set aside as unlawful." *Mock v. Garland*, 75 F.4th 563, 583-586 (5th Cir. 2023) (citing 5 U.S.C. § 553(b)-(c) (providing that a final rule adopted by an agency must be a logical outgrowth of its concomitant proposed rule); *id.* § 706(2)(D) (directing reviewing courts to "hold unlawful and set aside agency [rules]" found to be "without observance of procedure required by law")). The Fifth Circuit remanded the case back to the Court with instructions to assess the remaining preliminary injunction factors and rule on Plaintiffs' motion— in light of the circuit panel's decision—and within 60 days thereof. *See id.* at 586-88. The Fifth Circuit placed "no limitation on the matters that [the Court] may address on remand" and "no indication of what decisions it should reach." *Id.* at 588.

Following the parties' completion of supplemental briefing,[13] and additional briefing from Palmetto State Armory, LLC ("PSA"), the Firearms Regulatory Accountability Coalition, Inc. ("FRAC"), and NST Global, LLC (d/b/a SB Tactical) ("SB Tactical") as *amici curiae*, Plaintiffs' motion is now ripe for the Court's review on remand.[14]

## II.    LEGAL STANDARD

The decision to extend interlocutory relief rests with the sound discretion of the Court. *See*

---

[13] *See* Order, ECF No. 65.
[14] *See generally* Pls.' Supp. Br., ECF No. 75; Defs.' Supp. Opp., ECF No. 84; Pls.' Supp. Reply, ECF No. 85; Br. of *Amici Curiae*, ECF No. 73.

23-11199.1090

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (laying out the criteria for preliminary injunctive relief); *see also Hecht v. Bowles*, 321 U.S. 321, 329 (1944) ("An appeal to the equity jurisdiction conferred on federal district courts is an appeal to the sound discretion which guides the determinations of courts of equity." (cleaned up)). To establish entitlement to preliminary injunctive relief, the movants must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in their favor; and (4) that the issuance of injunctive relief will not disserve the public interest. *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). The final two elements merge when the opposing party is the government. *Nken v. Holder*, 556 U.S. 418, 435 (2009). As movant, the parties seeking relief bear the burden of proving all four elements. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008); *Miss. Power & Light Co.*, 760 F.2d at 621.

Upon determination that a party is entitled to an injunction, a court must make a separate determination regarding the appropriate scope of the prospective relief, which is "dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Injunctive relief "should be crafted to provide 'complete relief to the plaintiffs.'" *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting *Yamasaki*, 442 U.S. at 702). "[It] should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (cleaned up). And it must be tailored to "redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018) (citation omitted). Under appropriate circumstances, however, the demand for "complete" relief may necessitate that injunctive redress benefit many claimants of a common legal right in order to prevent "more confusion" and "multiplicity of suits" in the courts. *Mock*, 75 F.4th at 587 (quoting *Feds for Med.*

*Freedom v. Biden*, 63 F.4th 366, 388 (5th Cir. 2023)); 2 JOSEPH STORY, COMMENTARIES ON

EQUITY JURISPRUDENCE §§ 853-54, at 147-49 (Boston, 2d ed. 1839) (citations omitted).

## III.    ANALYSIS[15]

### A.  Substantial Likelihood of Success on the Merits

Plaintiffs were first required to demonstrate that they are substantially likely to succeed on

the merits of one of their claims. *Daniels Health Servs.*, 710 F.3d at 582. "[A]n appellate court's

decision of a legal issue . . . establishes the law of the case and must be followed in all subsequent

proceedings in the same case." *Carnival Leisure Indus., Ltd. v. Aubin*, 53 F.3d 716, 718-19

(5th Cir. 1995). Following the Fifth Circuit's decision, the controlling law of this case posits that

Plaintiffs have demonstrated, *a fortiori*, an *actual* success on the merits of their APA challenge to

the Final Rule. *See Mock*, 75 F.4th at 578, 586 (holding that "the Final Rule fails the logical-

outgrowth test and violates the APA" and "therefore must be set aside as unlawful"). The Court

wholesale adopts that conclusion as its own as well.

### B.  Substantial Threat of Irreparable Harm Absent Injunctive Relief

Plaintiffs are further obliged to show a substantial threat of irreparable harm. This exists

where "there is no adequate remedy at law." *Louisiana v. Biden*, 55 F.4th 1017, 1033-34 (5th Cir.

---

[15] Unless otherwise noted, the facts presented herein are taken from ATF's January 2023 Published Final
Rule and Final Regulatory Analysis, Plaintiffs' February 21 Brief in Support of their Motion for Preliminary
Injunction (ECF No. 36), Plaintiffs' August 18 Supplemental Brief in Support of their Motion for
Preliminary Injunction (ECF No. 75), the Government Defendants' March 10 Response in Opposition to
Plaintiffs' Motion (ECF No. 37), the Government Defendants' September 1 Supplemental Brief in
Opposition to Plaintiffs' Motion (ECF No. 84), Plaintiffs' March 17 Reply in Support of their Motion (ECF
No. 38), Plaintiffs' September 8 Supplemental Reply Brief in Support of their Motion (ECF No. 85), and
legislative facts in the August 18 Brief of *Amici Curiae* in Support of Plaintiffs' Motion (ECF No. 73)—as
well as all attached or referenced exhibits, sources, and declarations therein.

*See generally* Factoring Criteria for Firearms with Attached "Stabilizing Braces," 88 Fed. Reg. 6,478 (Jan.
31, 2023); ATF, RIN 1140-AA55, FACTORING CRITERIA FOR FIREARMS WITH ATTACHED "STABILIZING
BRACES": FINAL REGULATORY IMPACT ANALYSIS AND FINAL REGULATORY FLEXIBILITY ANALYSIS
(2023); Pls.' Br., ECF No. 36; Pls.' Supp. Br., ECF No. 75; Defs.' Opp., ECF No. 37; Defs.' Supp. Opp.,
ECF No. 84; Pls.' Reply, ECF No. 38; Pls.' Supp. Reply, ECF No. 85; Br. of *Amici Curiae*, ECF No. 73.

23-11199.1092

2022) (cleaned up). Harm is irreparable "if it cannot be undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (cleaned up). Upon a showing that an "alleged" fundamental right is "either threatened or in fact being impaired," a movant is substantially threatened with irreparable injury that "cannot be undone by monetary relief." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295–97 (5th Cir. 2012); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also, e.g.*, *U.S. Navy SEALs 1-26 v. Biden*, 578 F. Supp. 3d 822, 838-840 (N.D. Tex. 2022) (O'Connor, J.) (holding that "because [Plaintiffs'] injuries are inextricably intertwined with Plaintiffs' loss of constitutional rights, . . . Plaintiffs have suffered irreparable harm") (citations omitted).

A showing of economic injury is ordinarily insufficient to establish irreparable harm when damages are recoverable at the conclusion of litigation. *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). But an "exception exists where the potential economic loss is so great as to threaten the existence of the movant's business." *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989). In such a scenario, "substantial financial injury" will be "sufficient to show irreparable injury." *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021); *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016). So too, where financial costs are unrecoverable on account of the government-defendant's sovereign immunity from monetary damages, irreparable harm is generally satisfied. *See Wages & White Lion Invs.*, 16 F.4th at 1142. Under these circumstances, "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d at 433 (cleaned up).

Irreparable harm must also be concrete, non-speculative, and more than merely *de minimis*.

*Daniels Health Servs.*, 710 F.3d at 585; *Dennis Melancon, Inc.*, 703 F.3d at 279. And finally, a movant's "delay in seeking relief is a consideration when analyzing the threat of imminent and irreparable harm." *Anyadike v. Vernon Coll.*, No. 7:15-cv-00157, 2015 WL 12964684, at *3 (N.D. Tex. Nov. 20, 2015). The Court assesses each set of FPC Plaintiffs in turn.

      1.   Individual FPC Members

The Court finds that Mock, Lewis, and other individual FPC members are threatened with irreparable injuries in the absence of an injunction. The threats to individual FPC members are twofold: (i) sustaining permanent and nonrecoverable costs from their compliance with an unlawfully issued regulation; and (ii) suffering impairment of their fundamental right to keep and bear lawful arms in self-defense. The Court finds that such threats of irreparable harm posed by enforcement of the Final Rule are credible, imminent, and intertwined with one another.

As the record currently stands, Mock and Lewis each lawfully possess at least one pistol with a stabilizing brace attached to it, which was acquired through lawful means prior to the ATF's promulgation of the Final Rule. Mock and Lewis have maintained and used, and continue to maintain and use, each of their braced pistols for the primary purpose of general self-defense and self-defense in the home. Plaintiffs each maintain a stabilizing brace attached to their pistols as an effective tool for improving their capacity to defend their lives, their families' lives, and their homes through safer and more efficient means. The attached braces foster greater stability, control, and precision in the firing of Plaintiffs' pistols so as to enable them to more easily and comfortably accomplish the narrow end goals of self-defense—that is, to deter or neutralize life-threatening perpetrators, preserve innocent life, and as best as possible prevent or mitigate the degree of bodily injury suffered by others. In so enabling a more proficient and exacting performance of self-defense, the attributes provided by the stabilizing braces to Plaintiffs' lawfully owned defense

23-11199.1094

weapons significantly lessen the cause for lethal and irreversible misfire, friendly fire, or other collateral damage, as well as the probability of being outmatched by or falling victim to dangerous assailants. It is purely for these reasons that Mock and Lewis also plan to purchase additional braced pistols at this immediate point in time—to aid their self- and home-defense capabilities.

The ATF's own regulatory analysis concludes that the Final Rule has effectively reclassified 99% of all pistols with stabilizing braces to NFA rifles. Through seminal Final Rule adjudications, the ATF has already reclassified a whole host of specific weapons platforms and commercially available braced firearms to NFA rifles. Upon review of this record in conjunction with Plaintiffs' declarations, there is no doubt that the Final Rule will subject both FPC members to criminal liability for currently possessing each of their braced pistols. The moment the Fifth Circuit's injunction dissolves, Mock and Lewis will become felons because their braced pistols have become unregistered SBRs under the Final Rule's reinterpretaton of the NFA.

Furthermore, Mock's and Lewis' possession of these specific braced pistol models and platforms—which are newly classified NFA rifles—has been revealed in precise detail to the Government Defendants in this litigation. Thus, the two FPC members are and likely will be prosecutable at any point in time absent the Court's preliminary injunction against the Government Defendants' enforcement of the Final Rule. The evidence also suggests that without such relief, the FPC members are barred from carrying out their concrete plans to acquire additional braced pistols for home- and self-defense at this present point in time—but for complying with the Final Rule's added NFA requirements or facing criminal charges under the NFA through the Final Rule's enforcement.

Neither FPC member wishes to comply with the Final Rule with respect to the braced pistols in their current possession and in their immediate acquisition plans. As of the expiration

23-11199.1095

date of the Fifth Circuit's injunction, it is certain that both continue to possess and intend to remain in possession of their braced pistols. At the same time, however, Mock and Lewis are strongly dissuaded from continuing *at all* to possess their home- and self-defense pistols, with or without the stabilizing braces, should enforcement of the Final Rule be allowed to resume. They share an inclination toward dispossessing themselves entirely of these home- and self-defense weapons out of fear of criminal prosecution for constructively possessing an unregistered SBR. The ATF's constructive possession criteria is simply too broad and unclear for the FPC members to understand or otherwise decipher through other efforts, with a comfortable degree of certainty, that they are comprehensively abiding by the Final Rule.

The Court finds that this record presents a "credible threat of a potential felony indictment" against each of the FPC members if they proceed with their intent to maintain current possession of their braced (or unbraced) pistols or acquire additional braced pistols for lawful uses in home- and self-defense. *VanDerStok v. Garland*, 633 F. Supp. 3d 847, 855, 857 (N.D. Tex. 2022) (O'Connor, J.).

### i.    *Nonrecoverable Compliance Costs*

At the outset, Mock and Lewis have no trouble establishing a substantial threat of irreparable harm in the form of nonrecoverable compliance costs.

"When determining whether injury is irreparable, it is not so much the magnitude but the irreparability that counts." *Texas v. EPA*, 829 F.3d at 433–34 (cleaned up). As such, financial harm from regulatory compliance becomes irreparable where a plaintiff cannot recoup money damages from a federal agency on account of its sovereign immunity. *See Wages & White Lion*, 16 F.4th at 1142 (holding that regulatory compliance costs are unrecoverable and therefore amount to irreparable harm "because federal agencies generally enjoy sovereign immunity for any monetary

damages"); *R.J. Reynolds Vapor Co.*, 65 F.4th at 194 (finding that the plaintiff's financial harm was irreparable for in an APA challenge where "[t]here [was] no suggestion . . . that [the plaintiff] could overcome the FDA's sovereign immunity to recover costs"). And the general rule of thumb is that the "nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm." *Rest. L. Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023).

Here, because the ATF-designated registration window has long since passed, Mock and Lewis may only narrowly avoid enforcement of the Final Rule through permanent and costly modification, divestiture, or destruction of their otherwise lawfully owned braced pistols—and only if the Government Defendants do not prosecute them under the Final Rule first.

The FPC members might attempt to immediately remove their braced pistols from the Final Rule's coverage by disassembling the barrels and installing long-rifle barrels in their place. But according to the ATF's own analysis, this will cost an estimated $1,134 for an individual to complete. Should Mock and Lewis instead attempt to permanently dispose of the stabilizing braces or otherwise eliminate their attachability to pistols, they would each sustain a loss of $270 or more based on the ATF's estimated average cost of a stabilizing brace. However, the Government Defendants are now fully informed of Mock's and Lewis' possession of specific braced pistol models and platforms that have been reclassified as NFA rifles under the Final Rule. Mock and Lewis themselves are also disinclined from continuing to possess any unbraced pistols due to the substantial uncertainty behind what the ATF considers to be constructive possession under the Final Rule. It is much more likely therefore that when faced with this "credible threat of criminal prosecution" on the horizon, *VanDerStok*, 633 F. Supp. 3d at 855, the two FPC members will resort to surrendering their braced pistols over to ATF or destroying their braced pistols entirely. The

23-11199.1097

ATF approximates that an individual will suffer $2,500 or more in losses from the destruction or divestiture of their braced firearms.

Whatever course the FPC members choose, none of these concrete compliance costs are recoupable for them. The Government Defendants retain their sovereign immunity against monetary damages in APA actions. *See* 5 U.S.C. § 702. On top of that, the Fifth Circuit has made clear that the FPC members would be expending these concrete compliance costs on a Final Rule that "violates the APA" and "must be set aside as unlawful." *Mock*, 75 F.4th at 578, 586.

Based on this showing alone, the Court finds that Mock and Lewis satisfy the threat-of-irreparable-harm prong. The FPC members are certain to bear the "nonrecoverable costs of complying with a putatively invalid regulation." *Rest. L. Ctr.*, 66 F.4th at 597.

### ii.    Impairment of Fundamental Right

The situation becomes far more dire for the FPC members in the absence of the Court's intervening protection when one considers the burden the Final Rule threatens to impose on their fundamental right to keep and bear arms in self-defense. *See* U.S. CONST. AMEND. II.[16]

Where a plaintiff's alleged fundamental right is "'either threatened or in fact being impaired,'" that plaintiff is substantially threatened with irreparable injury *per se*. *Deerfield Med. Ctr.*, 661 F.2d at 338 (quoting *Elrod*, 427 U.S. at 373). Such is the case because "once an infringement has occurred it cannot be undone by monetary relief." *Id.* Thus, plaintiffs need only properly make out an "alleged violation" or "deprivation" of a constitutional right to demonstrate that irreparable harm is suffered or threatened. *Opulent Life Church*, 697 F.3d at 295–97 ("'When

---

[16] To be sure, the Court has passed upon the question of whether Plaintiffs are likely to succeed on the merits of their Second Amendment claims, as it is no longer necessary to reach an answer in light of the Fifth Circuit's determination that the Final Rule is already unlawful under the APA. But for purposes of assessing Plaintiffs' overall entitlement to preliminary injunctive relief based on the remaining factors on remand, the Court finds it probative to discern the extent or degree to which the Final Rule threatens irreparable constitutional injury to Plaintiffs' right to armed self-defense.

an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.'" (quoting 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995))); *VanDerStok v. Garland*, 633 F. Supp. 3d 847, 856 (N.D. Tex. 2022) (O'Connor, J.) ("Even alleged deprivations of constitutional or procedural rights may justify injunctive relief.") (cleaned up). Plaintiffs satisfy this irreparable harm showing where their "injuries are inextricably intertwined with [their] loss of constitutional rights." *U.S. Navy SEALs 1-26*, 578 F. Supp. 3d at 838-840 (O'Connor, J.). The alleged impairment need not be severe or prolonged, for the "loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *VanDerStok*, 633 F. Supp. 3d at 856 (quoting *Elrod*, 427 U.S. at 373) (cleaned up).

In this litigation, Plaintiffs allege that the Government Defendants' promulgation of the Final Rule violates their constitutional rights provided under the Second Amendment. Separate from the merits of this claim, the Court finds that the Government Defendants' implementation and enforcement of the Final Rule substantially threatens to inflict irreparable constitutional harm upon the FPC members. Absent injunctive relief, the Final Rule will impair and threaten to deprive them of their fundamental right to keep and bear commonly used arms as a means of achieving the inherently lawful ends of self-defense. *See* U.S. CONST. AMEND. II (providing that the "right of the people to keep and bear Arms, shall not be infringed.").

***Weapon in Common Use.*** The Second Amendment prohibits government from infringing upon an individual's right to keep and bear arms for self-defense. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2125 (2022) (citing *McDonald v. City of Chicago*, 561 U.S. 742 (2010); *District of Columbia v. Heller*, 554 U.S. 570 (2008)). This protects an individual's "possession and use of weapons that are 'in common use at the [present] time." *Id.* at 2128 (quoting

23-11199.1099

*Heller*, 554 U.S. at 627). Conversely, protection is not extended to possession or use of "dangerous and unusual weapons." *Heller*, 554 U.S. at 627.

A weapon is in "common use" rather than "dangerous and unusual" if it is "commonly possessed by law-abiding citizens for lawful purposes *today*." *Caetano v. Massachusetts*, 577 U.S. 411, 420 (2016) (Alito, J., concurring in the judgment) (emphasis in original); *Heller*, 554 U.S. at 625 (holding that the Second Amendment guarantees the right possess and carry weapons "typically possessed by law-abiding citizens for lawful purposes"). The relevant inquiry under this standard is the current total number of a particular weapon that is in lawful possession, ownership, and circulation throughout the United States. *See, e.g.*, *Caetano*, 577 U.S. at 420 (Alito, J., concurring in the judgment); *Friedman v. City of Highland Park, Ill.*, 577 U.S. 1039 (2015) (Thomas, J., dissenting from the denial of certiorari); *see also Hollis v. Lynch*, 827 F.3d 436, 449-450 (5th Cir. 2016) (collecting cases). As a *per se* matter, semiautomatic pistols are commonly used weapons for lawful self-defense purposes across the United States today. *United States v. Rahimi*, 61 F.4th 443, 454 (5th Cir. 2023), *cert. granted*, 143 S. Ct. 2688 (2023); *Caetano*, 577 U.S. at 416-17 (Alito, J., concurring in the judgment).

The Court finds that the braced pistols subject to enforcement of the Final Rule are in common use today. For starters, it is "undisputed" that pistols such as those in the FPC members' possession are, on their own and without the stabilizing braces, already deemed to be among the weapons "most commonly used today for [lawful] self-defense." *Ibid*; *Mock*, 75 F.4th at 578, 588 (Willett, J., concurring) ("ATF agrees that the weapons here are lawfully bearable *pistols* absent a rearward attachment . . . These pistols are therefore lawful." (emphasis in original)). A stabilizing brace does not somehow alter that status and effectively strip these pistols of their Second Amendment protection. The Government Defendants' assertion to the contrary—that pistols *do*

become dangerous and unusual as soon as stabilizing braces are attached to them—does not survive its own administrative record. The ATF's regulatory analysis concludes that there are between 3 and 7 million, with a fifty percentile estimate of 5 million, braced pistols under the ownership of law-abiding individuals for lawful purposes throughout the United States. In the Final Rule publication as well, ATF did not dispute noteworthy public comments pointing out that "millions of 'braces' are in use" and that braced pistols are "commonly used by millions of law-abiding Americans for various reasons." On the other hand, ATF even conceded that since 2012, "the variety of available 'stabilizing braces' or similar 'brace' devices and pistols equipped with 'braces' has grown significantly." Supreme Court guidance and sister circuit precedent postulate that this record is dispositive of the matter. *See Caetano*, 577 U.S. at 420 (Alito, J., concurring in the judgment) (finding stun guns are in common use based on "hundreds of thousands of Tasers and stun guns [that] have been sold to private citizens, who it appears may lawfully possess them in 45 states"); *Friedman*, 577 U.S. 1039 (Thomas, J., dissenting from the denial of certiorari) (finding semiautomatic rifles are in common use based on "[r]oughly five million Americans [that] own AR-style semiautomatic rifles"); *Heller v. District of Columbia*, 670 F.3d 1244, 1261 (D.C. Cir. 2011) (finding semiautomatic rifles are in common use based on "[a]pproximately 1.6 million AR-15s [that] have been manufactured since 1986") [hereinafter *Heller II*].

Accordingly, the Court finds that braced pistols regulated under the Final Rule are commonly used by law-abiding citizens for lawful purposes. The FPC members' possession and use of brace pistols is therefore within the ambit of Second Amendment protection. *See Bruen*, 142 S. Ct. at 2128; *Heller*, 554 U.S. at 627.

**Presumptively Protected Conduct.** *"*When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" from the regulation at

issue. *Bruen*, 142 S. Ct. at 2129-2130. Under this inquiry, the Court assesses "whether the plain text of the Second Amendment protects [Mock's] and [Lewis'] proposed course of conduct" with respect to their braced pistols. *Id.* at 2134. An assessment of the Second Amendment's plain text must rely on history to guide and inform its meaning. *Id.* at 2127, 2130; *Heller*, 554 U.S. at 595.

Notwithstanding adverse enforcement action under the Final Rule or the threat thereof, each FPC member's proposed course of conduct is to maintain the possession and use of a pistol with an attached stabilizing brace for purposes of effective self-defense both inside and outside the home.

The Supreme Court has already established that the text and history of the Second Amendment's operative clause, "the right of the people to keep and bear Arms," U.S. CONST. AMEND. II, protect an individual's right to possess, carry, and operate a commonly used handgun in the home and in public for the lawful purpose of immediate self-defense. *See Heller*, 554 U.S. at 579-592, 635-36 (holding that the text and history cover home possession of commonly used handguns for ready use in armed self-defense); *Bruen*, 142 S. Ct. at 2134-35 (holding that the text and history cover public carry of commonly used handguns for ready use in armed self-defense). As such, the Second Amendment "presumptively guarantees" Plaintiffs Mock and Lewis the right to keep and bear braced (and unbraced) pistol arms at home and in public for general self-defense use. *Id.* at 2135.[17]

The Second Amendment also presumptively protects the FPC members' proposed course of conduct insofar as it involves "making common, safety-improving modifications to otherwise lawfully bearable arms" for the purpose of enhancing the performance of self-defense. *Mock*, 75

---

[17] The pistols subject to the Final Rule's restrictions on stabilizing brace firearms, including those in the possession of Mock and Lewis, are a subset type of handgun. *See, e.g.*, *Heller II*, 670 F.3d at 1255; *Renna v. Bonta*, No. 20-CV-2190-DMS-DEB, 2023 WL 2756981, at *1, *7 (S.D. Cal. Mar. 31, 2023).

F.4th at 578, 588 (Willett, J., concurring). The conduct of acquiring, attaching, and maintaining rearward attachments, such as a stabilizing brace, serves to "make the pistol more stable and [thus] the user more accurate." *Id.* And as explained earlier, "[a]ccuracy, in turn, promotes safety" in the real-life exercise of armed self-defense. *Id.* The successful performance of armed self-defense entails not only deterring or neutralizing life-threatening perpetrators, but also preserving innocent life and preventing bodily injury to others as much as possible. Users directly advance these fundamental ends of self-defense when they modify "lawfully bearable *pistols*" with a "rearward attachment—whether as a brace or a stock." *Id.* The increased control and precision to pistol fire materially lowers the probability of potentially lethal misfire and collateral damage, as well as being outmatched by or falling victim to dangerous assailants. Such safety-improving modifications are *especially* critical for "permit[ting] disabled and weaker persons to fire pistols more easily," and "more safely and comfortably," to accomplish a more proficient and exacting self-defense. *Id.* at 566, 571.

The history interwoven with the "right of the people to keep and bear Arms," U.S. Const. Amend. II, indicates that the Second Amendment's text has long incorporated the right of personal gunsmithing, *i.e.*, the right of private individuals to modify or acquire modifications to lawfully bearable firearms so as to increase their accuracy and safety for a more effective exercise of self-defense. For example, in order "[t]o sustain themselves against a large and well-supplied British military throughout the [Revolutionary] war, the Americans relied on gunsmiths, individuals with knowhow from working on their *own arms*, and Americans who were willing to *learn the art of arms manufacturing*." Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms*, 54 St. Mary's L.J. 35, 51 (Apr. 11, 2022) (emphasis added). Analogous to the role that stabilizing braces play for contemporary pistol owners, Founding Era gunsmithing involved modifying lawfully

bearable pistols with extended grips and rearward stocks to facilitate greater stability, control, and accuracy in single-handed self-defense fire.[18] The Court is persuaded upon this record that the Second Amendment's text and history "presumptively guarantees" Plaintiffs Mock and Lewis the right to modify lawfully bearable pistol arms with rearward stabilizing braces for the purpose of improving the performance attributes necessary to successful armed self-defense. *Bruen*, 142 S. Ct. at 2135.

Consequently, the Court finds that the proposed "conduct" of the FPC members—*i.e.*, possessing and using a stabilizing braced pistol for enhanced self-defense capabilities in the home and in public—is "presumptively protect[ed]" by the Second Amendment from the interference of disagreeing restrictions in the Final Rule. *Id.* at 2129-2130.

***Threat of Impairment.*** Ordinarily, the constitutional presumption established by the FPC members would shift the burden to the Government Defendants to "then justify its [Final Rule] by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130. The Plaintiffs' presumption of protection against the Final Rule is so strong that "*[o]nly* if [the Final Rule's] firearm regulation is consistent with this Nation's historical tradition may [the] court conclude that [Plaintiffs'] conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)) (emphasis added).

However, under this particular posture, the Court need not turn to whether the Government

---

[18] *See, e.g.*, *A Rare French & Indian War – American Revolutionary War Period British Military Pattern 1738 Heavy Dragoon Flintlock Pistol, Jordan, 1746*, Tortuga Trading, https://tortugatrading.com/products/copy-of-a-rare-french-indian-war-american-revolutionarywar-period-british-military-pattern-1738-heavy-dragoon-flintlock-pistol-tower-1738 (last visited Oct. 2, 2023);

*Lot 3249: Silver Inlaid Kuchenreiter Flintlock Pistol with Stock Flintlock Pistol with Stock*, Rock Island Auction Company, https://www.rockislandauction.com/detail/59/3249/silverinlaid-kuchenreiter-flintlock-pistol-with-stock (last visited Oct. 2, 2023).

Defendants surmount this onerous threshold. To reiterate, the Court makes no holding on this motion as to whether the Final Rule violates Plaintiffs' Second Amendment rights on the merits of their claims. Rather, the Court merely determines, based on the record before it, whether Mock and Lewis face a substantial threat of irreparable Second Amendment injury from the Government Defendants' enforcement of the Final Rule.

Under this inquiry, the Court merely answers whether the FPC members' right to keep and bear arms in self-defense is "'threatened or in fact being impaired'" by the Final Rule. *Deerfield Med. Ctr.*, 661 F.2d at 338 (quoting *Elrod*, 427 U.S. at 373). A mere showing that in the absence of the Court's intervening equity, enforcement of the Final Rule would impair or threaten infringement upon the presumptive Second Amendment-protected conduct of the FPC members is dispositive of the inquiry. *Opulent Life Church*, 697 F.3d at 295–97 ("'When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.'" (quoting 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2948.1 (2d ed. 1995))) *VanDerStok*, 633 F. Supp. 3d at 856  (O'Connor, J.).

This showing is satisfied where Plaintiffs' threatened injuries are "inextricably intertwined with [their] loss of constitutional rights." *U.S. Navy SEALs 1-26*, 578 F. Supp. 3d at 838-840 (O'Connor, J.). Here, the nonrecoverable compliance costs that the Final Rule threatens against Mock and Lewis are "inextricably intertwined with their loss of [Second Amendment] rights" from the Final Rule. *Id.* Indeed, the record presents a "credible threat of a potential felony indictment" against each of the FPC members if they proceed with their intent to maintain current possession of their braced (or unbraced) pistols or acquire additional braced pistols for lawful uses in home- and self-defense. *VanDerStok*, 633 F. Supp. 3d at 855, 857 (O'Connor, J.). And as just discussed, the Second Amendment "presumptively protects" this intended course of conduct from any

23

impinging regulation under the Final Rule. *See Bruen*, 142 S. Ct. at 2129-2130. If the FPC members proceed in taking all compliance steps necessary to entirely avoid prosecution, they will be left deprived of their presumptively protected Second Amendment conduct (*i.e.*, divestiture or destruction of otherwise lawfully bearable pistols). If the FPC members proceed in their presumptively protected Second Amendment conduct, they will be left to face criminal prosecution for noncompliance, which will likely deprive them of their presumptively protected Second Amendment conduct anyway (*i.e.*, forfeiture of braced pistols, imprisonment, permanent ban on firearm ownership). But even if the FPC members proceed by taking *some* compliance steps to avoid prosecution, such as permanent modification or disposal of just their stabilizing braces, they will still be deprived of at least *some* presumptively protected Second Amendment conduct (*i.e.,* private gunsmithing). Under this scenario, they may still yet face prosecution anyway (*i.e.,* constructive possession charge), which would threaten deprivation of their remaining presumptive protections (*i.e.*, forfeiture of unbraced pistols, imprisonment, permanent ban on firearm ownership).

Moreover, the Final Rule *itself* flatly "violates the APA" and "must be set aside as unlawful." *Mock*, 75 F.4th at 578, 586. And it is "no answer to say that [Plaintiffs] may avoid the harm by complying with an unlawful agency rule." *VanDerStok*, 633 F.Supp.3d at 861 (O'Connor, J.). Absent injunctive relief, enforcement of the Final Rule evidently threatens the loss of Mock's and Lewis' constitutional rights to possess, maintain, and operate commonly used braced pistols for lawful self-defense purposes. This "unquestionably constitutes irreparable injury." *VanDerStok*, 633 F. Supp. 3d at 856 (quoting *Elrod*, 427 U.S. at 373) (cleaned up). The Court also deems it noteworthy that Plaintiffs' presumptive right to possess, use, and modify lawfully bearable braced pistol-arms for self-defense—of which enforcement of the Final Rule risks serious

infringement—has occupied a fundamental status of the highest order in our legal tradition that both pre-exists and transcends the Constitution itself. *See* 1 SIR WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 144 (Oxford 1768) (citing "the right of having and using arms for self-preservation and defence" as a fundamental right of persons); 3 BLACKSTONE, COMMENTARIES 4 ("Self-defence therefore, as it is justly called the primary law of nature, so it is not, neither can it be in fact, taken away by the law of society."); *see also Bruen*, 142 S. Ct. at 2127 ("'[I]t has always been widely understood that the Second Amendment . . . codified a *pre-existing* right.'" (quoting *Heller*, 554 U.S. at 592 (emphasis in original))). To a credible threat of harm of such magnitude, to a right so inherent to mankind that upon which its self-preservation has always depended, the Court's equity cannot be a bystander throughout the interim of this suit.

Once infringement of a fundamental right has occurred, "it cannot be undone." *Deerfield Med. Ctr.*, 661 F.2d at 338. Should enforcement of the Final Rule be allowed to resume, Mock and Lewis will be substantially threatened with irreversible constitutional infringement.

### iii.    *Similarly Situated FPC Members*

Well beyond Mock and Lewis, the Court finds ample support in the attestations of FPC that many of its hundreds of thousands of members, by mere possession or intended acquisition of a single braced pistol, find themselves under similarly situated circumstances—that is, left to suffer the irrecoverable and constitutionally burdensome costs of compliance with the unlawful Final Rule, "or else" face criminal prosecution and imprisonment for exercising the fundamental right to keep and bear commonly used arms in self-defense. *VanDerStok v. Garland*, 633 F.Supp.3d 847, 857 (N.D. Tex. 2022) (O'Connor, J.).

FPC's membership spans into the hundreds of thousands and across the entire United

States. These hundreds of thousands of Americans became members for the sole expectation of accessing and relying upon the fruits of FPC's non-profit assistance with acquiring, constructing, collecting, transporting, carrying, maintaining, and using firearms for self-defense and other lawful purposes. FPC is purely dedicated to providing these members with a wide array of legal, legislative, and regulatory advocacy services, as well as research, education, and outreach programs that assist with accomplishing these ends. The present suit is one such example. The bulk correspondence received by FPC concerning the Final Rule indicates that a broad swath of its hundreds of thousands of firearm-owning members are similarly situated to FPC's participating member-Plaintiffs, Mock and Lewis. They are relying upon FPC to collectively vindicate their ability to maintain current possession of their braced pistols or acquire prospective braced pistols for lawful home- and self-defense applications.

Despite the Government Defendants' contention of mere speculation, the ATF's own administrative record lends additional credence to the sheer volume of affected FPC member-firearm owners. In its publication of the Final Rule, the ATF did not dispute comments from the concerned public noting that "millions of 'braces' are in use" and that braced pistols are "commonly used by millions of law-abiding Americans for various reasons." Of course, the ATF was in no position to do so. According to the agency's most frugal estimates, there are at least 3 million firearms and 1.4 million owners of braced pistols that the Final Rule has now swept under the onerous strictures of the NFA. The higher end of ATF's estimates indicate that the Final Rule has consolidated 7 million braced pistols within the NFA's enforcement thrust. The ATF further anticipates that the Government Defendants' enforcement of the Final Rule will cause the destruction or forfeiture of over 750,000 firearms. And with the reported registration-compliance rate as low as it is (8%), it does not require any attenuated inferences for the Court to posit that

23-11199.1108

this figure will likely be much greater in the absence of its equitable intervention.

Far from mere speculation, the Court has little trouble finding that there are likely hundreds of thousands of FPC member-firearm owners similarly situated to Mock and Lewis, based on an evaluation of the "whole record" of the ATF's promulgation of the Final Rule. *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413 n. 30, 419-20 (1971) (establishing that courts must review the "whole record" of an agency's action, including the "full administrative record," when making findings and determinations in an APA challenge); *see Rest. L. Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 597–600 (5th Cir. 2023) (reversing a court's denial of preliminary injunction for failure to incorporate the administrative record into its assessment of plaintiffs' allegations, which together combined to establish irreparable harm). Moreover, FPC cannot be expected to provide the names and declarations of every single one of its similarly situated members to establish collective entitlement to the equally shared benefits of injunctive relief. *See United Food & Commercial Workers Union v Brown Group. Inc.*, 517 U.S. 544, 546 (1996) (holding that "individual participation is not normally necessary when an association seeks prospective or injunctive relief for its members") (cleaned up); *Warth v. Seldin*, 422 U.S. 490, 515 (1975) (holding that where an association seeks an injunction to redress a common injury of equal degree among members, "it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured").

The Court concludes that Mock, Lewis, and thousands of other FPC member-firearm owners have been relegated to either suffer the irrecoverable and constitutionally burdensome costs of compliance with the unlawful Final Rule, "or else" run the risk of criminal prosecution and imprisonment for engaging in the fundamental right to keep and bear arms for lawful self-defense purposes. *VanDerStok v. Garland*, 633 F.Supp.3d 847, 857 (N.D. Tex. 2022) (O'Connor,

23-11199.1109

J.). As the Court has held several times over with respect to compliance injuries that are "inextricably intertwined with [the] loss of constitutional rights," this is an unacceptable ultimatum for regulated parties to proceed under without the intervening protection of injunctive relief. *U.S. Navy SEALs 1-26*, 578 F. Supp. 3d at 838-840 (O'Connor, J.); *VanDerStok*, 633 F.Supp.3d at 855-58, 861 (O'Connor, J.) ("[I]t is no answer to say that [Plaintiffs] may avoid the harm by complying with an unlawful agency rule.") (cleaned up). Accordingly, Mock, Lewis, and other individual FPC members have cleared the threat-of-irreparable-harm hurdle by a safe margin.

2. <u>Commercial FPC Members</u>

The Court finds that Maxim Defense and other commercial FPC members face substantial threats of irreparable harm absent injunctive relief. Namely, they are threatened with: (i) permanent and nonrecoverable costs of compliance with an unlawfully issued regulation; and (ii) substantial financial injury leading to permanent closure of businesses. The Court finds that these irreparable injuries flow from the threat of enforcement of the Final Rule and are ongoing, vulnerable to intense exacerbation, and interdependent with a vast commercial supply-chain network.

As the record currently stands, the Final Rule has taken and continues to take a toll on the ability of Maxim Defense to conduct its regular business and even survive as a business entity altogether. This commercial member of FPC is the second largest stabilizing brace manufacturer in the United States. In the Year 2022, Roughly 59% of the FPC member-manufacturer's annual non-firearm sales consisted of stabilizing braces covered under the Final Rule, amounting to over $5 million in sales. Braced pistols consisted of approximately 3/4 of Maxim Defense's annual firearm sales for that same year, totaling more than $5 million in sales.

Maxim Defense's business has attained significant reputability within the veteran and Tier 1/special operations community. This is especially the case with community members who are

23-11199.1110

disabled and rely on the FPC member-manufacturer's stabilizing braces and braced pistols to engage in safe and effective self-defense. Prior to ATF's promulgation of the Final Rule, Maxim Defense vended its stabilizing brace products across all 50 States, complying with all applicable state-law restrictions. Maxim Defense sold its stabilizing braces through a variety of commercial channels: direct-to-consumer from its website; to original equipment manufacturers ("OEMs") of firearms that deploy Maxim Defense braces on their own firearms; and to numerous firearms and firearms equipment dealers, distributors, and retailers across the country. Maxim Defense sold its braced pistols: direct-to-consumer from its website via transactions processed by federal firearms licensees ("FFLs"); and to numerous firearms and firearms equipment dealers, distributors, and other FFL retailers that carried Maxim Defense's product lines for sale in their stores.

Until promulgation of the Final Rule, Maxim Defense sold its stabilizing braces and braced pistols directly to consumers from its website. Because the braces themselves are not regulated as firearms, they can be shipped directly to consumers across every U.S. State. To the contrary, the FPC member-manufacturer's sale of braced pistols requires transfer and shipment to FFL middle-men to execute the transaction. FFLs conduct mandatory background checks before delivering firearms to their end consumers. Maxim Defense's customers now face criminal prosecution, imprisonment, firearm forfeiture, and a lifetime ban on firearm ownership under the NFA for possessing and using stabilizing braces manufactured by Maxim Defense to enhance their self-defense capabilities. Consumers are especially vulnerable to being criminally charged for constructive possession of an unregistered SBR under the Final Rule. By reclassifying 99% of all braced pistols in circulation (including those manufactured and sold by Maxim Defense) as SBRs subject to the NFA's heavy regulatory barriers, the Final Rule has effectively eliminated any remaining consumer market for braced pistols as home- and self-defense weapons.

23-11199.1111

Maxim Defense sold a considerable proportion of its stabilizing braces to OEMs of firearms. OEM purchasers of Maxim Defense braces installed them onto their firearms to be sold to end markets. FPC member-manufacturer Daniel Defense had equipped its own DDM4 pistol model with Maxim Defense's PDW stabilizing brace. Daniel Defense sold the product to end users as a DDM4 PDW model braced pistol. OEMs had sold firearms equipped with Maxim Defense braces throughout the United States. Since the Final Rule's promulgation, however, every major OEM customer of Maxim Defense discontinued their routine stabilizing brace orders. About a dozen of these OEMs attest that they will only resume their Maxim Defense orders if the Government Defendants are enjoined from any enforcement of the Final Rule against industry players and end consumers.

Maxim Defense vended its stabilizing brace and braced pistol products to seven different distributors. Those distributors subsequently sold their Maxim Defense inventory to firearms retailers and dealers. Those retailers and dealers subsequently sold their Maxim Defense inventory to end consumers across the country. Additionally, Maxim Defense directly sold its brace products to larger retailers. Those larger retailers, such as Modern Warriors located in St. George, Utah, subsequently sold their Maxim Defense inventory through their brick-and-mortar stores and e-commerce websites to end consumers throughout the United States. These streams of commerce have summarily evaporated on account of the ATF's promulgation of the Final Rule.

### i.  Nonrecoverable Compliance Costs

Maxim Defense easily demonstrates a substantial threat of irreparable harm in the form of nonrecoverable compliance costs.

"[H]arm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey*, 647 F.3d at 600. As such, financial harm from regulatory compliance becomes

30

irreparable where a plaintiff cannot recoup money damages from a federal agency on account of its sovereign immunity. *See Wages & White Lion*, 16 F.4th at 1142 (holding that regulatory compliance costs are unrecoverable and therefore amount to irreparable harm "because federal agencies generally enjoy sovereign immunity for any monetary damages"); *R.J. Reynolds Vapor Co.*, 65 F.4th at 194 (finding that the plaintiff's financial harm was irreparable for in an APA challenge where "[t]here [was] no suggestion . . . that [the plaintiff] could overcome the FDA's sovereign immunity to recover costs"). A general rule of thumb is that the "nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm." *Rest. L. Ctr.*, 66 F.4th at 597. Under this theory of irreparable harm, a plaintiff's "lack of a 'guarantee of eventual recovery' is [the] reason that its alleged harm is irreparable." *Wages & White Lion*, 16 F.4th at 1142 (quoting *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021)).

The Final Rule has destroyed each of Maxim Defense's primary channels of commerce. Maxim Defense had several outstanding orders that were canceled or held due to the impact of the Final Rule, and the company ceased all sales of its braced pistols on January 31, 2023. Maxim Defense has been unable to fulfill orders for hundreds of thousands of dollars' worth of product that it can no longer transfer to buyers because of the Final Rule. The FPC member-manufacturer had manufacturing orders for thousands of braces that have been canceled and more than $1 million in materials that it purchased in anticipation of its sales in 2023 that it can no longer use for their intended purpose. Absent the Court's intervening relief, Maxim Defense will simply not be able to sustain its business for any longer.

In the past six months, the Final Rule has devastated the financial stability of Maxim Defense. The FPC member-manufacturer's gross revenues for 2022 totaled approximately $15

23-11199.1113

million. Through August 15, 2023, the company's year-to-date revenue is an anemic $4 million. The company has lost roughly $3 million in year-over-year sales for braced pistol sales, and projects that the total loss for this product category will be over $5 million by the end of 2023.The company has lost approximately $3.4 million in stabilizing brace sales and expects this loss to exceed $4.5 million for the entire year. In a desperate attempt to mitigate these losses, one of the Maxim Defense founders injected $2 million of his capital into the company just to keep it from going under.

Maxim Defense orients its entire business model around the manufacture and sale of stabilizing braces and braced pistols. The ATF's promulgation of the Final Rule effectively destroyed any viable end market for these self-defense products, which previously made up the overwhelming majority of the company's revenue. The Final Rule shut down these end markets for self-defense firearms and equipment by subjecting braced pistols and stabilizing brace attachments to the onerous strictures of the NFA. The impact does not run down a simple linear supply chain, either. The Final Rule has decimated each of the separate channels connected within the complex web of commerce that Maxim Defense relied upon to sell stabilizing braces and braced pistols. The market for the products subject to the Final Rule has evaporated.

None of these exorbitant compliance costs are recoupable for FPC's commercial members, either, since the Government Defendants retain sovereign immunity from money damages in APA actions. *See* 5 U.S.C. § 702. And of course, this FPC member-manufacturer will have shelled out these tens of millions of dollars just to comply with a Final Rule that "violates the APA" and "must be set aside as unlawful." *Mock*, 75 F.4th at 578, 586. Again, it is "no answer" for the Government Defendants to say that Maxim Defense can protect its business by "simply complying" with the unlawful Final Rule during the interim of this suit. *VanDerStok v. Garland*, 625 F. Supp. 3d 570,

583-84 (N.D. Tex. 2022) (O'Connor, J.). The Court is not convinced that there will even be a Maxim Defense left to comply with the Final Rule if that were the case.

In light of the above, Maxim Defense has little difficulty satisfying the irreparable harm threshold. The FPC member-manufacturer is certain to continue enduring the "nonrecoverable costs of complying with a putatively invalid regulation." *Rest. L. Ctr.*, 66 F.4th at 597.

ii.   *Substantial Financial Injury*

Far more calamitous than even nonrecoverable compliance costs, Maxim Defense is threatened with existential financial ruin in the immediate instant without the Court's equity.

A plaintiff's "substantial financial injury" will be "sufficient to show irreparable injury" where financial costs "threaten[] the very existence of [the plaintiff's] business." *Wages & White Lion*, 16 F.4th at 1142 (quoting *Texas v. EPA*, 829 F.3d at 433, 434) (internal quotation marks omitted); *see also Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989) (recognizing that irreparable exists where potential financial loss "is so great as to threaten the existence of the [plaintiff's] business").

For much the same reason as set forth in the Court's assessment of nonrecoverable compliance costs, Maxim Defense has cleared the irreparable-harm hurdle for substantial financial injury by a wide margin. The FPC member-manufacturer is hanging on by a thread in its ongoing efforts to dodge imminent bankruptcy on the horizon. Any suggestion on the part of the Government Defendants of Maxim Defense's speculation as to the survival of its business is, once again, undermined by a quick glance at the administrative record. *See Citizens to Preserve Overton Park*, 401 U.S. at 413 n. 30, 419-20; *Rest. L. Ctr.*, 66 F.4th at 597–600. The ATF's own regulatory impact analysis expressly forecasts that its promulgation of the Final Rule will bring about the

demise of at least four out of the five major manufacturers of firearm braces in the United States—one of which includes Maxim Defense.

The exorbitant financial losses that the Final Rule continues to inflict upon the FPC member-manufacturer are "so great as to threaten the existence of the [Maxim Defense's] business." *Atwood Turnkey Drilling*, 875 F.2d at 1179. This is well above "sufficient to show irreparable injury." *Wages & White Lion*, 16 F.4th at 1142 (cleaned up).

All in all, the Court concludes that Plaintiffs have each carried their burden of persuasion on a substantial threat of irreparable harm if not for a grant of interlocutory injunction.

### C. The Balance of Equities and Public Interest Favor Issuing Injunctive Relief

The final two elements necessary to support a grant of injunctive relief—the balance of equities (the difference in harm to the respective parties) and the public interest—merge together when the government is a party. *Nken*, 556 U.S. at 435. In this assessment, the Court weighs "the competing claims of injury" and considers "the effect on each party of the granting or withholding of the requested relief," paying close attention to the public consequences of granting an injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citations omitted).

The Court has concluded in this Opinion that Plaintiffs have each established credible threats of irreparable injury absent relief from enforcement of the Final Rule. But at the other end of the scale, there can be "*no* public interest in the perpetuation of unlawful agency action." *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (emphasis added). As it relates to enforcement of the Final Rule against Plaintiffs, "neither [the Government Defendants] nor the public has *any* interest in enforcing a regulation that violates federal law." *All. for Hippocratic Med. v. FDA*, No. 23-10362, 2023 WL 5266026, at *28 (5th Cir. Aug. 16, 2023) (emphasis added). In this respect, the government-public-interest equities evaporate upon an adverse decision

touching upon the merits. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 43-44 (D.D.C. 2013) (Jackson, J.) (expounding that public interest arguments are "derivative of . . . merits arguments and depend in large part on the vitality of the latter").

The controlling law of this case is that the Government Defendants' promulgation of the Final Rule "fails the logical-outgrowth test and violates the APA" and "therefore must be set aside as unlawful" under the APA. *Mock*, 75 F.4th at 578, 583-586 (citing 5 U.S.C. § 553(b)-(c); *id.* § 706(2)(D)). It follows, then, that there is *no* injury that the Government Defendants or public at-large could possibly suffer from if enforcement of the Final Rule were enjoined. *See Open Communities All. v. Carson*, 286 F.Supp.3d 148, 179 (D.D.C. 2017) ("The [government] defendants . . . cannot suffer harm from an injunction that merely ends an unlawful practice." (cleaned up)).

Having no equities to balance against those of Plaintiffs, the Court concludes that the public interest is entirely undisturbed by a grant of the prayed injunction. To the contrary, it is "of highest public importance that federal agencies follow the law," *R.J. Reynolds Vapor Co. v. Food & Drug Admin.*, 65 F.4th 182, 195 (5th Cir. 2023), which counsels in favor of affording Plaintiffs relief against the Government Defendants' enforcement of the Final Rule here.

\*     \*     \*     \*

Having considered the arguments, evidence, and applicable law, the Court holds that the relevant factors weigh in favor of granting preliminary injunctive relief to Plaintiffs FPC and members Mock, Lewis, and Maxim Defense. The Court proceeds by appropriately tailoring the injunction so as to provide Plaintiffs with the complete relief they are entitled to.

## D.  Scope of Injunctive Relief

The appropriate scope of injunctive relief is "dictated by the extent of the violation

established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). An injunction "should be crafted to provide 'complete relief to the plaintiffs.'" *Mock*, 75 F.4th at 587 (quoting *Yamasaki*, 442 U.S. at 702). "[It] should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen*, 512 U.S. at 765 (cleaned up). And it must be tailored to "redress the plaintiff's particular injury." *Gill*, 138 S. Ct. at 1934 (citation omitted). Under appropriate circumstances, however, the demand for "complete" relief may necessitate that injunctive redress benefit many claimants of a common legal right in order to prevent "more confusion" and "multiplicity of suits" in the courts. *Mock*, 75 F.4th at 587 (quoting *Feds for Med. Freedom*, 63 F.4th at 388); 2 JOSEPH STORY, COMMENTARIES ON EQUITY JURISPRUDENCE §§ 853-54, at 147-49 (Boston, 2d ed. 1839) (citations omitted).

Given the foregoing assessment into the respective irreparable harms for each Plaintiff and the balance of equities, the Court determines that the appropriate scope of the injunction is that which parallels the scope of the preliminary injunction issued by the Fifth Circuit in its May 23, 2023 order and clarified in its May 26, 2023 order. Reflecting the scope of relief previously afforded by the Fifth Circuit, the Court enjoins the Government Defendants' enforcement of the Final Rule against individual Plaintiffs William T. Mock and Christopher Lewis and each of their respective family members. Reflecting the scope of relief previously afforded by the Fifth Circuit as well, the Court's injunction extends to enjoin enforcement of the Final Rule against Maxim Defense Industries, LLC and all of its downstream customers whose interests it has represented since day one of this litigation. Reflecting the same scope of relief afforded by the Fifth Circuit to the Firearms Policy Coalition, Inc., the Court's injunction extends to enjoin enforcement of the Final Rule against the Firearms Policy Coalition, Inc. and all of its members whose interests it has represented since day one of this litigation.

23-11199.1118

The Court declines Plaintiffs' invitation to extend the scope of the injunctive relief "nationwide." Injunctive relief reflecting that previously afforded by the Fifth Circuit to Plaintiffs is sufficiently limited to "not provide relief beyond the parties to the case," while also affording sufficient relief to meet each Plaintiff's present needs. *Feds for Med. Freedom*, 63 F.4th at 387 (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2427 (2018) (Thomas, J., concurring)) (internal quotation marks omitted). In affording complete relief to Plaintiffs, the injunction's benefits to non-parties to the suit are "merely incidental." *Id.*

*    *    *    *

## IV.    CONCLUSION

The Court holds that each Plaintiff has demonstrated entitlement to preliminary injunctive relief against the Government Defendants' enforcement of the Final Rule that the United States Court of Appeals for the Fifth Circuit determined to be invalid under the Administrative Procedure Act. For the foregoing reasons, the Court **GRANTS** the Motion for Preliminary Injunction.

Accordingly, the Court **ORDERS** that the Government Defendants—the Attorney General of the United States; the United States Department of Justice; the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; and the Bureau of Alcohol, Tobacco, Firearms and Explosives—and each of their respective officers, agents, servants, and employees—are hereby:

1) **ENJOINED** from implementing and/or enforcing against the Firearms Policy Coalition, Inc. and all of its members the provisions in 27 C.F.R. §§ 478.11 and 479.11 that the United States Court of Appeals for the Fifth Circuit has determined are unlawful;

23-11199.1119

2) **ENJOINED** from implementing and/or enforcing against Maxim Defense Industries, LLC and any downstream customers of Maxim Defense Industries, LLC (including all direct consumer purchasers and all intermediary distributors, dealers, retailers, and OEM purchasers of Maxim Defense products, and any of their respective customers) the provisions in 27 C.F.R. §§ 478.11 and 479.11 that the United States Court of Appeals for the Fifth Circuit has determined are unlawful;

3) **ENJOINED** from implementing and/or enforcing against William T. Mock and any of his family members the provisions in 27 C.F.R. §§ 478.11 and 479.11 that the United States Court of Appeals for the Fifth Circuit has determined are unlawful; and

4) **ENJOINED** from implementing and/or enforcing against Christopher Lewis and any of his family members the provisions in 27 C.F.R. §§ 478.11 and 479.11 that the United States Court of Appeals for the Fifth Circuit has determined are unlawful.

The injunctive relief shall not extend to any individual prohibited from possessing firearms under 18 U.S.C. § 922 (g). The injunctive relief shall take effect immediately and remain in effect pending the conclusion and final disposition of all claims and causes of action before the Court in these review proceedings. 5 U.S.C. § 705.

The Court waives the security requirement of Federal Rule of Civil Procedure 65(c). *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).[19]

**SO ORDERED** this **2nd day** of **October, 2023**.

---

[19] Because neither party raises the security requirement in Rule 65(c), no security is ordered. *See* FED. R. CIV. P. 65(c).

23-11199.1120

TAB 7

APPEAL,ATTN

# U.S. District Court
# Northern District of Texas (Amarillo)
# CIVIL DOCKET FOR CASE #: 2:23-cv-00019-Z

Britto et al v. Bureau of Alcohol, Tobacco, Firearms and Explosives
Assigned to: Judge Matthew J. Kacsmaryk
Related Case: 4:23-cv-00578-O
Case in other court: USCA5, 23-11203
Cause: 05:702 Administrative Procedure Act

Date Filed: 01/31/2023
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other Civil Rights
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**Darren A. Britto**                         represented by   **Ed J McConnell**
                                                              Tormey & McConnell Attorneys
                                                              310 SW 6th Avenue
                                                              Amarillo, TX 79101
                                                              806-355-2700
                                                              Fax: 806-355-4771
                                                              Email: ed@tmcattorneys.com
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Bar Status: Admitted/In Good Standing*

                                                              **Daniel Lennington**
                                                              Wisconsin Institute for Law and Liberty
                                                              330 E Kilbourn Ave, Suite 725
                                                              Milwaukee, WI 53202
                                                              414-727-9455
                                                              Fax: 414-727-6385
                                                              Email: dan@will-law.org
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Bar Status: Not Admitted*

                                                              **Jeffrey W Tormey**
                                                              McConnell & Tormey
                                                              PO Box 629
                                                              Amarillo, TX 79105
                                                              806/355-2700
                                                              Fax: 806/355-4771
                                                              Email: jeff@mcconnell-tormey-law.com
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Bar Status: Admitted/In Good Standing*

                                                              **Lucas Vebber**
                                                              Wisconsin Institute for Law & Liberty
                                                              330 E Kilbourn Ave
                                                              Suite 725
                                                              Milwaukee, WI 53202
                                                              414-727-9455
                                                              Email: lucas@will-law.org

*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Richard M Esenberg**
Wisconsin Institute For Law & Liberty
330 E Kilbourn Ave.
Suite 725
Milwaukee, WI 53202
414-727-9455
Fax: 414-727-6385
Email: rick@will-law.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Plaintiff**

**Gabriel A. Tauscher**                   represented by   **Ed J McConnell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Daniel Lennington**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jeffrey W Tormey**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Lucas Vebber**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Richard M Esenberg**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Plaintiff**

**Shawn M. Kroll**                   represented by   **Ed J McConnell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Daniel Lennington**
(See above for address)

*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jeffrey W Tormey**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Lucas Vebber**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Richard M Esenberg**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

V.

**Defendant**

| | | |
|---|---|---|
| **Bureau of Alcohol Tobacco Firearms and Explosives** | represented by | **Michael Drezner**<br>US Department of Justice<br>Civil Division, Federal Programs Branch<br>1100 L St<br>Washington, DC 20005<br>202-514-4505<br>Fax: 202-616-8470<br>Email: michael.l.drezner@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted* |

**Faith Lowry**
DOJ-Civ
Federal Programs Branch
1100 L Street
Washington, DC 20005
202-305-2532
Email: faith.e.lowry@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jody Dale Lowenstein**
US Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-598-9280
Email: jody.d.lowenstein@usdoj.gov
*ATTORNEY TO BE NOTICED*

*Bar Status: Not Admitted*

**Taylor Pitz**
DOJ-Civ
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-305-5200
Email: taylor.n.pitz@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

V.

**Movant**

**CMMG, Inc.**                                    represented by **Boyd Garriott**
*TERMINATED: 04/14/2023*                          2050 M Street NW
                                                  Washington, DC 20036
                                                  202-719-7000
                                                  Email: bgarriott@wiley.law
                                                  *TERMINATED: 02/17/2023*
                                                  *PRO HAC VICE*
                                                  *Bar Status: Not Admitted*

                                                  **Dusty J Stockard**
                                                  Stockard, Johnston & Brown
                                                  PO Box 3280
                                                  Amarillo, TX 79116-3280
                                                  806/372-2202
                                                  Fax: 806/379-7799
                                                  Email: dstockard@sjblawfirm.com
                                                  *TERMINATED: 02/17/2023*
                                                  *Bar Status: Admitted/In Good Standing*

                                                  **Jeremy J Broggi**
                                                  Wiley LLP
                                                  2050 M Street NW
                                                  Washington, DC 20036
                                                  202-719-3747
                                                  Email: jbroggi@jd14.law.harvard.edu
                                                  *TERMINATED: 02/17/2023*
                                                  *PRO HAC VICE*
                                                  *Bar Status: Not Admitted*

                                                  **Michael D Faucette**
                                                  Wiley Rein LLP
                                                  2050 M Street NW
                                                  Washington, DC 20036
                                                  202-719-4587
                                                  Email: mfaucette24@gmail.com
                                                  *TERMINATED: 02/17/2023*
                                                  *PRO HAC VICE*

*Bar Status: Not Admitted*

**Stephen Joseph Obermeier**
Wiley Rein LLP
2050 M Street NW
Washington, DC 20036
202-719-7465
Email: sobermeier@wiley.law
*TERMINATED: 02/17/2023*
*PRO HAC VICE*
*Bar Status: Not Admitted*

**Thomas M Johnson, Jr**
Wiley Rein LLP
2050 M Street NW
Washington, DC 20036
202-719-4550
Email: tmjohnson@wiley.law
*TERMINATED: 02/17/2023*
*PRO HAC VICE*
*Bar Status: Not Admitted*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 01/31/2023 | 1 (p.12) | COMPLAINT against Bureau of Alcohol, Tobacco, Firearms and Explosives filed by Darren A. Britto, Gabriel A. Tauscher, Shawn M. Kroll. (Filing fee $402; Receipt number ATXNDC-13481469) Plaintiff will submit summons(es) for issuance. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.12) Declaration(s), # 2 (p.37) Cover Sheet) (McConnell, Ed) Modified text as to defendant name on 1/31/2023 (awc). (Entered: 01/31/2023) |
| 01/31/2023 | 2 (p.37) | Request for Clerk to issue Summons filed by Darren A. Britto, Shawn M. Kroll, Gabriel A. Tauscher. (McConnell, Ed) (Entered: 01/31/2023) |
| 01/31/2023 | 3 (p.38) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by Darren A. Britto, Shawn M. Kroll, Gabriel A. Tauscher. (Clerk QC note: No affiliate entered in ECF). (McConnell, Ed) (Entered: 01/31/2023) |
| 01/31/2023 | 4 (p.40) | New Case Notes: A filing fee has been paid. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge (No magistrate judge assigned). Clerk to provide copy to plaintiff if not received electronically. (awc) (Entered: 01/31/2023) |
| 01/31/2023 | 5 (p.42) | Summons issued as to Bureau of Alcohol, Tobacco, Firearms and Explosives, U.S. Attorney, and U.S. Attorney General. (awc) (Entered: 01/31/2023) |

| | | |
|---|---|---|
| 01/31/2023 | 6 (p.48) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-13481830) filed by Darren A. Britto, Shawn M. Kroll, Gabriel A. Tauscher (Attachments: # 1 (p.12) Proposed Order, # 2 (p.37) Certificate of Good Standing) (Lennington, Daniel) (Attachment 1 replaced with flattened document on 2/1/2023) (awc). (Entered: 01/31/2023) |
| 01/31/2023 | 7 (p.54) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-13481863) filed by Darren A. Britto, Shawn M. Kroll, Gabriel A. Tauscher (Attachments: # 1 (p.12) Proposed Order, # 2 (p.37) Certificate of Good Standing) (Vebber, Lucas) (Attachment 1 replaced with flattened document on 2/1/2023) (awc). (Entered: 01/31/2023) |
| 01/31/2023 | 8 (p.60) | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-13481892) filed by Darren A. Britto, Shawn M. Kroll, Gabriel A. Tauscher (Attachments: # 1 (p.12) Proposed Order, # 2 (p.37) Certificate of Good Standing) (Esenberg, Richard) (Attachment 1 replaced with flattened document on 2/2/2023) (awc). (Entered: 01/31/2023) |
| 02/01/2023 | 9 (p.66) | ORDER granting 6 (p.48) Application for Admission Pro Hac Vice of Daniel P. Lennington. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Matthew J. Kacsmaryk on 2/1/2023) (awc) (Entered: 02/02/2023) |
| 02/01/2023 | 10 (p.67) | ORDER granting 7 (p.54) Application for Admission Pro Hac Vice of Lucas T. Vebber. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Matthew J. Kacsmaryk on 2/1/2023) (awc) (Entered: 02/02/2023) |
| 02/01/2023 | 11 (p.68) | ORDER granting 8 (p.60) Application for Admission Pro Hac Vice of Richard M. Esenberg. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Matthew J. Kacsmaryk on 2/1/2023) (awc) (Entered: 02/02/2023) |
| 02/02/2023 | 12 (p.69) | SUMMONS Returned Executed as to Bureau of Alcohol Tobacco Firearms and Explosives ; served on 1/31/2023. (McConnell, Ed) (Entered: 02/02/2023) |
| 02/06/2023 | 13 (p.70) | CERTIFICATE OF SERVICE by Darren A. Britto, Shawn M. Kroll, Gabriel A. Tauscher *Declaration of Service on Attorney General of the United States* (Lennington, Daniel) (Entered: 02/06/2023) |
| 02/07/2023 | 14 (p.73) | MOTION for Preliminary Injunction filed by Darren A. Britto, Shawn M. Kroll, Gabriel A. Tauscher (Attachments: # 1 (p.12) Proposed Order) (Lennington, Daniel) Docket text modified on 2/7/2023 (twd). (Entered: 02/07/2023) |
| 02/07/2023 | 15 (p.76) | Brief/Memorandum in Support filed by Darren A. Britto, Shawn M. Kroll, Gabriel A. Tauscher re 14 (p.73) MOTION for Injunction (Attachments: # 1 (p.12) Appendix) (Lennington, Daniel) (Entered: 02/07/2023) |
| 02/17/2023 | 16 (p.114) | MOTION to Intervene filed by CMMG, Inc.. Party CMMG, Inc. added. (Stockard, Dusty) (Entered: 02/17/2023) |
| 02/17/2023 | 17 (p.117) | Brief/Memorandum in Support filed by CMMG, Inc. re 16 (p.114) MOTION to Intervene (Attachments: # 1 (p.12) Proposed Order) (Stockard, Dusty) (Entered: |

| | | 02/17/2023) |
|---|---|---|
| 02/17/2023 | 18 (p.129) | Proposed INTERVENOR COMPLAINT against Bureau of Alcohol Tobacco Firearms and Explosives filed by CMMG, Inc.. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: _Attorney Information - Bar Membership_. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.12) Exhibit(s) A, # 2 (p.37) Exhibit(s) B, # 3 (p.38) Exhibit(s) C, # 4 (p.40) Exhibit(s) D, # 5 (p.42) Exhibit(s) E, # 6 (p.48) Exhibit(s) F, # 7 (p.54) Exhibit(s) G, # 8 (p.60) Exhibit(s) H, # 9 (p.66) Exhibit(s) I, # 10 (p.67) Exhibit(s) J, # 11 (p.68) Exhibit(s) K, # 12 (p.69) Exhibit(s) L, # 13 (p.70) Exhibit(s) M, # 14 (p.73) Exhibit(s) N, # 15 (p.76) Exhibit(s) O, # 16 (p.114) Exhibit(s) P) (Stockard, Dusty) (Entered: 02/17/2023) |
| 02/17/2023 | 19 (p.670) | Proposed MOTION for Injunction filed by CMMG, Inc. (Stockard, Dusty) (Entered: 02/17/2023) |
| 02/17/2023 | 20 (p.672) | Brief/Memorandum in Support filed by CMMG, Inc. re 19 (p.670) Proposed MOTION for Injunction (Attachments: # 1 (p.12) Proposed Order) (Stockard, Dusty) (Entered: 02/17/2023) |
| 02/17/2023 | 21 (p.707) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by CMMG, Inc.. (Clerk QC note: Affiliate entry indicated). (Stockard, Dusty) (Entered: 02/17/2023) |
| 02/17/2023 | 22 (p.709) | NOTICE of Related Cases filed by CMMG, Inc. (Stockard, Dusty) Modified typo on 2/21/2023 (awc). (Entered: 02/17/2023) |
| 02/17/2023 | 23 (p.712) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Stephen J. Obermeier (Filing fee $100; Receipt number CTXNDC-13529322) filed by CMMG, Inc. (Stockard, Dusty) (Entered: 02/17/2023) |
| 02/17/2023 | 24 (p.717) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Jeremy J. Broggi (Filing fee $100; Receipt number ATXNDC-13529342) filed by CMMG, Inc. (Stockard, Dusty) (Entered: 02/17/2023) |
| 02/17/2023 | 25 (p.722) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Thomas M. Johnson, Jr (Filing fee $100; Receipt number ATXNDC-13529343) filed by CMMG, Inc. (Stockard, Dusty) (Entered: 02/17/2023) |
| 02/17/2023 | 26 (p.727) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Michael D. Faucette (Filing fee $100; Receipt number ATXNDC-13529346) filed by CMMG, Inc. (Stockard, Dusty) (Entered: 02/17/2023) |
| 02/17/2023 | 27 (p.732) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Boyd Garriott (Filing fee $100; Receipt number ATXNDC-13529348) filed by CMMG, Inc. (Stockard, Dusty) (Entered: 02/17/2023) |
| 02/23/2023 | 28 (p.737) | AFFIDAVIT of Service for Motion to Intervene and Complaint _of Intervenor_ served on US Attorney's Office on 02/21/2023. (Stockard, Dusty) (Entered: 02/23/2023) |
| 02/24/2023 | 29 (p.740) | NOTICE of Attorney Appearance by Michael Drezner on behalf of Bureau of Alcohol Tobacco Firearms and Explosives. (Filer confirms contact info in ECF is |

| | | |
|---|---|---|
| | | current.) (Drezner, Michael) (Entered: 02/24/2023) |
| 02/24/2023 | 30 (p.742) | Joint MOTION for Leave to File Response and Reply in Excess of Page Limits filed by Bureau of Alcohol Tobacco Firearms and Explosives with Brief/Memorandum in Support. (Attachments: # 1 (p.12) Proposed Order) (Drezner, Michael) (Entered: 02/24/2023) |
| 02/26/2023 | 31 (p.746) | NOTICE of Attorney Appearance by Jody Dale Lowenstein on behalf of Bureau of Alcohol Tobacco Firearms and Explosives. (Filer confirms contact info in ECF is current.) (Lowenstein, Jody) (Entered: 02/26/2023) |
| 02/28/2023 | 32 (p.748) | ORDER granting 30 (p.742) Motion for Leave to File Response and Reply in Excess of Page Limits. Accordingly, the Court ORDERS that Defendant's response to Plaintiffs' motion for preliminary injunction must not exceed 45 pages in length. Any reply filed by Plaintiffs must not exceed 18 pages in length. (Ordered by Judge Matthew J. Kacsmaryk on 2/28/2023) (awc) (Entered: 02/28/2023) |
| 02/28/2023 | 33 (p.749) | RESPONSE filed by Bureau of Alcohol Tobacco Firearms and Explosives re: 14 (p.73) MOTION for Preliminary Injunction (Drezner, Michael) (Entered: 02/28/2023) |
| 02/28/2023 | 34 (p.807) | ORDER granting 27 (p.732) Application for Admission Pro Hac Vice of Boyd Garriott. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Matthew J. Kacsmaryk on 2/28/2023) (awc) (Entered: 03/01/2023) |
| 02/28/2023 | 35 (p.808) | ORDER granting 26 (p.727) Application for Admission Pro Hac Vice of Michael D. Faucette. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Matthew J. Kacsmaryk on 2/28/2023) (awc) (Entered: 03/01/2023) |
| 02/28/2023 | 36 (p.809) | ORDER granting 23 (p.712) Application for Admission Pro Hac Vice of Stephen J. Obermeier. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Matthew J. Kacsmaryk on 2/28/2023) (awc) (Entered: 03/01/2023) |
| 02/28/2023 | 37 (p.810) | ORDER granting 25 (p.722) Application for Admission Pro Hac Vice of Thomas M. Johnson, Jr.. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Matthew J. Kacsmaryk on 2/28/2023) (awc) (Entered: 03/01/2023) |
| 02/28/2023 | 38 (p.811) | ORDER granting 24 (p.717) Application for Admission Pro Hac Vice of Jeremy J. Broggi. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Matthew J. Kacsmaryk on 2/28/2023) (awc) (Entered: 03/01/2023) |
| 03/08/2023 | 39 (p.812) | NOTICE of *Errata* filed by Bureau of Alcohol Tobacco Firearms and Explosives (Attachments: # 1 (p.12) Exhibit 1- Corrected Brief, # 2 (p.37) Exhibit 2- Redline Brief) (Drezner, Michael) (Entered: 03/08/2023) |
| 03/10/2023 | | |

| | 40 (p.932) | MOTION Extension of Page Limits (Joint) filed by Bureau of Alcohol Tobacco Firearms and Explosives with Brief/Memorandum in Support. (Attachments: # 1 (p.12) Proposed Order) (Drezner, Michael) (Entered: 03/10/2023) |
| --- | --- | --- |
| 03/10/2023 | 41 (p.937) | RESPONSE filed by Bureau of Alcohol Tobacco Firearms and Explosives re: 16 (p.114) MOTION to Intervene (Attachments: # 1 (p.12) Exhibit 1, # 2 (p.37) Exhibit 2) (Drezner, Michael) (Entered: 03/10/2023) |
| 03/10/2023 | 42 (p.1054) | RESPONSE filed by Bureau of Alcohol Tobacco Firearms and Explosives re: 19 (p.670) Proposed MOTION for Injunction (Attachments: # 1 (p.12) Exhibit A) (Drezner, Michael) (Entered: 03/10/2023) |
| 03/14/2023 | 43 (p.1099) | REPLY filed by Darren A. Britto, Shawn M. Kroll, Gabriel A. Tauscher re: 14 (p.73) MOTION for Preliminary Injunction (Vebber, Lucas) (Entered: 03/14/2023) |
| 03/20/2023 | 44 (p.1122) | REPLY filed by CMMG, Inc. re: 19 (p.670) Proposed MOTION for Injunction (Attachments: # 1 (p.12) Declaration(s) Supplemental Declaration of Chris Reinkemeyer) (Obermeier, Stephen) (Entered: 03/20/2023) |
| 03/20/2023 | 45 (p.1150) | REPLY filed by CMMG, Inc. re: 16 (p.114) MOTION to Intervene (Obermeier, Stephen) (Entered: 03/20/2023) |
| 03/28/2023 | 46 (p.1161) | Consent Motion for Extension of Time to File Answer filed by Bureau of Alcohol Tobacco Firearms and Explosives with Brief/Memorandum in Support. (Attachments: # 1 (p.12) Proposed Order) (Lowenstein, Jody) (Entered: 03/28/2023) |
| 03/28/2023 | 47 (p.1165) | ORDER denying as moot 40 (p.932) Motion for Extension of Page Limits. (Ordered by Judge Matthew J. Kacsmaryk on 3/28/2023) (awc) (Entered: 03/28/2023) |
| 03/30/2023 | 48 (p.1166) | NOTICE of *Supplemental Authority* filed by Bureau of Alcohol Tobacco Firearms and Explosives. (Attachments: # 1 (p.12) Exhibit(s) A - Mock v. Garland Opinion) (Lowenstein, Jody) Modified filer on 3/31/2023 (awc). (Entered: 03/30/2023) |
| 03/30/2023 | 49 (p.1186) | ORDER granting 46 (p.1161) Consent Motion for Extension of Time to File Answer. Defendant shall file an answer or otherwise respond to the Complaint no later than 30 days after the Court resolves Plaintiffs' Motion for Preliminary Injunction (ECF No. 14). (Ordered by Judge Matthew J. Kacsmaryk on 3/30/2023) (awc) (Entered: 03/30/2023) |
| 04/14/2023 | 50 (p.1187) | ORDER denying 16 (p.114) Motion to Intervene. (See order for specifics.) (Ordered by Judge Matthew J. Kacsmaryk on 4/14/2023) (awc) (Entered: 04/14/2023) |
| 04/18/2023 | 51 (p.1198) | ORDER denying as moot 19 (p.670) Proposed Motion for Injunction. (Ordered by Judge Matthew J. Kacsmaryk on 4/18/2023) (awc) (Entered: 04/18/2023) |
| 05/23/2023 | 52 (p.1199) | MOTION for Leave to File Supplemental Authority filed by Darren A. Britto, Shawn M. Kroll, Gabriel A. Tauscher (Attachments: # 1 (p.12) Supplemental Authority - Mock v. Garland, # 2 (p.37) Proposed Order) (Lennington, Daniel) (Entered: 05/23/2023) |
| 05/24/2023 | 53 (p.1205) | ORDER granting 52 (p.1199) Motion for Leave to File Supplemental Authority. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Matthew J. Kacsmaryk on 5/24/2023) (awc) (Entered: 05/24/2023) |
| 05/24/2023 | 54 (p.1206) | SUPPLEMENTAL AUTHORITY re 14 (p.73) Motion for Preliminary Injunction filed by Darren A. Britto, Shawn M. Kroll, Gabriel A. Tauscher. (awc) (Entered: |

| | | |
|---|---|---|
| | | 05/24/2023) |
| 05/25/2023 | 55 (p.1208) | RESPONSE filed by Bureau of Alcohol Tobacco Firearms and Explosives re: 52 (p.1199) MOTION for Leave to File Supplemental Authority (Drezner, Michael) (Entered: 05/25/2023) |
| 05/30/2023 | 56 (p.1211) | Unopposed MOTION for Leave to File Supplemental Authority filed by Bureau of Alcohol Tobacco Firearms and Explosives with Brief/Memorandum in Support. (Attachments: # 1 (p.12) Exhibit A, # 2 (p.37) Proposed Order) (Drezner, Michael) (Entered: 05/30/2023) |
| 05/31/2023 | 57 (p.1227) | ORDER granting 56 (p.1211) Motion for Leave to File. (Unless the document has already been filed, clerk to enter the document as of the date of this order.) (Ordered by Judge Matthew J. Kacsmaryk on 5/31/2023) (vls) (Entered: 05/31/2023) |
| 05/31/2023 | 58 (p.1228) | Supplemental Authority filed by Bureau of Alcohol Tobacco Firearms and Explosives. (vls) (Entered: 05/31/2023) |
| 05/31/2023 | 59 (p.1240) | ORDER: the Court GRANTS IN PART the Motion and issues a preliminary injunction as to the Plaintiffs in this case only, pending resolution of the expedited appeal of Mock. The Court may order additional briefing at a later date in accordance with the Fifth Circuit's decision. re: 14 (p.73) Motion for Injunction (Ordered by Judge Matthew J. Kacsmaryk on 5/31/2023) (vls) (Entered: 05/31/2023) |
| 06/22/2023 | 60 (p.1242) | Joint MOTION to Stay *District Court Proceedings* filed by Bureau of Alcohol Tobacco Firearms and Explosives with Brief/Memorandum in Support. (Attachments: # 1 (p.12) Proposed Order) (Drezner, Michael) (Entered: 06/22/2023) |
| 06/26/2023 | 61 (p.1247) | ORDER granting 60 (p.1242) Motion to Stay. The Court GRANTS the Motion and ORDERS that the case is stayed. The parties shall file a Joint Status Report within seven days after if the issuance of the Fifth Circuit's mandate in Mock. (Ordered by Judge Matthew J. Kacsmaryk on 6/26/2023) (awc) (Entered: 06/26/2023) |
| 09/27/2023 | 62 (p.1248) | Consent MOTION for Leave to File Supplemental Authority filed by Bureau of Alcohol Tobacco Firearms and Explosives with Brief/Memorandum in Support. (Attachments: # 1 (p.12) Exhibit(s), # 2 (p.37) Proposed Order) (Drezner, Michael) (Entered: 09/27/2023) |
| 09/29/2023 | 63 (p.1276) | Joint STATUS REPORT filed by Bureau of Alcohol Tobacco Firearms and Explosives. (Drezner, Michael) (Entered: 09/29/2023) |
| 10/05/2023 | 64 (p.1280) | MOTION for Leave to File Supplemental Authorities by Darren A. Britto, Shawn M. Kroll, Gabriel A. Tauscher . (Attachments: # 1 (p.12) Proposed Order on Motion for leave to File Supplemental Authorities) (Lennington, Daniel) Modified event and title on 10/5/2023 (nht). (Entered: 10/05/2023) |
| 10/05/2023 | 65 (p.1332) | ORDER granting 62 (p.1248) Consent MOTION for Leave to File Supplemental Authority. (Ordered by Judge Matthew J. Kacsmaryk on 10/5/2023) (awc) (Entered: 10/05/2023) |
| 10/06/2023 | 66 (p.1333) | ORDER granting 64 (p.1280) Motion for Leave to File Supplemental Authorities. (Ordered by Judge Matthew J. Kacsmaryk on 10/6/2023) (awc) (Entered: 10/06/2023) |
| 11/08/2023 | 67 (p.1334) | ORDER LIFTING STAY (Ordered by Judge Matthew J. Kacsmaryk on 11/8/2023) (vls) (Entered: 11/08/2023) |

| 11/08/2023 | 68 (p.1335) | Memorandum Opinion and Order - The Court GRANTS the Motion and STAYS the Rule in its entirety. (Ordered by Judge Matthew J. Kacsmaryk on 11/8/2023) (vls) (Main Document 68 replaced with word searchable document on 11/9/2023) (awc). (Entered: 11/08/2023) |
| --- | --- | --- |
| 11/29/2023 | 69 (p.1344) | NOTICE OF INTERLOCUTORY APPEAL as to 68 (p.1335) Memorandum Opinion and Order to the Fifth Circuit by Bureau of Alcohol Tobacco Firearms and Explosives. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Drezner, Michael) (Entered: 11/29/2023) |
| 11/30/2023 | 70 | USCA Case Number 23-11203 in USCA5 for 69 (p.1344) Notice of Appeal filed by Bureau of Alcohol Tobacco Firearms and Explosives. (cmk) (Entered: 11/30/2023) |

TAB 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

DARREN A. BRITTO, *et al.*,

      *Plaintiffs*,

    v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS, AND EXPLOSIVES.

      *Defendant.*

No. 2:23-cv-19-Z

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that defendant hereby appeals to the United States Court of Appeals for the Fifth Circuit from this Court's opinion and order dated November 8, 2023, ECF No. 68, granting plaintiffs' motion for a preliminary injunction, ECF No. 14.

Dated: November 29, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Michael Drezner*
MICHAEL DREZNER (VA Bar No. 83836)
JODY D. LOWENSTEIN (MT Bar No. 55816869)
TAYLOR PITZ (CA Bar No. 332080)
FAITH E. LOWRY (TX Bar No. 24099560)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-4554
Email: Michael.L.Drezner@usdoj.gov

*Attorneys for Defendants*

1

23-11203.1344

## CERTIFICATE OF SERVICE

On November 29, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Michael Drezner*
MICHAEL DREZNER
Trial Attorney
U.S. Department of Justice

TAB 9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

DARREN A. BRITTO, *et al.*,

      Plaintiffs,

v.

                         2:23-CV-019-Z

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion for Preliminary Injunction ("Motion") (ECF No. 14), filed

on February 7, 2023, against the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").

Having considered the Motion, briefing, and relevant law,[1] the Court **GRANTS** the Motion.

### BACKGROUND

The National Firearms Act of 1934 ("NFA"), 26 U.S.C. Sections 5801–5872, regulates the

manufacture, possession, and transfer of a limited group of "firearms" that "Congress has found

to be inherently dangerous and generally lacking usefulness, except for violent and criminal

purposes." *United States v. Jennings*, 195 F.3d 795, 799 (5th Cir. 1999). "[T]he primary reason

that unregistered possession of these particular weapons is a crime is the virtual inevitability that

such possession will result in violence." *Id.*; *see also United States v. Freed*, 401 U.S. 601, 609

(1971) (NFA applies to "highly dangerous offensive weapons"); *Steele v. Nat'l Firearms Act

Branch*, 755 F.2d 1410, 1412 (11th Cir. 1985) (NFA applies to weapons that are "deemed

---

[1] This case was stayed, pending the resolution of *Mock v. Garland*, No. 4:23-CV-00095-O, 2023 WL 6457920 (N.D. Tex. Oct. 2, 2023). After receiving binding guidance from the United States Court of Appeals for the Fifth Circuit (namely, that the same Rule challenged here failed the logical outgrowth test), *id.* at *4, Judge O'Connor held that "the braced pistols subject to enforcement of [the Rule] are in common use today," *id.* at *9, and enjoined enforcement of the Rule against those plaintiffs, *id.* at 18.

particularly inimical to public safety"). Included within NFA's definition of "firearms" are "rifles"

with barrels less than 16 inches — also known as "short-barreled rifle[s]" ("SBRs") as that term

is defined by the Gun Control Act of 1968. *See* 26 U.S.C. § 5845(a)(3); 18 U.S.C. § 921(a)(8).

Under the NFA, the term "rifle" means:

> a weapon designed or redesigned, made or remade, and intended to be fired from
> the shoulder and designed or redesigned and made or remade to use the energy of
> the explosive in a fixed cartridge to fire only a single projectile through a rifled bore
> for each single pull of the trigger, and shall include any such weapon which may
> be readily restored to fire a fixed cartridge.

26 U.S.C. § 5845(c). Hence, a weapon that is a "rifle" per this definition with a barrel less than 16

inches constitutes an SBR — *i.e.*, a "firearm" under the NFA. Like all "firearms," SBRs must be

identified on a central registry, along with the identification and address of the person entitled to

possess the rifle. 26 U.S.C. § 5841. SBR owners must also pay a transfer tax of $200. 26 U.S.C.

§ 5811. A person who violates these requirements is subject to a $10,000 fine and up to 10 years

of imprisonment. 26 U.S.C. § 5871.

Absent from the NFA's definition of "firearms" are any references to handguns or pistols,

except that "a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire

a fixed shotgun shell" falls within the NFA's definition of "firearm." 26 U.S.C. § 5845(e).

Thus, common handgun and pistol owners are ordinarily not subject to the NFA.

Some larger handguns — due to their weight and recoil — may be difficult to fire with one

hand, especially for individuals with limited strength or mobility. For these weapons, a "stabilizing

brace" may be attached to provide support and improve accuracy. ECF No. 15 at 9. From 2012 to

2018, ATF issued several classifications of stabilizing braces concluding that a brace does not

"redesign" a handgun to be fired from the shoulder. 88 Fed. Reg. at 6478. In other words, such

weapon configurations were not considered SBRs. But then ATF became aware that newer braces

23-11203.1336

"began to include characteristics common to shoulder stocks." ECF No. 33 at 19. And the evidence showed that owners used them as such. *Id.*

After the March 2021 mass shooting in Boulder, Colorado — where the shooter was armed with a weapon of this sort — ATF revisited the issue. *Id.* at 21.[2] On January 31, 2023, ATF published a new rule ("Rule") that clarified the statutory phrase "designed, redesigned, made or remade, and intended to be fired from the shoulder." *See id.* at 22; 88 Fed. Reg. at 6478. Under the Rule, this phrase now includes weapons equipped with a stabilizing brace that provides "surface area" allowing the weapon to be fired from the shoulder, "provided that other factors indicate that the weapon is designed, made, and intended to be fired from the shoulder." *Id.* These factors include measurements of the weapon's "weight or length" or "length of pull," the manufacturer's "direct or indirect marketing," "the likely use of the weapon in the general community," and whether the weapon "is equipped with sights or a scope with eye relief that require the weapon to be fired from the shoulder in order to be used as designed." 88 Fed. Reg. at 6480. Because "a majority" of these weapons will be reclassified as SBRs, *id.*, anyone in possession of a weapon reclassified by ATF as an SBR faces criminal penalties unless they comply with the NFA within 120 days of the Rule's publication date. *Id.* at 6553.

Plaintiffs are three decorated Marine veterans who possess what are likely to be SBRs under the Rule. ECF No. 15 at 14–15. They claim the Rule: (1) violates the Second Amendment; (2) violates separation of powers and nondelegation principles; (3) conflicts with the NFA's definition of "rifle"; (4) is arbitrary and capricious under the Administrative Procedure Act ("APA"); and (5) is void for vagueness. ECF No. 15 at 16–28. For those reasons, Plaintiffs seek an injunction prohibiting ATF from enforcing the Rule. *Id.* at 31.

---

[2] Of the 237,000 comments received, fewer than 20,000 were supportive of the proposed rule. 88 Fed. Reg. at 6497.

23-11203.1337

LEGAL STANDARD

A court may issue a preliminary injunction when a movant satisfies the following four factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) the threatened injury outweighs any harm that will result if the injunction is granted; and (4) the grant of an injunction is in the public interest. *See Louisiana v. Becerra*, 20 F.4th 260, 262 (5th Cir. 2021). "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

ANALYSIS

**A. Plaintiffs Have a Substantial Likelihood of Prevailing on the Merits**

"To satisfy the first element of likelihood of success on the merits," Plaintiffs "must present a prima facie case but need not show that [they are] certain to win." *Janvey v. Alguire*, 647 F.3d 585, 595–96 (5th Cir. 2011) (internal marks omitted). Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

*1. Recent Precedent*

This Court does not begin with a blank slate. As the parties have acknowledged, the recent case of *Mock v. Garland* provides substantial guidance. No. 4:23-CV-00095-O, 2023 WL 6457920 (N.D. Tex. Oct. 2, 2023). There, a firearms advocacy group, individual braced pistol owners, and a firearms accessories manufacturer and retailer brought an action under the APA challenging the same Rule before the Court now. *Id.* at *1. On appeal, the Fifth Circuit held that the Rule "was not a logical outgrowth of the Proposed Rule," that the "monumental error was prejudicial," and that it "must be set aside as unlawful." *Mock v. Garland*, 75 F.4th 563, 583–86 (5th Cir. 2023) (citing

4

5 U.S.C. § 553(b)-(c) (providing that a final rule adopted by an agency must be a logical outgrowth

of its concomitant proposed rule); *id.* § 706(2)(D) (directing reviewing courts to "hold unlawful

and set aside agency [rules]" found to be "without observance of procedure required by law")).

The Fifth Circuit then remanded the case back to the district court to assess the remaining

preliminary injunction factors and rule — in light of the circuit panel's decision — on the

plaintiffs' motion. *See id.* at 586–88. In doing so, the Fifth Circuit placed "no limitation on the

matters that [the court] may address on remand" and gave "no indication of what decisions it

should reach, regarding a preliminary injunction or any other matter." *Id.* at 588.[3]

On remand, the district court found that the plaintiffs had demonstrated a likelihood of

success on their challenge because — in addition to the circuit panel's holding that the Rule failed

the logical outgrowth test — "the braced pistols subject to enforcement of the Final Rule are in

common use today" and "possession and use of brace pistols is therefore within the ambit of

Second Amendment protection." *Garland*, 2023 WL 6457920, at \*9–10; *see also New York State

Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2128 (2022) ("[T]he Second Amendment

protects the possession and use of weapons that are in common use at the time.") (internal marks

omitted); *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008).

Given the Fifth Circuit's holding, this Court recognizes that the Rule "was not a logical

outgrowth of the Proposed Rule" and "must be set aside as unlawful." *Mock v. Garland*, 75 F.4th

563, 583–86 (5th Cir. 2023). That holding alone establishes that Plaintiffs "have demonstrated, *a

fortiori*, an actual success on the merits of their APA challenge to the . . . Rule." *Garland*, 2023

WL 6457920, at \*6.

---

[3] Judge Willett joined the Fifth Circuit's opinion "in full measure," but wrote separately to suggest "that the Final Rule would likely fail constitutional muster even if it were a logical outgrowth of the worksheet idea that preceded it." *Garland*, 75 F.4th 563, 588 (5th Cir. 2023) (Willet, J., concurring). In his view, protected Second Amendment conduct "likely includes making common, safety-improving modifications to otherwise lawfully bearable arms." *Id.*

23-11203.1339

"It goes without saying that constitutional questions should be avoided if there are independent 'ground[s] upon which the case may be disposed of.'" *Teltech Sys., Inc. v. Bryant*, 702 F.3d 232, 235 (5th Cir. 2012) (quoting *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S. Ct. 466, 483, 80 L. Ed. 688 (1936)). And as Judge Tipton noted in a similar case, "it would be improper for this Court to now evaluate constitutional issues" given that "the Fifth Circuit has already decided that the Final Rule violates the APA." *Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 6:23-CV-00013, 2023 WL 7116844, at *9 (S.D. Tex. Oct. 27, 2023).

"Further, the Supreme Court has encouraged lower courts to avoid expending 'scarce judicial resources to resolve difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Hence, in light of the Fifth Circuit's holding and the fact that "[a] finding that any of Plaintiffs' additional claims are likely to succeed on the merits would not affect the Court's analysis regarding whether to issue a preliminary injunction," the Court moves to the next factor. *Texas*, 2023 WL 7116844, at *9.

## B. Plaintiffs Will Suffer Irreparable Harm if the Motion Is Denied

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." 11A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 2948.1 (3d ed.). "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). Irreparable harm must be "concrete" and not "de minimis." *Garland*, 2023 WL 6457920, at *6.

As discussed *supra*, Plaintiffs are three decorated Marine veterans who possess what are likely to be SBRs under the Rule. ECF No. 15 at 14–15. Plaintiff Darren A. Britto is one such

23-11203.1340

veteran who owns a pistol with a stabilizing brace. *Id.* at 14. His pistol, which has a barrel less than 16 inches, was not designed, made, or intended to be fired from the shoulder because Mr. Britto has a combat-related injury to his right shoulder. *Id.* Mr. Britto uses this firearm for personal defense, competitive sport shooting, recreation with his family, and as part of his employment as a firearms instructor certified by the NRA and the State of Texas. *Id.*

Plaintiff Shawn M. Kroll is another. *Id.* He owns a pistol with a 10.5" barrel and a stabilizing brace, and he uses the brace for recreational target shooting, hunting, and personal defense. *Id.* The firearm is not designed to be fired from the shoulder, so Mr. Kroll uses a stabilizing brace "because it makes the firearm . . . safer." *Id.*

Lastly, Plaintiff Gabriel A. Tauscher deployed overseas in support of the Global War on Terrorism. *Id.* Tragically, Mr. Tauscher was ambushed in 2021 and shot 15 times. *Id.* He spent 85 days in the hospital, enduring multiple surgeries and requiring 20 pints of blood. *Id.* Because his left arm is partially disabled, Mr. Tauscher uses a stabilizing brace to help him fire. *Id.* at 14–15. He uses his firearm for personal protection and recreation. *Id.*

"Under the Final Rule, compliance will almost always come at a cost." *Texas*, 2023 WL 7116844, at *10. "When the Fifth Circuit sent *Mock* back to the district court, the court evaluated the irreparable harm, if any, that several private plaintiffs in the case would suffer." *Id.* "Because the Mock plaintiffs owned firearms and stabilizing braces that the Final Rule would classify as an SBR, the plaintiffs had 'no trouble establishing a substantial threat of irreparable harm in the form of nonrecoverable compliance costs.'" *Id.* (quoting *Garland*, 2023 WL 6457920, at *7). The same is true here.

The ATF "gave affected gun owners until May 31, 2023, to register their stabilizing braces." *Id.* at 11. That deadline has passed. Accordingly, Plaintiffs must do one of four things to

23-11203.1341

comply with the Rule: "(1) permanently modify their weapon to remove it from the scope of the NFA, (2) dispose of or alter their stabilizing brace so that it can never be reattached, (3) turn over their weapon to the ATF, or (4) destroy their weapon completely." *Id.* Each option is costly.

Moreover, "even if a gun owner had registered their weapon with the ATF prior to the May 31 deadline, the weapon must still be marked, to reflect its new classification." *Id.* (internal marks omitted); *see also* 88 Fed. Reg. at 6570. "The ATF estimates that each engraving, or marking, would cost gun owners anywhere from $30 to $65." *Texas*, 2023 WL 7116844, at *11. And as the Fifth Circuit noted, "[t]here is no given process for undoing or recouping those compliance costs." *Garland*, 2023 WL 6457920, at n.29. Hence, Plaintiffs would incur costs under the Rule "regardless of their chosen method of compliance." *Texas*, 2023 WL 7116844, at *11. "And because sovereign immunity would prevent them from recouping their costs from the ATF, [Plaintiffs] would be irreparably harmed absent injunctive relief." *Id.* (internal citations omitted).

### C. The Public Interest Supports Injunctive Relief

The third and fourth factors — assessing the harm to the opposing party and weighing the public interest — "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[T]here is generally no public interest in the perpetuation of unlawful agency action." *State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (internal marks omitted).

For similar reasons, this factor supports injunctive relief. As explained in *Garland*, "[t]he controlling law of this case is that the Government Defendants' promulgation of the Final Rule 'fails the logical-outgrowth test and violates the APA' and 'therefore must be set aside as unlawful' under the APA." 2023 WL 6457920, at *17 (quoting *Garland*, 75 F.4th at 578, 583–86). "It follows, then, that there is no injury that the Government Defendants or public at-large could possibly suffer from if enforcement of the Final Rule were enjoined." *Id.*; *see also Open*

8

*Communities All. v. Carson*, 286 F.Supp.3d 148, 179 (D.D.C. 2017). Additionally, ATF admits
the 10-year cost of the Rule is over one billion dollars. 88 Fed. Reg. at 6565. And because of the
Rule, certain manufacturers that obtain most of their sales from stabilizing braces risk having to
close their doors for good. *See* ECF No. 17 at 5–6.

The Court is not insensitive to ATF's concerns over gun-industry gamesmanship and
attempts to circumvent the NFA's restrictions on SBRs. However, "the government may not
simply posit that the regulation promotes an important interest" to justify its regulation. *Bruen*,
142 S. Ct. at 2126. Of course, some form of protest can be expected when constitutional rights are
allegedly infringed. The passage of time and the development of new technology can also reveal
latent ambiguities in a statute. *See Matter of Erickson*, 815 F.2d 1090, 1092 (7th Cir. 1987)
(Easterbrook, J.) ("[T]echnological change may dramatically enlarge the [statute] without
legislative consideration.").

Likewise, the Court is certainly sympathetic to ATF's concerns over public safety in the
wake of tragic mass shootings. The Rule "embodies salutary policy goals meant to protect
vulnerable people in our society." *Rahimi*, 61 F.4th at 461. But public safety concerns must be
addressed in ways that are lawful. This Rule is not.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion and **STAYS** the Rule in its
entirety. *See* 5 U.S.C § 705; *Texas v. EPA*, 829 F.3d 405, 435 (5th Cir. 2016).

**SO ORDERED**.

November **8**, 2023

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

9

TAB 10

APPEAL,STAYED

# U.S. District Court
# Northern District of Texas (Fort Worth)
# CIVIL DOCKET FOR CASE #: 4:23-cv-00578-O

Texas Gun Rights, Inc et al v. Bureau of Alcohol, Tobacco,
Firearms, and Explosives
Assigned to: Judge Reed C. O'Connor
Related Cases:  3:21-cv-00116-B
                2:23-cv-00019-Z
                4:23-cv-00095-O
                6:23-cv-00013-H
Case in other court:  United States Court of Appeals 5th Circuit,
                        23-11204
Cause: 05:702 Administrative Procedure Act

Date Filed: 06/08/2023
Jury Demand: None
Nature of Suit: 440 Civil Rights: Other Civil
Rights
Jurisdiction: Federal Question

**Plaintiff**

**Texas Gun Rights, Inc**                represented by    **Jason Chad Nash**
The Law Office of Jason Nash PLLC
601 Jameson Street
Weatherford, TX 76086
817-821-0940
Email: jnash@jasonnashlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Barry K Arrington**
Arrington Law Firm
4195 Wadsworth Blvd
Wheat Ridge, CO 80033
303-205-7870
Email: barry@arringtonpc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Daniel Lennington**
Wisconsin Institute for Law and Liberty
330 E Kilbourn Ave, Suite 725
Milwaukee, WI 53202
414-727-9455
Fax: 414-727-6385
Email: dan@will-law.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Lucas Vebber**

Wisconsin Institute for Law & Liberty
330 E Kilbourn Ave
Suite 725
Milwaukee, WI 53202
414-727-9455
Email: lucas@will-law.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Richard M Esenberg**
Wisconsin Institute For Law & Liberty
330 E Kilbourn Ave.
Suite 725
Milwaukee, WI 53202
414-727-9455
Fax: 414-727-6385
Email: rick@will-law.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Plaintiff**

**National Association for Gun Rights Inc.**            represented by   **Jason Chad Nash**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Barry K Arrington**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Daniel Lennington**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Lucas Vebber**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Richard M Esenberg**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

V.

**Defendant**

| | | |
|---|---|---|
| **Bureau of Alcohol, Tobacco, Firearms, and Explosives** | represented by | **Michael Drezner** |

**Michael Drezner**
US Department of Justice
Civil Division, Federal Programs Branch
1100 L St
Washington, DC 20005
202-514-4505
Fax: 202-616-8470
Email: michael.l.drezner@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Faith Lowry**
DOJ-Civ
Federal Programs Branch
1100 L Street
Washington, DC 20005
202-305-2532
Email: faith.e.lowry@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jody Dale Lowenstein**
US Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-598-9280
Email: jody.d.lowenstein@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Taylor Pitz**
DOJ-Civ
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-305-5200
Email: taylor.n.pitz@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/08/2023 | 1 (p.9) | COMPLAINT against Bureau of Alcohol, Tobacco, Firearms, and Explosives filed by National Association for Gun Rights Inc., Texas Gun Rights, Inc. (Filing fee $402; Receipt number ATXNDC-13800484) Plaintiff will submit summons(es) for |

| | | |
|---|---|---|
| | | issuance. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 (p.9) Cover Sheet, # 2 (p.40) Notice of Related Cases) (Nash, Jason) (Entered: 06/08/2023) |
| 06/08/2023 | 2 (p.40) | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by National Association for Gun Rights Inc., Texas Gun Rights, Inc. (Clerk QC note: No affiliate entered in ECF). (Nash, Jason) (Entered: 06/08/2023) |
| 06/08/2023 | 3 (p.42) | Request for Clerk to issue Summons filed by National Association for Gun Rights Inc., Texas Gun Rights, Inc. (Nash, Jason) (Entered: 06/08/2023) |
| 06/08/2023 | 4 (p.43) | New Case Notes: A filing fee has been paid. File to: Judge O Connor. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. Attorneys are further reminded that, if necessary, they must comply with Local Rule 83.10(a) within 14 days or risk the possible dismissal of this case without prejudice or without further notice. (mmw) (Entered: 06/08/2023) |
| 06/08/2023 | 5 (p.45) | Summons issued as to Bureau of Alcohol, Tobacco, Firearms, and Explosives, U.S. Attorney, and U.S. Attorney General. (mmw) (Entered: 06/08/2023) |
| 06/12/2023 | 6 (p.51) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Richard M. Esenberg (Filing fee $100; Receipt number ATXNDC-13809709) filed by National Association for Gun Rights Inc., Texas Gun Rights, Inc (Attachments: # 1 (p.9) Proposed Order, # 2 (p.40) Certificate of Good Standing) (Nash, Jason) (Entered: 06/12/2023) |
| 06/12/2023 | 7 (p.56) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Daniel P. Lennington (Filing fee $100; Receipt number ATXNDC-13809711) filed by National Association for Gun Rights Inc., Texas Gun Rights, Inc (Attachments: # 1 (p.9) Proposed Order, # 2 (p.40) Certificate of Good Standing) (Nash, Jason) (Entered: 06/12/2023) |
| 06/12/2023 | 8 (p.61) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Lucas Thomas Vebber (Filing fee $100; Receipt number ATXNDC-13809712) filed by National Association for Gun Rights Inc., Texas Gun Rights, Inc |

| | | |
|---|---|---|
| | | (Attachments: # 1 (p.9) Proposed Order, # 2 (p.40) Certificate of Good Standing) (Nash, Jason) (Entered: 06/12/2023) |
| 06/15/2023 | 9 (p.66) | CERTIFICATE OF SERVICE by National Association for Gun Rights Inc., Texas Gun Rights, Inc *US Attorney* (Nash, Jason) (Entered: 06/15/2023) |
| 06/15/2023 | 10 (p.67) | MOTION for Injunction *Preliminary* filed by National Association for Gun Rights Inc., Texas Gun Rights, Inc (Attachments: # 1 (p.9) Proposed Order) (Nash, Jason) (Entered: 06/15/2023) |
| 06/15/2023 | 11 (p.71) | Brief/Memorandum in Support filed by National Association for Gun Rights Inc., Texas Gun Rights, Inc re 10 (p.67) MOTION for Injunction *Preliminary* (Nash, Jason) (Entered: 06/15/2023) |
| 06/15/2023 | 12 (p.98) | Appendix in Support filed by National Association for Gun Rights Inc., Texas Gun Rights, Inc re 11 (p.71) Brief/Memorandum in Support of Motion (Nash, Jason) (Entered: 06/15/2023) |
| 06/16/2023 | 13 (p.174) | ORDER: The Court ORDERS Plaintiffs to provide Defendant with (1) Plaintiffs' Motion and Brief in Support, (2) this Order, and (3) service of process no later than June 21, 2023. Once Defendant has been served, and no later than June 28, 2023, the parties SHALL FILE a joint notice on the docket outlining a briefing schedule for the motion. (Ordered by Judge Reed C. O'Connor on 6/16/2023) (bdb) (Entered: 06/16/2023) |
| 06/19/2023 | 14 (p.175) | AFFIDAVIT of Service for Complaint, Summons served on Attorney General of the United States and Bureau of Alcohol, Tobacco, Firearms and Explosives on 06/09/2023. (Nash, Jason) (Entered: 06/19/2023) |
| 06/21/2023 | 15 (p.178) | AFFIDAVIT of Service for Motion for Prelim. Inj. and suppporting docs *ECF Nos. 6-14* served on Office of US Atty General; Bureau of ATF; Attorneys Pitz, Lowenstein, and Drezner on 06/20/2023. (Nash, Jason) Modified per pdf on 6/22/2023 (dgt). (Entered: 06/21/2023) |
| 06/21/2023 | 16 (p.181) | NOTICE of *Service* re: 13 (p.174) Order Setting Deadline/Hearing, filed by National Association for Gun Rights Inc., Texas Gun Rights, Inc (Nash, Jason) (Entered: 06/21/2023) |
| 06/22/2023 | 17 (p.185) | NOTICE of *Proposed Briefing Schedule* re: 13 (p.174) Order Setting Deadline/Hearing, filed by National Association for Gun Rights Inc., Texas Gun Rights, Inc (Nash, Jason) (Entered: 06/22/2023) |
| 06/26/2023 | 18 (p.188) | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Barry K. Arrington (Filing fee $100; Receipt number ATXNDC-13841753) filed by National Association for Gun Rights Inc., Texas Gun Rights, Inc (Attachments: # 1 (p.9) Proposed Order, # 2 (p.40) Certificate of Good Standing) (Nash, Jason) (Entered: 06/26/2023) |
| 07/10/2023 | 19 (p.193) | ORDER...Before the Court is the Parties Joint Notice of Proposed Briefing Schedule (ECF No. 17 (p.185) ), filed June 22, 2023. |

| | | |
|---|---|---|
| | | Accordingly, the Court sets the following briefing schedule regarding Plaintiffs Motion for Preliminary Injunction (ECF No. 10 (p.67) ): -Defendant shall file its response on or before July 17, 2023.-Plaintiffs shall file any reply on or before July 28, 2023. (Ordered by Judge Reed C. O'Connor on 7/10/2023) (wxc) (Entered: 07/10/2023) |
| 07/10/2023 | 20 | ELECTRONIC ORDER granting 6 (p.51) Application for Admission Pro Hac Vice of Richard M. Esenberg. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 7/10/2023) (chmb) (Entered: 07/10/2023) |
| 07/10/2023 | 21 | ELECTRONIC ORDER granting 7 (p.56) Application for Admission Pro Hac Vice of Daniel P. Lennington. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 7/10/2023) (chmb) (Entered: 07/10/2023) |
| 07/10/2023 | 22 | ELECTRONIC ORDER granting 8 (p.61) Application for Admission Pro Hac Vice of Lucas T. Vebber. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 7/10/2023) (chmb) (Entered: 07/10/2023) |
| 07/10/2023 | 23 | ELECTRONIC ORDER granting 18 (p.188) Application for Admission Pro Hac Vice of Barry K. Arrington. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 7/10/2023) (chmb) (Entered: 07/10/2023) |
| 07/14/2023 | 24 (p.194) | NOTICE of Attorney Appearance by Taylor Pitz on behalf of Bureau of Alcohol, Tobacco, Firearms, and Explosives. (Filer confirms contact info in ECF is current.) (Pitz, Taylor) (Entered: 07/14/2023) |
| 07/14/2023 | 25 (p.195) | MOTION for Extension of Page Limits filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives (Attachments: # 1 (p.9) Proposed Order) (Pitz, Taylor) (Entered: 07/14/2023) |
| 07/17/2023 | 26 (p.199) | NOTICE of Attorney Appearance by Jody Dale Lowenstein on behalf of Bureau of Alcohol, Tobacco, Firearms, and Explosives. (Filer confirms contact info in ECF is current.) (Lowenstein, Jody) (Entered: 07/17/2023) |
| 07/17/2023 | 27 (p.201) | RESPONSE filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives re: 10 (p.67) MOTION for Injunction *Preliminary* (Lowenstein, Jody) (Entered: 07/17/2023) |

| 07/28/2023 | 28 (p.256) | REPLY filed by National Association for Gun Rights Inc., Texas Gun Rights, Inc re: 10 (p.67) MOTION for Injunction *Preliminary* (Attachments: # 1 (p.9) Declaration(s) of Hannah Hill, # 2 (p.40) Declaration(s) of Chris McNutt) (Lennington, Daniel) (Entered: 07/28/2023) |
| 08/08/2023 | 29 (p.280) | Consent Motion for Extension of Time to File Answer filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (Pitz, Taylor) (Entered: 08/08/2023) |
| 08/09/2023 | 30 (p.284) | ORDER: Before the Court is Defendant Consent Motion for Extension of Time to Respond to Complaint (ECF No. 29 (p.280) ), filed August 8, 2023. The Motion is hereby GRANTED. Defendant SHALL file an answer or otherwise respond to the Complaint in this action no later than thirty days after the Court issues its decision on Plaintiffs' pending Motion for Preliminary Injunction (ECF No. 10 (p.67) ). (Ordered by Judge Reed C. O'Connor on 8/9/2023) (sre) (Entered: 08/09/2023) |
| 08/21/2023 | 31 (p.285) | ORDER: In order to resolve the 10 (p.67) Motion, the Court ORDERS both parties to file supplemental briefing addressing Mock. The supplemental briefs are due to the Court by August 30, 2023, and replies no later than September 5, 2023. (Ordered by Judge Reed C. O'Connor on 8/21/2023) (bdb) (Entered: 08/21/2023) |
| 08/30/2023 | 32 (p.286) | Supplemental Document by Bureau of Alcohol, Tobacco, Firearms, and Explosives *(Brief)*. (Drezner, Michael) (Entered: 08/30/2023) |
| 08/30/2023 | 33 (p.290) | Supplemental Document by National Association for Gun Rights Inc., Texas Gun Rights, Inc *(Brief)*. (Lennington, Daniel) (Entered: 08/30/2023) |
| 09/05/2023 | 34 (p.297) | RESPONSE filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives re: 33 (p.290) Supplemental Document (Drezner, Michael) (Entered: 09/05/2023) |
| 09/12/2023 | 35 (p.303) | NOTICE of *Supplemental Authority* filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives (Attachments: # 1 (p.9) Exhibit(s) 1 - FRAC Opinion) (Lowenstein, Jody) (Entered: 09/12/2023) |
| 10/04/2023 | 36 (p.330) | ORDER granting 10 (p.67) ...the Court GRANTS the Motion for Preliminary Injunction. (Ordered by Judge Reed C. O'Connor on 10/4/2023) (wxc) (Entered: 10/04/2023) |
| 10/11/2023 | 37 (p.340) | ORDER:On October 4, 2023, the Court issued its Opinion & Order (ECF No. 36 (p.330) ) on the Motion for Preliminary Injunction (ECF No. 10 (p.67) ) in this case. Considering that decision, the parties are hereby ORDERED to meet and confer and file a joint status report with the Court no later than November 10, 2023, notifying how the parties intend to proceed in the case and, if the parties intend to so proceed, proposing a modified dispositive motion schedule. (Ordered by Judge Reed C. O'Connor on 10/11/2023) (sre) (Main Document 37 replaced on 10/11/2023) |

| | | (sre). (Entered: 10/11/2023) |
|---|---|---|
| 10/31/2023 | 38 (p.341) | Consent Motion for Extension of Time to File Answer filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives with Brief/Memorandum in Support. (Attachments: # 1 (p.9) Proposed Order) (Drezner, Michael) (Entered: 10/31/2023) |
| 11/01/2023 | 39 (p.345) | ORDER: Having considered the motion, briefing, and applicable law, the Court GRANTS the 38 (p.341) motion. Accordingly, the deadline to respond to Plaintiffs' complaint, by answer or other motion, is suspended. (Ordered by Judge Reed C. O'Connor on 11/1/2023) (bdb) (Entered: 11/01/2023) |
| 11/10/2023 | 40 (p.346) | Joint STATUS REPORT filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives. (Drezner, Michael) (Entered: 11/10/2023) |
| 11/13/2023 | 41 (p.349) | ORDER: The request is hereby GRANTED. The proceedings in this case are hereby STAYED until entry of final judgment in Mock, at which point the Parties must file a joint status report with the Court detailing whether (1) proceedings should continue; (2) the case should be dismissed; or (3) whether an extension of the stay is needed. (Ordered by Judge Reed C. O'Connor on 11/13/2023) (mmw) (Entered: 11/13/2023) |
| 11/29/2023 | 42 (p.350) | NOTICE OF INTERLOCUTORY APPEAL as to 36 (p.330) Order on Motion for Injunction to the Fifth Circuit by Bureau of Alcohol, Tobacco, Firearms, and Explosives. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Drezner, Michael) (Entered: 11/29/2023) |
| 12/01/2023 | 43 (p.352) | USCA Case Number 23-11204 in United States Court of Appeals 5th Circuit for 42 (p.350) Notice of Appeal, filed by Bureau of Alcohol, Tobacco, Firearms, and Explosives. (tle) (Entered: 12/01/2023) |

TAB 11

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| TEXAS GUN RIGHTS, INC., *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 4:23-cv-578-O |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, | |
| *Defendant*. | |

**NOTICE OF APPEAL**

PLEASE TAKE NOTICE that defendant hereby appeals to the United States Court of Appeals for the Fifth Circuit from this Court's opinion and order dated October 4, 2023, ECF No. 36, granting plaintiffs' motion for a preliminary injunction, ECF No. 10.

Dated: November 29, 2023      Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Michael Drezner*
MICHAEL DREZNER (VA Bar No. 83836)
JODY D. LOWENSTEIN (MT Bar No. 55816869)
TAYLOR PITZ (CA Bar No. 332080)
FAITH E. LOWRY (TX Bar No. 24099560)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-4545
Email: Michael.L.Drezner@usdoj.gov

*Attorneys for Defendants*

1

## **CERTIFICATE OF SERVICE**

On November 29, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Michael Drezner*
MICHAEL DREZNER
Trial Attorney
U.S. Department of Justice

TAB 12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **TEXAS GUN RIGHTS, INC and** | § | |
| **NATIONAL ASSOCIATION FOR GUN** | § | |
| **RIGHTS, INC.,** | § | |
| | § | |
| **Plaintiffs,** | § | **Civil Action No. 4:23-cv-00578-O** |
| | § | |
| **v.** | § | |
| | § | |
| **BUREAU OF ALCOHOL, TOBACCO,** | | |
| **FIREARMS AND EXPLOSIVES,** | § | |
| | § | |
| **Defendant.** | § | |

**ORDER**

Before the Court are Plaintiffs' Motion for Preliminary Injunction that would prohibit Defendant from implementing and enforcing the "Factoring Criteria for Firearms with Attached 'Stabilizing Braces'" (ECF No. 10) and Brief in Support (ECF No. 11), filed June 15, 2023; Defendant's Opposition (ECF No. 27), filed July 17, 2023; Plaintiffs' Reply (ECF No. 28), filed July 28, 2023; Defendant's Supplemental Brief (ECF No. 32), filed August 30, 2023; Plaintiffs' Supplemental Brief (ECF No. 33), filed August 30, 2023; and Defendant's Supplemental Response (ECF. No. 34), filed September 5, 2023. Having considered the parties' briefing and applicable law, the Court **GRANTS** Plaintiffs' motion for preliminary injunction against the Defendant.

1

I.    **BACKGROUND**[1]

    **A.  The Final Rule**

    The possession, manufacture, and distribution of short-barreled rifles has been regulated by Congress for nearly a century. If a rifle has a barrel shorter than sixteen inches in length, it is a short-barreled rifle under the National Firearms Act ("NFA")[2] and the Gun Control Act ("GCA")[3] A pistol does not qualify as a rifle under the NFA or the GCA.

    The first stabilizing brace was submitted to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in 2012. At that time, the ATF concluded that the submitted brace "was not a shoulder stock and therefore could be attached to a firearm without constituting the making of an NFA firearm."[4] A stabilizing brace is an accessory that can be installed on a pistol. The brace attaches to the user's forearm to stabilize the pistol against the user's arm.

    With time, the devices began to include characteristics resembling shoulder stocks and the ATF soon learned that manufacturers were widely marketing these "braces" to consumers as a means of creating functional short-barreled rifles without complying with NFA requirements.[5] In response to this trend, the ATF changed its position on stabilizing braces in 2021 when it issued a proposed rule ("Proposed Rule") indicating that the agency would begin classifying firearms with a stabilizing brace as either a pistol or a rifle. In 2023, the ATF published a final rule ("Final Rule"). The Plaintiffs now sue for injunctive relief, alleging various statutory and constitutional deficiencies with the Final Rule.

---

[1] Unless otherwise indicated, the recitation of background facts are taken from Plaintiffs' Complaint (ECF No. 1), Plaintiffs' Motion for Preliminary Injunction and Brief in Support (ECF Nos. 10, 11), and Plaintiffs' Reply in Support of Motion for Preliminary Injunction (ECF No. 28).

[2] 26 U.S.C. §§ 5801 *et seq.*

[3] 18 U.S.C. §§ 921 *et seq.*

[4] Letter for Mark Barnes, Outside Counsel to SB Tactical, LLC from Marvin G. Richardson, Assistant Director, Enforcement Programs and Services, ATF, 90000:GM, 5000 (Mar. 21, 2017), App'x to Pls.' Mot. for Prelim. Inj. 14–16, ECF. No. 12.

[5] Def.'s Opp. to Mot. for Prelim. Inj. 1,4, ECF No. 27.

23-11204.331

### B. The Parties

Plaintiffs Texas Gun Rights, Inc. ("TGR") and National Association for Gun Rights, Inc ("NAGR") sued the ATF on behalf of individual members Justin Maloney and Tyler Witzke ("Individual Members"). Maloney and Witzke cannot purchase stabilizing braces because they do not want to register them under the Final Rule. TGR is a nonprofit organization that exists to defend the right to bear arms and other individual liberties. TGR has members throughout the State of Texas. Individual Member Justin Maloney is a member of TGR. NAGR is a nonprofit organization likewise dedicated to protecting the right to bear arms. NAGR represents the interests of its members who are directly harmed by the Final Rule. Individual Member Tyler Witzke is a member of NAGR.

## II.     LEGAL STANDING

### A. Preliminary Injunctions

To obtain a preliminary injunction, the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) that the balance of hardships weighs in the movant's favor; and (4) that issuance of a preliminary injunction will not disserve the public interest. *Daniels Health Servs., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013). The last two factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). As movant, the party seeking relief bears the burden of proving all elements of the preliminary injunction. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). And while the decision to grant or deny injunctive relief is committed to the district court's discretion, such relief is considered an "extraordinary remedy," never awarded as of right. *Miss. Power & Light Co. v. United Gas Pipe Line*, 760 F.2d 618, 621 (5th Cir. 1985); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)

(explaining that a court must "pay particular regard for the public consequences in employing the extraordinary remedy of injunction").

## III.     ANALYSIS

### A.  Associational Standing

Because Plaintiffs seek a preliminary injunction on behalf of their members, they must establish associational standing. As a preliminary defense, Defendant argues that the preliminary injunction must be denied because the Plaintiffs' lack associational standing.[6] The associational standing doctrine permits a traditional membership organization "to invoke the court's [injunctive or declaratory] remedial powers on behalf of its members." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). To do so, the organization must satisfy a three-prong *Hunt* test by showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2157 (2023) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

Here, the Plaintiffs satisfy the three-prong *Hunt* test. First, TGR and NAGR both seek relief on behalf of their members, including Justin Maloney and Tyler Witzke, who have standing to sue because they cannot purchase stabilizing braces without registering their firearms under the Final Rule.[7] It is well established that a plaintiff does not need to "expose himself to liability before bringing suit." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007). "The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." *Id.* at

---

[6] Def.'s Opp. to Mot. for Prelim. Inj. 11–12, ECF No. 27.
[7] Pls.' Reply in Support of Mot. for Prelim. Inj. 1, ECF No. 28.

129. Thus, each Individual Member's decision to not purchase stabilizing braces establishes standing to sue in their own right, satisfying prong one of the *Hunt* test.

Second, TGR and NAGR's shared organizational purposes of preserving and protecting the right to keep are bear arms are clearly germane to this suit challenging Defendant's asserted authority to regulate pistol braces.[8] Third, because TGR and NAGR seek the equitable remedies of injunctive and declaratory relief from the Final Rule, there is no need for all of their individual members to participate in the lawsuit.

In sum, the Court holds that TGR and NAGR have demonstrated associational standing and may pursue relief on behalf of their members.

## B. Preliminary Injunction

Plaintiffs attack the Final Rule on several grounds: (1) that it violates the Second Amendment; (2) that it violates the separation of powers and nondelegation doctrine; (3) that it conflicts with the federal definition of rifle; (4) that it violates the Administrative Procedure Act ("APA") as it is arbitrary and capricious; and (5) that it violates the APA because it is void for vagueness. Because it is arguably the most important element for injunctive relief, *Tesfamichael v. Gonzales*, 411 F.3d 169, 176 (5th Cir. 2005), the Court addresses first whether any of Plaintiffs' claims are substantially likely to succeed on the merits.

### i. Success on the Merits

Plaintiffs are substantially likely to succeed on the merits because the Final Rule is arbitrary and capricious. Section 706 of the APA provides that reviewing courts must set aside agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Arbitrary and capricious review focuses on

---

[8] Pls.' Compl. 2, ECF No. 1.

whether an agency articulated a rational connection between the facts found and the decision made." *ExxonMobil Pipeline Co. v. U.S. Dep't of Transp.*, 867 F.3d 564, 571 (5th Cir. 2017) (internal quotation marks and citation omitted). An agency must provide a more "detailed justification" for a "new policy [that] rests upon factual findings that contradict those which underlay its prior policy; or when its prior policy has engendered serious reliance interests that must be taken into account." *FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009) (citing *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 742 (1996)).

Here, the ATF did not provide a detailed justification for their reversal of the agency's longstanding position. For close to a decade, the ATF concluded that "attaching the brace to a firearm does not alter the classification of the firearm or subject the firearm to NFA control."[9] The ATF changed course on this position for the first time in 2023, when it issued the Final Rule reversing the agency's otherwise long-standing policy.[10] "When an agency changes course, as [the ATF] did here, it must 'be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1913 (2020) (quoting *Encino Motorcars, LLC v. Navarro,* 579 U. S. 211, 222 (2016)). "It would be arbitrary and capricious to ignore such matters" *Id.* But this is exactly what the ATF did when it inexplicably and fundamentally switched its position on stabilizing braces without providing sufficient explanations and notice.

---

[9] Max M. Kingery, ATF, Open Letter on the Redesign of "Stabilizing Braces" (Jan. 16, 2015), App'x to Pls.' Mot. for Prelim. Inj. 12, ECF. No. 12.
[10] Pls.' Br. in Support of Mot. for Prelim. Inj. 6, ECF No. 11.

Under the Final Rule, the ATF estimated about 99% of pistols with stabilizing braces would be reclassified as NFA rifles.[11] The ATF contemporaneously issued approximately sixty adjudications pursuant to the Final Rule that reclassified different configurations of firearms with stabilizing braces as NFA rifles.[12] The ATF provided no explanations for how the agency came to these classifications and there is no "meaningful clarity about what constitutes an impermissible stabilizing brace." *Mock v. Garland*, 75 F.4th 563, 585 (5th Cir. 2023). In fact, the Fifth Circuit "[could not] find a single given example of a pistol with a stabilizing brace that would constitute an NFA-exempt braced pistol." *Id.* at 575. Such "'unexplained' and 'inconsistent' positions" are arbitrary and capricious. *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 191 (5th Cir. 2023) (quoting *Encino Motorcars*, 579 U.S. at 222).

The ATF's disregard for the principles of fair notice and consideration of reliance interests is further exacerbated by its failure to follow the APA's procedural requirements for public notice and comment. Last month, the Fifth Circuit held that the ATF failed to follow proper notice-and-comment procedures because that Proposed Rule and the Final Rule differed in immense ways. *See Mock*, 75 F.4th at 585–86. This "monumental error" did not provide each Plaintiff with proper notice "that his [or her] firearm is subject to criminal penalties" or an opportunity to comment on the Final Rule. *Id.* at 586. The ATF's decision to skirt notice-and-comment provisions is arbitrary and capricious *per se*, and the specific type of conduct that the

---

[11] *Mock*, 75 F.4th at 574, 574 n.23 (citing ATF, RIN 1140-AA55, Factoring Criteria for Firearms with Attached "Stabilizing Braces": Final Regulatory Impact Analysis and Final Regulatory Flexibility Analysis 21 (2023), https://www.atf.gov/rules-and regulations/docs/undefined/atf2021r08stabilizingbracefrriapdf/download).

[12] *Id.* at 575, 575 n.24 (citing ATF, Common Weapon Platforms with Attached 'Stabilizing Brace' Designs That Are Short-Barreled Rifles (2023), https://www.atf.gov/rules-and-regulations/docs/undefined/bracefinalruleguidance-noncommercial/download; ATF, Commercially Available Firearms Equipped with a 'Stabilizing Brace' That Are Short-Barreled Rifles (2023), https://www.atf.gov/rules-and-regulations/docs/undefined/bracefinalruleguidancecommerciallypdf/download).

7

APA provides recourse for. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 94 (noting "the APA already provides recourse to regulated entities from agency decisions that skirt notice-and-comment provisions by placing a variety of constraints on agency decision-making, *e.g.*, the arbitrary and capricious standard"); *see also Mock*, 75 F.4th at 579 n.38 (stating "the [Final] Rule could have still been . . . challenged as arbitrary and capricious . . . , [because] [a]s the Supreme Court made clear in *Perez*, the public is not without recourse even if an agency attempts to 'skirt' the strictures of notice and comment with an interpretive rule").

For the reasons stated above, the Court holds at this stage that the Final Rule is arbitrary and capricious. Plaintiffs are likely to succeed on the merits, and thus, carried part of their burden for a preliminary injunction.

### ii. The Remaining Elements for a Preliminary Injunction

The parties and the Court are aware of at least three other cases in the Northern District of Texas that involve similarly situated plaintiffs (*i.e.*, handgun users, nonprofit organizations, and/or firearm manufacturers) challenging the Final Rule. One such case is *Mock v. Garland*, No. 4:23-cv-00095-O (N.D. Tex. Oct. 2, 2023) (order granting preliminary injunction). On October 2, 2023, this Court issued a preliminary injunction upon finding that the plaintiffs satisfied their burden of establishing irreparable harm and that the balance of equities and public interest supported injunctive relief. *Id.* For the reasons set forth in *Mock*, the Court finds that Plaintiffs here are entitled to identical relief.

In the absence of the Court's intervening relief, Plaintiffs' members are substantially threatened with irreparable harm in the form of "'nonrecoverable costs of complying with a putatively invalid regulation,'" *id.* at 14–16 (quoting *Rest. L. Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023)), and Second Amendment rights that are "'either threatened or

in fact being impaired,'" *id.* at 16–25 (quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)), neither of which can be adequately remedied at law. With the balance of equities and public interest merged into one, *Nken v. Holder*, 556 U.S. 418, 435 (2009), neither [the ATF] nor the public has any interest in enforcing a [Final Rule] that violates federal law." *Id.* at 34–35 (quoting *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 251 (5th Cir. 2023)).

## IV.    CONCLUSION

Having considered the arguments, evidence, and applicable law, the Court holds that the relevant factors weigh in favor of granting preliminary injunctive relief to Plaintiffs TGR and NAGR.

For the foregoing reasons, the Court **GRANTS** the Motion for Preliminary Injunction.

Accordingly, the Court **ORDERS** that the Defendant and each of their respective officers, agents, servants, and employees—are hereby:

1) **ENJOINED** from implementing and/or enforcing against Texas Gun Rights, Inc. and all of its members the provisions in 27 C.F.R. §§ 478.11 and 479.11 that the Court has preliminarily determined are unlawful and that the United States Court of Appeals for the Fifth Circuit has determined are unlawful;

2) **ENJOINED** from implementing and/or enforcing against National Association for Gun Rights, Inc and all of its members the provisions in 27 C.F.R. §§ 478.11 and 479.11 that the Court has preliminarily determined are unlawful and that the United States Court of Appeals for the Fifth Circuit has determined are unlawful.

The injunctive relief shall not extend to any individual prohibited from possessing firearms under 18 U.S.C. § 922 (g). The injunctive relief shall take effect immediately and

remain in effect pending the conclusion and final disposition of all claims and causes of action before the Court in these review proceedings. 5 U.S.C. § 705.

The Court waives the security requirement of Federal Rule of Civil Procedure 65(c). *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).[13]

**SO ORDERED** on this **4th day** of **October, 2023**.

---

[13] Because neither party raises the security requirement in Rule 65(c), no security is ordered. *See* FED. R. CIV. P. 65(c).

23-11204.339

TAB 13

APPEAL,APPEAL_NAT,JKH,STAYED

# U.S. District Court
# SOUTHERN DISTRICT OF TEXAS (Victoria)
# CIVIL DOCKET FOR CASE #: 6:23-cv-00013
# Internal Use Only

| | |
|---|---|
| State of Texas et al v. Bureau of Alcohol, Tobacco, Firearms and Explosives et al | Date Filed: 02/09/2023 |
| Assigned to: Judge Drew B Tipton | Jury Demand: None |
| Cause: 05:702 Administrative Procedure Act | Nature of Suit: 899 Other Statutes: Administrative Procedures Act/Review or Appeal of Agency Decision |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

| | | |
|---|---|---|
| **State of Texas** | represented by | **Aaron Francis Reitz** |
| | | Office of the Attorney General of Texas |
| | | 209 W. 14th Street |
| | | Ste 8th Floor |
| | | Austin, TX 78701 |
| | | 512-936-1989 |
| | | Email: aaron.reitz@oag.texas.gov |
| | | *TERMINATED: 06/05/2023* |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Charles Kenneth Eldred** |
| | | Attorney General of Texas |
| | | Administrative Law Division |
| | | P O Box 12548 |
| | | MC-018 |
| | | Austin, TX 78711-2548 |
| | | Travis |
| | | 512-936-1706 |
| | | Fax: 512-320-0167 |
| | | Email: charles.eldred@oag.texas.gov |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Christina Cella** |
| | | Office of the Texas Attorney General |
| | | General Litigation Division |
| | | 300 W. 15th Street |
| | | 6th Floor |
| | | Austin, TX 78701 |
| | | 512-475-2952 |
| | | Email: christina.cella@oag.texas.gov |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **Leif A. Olson** |
| | | Office of the Attorney General of Iowa |
| | | 1305 E. Walnut St. |

23-40685.1

Des Moines, IA 50319
515-954-9564
Email: leif.olson@ag.iowa.gov
*TERMINATED: 07/28/2023*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gun Owners of America, Inc.**          represented by   **Anthony Roman Napolitano**
Bergin, Frakes, Smalley & Oberholtzer
PLLC
4343 E. Camelback Rd
Ste 210
Phoenix, AZ 85018
602-888-7855
Email: anapolitano@bfsolaw.com
*ATTORNEY TO BE NOTICED*

**Gilbert Joseph Davys Ambler**
Ambler Law Offices, LLC
20 S. Braddock St
Winchester, VA 22601
540-550-4236
Email: gilbert@amblerlawoffices.com
*ATTORNEY TO BE NOTICED*

**Stephen Dean Stamboulieh**
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
601-852-3440
Email: stephen@sdslaw.us
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gun Owners Foundation**          represented by   **Anthony Roman Napolitano**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gilbert Joseph Davys Ambler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Dean Stamboulieh**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Brady Brown**          represented by   **Anthony Roman Napolitano**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Gilbert Joseph Davys Ambler**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Stephen Dean Stamboulieh**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Bureau of Alcohol, Tobacco, Firearms and Explosives**

represented by **Faith Elaine Lowry**
U.S. Department of Justice - Civil Division
Federal Programs Branch
1100 L Street
Washington, DC 20005
202-305-2532
Email: faith.e.lowry@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Jody D. Lowenstein**
DOJ-Civ
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-598-9280
Email: jody.d.lowenstein@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Taylor Pitz**
DOJ-Civ
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-305-5200
Email: taylor.n.pitz@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. Department of Justice**

represented by **Faith Elaine Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jody D. Lowenstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Taylor Pitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Steven M Dettelbach**
*Director of ATF*

represented by **Faith Elaine Lowry**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jody D. Lowenstein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Taylor Pitz**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/09/2023 | 1 (p.13) | COMPLAINT against All Defendants (Filing fee $ 402 receipt number ATXSDC-29445486) filed by STATE OF TEXAS, Brady Brown, Gun Owners Foundation, Gun Owners of America, Inc.. (Attachments: # 1 (p.13) Exhibit Declaration of Erich Pratt, # 2 (p.165) Summons on Dettelbach, # 3 (p.166) Summons on ATF, # 4 (p.174) Summons on Civil Process Clerk, # 5 (p.176) Summons on AG, # 6 (p.178) Civil Cover Sheet Civil Cover, # 7 (p.180) Gun Owners Foundation 7.1 disclosure, # 8 (p.182) Gun Owners of America 7.1 disclosure)(Stamboulieh, Stephen) (Entered: 02/09/2023) |
| 02/09/2023 | 2 (p.165) | NOTICE of Appearance by Gilbert Ambler on behalf of Brady Brown, Gun Owners Foundation, Gun Owners of America, Inc., filed. (Ambler, Gilbert) (Entered: 02/09/2023) |
| 02/09/2023 | | (Court only) Judge Hampton randomly selected to receive referrals. (BrittanyBoniface, 6) (Entered: 02/10/2023) |
| 02/10/2023 | 3 (p.166) | Request for Issuance of Summons as to All Defendants, filed. (Attachments: # 1 (p.13) CPC Summons, # 2 (p.165) ATF Summons, # 3 (p.166) Dettelbach Summons)(Stamboulieh, Stephen) (Entered: 02/10/2023) |
| 02/10/2023 | 4 (p.174) | CORPORATE DISCLOSURE STATEMENT by Gun Owners of America, Inc., filed.(Stamboulieh, Stephen) (Entered: 02/10/2023) |
| 02/10/2023 | 5 (p.176) | CORPORATE DISCLOSURE STATEMENT by Gun Owners Foundation, filed.(Stamboulieh, Stephen) (Entered: 02/10/2023) |
| 02/10/2023 | 6 (p.178) | NOTICE of Appearance by Christina Cella on behalf of State of Texas, filed. (Cella, Christina) (Entered: 02/10/2023) |
| 02/10/2023 | 7 (p.180) | NOTICE of Appearance by Charles K. Eldred on behalf of State of Texas, filed. (Eldred, Charles) (Entered: 02/10/2023) |
| 02/10/2023 | 8 (p.182) | NOTICE of Appearance by Leif A. Olson on behalf of State of Texas, filed. (Olson, Leif) (Entered: 02/10/2023) |
| 02/13/2023 | 9 (p.184) | Summons Issued as to Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Attorney and U.S. Attorney General. Issued summons returned to plaintiff by NEF, filed.(BrittanyBoniface, 6) (Entered: 02/13/2023) |
| 02/13/2023 | 10 (p.192) | NOTICE of Appearance by Aaron F. Reitz on behalf of State of Texas, filed. (Reitz, Aaron) (Entered: 02/13/2023) |

| 02/14/2023 | 11 (p.194) | ORDER for Initial Pretrial and Scheduling Conference and Order to Disclose Interested Persons. Initial Conference set for 5/15/2023 at 03:30 PM by video before Judge Drew B Tipton.(Signed by Judge Drew B Tipton) Parties notified.(BrittanyBoniface, 6) (Entered: 02/14/2023) |
|---|---|---|
| 02/27/2023 | 12 (p.207) | RETURN of Service of SUMMONS Executed as to Bureau of Alcohol, Tobacco, Firearms and Explosives served on 2/16/2023, answer due 4/17/2023; Steven M Dettelbach served on 2/16/2023, answer due 4/17/2023; U.S. Department of Justice served on 2/16/2023, answer due 4/17/2023, filed. (Attachments: # 1 (p.13) Exhibit Certified Mail Signature, # 2 (p.165) Exhibit Certified Mail Signature, # 3 (p.166) Exhibit Certified Mail Signature, # 4 (p.174) Exhibit Certified Mail Signature)(Stamboulieh, Stephen) (Entered: 02/27/2023) |
| 02/27/2023 | 13 (p.212) | NOTICE of Appearance by Anthony R. Napolitano on behalf of Brady Brown, Gun Owners Foundation, Gun Owners of America, Inc., filed. (Napolitano, Anthony) (Entered: 02/27/2023) |
| 03/06/2023 | 14 (p.214) | Unopposed MOTION for Leave to File Excess Pages by State of Texas, filed. Motion Docket Date 3/27/2023. (Attachments: # 1 (p.13) Proposed Order, # 2 (p.165) Unredacted attachment, # 3 (p.166) Exhibit, # 4 (p.174) Exhibit, # 5 (p.176) Exhibit, # 6 (p.178) Exhibit, # 7 (p.180) Exhibit, # 8 (p.182) Exhibit, # 9 (p.184) Exhibit, # 10 (p.192) Exhibit, # 11 (p.194) Exhibit, # 12 (p.207) Exhibit, # 13 (p.212) Exhibit, # 14 (p.214) Exhibit, # 15 (p.398) Exhibit)(Eldred, Charles) (Entered: 03/06/2023) |
| 03/06/2023 | 15 (p.398) | ORDER granting 14 (p.214) Motion for Leave to File Excess Pages.(Signed by Judge Drew B Tipton) Parties notified.(KelliePapaioannou, 2) (Entered: 03/06/2023) |
| 03/06/2023 | 16 (p.399) | MOTION for Preliminary Injunction by State of Texas, filed. Motion Docket Date 3/27/2023. (Attachments: # 1 (p.13) Exhibit, # 2 (p.165) Exhibit, # 3 (p.166) Exhibit, # 4 (p.174) Exhibit, # 5 (p.176) Exhibit, # 6 (p.178) Exhibit, # 7 (p.180) Exhibit, # 8 (p.182) Exhibit, # 9 (p.184) Exhibit, # 10 (p.192) Exhibit, # 11 (p.194) Exhibit, # 12 (p.207) Exhibit, # 13 (p.212) Exhibit, # 14 (p.214) Exhibit)(Eldred, Charles) (Entered: 03/06/2023) |
| 03/17/2023 | 17 (p.592) | MOTION for Ruling on Preliminary Injunction Before April 1 by State of Texas, filed. Motion Docket Date 4/7/2023. (Eldred, Charles) (Entered: 03/17/2023) |
| 03/27/2023 | 18 (p.596) | MOTION for Jody D. Lowenstein to Appear Pro Hac Vice by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed. Motion Docket Date 4/17/2023. (Lowenstein, Jody) (Entered: 03/27/2023) |
| 03/27/2023 | 19 (p.597) | ORDER approving 18 (p.596) Motion to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here.**(Signed by Judge Drew B Tipton) Parties notified.(SashaOzuna, 2) (Entered: 03/27/2023) |
| 03/27/2023 | 20 (p.598) | MOTION for Faith E. Lowry to Appear Pro Hac Vice by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed. Motion Docket Date 4/17/2023. (Lowry, Faith) (Entered: 03/27/2023) |
| 03/27/2023 | 21 (p.599) | MOTION for Leave to File Response Exceeding the Word Limit by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed. Motion Docket Date 4/17/2023. (Attachments: # 1 |

| | | |
|---|---|---|
| | | (p.13) Proposed Order Granting Motion for Leave to Exceed the Word Limit)(Lowry, Faith) (Entered: 03/27/2023) |
| 03/27/2023 | 22 (p.603) | RESPONSE in Opposition to 16 (p.399) MOTION for Preliminary Injunction, filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice. (Attachments: # 1 (p.13) Proposed Order Denying Preliminary Injunction Motion)(Lowry, Faith) (Entered: 03/27/2023) |
| 03/28/2023 | 23 (p.668) | ORDER granting 21 (p.599) Motion for Leave to Exceed Word Limit.(Signed by Judge Drew B Tipton) Parties notified.(KelliePapaioannou, 2) (Entered: 03/28/2023) |
| 03/28/2023 | 24 (p.669) | ORDER granting 20 (p.598) Motion for Faith E. Lowry to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Drew B Tipton) Parties notified.(MaraGonzales, 2) (Entered: 03/28/2023) |
| 03/30/2023 | 25 (p.670) | NOTICE *of Supplemental Authority* re: 22 (p.603) Response in Opposition to Motion, by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed. (Attachments: # 1 (p.13) Exhibit Supplemental Authority)(Lowry, Faith) (Entered: 03/30/2023) |
| 03/31/2023 | 26 (p.689) | ORDER The Court ORDERS the Parties to submitbriefing within 14 days from the date of this Order discussing how Mock v. Garland impacts the issues in the pending Motion for Preliminary Injunction in this case.(Signed by Judge Drew B Tipton) Parties notified.(KelliePapaioannou, 2) (Entered: 03/31/2023) |
| 03/31/2023 | | (Court only) ***Motion(s) terminated: 17 (p.592) MOTION for Ruling on Preliminary Injunction Before April 1. (KelliePapaioannou, 2) (Entered: 03/31/2023) |
| 03/31/2023 | | The Court terminates 17 (p.592) Motion for Ruling on Preliminary Injunction Before April 1 as moot., filed. (KelliePapaioannou, 2) (Entered: 03/31/2023) |
| 03/31/2023 | 27 (p.691) | Unopposed MOTION Enlargement of Word Limit by State of Texas, filed. Motion Docket Date 4/21/2023. (Attachments: # 1 (p.13) Proposed Order)(Eldred, Charles) (Entered: 03/31/2023) |
| 04/03/2023 | 28 (p.695) | ORDER Increasing Word Limit granting 27 (p.691) . (Signed by Judge Drew B Tipton) Parties notified.(KelliePapaioannou, 2) (Entered: 04/03/2023) |
| 04/03/2023 | 29 (p.696) | REPLY in Support of 16 (p.399) MOTION for Preliminary Injunction, filed by State of Texas. (Eldred, Charles) (Entered: 04/03/2023) |
| 04/13/2023 | 30 (p.739) | MOTION for Taylor Pitz to Appear Pro Hac Vice by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed. Motion Docket Date 5/4/2023. (Pitz, Taylor) (Entered: 04/13/2023) |
| 04/14/2023 | 31 (p.740) | Unopposed MOTION for Extension of Time To Respond to Plaintiffs' Complaint by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed. Motion Docket Date 5/5/2023. (Attachments: # 1 (p.13) Proposed Order)(Pitz, Taylor) (Entered: 04/14/2023) |
| 04/14/2023 | 32 (p.744) | ORDER granting 30 (p.739) Motion for Taylor Pitz to Appear Pro Hac Vice **Note: Instructions to request Texas Southern CM/ECF registration through PACER are found here**.(Signed by Judge Drew B Tipton) Parties notified.(KelliePapaioannou, 2) (Entered: 04/14/2023) |

| 04/14/2023 | 33 (p.745) | ORDER granting 31 (p.740) Unopposed MOTION for Extension of Time To Respond to Plaintiffs' Complaint. Answer due 30 days after the Court issues a ruling on 16 (p.399) Motion for Preliminary Injunction.(Signed by Judge Drew B Tipton) Parties notified.(KelliePapaioannou, 2) (Entered: 04/14/2023) |
|---|---|---|
| 04/14/2023 | 34 (p.746) | RESPONSE to 26 (p.689) Order, *Plaintiff's Brief on Mock v. Garland*, filed by State of Texas. (Cella, Christina) (Entered: 04/14/2023) |
| 04/14/2023 | 35 (p.759) | Supplemental BRIEF In Response to Court's Order re: 26 (p.689) Order, by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed.(Pitz, Taylor) (Entered: 04/14/2023) |
| 04/27/2023 | 36 (p.770) | CERTIFICATE OF INTERESTED PARTIES by Brady Brown, Gun Owners Foundation, Gun Owners of America, Inc., filed.(Stamboulieh, Stephen) (Entered: 04/27/2023) |
| 04/28/2023 | 37 (p.774) | NOTICE *of Supplemental Authority and Incorrect ATF Testimony* by State of Texas, filed. (Cella, Christina) (Entered: 04/28/2023) |
| 05/01/2023 | 38 (p.779) | REPORT of Rule 26(f) Planning Meeting by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed. (Attachments: # 1 (p.13) Proposed Order)(Pitz, Taylor) (Entered: 05/01/2023) |
| 05/03/2023 | 39 (p.790) | NOTICE of Resetting. Parties notified. Initial Conference reset for 5/23/2023 at 03:30 PM in by video before Judge Drew B Tipton, filed. (KelliePapaioannou, 2) (Entered: 05/03/2023) |
| 05/17/2023 | 40 (p.791) | NOTICE of Resetting. Parties notified. Initial Conference reset for 6/21/2023 at 04:00 PM by video before Judge Drew B Tipton, filed. (KelliePapaioannou, 2) (Entered: 05/17/2023) |
| 05/23/2023 | 41 (p.792) | NOTICE *of Supplemental Authority* by State of Texas, filed. (Attachments: # 1 (p.13) Errata)(Cella, Christina) (Entered: 05/23/2023) |
| 05/24/2023 | 42 (p.801) | NOTICE of Setting re: 41 (p.792) Notice (Other). Parties notified. Status Conference set for 5/25/2023 at 03:30 PM by video before Judge Drew B Tipton, filed. Zoom link emailed to parties. Public Dial in: Dial by your location +1 669 254 5252 US (San Jose +1 646 828 7666 US (New York) Meeting ID: 160 994 8471Passcode: 754354 (KelliePapaioannou, 2) (Entered: 05/24/2023) |
| 05/25/2023 | 43 (p.802) | RESPONSE to 41 (p.792) Notice (Other) *of Supplemental Authority*, filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice. (Pitz, Taylor) (Entered: 05/25/2023) |
| 05/25/2023 | | Minute Entry for proceedings held before Judge Drew B Tipton. STATUS CONFERENCE held on 5/25/2023. The Court Orders parties to file briefs on issues discussed on the record by 12:00 PM on 5/30/2023. Responses due by 12:00 PM on 5/31/2023. Appearances: Stephen Dean Stamboulieh, Jody D. Lowenstein, Christina Cella, Leif A. Olson.(Digital # 3:33-4:20)(ERO:Stacie Marthiljohni), filed.(KelliePapaioannou, 2) (Entered: 05/25/2023) |
| 05/26/2023 | 44 (p.805) | NOTICE *of Fifth Circuit Order on Clarification of Scope of Injunction* by Brady Brown, Gun Owners Foundation, Gun Owners of America, Inc., filed. (Attachments: # 1 (p.13) 5th Circuit Order on Clarifying)(Stamboulieh, Stephen) (Entered: 05/26/2023) |
| 05/30/2023 | 45 (p.812) | |

| | | SUPPLEMENT to Status Conference, by State of Texas, filed.(Cella, Christina) (Entered: 05/30/2023) |
|---|---|---|
| 05/30/2023 | 46 (p.819) | RESPONSE to Status Conference, , filed by Brady Brown, Gun Owners Foundation, Gun Owners of America, Inc.. (Stamboulieh, Stephen) (Entered: 05/30/2023) |
| 05/30/2023 | 47 (p.828) | Supplemental BRIEF in Opposition re: 16 (p.399) MOTION for Preliminary Injunction by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed.(Lowenstein, Jody) (Entered: 05/30/2023) |
| 05/31/2023 | 48 (p.841) | RESPONSE to Status Conference, 47 (p.828) Brief , filed by Brady Brown, Gun Owners Foundation, Gun Owners of America, Inc.. (Stamboulieh, Stephen) (Entered: 05/31/2023) |
| 05/31/2023 | 49 (p.853) | REPLY to Status Conference, , filed by State of Texas. (Cella, Christina) (Entered: 05/31/2023) |
| 05/31/2023 | 50 (p.857) | RESPONSE to Status Conference, *and Plaintiffs' Supplemental Briefing*, filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice. (Lowenstein, Jody) (Entered: 05/31/2023) |
| 05/31/2023 | 51 (p.870) | ORDER GRANTING IN PART 16 (p.399) Motion for Preliminary Injunction.(Signed by Judge Drew B Tipton) Parties notified.(KelliePapaioannou, 2) (Entered: 05/31/2023) |
| 06/01/2023 | 52 (p.878) | AO 435 TRANSCRIPT REQUEST by Defendants/Jody D. Lowenstein for Transcript of Status Conference on 5/25/23 before Judge Tipton. 3-Day turnaround requested. Court Reporter/Transcriber: Access Transcripts, filed. (Lowenstein, Jody) Electronically forwarded to Access Transcripts on 6/1/23. Estimated Transcript Completion Date: 6/6/23. (BrittanyBoniface, 6). (Entered: 06/01/2023) |
| 06/02/2023 | 53 (p.51362) | TRANSCRIPT re: Status Conference held on 05/25/23 before Judge Drew B Tipton. Court Reporter/Transcriber Access Transcripts, LLC. Ordering Party Jody Lowenstein Release of Transcript Restriction set for 8/31/2023., filed. (AccessTranscripts, ) (Entered: 06/02/2023) |
| 06/05/2023 | 54 (p.880) | Notice of Filing of Official Transcript as to 53 (p.51362) Transcript. Party notified, filed. (BrittanyBoniface, 6) (Entered: 06/05/2023) |
| 06/05/2023 | 55 (p.881) | Unopposed MOTION for Aaron F. Reitz to Withdraw as Attorney by State of Texas, filed. Motion Docket Date 6/26/2023. (Attachments: # 1 (p.13) Proposed Order)(Eldred, Charles) (Entered: 06/05/2023) |
| 06/05/2023 | 56 (p.884) | ORDER Granting 55 (p.881) Unopposed Motion to Withdraw as Attorney. Attorney Aaron Francis Reitz terminated.(Signed by Judge Drew B Tipton) Parties notified.(KelliePapaioannou, 2) (Entered: 06/05/2023) |
| 06/12/2023 | 57 (p.885) | NOTICE of Resetting. Parties notified. Initial Conference reset for 8/17/2023 at 03:30 PM. by video before Judge Drew B Tipton, filed. Zoom link will be emailed to the parties. Public Dial in: Dial by your location +1 669 254 5252 US (San Jose +1 646 828 7666 US (New York). Meeting ID: 160 994 8471Passcode: 754354 (KelliePapaioannou, 2) (Entered: 06/12/2023) |
| 06/24/2023 | 58 (p.886) | MOTION to Stay *Proceedings* by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed. Motion Docket |

| | | Date 7/17/2023. (Attachments: # 1 (p.13) Proposed Order)(Lowenstein, Jody) (Entered: 06/24/2023) |
|---|---|---|
| 06/27/2023 | 59 (p.897) | Agreed MOTION for Extension of Time to Respond to Complaint by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed. Motion Docket Date 7/18/2023. (Attachments: # 1 (p.13) Proposed Order)(Lowenstein, Jody) (Entered: 06/27/2023) |
| 06/27/2023 | 60 (p.902) | ORDER Granting 59 (p.897) Agreed MOTION for Extension of Time to Respond to Complaint.(Signed by Judge Drew B Tipton) Parties notified.(KelliePapaioannou, 2) (Entered: 06/27/2023) |
| 07/17/2023 | 61 (p.903) | RESPONSE in Opposition to 58 (p.886) MOTION to Stay *Proceedings*, filed by State of Texas. (Cella, Christina) (Entered: 07/17/2023) |
| 07/24/2023 | 62 (p.907) | REPLY in Support of 58 (p.886) MOTION to Stay *Proceedings*, filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice. (Lowenstein, Jody) (Entered: 07/24/2023) |
| 07/28/2023 | 63 (p.912) | Unopposed MOTION for Leif A. Olson to Withdraw as Attorney by State of Texas, filed. Motion Docket Date 8/18/2023. (Attachments: # 1 (p.13) Proposed Order)(Olson, Leif) (Entered: 07/28/2023) |
| 07/28/2023 | 64 (p.915) | ORDER granting 63 (p.912) Motion to Withdraw as Attorney. Attorney Leif A. Olson terminated.(Signed by Judge Drew B Tipton) Parties notified.(BrittanyBoniface, 6) (Entered: 07/28/2023) |
| 07/31/2023 | 65 (p.916) | ORDER granting 58 (p.886) Motion to Stay. This case is STAYED pending the Fifth Circuits resolution of the expedited appeal in Mock v. Garland, No. 23-10319. (Signed by Judge Drew B Tipton) Parties notified.(BrittanyBoniface, 6) (Entered: 08/01/2023) |
| 08/08/2023 | 66 (p.919) | STATUS REPORT by State of Texas, filed.(Cella, Christina) (Entered: 08/08/2023) |
| 08/30/2023 | 67 (p.924) | NOTICE of Setting. Parties notified. Status Conference set for 8/31/2023 at 03:30 PM by video before Judge Drew B Tipton, filed. (KelliePapaioannou, 2) (Entered: 08/30/2023) |
| 08/31/2023 | | Minute Entry for proceedings held before Judge Drew B Tipton. STATUS CONFERENCE held on 8/31/2023. Parties to confer and submit proposed supplemental briefing schedule by September 5, 2023. Appearances: Stephen Dean Stamboulieh, Jody D. Lowenstein.(Digital # 3:35-3:49)(ERO:Brittany Boniface), filed.(KelliePapaioannou, 2) (Entered: 09/01/2023) |
| 09/01/2023 | 68 (p.925) | AO 435 TRANSCRIPT REQUEST by Defendants/Jody D. Lowenstein for Transcript of Status Conference on 8/31/23 before Judge Tipton. Daily (24 hours) turnaround requested. Court Reporter/Transcriber: Access Transcripts, filed. (Lowenstein, Jody) Electronically forwarded to Access on 9/5/2023. Estimated transcript completion date: 9/6/2023. Modified on 9/5/2023 (BrittanyBoniface, 6). (Entered: 09/01/2023) |
| 09/05/2023 | 69 (p.927) | Joint MOTION to Enter Proposed Briefing Schedule and Stipulated Administrative Stay by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed. Motion Docket Date 9/26/2023. (Lowenstein, Jody) (Entered: 09/05/2023) |

| | | |
|---|---|---|
| 09/06/2023 | 70 (p.51399) | TRANSCRIPT re: Status Conference held on 8/31/23 before Judge Drew B Tipton. Court Reporter/Transcriber Access Transcripts. Ordering Party Jody D. Lowenstein Release of Transcript Restriction set for 12/5/2023., filed. (AccessTranscripts, ) (Entered: 09/06/2023) |
| 09/07/2023 | 71 (p.932) | Notice of Filing of Official Transcript as to 70 (p.51399) Transcript. Party notified, filed. (BrittanyBoniface, 6) (Entered: 09/07/2023) |
| 09/15/2023 | 72 (p.933) | ORDER Granting 69 (p.927) Joint MOTION to Enter Proposed Briefing Schedule and Stipulated Administrative Stay. (Plaintiffs' supplemental brief due by 9/22/2023, Defendants' supplemental brief due by 9/29/2023. Plaintiffs' Reply due by 10/3/2023)(Signed by Judge Drew B Tipton) Parties notified.(KelliePapaioannou, 2) (Entered: 09/15/2023) |
| 09/22/2023 | 73 (p.935) | Supplemental BRIEF *Regarding the Impact of Mock v. Garland* re: 65 (p.916) Order on Motion to Stay, 26 (p.689) Order, by State of Texas, filed.(Cella, Christina) (Entered: 09/22/2023) |
| 09/29/2023 | 74 (p.947) | BRIEF Supplemental Brief by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed.(Lowry, Faith) (Entered: 09/29/2023) |
| 10/03/2023 | 75 (p.956) | REPLY to 26 (p.689) Order, *to Defendant's Supplement Brief Regarding the Impact of Mock v. Garland*, filed by State of Texas. (Cella, Christina) (Entered: 10/03/2023) |
| 10/04/2023 | 76 (p.962) | NOTICE *Plaintiffs' Notice of Supplemental Authority* by State of Texas, filed. (Attachments: # 1 (p.13) Unredacted attachment Attachment 1, # 2 (p.165) Unredacted attachment Attachment 2)(Cella, Christina) (Entered: 10/04/2023) |
| 10/06/2023 | 77 (p.1019) | Unopposed MOTION to Stay *Defendants' Obligation to Respond to the Complaint* by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed. Motion Docket Date 10/27/2023. (Attachments: # 1 (p.13) Proposed Order)(Lowenstein, Jody) (Entered: 10/06/2023) |
| 10/06/2023 | 78 (p.1023) | ORDER granting 77 (p.1019) Motion to Stay Obligation to Respond to the Complaint.(Signed by Judge Drew B Tipton) Parties notified.(KelliePapaioannou, 2) (Entered: 10/06/2023) |
| 10/19/2023 | 79 (p.1024) | ORDER. The Court now extends the administrative stay of the Rules enforcement against Plaintiffs through October 27, 2023.(Signed by Judge Drew B Tipton) Parties notified.(BrittanyBoniface, 6) (Entered: 10/19/2023) |
| 10/27/2023 | 80 (p.1025) | MEMORANDUM OPINION AND ORDER Granting in Part 16 (p.399) Motion for Preliminary Injunction.(Signed by Judge Drew B Tipton) Parties notified.(KelliePapaioannou, 2) (Entered: 10/27/2023) |
| 11/10/2023 | 81 (p.1054) | Joint MOTION for Entry of Order re: Proposed Briefing Schedule by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven M Dettelbach, U.S. Department of Justice, filed. Motion Docket Date 12/1/2023. (Attachments: # 1 (p.13) Proposed Order)(Lowenstein, Jody) (Entered: 11/10/2023) |
| 11/13/2023 | 82 (p.1060) | ORDER granting 81 (p.1054) Joint Motion to Enter Proposed Briefing Schedule..(Signed by Judge Drew B Tipton) Parties notified.(LanaReimann, 6) (Entered: 11/13/2023) |
| 11/29/2023 | | |

| | | |
|---|---|---|
| | 83 (p.1062) | NOTICE OF INTERLOCUTORY APPEAL to US Court of Appeals for the Fifth Circuit re: 80 (p.1025) Memorandum and Opinion by All Defendants, filed.(Lowenstein, Jody) (Entered: 11/29/2023) |
| 11/30/2023 | | (Court only) ***No pending motions need to be addressed for NOA. (BrittanyBoniface, 6) (Entered: 11/30/2023) |
| 11/30/2023 | 84 (p.1064) | Clerks Notice of Filing of an Appeal. The following Notice of Appeal and related motions are pending in the District Court: 83 (p.1062) Notice of Interlocutory Appeal. Fee status: GOV. Reporter(s): ERO, filed. (Attachments: # 1 (p.13) Notice of Appeal) (BrittanyBoniface, 6) (Entered: 11/30/2023) |
| 11/30/2023 | | Appeal Review Notes re: 83 (p.1062) Notice of Interlocutory Appeal. Fee status: GOV. The appellant is a U.S. government agency, and no fee is required.Hearings were held in the case - transcripts were produced. Number of DKT-13 Forms expected: 1, filed.(BrittanyBoniface, 6) (Entered: 11/30/2023) |
| 11/30/2023 | 85 (p.1068) | MOTION for Summary Judgment by Brady Brown, Gun Owners Foundation, Gun Owners of America, Inc., State of Texas, filed. Motion Docket Date 12/21/2023. (Eldred, Charles) (Entered: 11/30/2023) |
| 12/01/2023 | 86 (p.1132) | ADMINISTRATIVE TRANSCRIPT/RECORD from Bureau of Alcohol, Tobacco, Firearms and Explosives by Brady Brown, Gun Owners Foundation, Gun Owners of America, Inc., State of Texas, filed. (Attachments: # 1 (p.13) Certification of Administrative Record, # 2 (p.165) AR 1 part 1, # 3 (p.166) AR 1 part 2, # 4 (p.174) AR 2 part 1, # 5 (p.176) AR 2 part 2, # 6 (p.178) AR 3, # 7 (p.180) AR 4, # 8 (p.182) AR 5, # 9 (p.184) AR 6, # 10 (p.192) AR 6a, # 11 (p.194) AR 6b, # 12 (p.207) AR 6c, # 13 (p.212) AR 6d, # 14 (p.214) AR 6e, # 15 (p.398) AR 6f, # 16 (p.399) AR 6g, # 17 (p.592) AR 6h, # 18 (p.596) AR 6i, # 19 (p.597) AR 6j, # 20 (p.598) AR 6k, # 21 (p.599) AR 6l, # 22 (p.603) AR 6m, # 23 (p.668) AR 6n, # 24 (p.669) AR 6o, # 25 (p.670) AR 6p, # 26 (p.689) AR 6q, # 27 (p.691) AR 6r, # 28 (p.695) AR 6s, # 29 (p.696) AR 6t, # 30 (p.739) AR 6u, # 31 (p.740) AR 6v, # 32 (p.744) AR 6w, # 33 (p.745) AR 6x, # 34 (p.746) AR 6y, # 35 (p.759) AR 6z, # 36 (p.770) AR 7a, # 37 (p.774) AR 7b, # 38 (p.779) AR 7c, # 39 (p.790) AR 7d, # 40 (p.791) AR 7e, # 41 (p.792) AR 7f, # 42 (p.801) AR 7g, # 43 (p.802) AR 7h, # 44 (p.805) AR 7i, # 45 (p.812) AR 7j, # 46 (p.819) AR 7k, # 47 (p.828) AR 7l, # 48 (p.841) AR 7m, # 49 (p.853) AR 7n, # 50 (p.857) AR 7o, # 51 (p.870) AR 7p, # 52 (p.878) AR 7q, # 53 (p.51362) AR 7r, # 54 (p.880) AR 7s, # 55 (p.881) AR 7t, # 56 (p.884) AR 7u, # 57 (p.885) AR 7v, # 58 (p.886) AR 7w, # 59 (p.897) AR 8, # 60 (p.902) AR 9, # 61 (p.903) AR 10, # 62 (p.907) AR 11, # 63 (p.912) AR 12, # 64 (p.915) AR 13, # 65 (p.916) AR 14, # 66 (p.919) AR 15, # 67 (p.924) AR 16 part 1, # 68 (p.925) AR 16 part 2, # 69 (p.927) AR 17 part 1, # 70 (p.51399) AR 17 part 2, # 71 (p.932) AR 18 part 1, # 72 (p.933) AR 18 part 2, # 73 (p.935) AR 19 part 1, # 74 (p.947) AR 19 part 2, # 75 (p.956) AR 20 part 1, # 76 (p.962) AR 20 part 2, # 77 (p.1019) AR 21 part 1, # 78 (p.1023) AR 21 part 2, # 79 (p.1024) AR 21 part 3, # 80 (p.1025) AR 21 part 4, # 81 (p.1054) AR 22 part 1, # 82 (p.1060) AR 22 part 2, # 83 (p.1062) AR 22 part 3, # 84 (p.1064) AR 23, # 85 (p.1068) AR 24, # 86 (p.1132) AR 25 part 1, # 87 AR 25 part 2, # 88 AR 25 part 3, # 89 AR 25a, # 90 AR 25b, # 91 AR 25c, # 92 AR 25d, # 93 AR 26)(Eldred, Charles) (Entered: 12/01/2023) |
| 12/05/2023 | | Notice of Assignment of USCA No. 23-40685 re: 83 (p.1062) Notice of Interlocutory Appeal, filed.(BrittanyBoniface, 6) (Entered: 12/05/2023) |
| 12/05/2023 | | |

| | | ROA requested from USCA, due on 12/20/2023, filed. (BrittanyBoniface, 6) (Entered: 12/05/2023) |

TAB 14

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

STATE OF TEXAS, *et al.*,

     *Plaintiffs*,

    v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, *et al.*,

     *Defendants*.

Civil Action No. 6:23-cv-00013

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that all defendants hereby appeal to the United States Court of Appeals for the Fifth Circuit from this Court's memorandum opinion and order dated October 27, 2023, ECF No. 80, granting in part plaintiffs' motion for a preliminary injunction, ECF No. 16.

Dated: November 29, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN (MT Bar No. 55816869)
MICHAEL DREZNER (VA Bar No. 83836)
TAYLOR PITZ (CA Bar No. 332080)
FAITH E. LOWRY (TX Bar No. 24099560)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

On November 29, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Jody D. Lowenstein
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice

TAB 15

United States District Court
Southern District of Texas

**ENTERED**

October 27, 2023

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | | |
|---|---|---|
| The STATE OF TEXAS, GUN OWNERS | § | |
| OF AMERICA, INC., GUN OWNERS | § | |
| FOUNDATION, and BRADY BROWN, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 6:23-CV-00013 |
| | § | |
| BUREAU OF ALCOHOL, | § | |
| TOBACCO, FIREARMS AND | § | |
| EXPLOSIVES, U.S. DEPARTMENT OF | § | |
| JUSTICE, and STEVEN M. | § | |
| DETTELBACH, Director of the U.S. | § | |
| Bureau of Alcohol, Tobacco, Firearms | § | |
| and Explosives, in his official capacity, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

In the early 20th century, Congress sought to regulate what it perceived to be a

dangerous subset of firearms in an effort to curb organized crime.  To that end, Congress

first passed the National Firearms Act of 1934 ("NFA") and later the Gun Control Act of

1968 ("GCA").  These statutes remain two of the primary means for regulating and

licensing firearms at the federal level.  They impose heightened requirements on the

manufacture, sale, and transfer of certain firearms, including short-barreled rifles

("SBRs").  That is important in this case because pistols, revolvers, and handguns are not

subject to those enhanced requirements.

Since 2012, however, the Bureau of Alcohol, Tobacco, Firearms and Explosives

("ATF") has seen a dramatic increase in the use of stabilizing braces on handguns.  These

braces were originally designed to assist people with disabilities, or mobility or strength issues so that they could safely handle heavy handguns. Over time, some of these stabilizing braces have taken on a new function and appearance and have morphed into what looks like a shoulder stock. As a result, handguns with those stabilizing braces attached now look like a rifle.

In January 2023, the ATF promulgated a Final Rule that modified the ATF's earlier regulations addressing how the agency would determine whether a weapon is a "rifle" for purposes of the NFA and GCA. One of the primary changes involves whether a handgun is transformed into an SBR when certain stabilizing braces are attached. So, the Final Rule instituted a six-part test for making this determination.

Plaintiffs have sued to invalidate the Final Rule alleging that it violates the Administrative Procedure Act and the United States Constitution. Plaintiffs allege that the Final Rule places law abiding citizens at risk of unwittingly becoming felons overnight. Plaintiffs ask for a preliminary injunction to prevent the rule from going into effect. Specifically, Plaintiffs request a nationwide injunction on the rule to maintain the status quo ante prior to the Final Rule's promulgation at the start of the year.

Pending before the Court is Plaintiffs' Motion for Preliminary Injunction. (Dkt. No. 16). For the following reasons, the Court **GRANTS IN PART** the Motion.

## I.       BACKGROUND

This case challenges an agency's final rule. Therefore, the regulatory history of the Final Rule is an integral part of the Court's analysis. The Court will review the relevant

23-40685.1026

statutes from which the ATF derived its authority to promulgate this Final Rule in order to understand its impact and decide whether a preliminary injunction is appropriate.

## A. STATUTORY HISTORY

In 1934, Congress passed the NFA. 26 U.S.C. §§ 5801–5872. The NFA was Congress's introduction to firearm regulation and "concentrated on particularly dangerous weapons and devices such as machine guns, sawedoff shotguns and silencers." *Lomont v. O'Neill*, 285 F.3d 9, 11 (D.C. Cir. 2002) (citing *Sonzinsky v. United States*, 300 U.S. 506, 511–12, 57 S.Ct. 554, 554–55, 81 L.Ed. 772 (1937)). To ensure that it covered only the most dangerous class of weapons, the NFA identified eight categories of "firearms" that the statute would regulate. *See* 26 U.S.C. § 5845(a).

The dispute in this case concerns two categories of firearms commonly referred to as SBRs. *Id.* § 5845(a)(3), (4). These two subsections describe an SBR as "a rifle having a barrel or barrels of less than 16 inches in length" or "a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length." *Id.* The NFA also defines a rifle:

> The term "rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and *made or remade* to use the energy of the explosive in a fixed cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed cartridge.[1]

---

[1] The GCA uses the same definition of rifle. *See* 18 U.S.C. § 921. Thus, any rules promulgated by the ATF that affect this definition implicate both the NFA and the GCA. This lawsuit, however, focuses primarily on the effects under the NFA.

23-40685.1027

*Id.* § 5845(c) (emphasis added).  The "made or remade" phrasing within the definition is construed broadly.  Specifically, the NFA defines "make" to include "manufacturing . . ., putting together, *altering*, any combination of these, or otherwise producing a firearm." *Id.* § 5845(i) (emphasis added).  Taken together, these portions of the NFA mean that a rifle—which alone would not be regulated by the NFA—can be put together or altered by its owner in a way that renders it an SBR, subject to the NFA.

To be clear, the NFA does not ban SBRs—it regulates them.  Such regulations require, *inter alia*, (1) requesting permission to create the SBR, (2) paying a $200 tax for every approved SBR made by an unlicensed person, (3) registering the SBR in the National Firearms Registration and Transfer Record, (4) and placing a serial number on the SBR.  26 U.S.C. §§ 5821, 5822.  Making or possessing an SBR in violation of any of these requirements is a crime.  *See* 26 U.S.C. § 5871.  And if charged with violating the statute, an offender could face up to 10 years in prison, up to $250,000 in fines, or both. *Id.*; 18 U.S.C. § 3571(b)(3).  Therefore, whether a specific modification to a firearm would convert it into an NFA-regulated SBR has tremendous ramifications for actual and prospective gun owners alike.

The power to enforce and administer the NFA is vested in the U.S. Attorney General.  18 U.S.C. § 926(a).  The Attorney General has delegated that responsibility to the ATF.  *See* 28 C.F.R. § 0.130.  Specifically, the ATF has the power to issue regulations, i.e., the ATF can publish interpretations of Congress' various gun statutes and offer explanations on how gun owners can best comply.  *See* 27 C.F.R. pts. 478, 479.  Moreover, the ATF has also made a practice of taking "classification requests," in which firearm

4

manufacturers and members of the public can "submit weapons or other devices to the ATF for a classification of whether the weapon or device qualifies as a 'firearm' under the NFA." *NFA Handbook* § 7.2.4 (Apr. 2009), https://perma.cc/P3NLG35G.

Near the end of 2020, the ATF turned its attention to a class of pistol attachments generally described as stabilizing braces. (Dkt. No. 22 at 22–23). Namely, the ATF grew concerned after "receiv[ing] an increasing number of classification requests for weapons equipped" with brace attachments resembling "characteristics common to shoulder stocks." (*Id.* at 21).

In January 2023, the ATF addressed its concerns with its newest rule, "Factoring Criteria for Firearms with Attached 'Stabilizing Braces'" (the "Final Rule"). 88 Fed. Reg. 6478 (Jan. 31, 2023) (to be codified at 27 C.F.R. pts. 478, 479). The Final Rule sought to clarify the ATF's interpretation of "rifle," as defined in the NFA. 88 Fed. Reg. at 6574–75 (amending 27 C.F.R. §§ 478.11, 479.11). Under the Final Rule, the phrasing in the NFA's definition of rifle, "designed or redesigned, made or remade, and intended to be fired from the shoulder," would now be read even more broadly than before, including:

> a weapon that is equipped with an accessory, component, or other rearward attachment (e.g., a "stabilizing brace") that provides surface area that allows the weapon to be fired from the shoulder[.]

*Id.* at 6480. If a weapon after production or modification fits this description, the Final Rule then employs six factors to determine whether the weapon is now converted into a rifle under the NFA. *Id.* These factors include:

> (1) Whether the weapon has a weight or length consistent with the weight or length of similarly designed rifles;

5

(2) Whether the weapon has a length of pull, measured from the center of the trigger to the center of the shoulder stock or other rearward accessory, component or attachment (including an adjustable or telescoping attachment with the ability to lock into various positions along a buffer tube, receiver extension, or other attachment method), that is consistent with similarly designed rifles;

(3) Whether the weapon is equipped with sights or a scope with eye relief that require the weapon to be fired from the shoulder in order to be used as designed;

(4) Whether the surface area that allows the weapon to be fired from the shoulder is created by a buffer tube, receiver extension, or any other accessory, component, or other rearward attachment that is necessary for the cycle of operations;

(5) The manufacturer's direct and indirect marketing and promotional materials indicating the intended use of the weapon; and

(6) Information demonstrating the likely use of the weapon in the general community.

*Id.* "If a firearm with an attached 'stabilizing brace' meets the definition of a 'rifle' based on the factors indicated in this final rule, then that firearm could also be a short-barreled rifle depending on the length of the attached barrel, thus subjecting it to additional requirements under the NFA[.]" *Id.* While the ATF does not elaborate on how this rubric will operate, e.g., whether each factor is weighted the same or some more than others, the effects of the rubric are clear—almost every time a weapon is evaluated under this new framework, it will be classified as a rifle. For example, in its "Final Regulatory Impact Analysis," regarding the Final Rule, the ATF estimates there would be only "1 percent of 'stabilizing braces' that, when attached to [a] firearm, would not result" in a rifle subject to the NFA. (Dkt. No. 16-9 at 21). The Fifth Circuit has also noted that after promulgating

6

the Final Rule, the ATF has not issued a single example of a "pistol with a stabilizing brace that would constitute an NFA-exempt braced pistol." *Mock v. Garland*, 75 F.4th 563, 575 (5th Cir. 2023).

The ATF estimates in its Final Regulatory Impact Analysis that the Final Rule converted 2,970,000 weapons to NFA-regulated SBRs.  (Dkt. No. 16-9 at 21).  For this group of affected gun owners, the Final Rule proposed five different avenues for compliance.  First, they could "[r]emove the short barrel and attach a 16-inch or longer rifled barrel to the firearm, thus removing it from the scope of the NFA." 88 Fed. Reg. at 6570.  Second, the owners could register the firearm as an SBR.  *Id*.  This option would also be exempt from the $200 "marking tax" that the NFA traditionally requires.  *Id.* at 6571.  Third, the stabilizing brace could be "permanently" removed, disposed of, or altered so that it could never be re-attached.  *Id.* at 6570.  Fourth, the newly minted SBR owners could simply turn their weapon over to the ATF.  *Id.*  And fifth, the owner could destroy their firearm.  *Id.*  As defined by the ATF, destruction of a firearm means rendering the weapon "not restorable to firing condition and . . . otherwise reduced to scrap." *How to Properly Destroy Firearms*, Bureau of Alcohol, Tobacco, and Firearms and Explosives, https://www.atf.gov/firearms/how-properly-destroy-firearms (last visited October 27, 2023).

The Final Rule went into immediate effect on January 31, 2023.  88 Fed. Reg. at 6480.  However, gun owners were given a grace period, until May 31, 2023, to choose which compliance method, if any at all, they wished to pursue.  *Id.* at 6570.

### B.   PROCEDURAL HISTORY

Shortly after the Final Rule was rolled out, Plaintiffs filed this action against Defendants the ATF, the United States Department of Justice, and Steven M. Dettelbach, the Director of the ATF, in his official capacity.  (Dkt. No. 1).  Plaintiffs are comprised of an individual—Brady Brown; two non-profit corporations—Gun Owners Foundation ("GOF") and Gun Owners of America ("GOA"); and the State of Texas.  (*Id*. at 6–12).  Plaintiffs' suit alleges that the Final Rule violates the Administrative Procedure Act ("APA") and violates the Constitution in a myriad of ways.  (*Id*. at 43–131).

Shortly after filing the lawsuit, Plaintiffs requested a preliminary injunction, arguing that the Final Rule: (1) exceeds the ATF's statutory authority, (2) violates the Second Amendment, (3) unconstitutionally taxes the exercise of a constitutional right, (4) violates the Fifth Amendment, (5) is not a proper exercise of Congress' taxing power, (6) is arbitrary and capricious, and (7) was not a logical outgrowth from the notice of proposed rulemaking ("NPRM").  (Dkt. No. 16 at 15–28).  Defendants timely responded, (Dkt. No. 22), and notified the Court of a recently decided Northern District of Texas order on the same issue.  *See Mock v. Garland*, No. 4:23-CV-00095, ____ F. Supp.3d. ____, 2023 WL 2711630 (N.D. Tex. Mar. 30, 2023), *rev'd and remanded*, 75 F.4th 563 (5th Cir. 2023).  In that order, the court denied a preliminary injunction against enforcement of the same Final Rule challenged here.[2]  (Dkt. No. 25).

---

[2]    *Mock* is not the only other case challenging this Final Rule.  At this time, the Court is aware of at least eight additional challenges to the Final Rule across the country.  *See Second Amend. Found. v. ATF*, No. 3:21-CV-00116 (N.D. Tex.) (Boyle, J.); *Britto v. ATF*, No. 2:23-CV-00019 (N.D. Tex.) (Kacsmaryk, J.); *Texas Gun Rights v. ATF*, No. 4:23-cv-578 (N.D. Tex.) (O'Connor, J.);
(continue)

23-40685.1032

In *Mock*, the district court denied a substantially similar motion for preliminary injunction. *See* 2023 WL 2711630 at *8. The *Mock* plaintiffs appealed and sought emergency injunctive relief in the interim. *See Mock v. Garland*, No. 23-10319, Dkt. No. 25 (5th Cir. May 17, 2023). In response, a motions panel for the Fifth Circuit enjoined the Final Rule pending expedited appellate review of the district court's decision. No. 23-10319, Dkt. No. 52 (5th Cir. May 23, 2023). Because this case involves many of the same challenges brought by the *Mock* plaintiffs, this Court granted in part Plaintiffs' request for preliminary injunction "pending resolution of the expedited appeal in *Mock v. Garland*." (Dkt. No. 51 at 7).

The Fifth Circuit has now ruled. *See Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023). In *Mock*, the Fifth Circuit reversed the district court's denial of an injunction, finding that "plaintiffs will likely succeed on the merits of their Administrative Procedure Act ('APA') challenge." *Id.* at 567. The Fifth Circuit found that the Final Rule was not a logical outgrowth of the NPRM, but it refrained from ruling on the other factors necessary for a preliminary injunction and remanded the case for consideration of those remaining factors. *Id.* After a status conference to discuss the impact of *Mock* on this case, the Parties filed supplemental briefing on Plaintiffs' Motion for Preliminary Injunction.[3] (Dkt. Nos. 73–75). Plaintiffs' Motion is now ripe for review.

---

*Nat'l Rifle Ass'n of Am., Inc. v. ATF*, 3:23-cv-01471 (N.D. Tex) (Lindsay, J.); *Watterson v. ATF*, No. 4:23-CV-00080 (E.D. Tex.) (Mazzant, J.); *Colon v. ATF*, 8:23-cv-00223 (M.D. Fla.) (Stenson Scriven, J.); *FRAC v. Garland*, No. 1:23-CV-00024 (D.N.D.) (Hovland, J.); *Miller v. Garland*, No. 1:23-CV-00195 (E.D. Va.) (Alston, J.).

[3]    After remand, the district court granted the preliminary injunction. *Mock v. Garland*, No. 4:23-CV-00095, ____ F. Supp.3d ____, 2023 WL 6457920 (N.D. Tex., Oct. 2, 2023).

## II.    LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right."

*Benisek v. Lamone*, 585 U.S. ____, ____, 138 S.Ct. 1942, 1943, 201 L.Ed.2d 398 (2018)

(quotation omitted).  Indeed, the decision to grant a preliminary injunction is "to be

treated as the exception rather than the rule."  *Miss. Power & Light Co. v. United Gas Pipe

Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).  Thus, "[i]n each case, courts must balance the

competing claims of injury and must consider the effect on each party of the granting or

withholding of the requested relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24,

129 S.Ct. 365, 376, 172 L.Ed.2d 249 (2008) (quotation omitted).  And in determining

whether injunctive relief is proper, "courts of equity should pay particular regard for the

public consequences in employing the extraordinary remedy of injunction."  *Weinberger

v. Romero–Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 1803, 72 L.Ed.2d 91 (1982).

A preliminary injunction "issue[s] only where (1) there is a substantial likelihood

that the movant will prevail on the merits; (2) there is a substantial threat that irreparable

harm will result if the injunction is not granted; (3) the threatened injury outweighs the

threatened harm to the defendant; and (4) the granting of the preliminary injunction will

not disserve the public interest."  *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).  As

such, "[t]he party seeking such relief must satisfy a cumulative burden of proving each

of the four elements enumerated" for a preliminary injunction to be granted.  *Id.*  The last

two factors, "harm to the opposing party and weighing the public interest[,] merge when

the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435, 129 S.Ct. 1749,

1762, 173 L.Ed.2d 550 (2009).

"[N]one of the [] prerequisites has a fixed quantitative value." *Texas v. Seatrain Int'l, S. A.*, 518 F.2d 175, 180 (5th Cir. 1975).  "Rather, a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.* (citing *Siff v. State Democratic Exec. Comm.*, 500 F.2d 1307 (5th Cir. 1974)).  For instance, "a preliminary injunction does *not* follow as a matter of course from a plaintiff's showing" of the first element, "a likelihood of success on the merits." *Benisek*, 585 U.S. at ____, 138 S.Ct. at 1943–44 (emphasis added).  Thus, federal courts must consider whether the movant has established the three other elements as well for a preliminary injunction to issue.  *Id.* at ____, 138 S.Ct. at 1944.

## III.   DISCUSSION

Before the Court can reach the merits of Plaintiffs' Motion, the Court first revisits Plaintiffs' standing.

### A.   STANDING

To establish Article III standing, plaintiffs bear a burden to demonstrate that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016).  Regarding the weight of that burden, the Supreme Court has explained that "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992).  Thus, "[a]t earlier stages of litigation . . . the manner

and degree of evidence required to show standing is less than at later stages." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020), as revised (Oct. 30, 2020). Here, "[a]t the preliminary injunction stage, the movant must clearly show only that each element of standing is likely to obtain in the case at hand." *Id.*

The Court finds that the latter two standing requirements of traceability and redressability are comfortably satisfied in this case. This is because any injuries suffered by Plaintiffs are attributable to the implementation of the Final Rule, and the requested relief here—an order enjoining and, ultimately, vacating the Final Rule—would remedy the alleged injury.[4] The only standing element in serious dispute is the first—injury-in-fact. Thus, the Court must decide whether Plaintiffs have clearly shown that they have suffered or will suffer "an invasion of a legally protected interest" that is "concrete," "particularized," and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339, 136 S.Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136). The Court discusses each Plaintiffs' standing separately.[5]

---

[4]   It is worth noting that Defendants do make one traceability argument. Defendants argue that any harm claimed by the Plaintiffs would be attributable solely to the NFA—not the Final Rule. (Dkt. No. 22 at 27). Therefore, according to Defendants, Plaintiffs grievances are more properly aimed at the NFA, as opposed to the Final Rule. (*Id.*). The Court is not persuaded. While the NFA is the statute which sets out the heightened regulations of consequence and penalties for non-compliance, the weapons that give rise to this suit would not be subject to the NFA *but-for* the Final Rule. Thus, the Final Rule going into effect is causing harm to the Plaintiffs for Article III purposes.

[5]   When multiple plaintiffs seek the same form of relief, generally only "one plaintiff must have standing to seek each form of relief requested." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439, 137 S.Ct. 1645, 1651, 198 L.Ed.2d 64 (2017). However, because the Court deems party-specific injunctive relief to be the most proper remedy to Plaintiffs' motion, each party must have Article III standing to be entitled to such relief. *See VanDerStok v. Garland*, No. 4:22-CV-00691, 2023 WL 4539591, at *9 (N.D. Tex. June 30, 2023) (explaining that party-specific injunctive relief should not be granted to parties that have not "independently demonstrate[ed] standing").

1. **Brady Brown**

Plaintiff Brady Brown alleges that he is injured by the ATF's Final Rule because it impermissibly broadens the NFA's definition of "rifle," thereby subjecting several of his firearms to new, heightened regulations. The Supreme Court has spoken to this sort of alleged injury. In *Lujan*, it explained that:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. *If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.*

504 U.S. at 561–62, 112 S.Ct. 2137 (emphasis added). "It follows from *Lujan* that if a plaintiff is an object of a government regulation, then that plaintiff ordinarily has standing to challenge that regulation." *Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 518 (5th Cir. 2014). Therefore, Brown's ability to demonstrate injury-in-fact hinges on whether he is covered by the ATF's regulation—the Final Rule.

Plaintiff Brown's Declaration, (Dkt. No. 16-14), which is not controverted, is sufficient to establish that he is likely regulated by the Final Rule. Brown's Declaration states that, in his personal capacity,[6] he lawfully possesses at least one "AR-15 style

---

[6] Brown also owns a business inventory of weapons—including at least one more firearm and stabilizing brace that would be subjected to NFA regulation under the Final Rule. (Dkt. No. 16-14 at 2). Brown alleges that even in his capacity as a firearms dealer, the Final Rule renders him unable to lawfully transfer the offending firearms to another dealer. (*Id.*). A regulatory action which threatens a movant's ability to sustain his business can, in some cases, constitute irreparable harm. *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th
(continue)

23-40685.1037

firearm in pistol configuration equipped with a stabilizing brace" that would now constitute an SBR under the Final Rule.  (*Id.* at 2).  And compliance with the Final Rule will almost always require time expenditures and various compliance costs.  *See infra* III.B.2.a.  Thus, Brown would suffer injury-in-fact under the Final Rule and, therefore, has Article III standing to request injunctive relief.

### 2.    GOA and GOF

Plaintiffs GOA and GOF are non-profit organizations who bring this suit and request injunctive relief on behalf of their members and supporters.  (Dkt. No. 1 at 8); (Dkt. No. 16 at 31); (Dkt. No. 16–13 at 2).  Defendants challenge whether GOF has sufficiently alleged that it is a membership organization that can bring claims on behalf of its members.  (Dkt. No. 47 at 6).  Defendants also contest whether both organizations have sufficiently alleged facts to support associational standing at all.  (Dkt. No. 47 at 5–11).

"An association or organization can establish an injury-in-fact through either of two theories, appropriately called 'associational standing' and 'organizational standing.'" *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017).  "Associational standing is a three-part test: (1) the association's members would independently meet the Article III standing requirements; (2) the interests the association seeks to protect are germane to the purpose of the organization; and (3) neither the claim asserted, nor the relief requested requires participation of individual members." *Texas v. Nuclear Regul.*

---

Cir. 1989).  However, because Brown has standing in his personal capacity, standing due to his business-incurred costs need not be addressed.

*Comm'n*, 78 F.4th 827, 836–37 (5th Cir. 2023).  In situations where a representational plaintiff is not a traditional member-organization, the court will "exalt form over substance . . . for purposes of determining Article III standing" and treat it as a membership organization as long as it meets "the indicia of membership test." *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 828–29 (5th Cir. 1997) (citing *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 345, 97 S.Ct. 2434, 2442, 53 L.Ed.2d 383 (1977).  This test seeks to determine whether the entity "represents [its 'members'] and provides the means by which they express their collective views and protect their collective interests."  *Id.* at 828 (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 344–45, 97 S.Ct. 2434, 2441–42, 53 L.Ed.2d 383 (1977)).

One way to apply the indicia of membership test is to look at whether nonstandard members "elect leadership, serve as the organization's leadership, and finance the organization's activities, including the case's litigation costs." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012) (citing *Hunt*, 432 U.S. at 344–45, 97 S.Ct. at 2442).  However, the Supreme Court has recently clarified that when "an organization has identified members and represents them in good faith, our cases do not require further scrutiny into how the organization operates" in order to sufficiently meet the test.  *Students for Fair Admissions, Inc., v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 201, 143 S.Ct. 2141, 2158, 216 L.Ed.2d 857 (2023).

GOA and GOF do not assert claims on their own behalf as organizations.  Rather, they assert claims on behalf of their "more than two million members and supporters across the country," (Dkt. No. 1 at 8); (Dkt. No. 16-13 at 2), so they are subject to an

"associational or representational standing" analysis. *Friends of the Earth,* 129 F.3d at 828. GOA is "a non-profit membership organization . . . formed in 1976 to preserve and defend the Second Amendment rights of gun owners." (Dkt. No. 16-13 at 2). GOF is "a non-profit legal defense and educational foundation . . . supported by gun owners across the country[.]" (*Id.* at 2). As for their respective purposes, both organizations purport to preserve and defend the rights of gun owners under the Constitution.[7] (*Id.* at 3). According to their Senior Vice President, "GOA and GOF routinely litigate cases across the country in furtherance of their mission, on behalf of their members and supporters in various states." (*Id.* at 3). Many of GOA and GOF's members and supporters, which include individuals as well as industry members, "currently own pistols equipped with stabilizing braces [and are effected by] the Final Rule in various ways." (*Id.* at 3).

GOA and GOF assert their claims as though they are the same kind of entity. Defendants point out, however, that GOA is a membership organization while GOF is not. (Dkt. No. 47 at 5–6). As such, the Court first looks to whether GOF satisfies the indicia of membership test before it proceeds to whether GOF can assert associational standing. GOF did not provide explicit information regarding its organizational structure and whether its supporters elect or serve as its leadership. It did, however, assert that it is a 501(c)(3) non-profit, (Dkt. No. 16-13 at 2), which means that it is a mission-driven organization financed by supporter or member donations, *see* 26 U.S.C §§

---

[7]    Although not explicitly stated, these two organizations appear to have ties to each other as they share the same Senior Vice President and always refer to their actions, litigation, and members in the collective. (*See* Dkt. No. 16-13).

501(c)3, 509. In other words, it is likely that GOF's nonstandard members do finance the organization's activities and litigation costs. However, GOF has not defined the scope of who it considers to be its "supporters," and it is not this Court's role to operate on inferences or to impose an arbitrary scope on who those supporters might be. As such, GOF has failed to allege an identifiable set of members. Despite not being a membership organization, GOF could have representational standing on behalf of its supporters, but the Court finds that it has not sufficiently identified them here. Therefore, GOF has not satisfied the indicia of membership test as is required to have standing for a preliminary injunction.

Turning to GOA, Defendants do not contest that GOA is a membership organization, but rather argue that GOA fails to satisfy the elements of associational standing. (Dkt. No. 47 at 5–11). The Court disagrees.

First, many of GOA's members are simlar to Plaintiff Brown in that they are individuals or businesses who own weapons whose classification was altered by the Final Rule and who are now subject to injuries stemming therefrom. *See supra* III.A.1. Consequently, GOA's members would undoubtedly have standing in their individual capacities, satisfying the first prong of associational standing. Next, GOA's organizational mission is to litigate when laws affect gun owners, and here they filed suit to invalidate a federal regulation that reclassifies their members' weapons and subjects those weapons to heightened regulation. In other words, the interests that GOA seeks to protect in this lawsuit are germane to the purpose of the organization. Finally, because the claims asserted and relief requested involve invalidating a federal regulation based

23-40685.1041

on theories that do not require individualized proof, individual participation by GOA's members and supporters is not required to allow the claims to proceed. In sum, the Court finds that GOA meets all the requirements for associational standing.

### 3.   The State of Texas

Although Texas does not spend much of its briefing responding to Defendants' standing arguments, the Court understands Texas to argue that the Final Rule would cause Texas (1) sovereign injury, (2) quasi-sovereign injury, and (3) nonrecoverable compliance costs. (Dkt. No. 29 at 38–39). In its May 31 Order, this Court previously rejected Texas's arguments regarding its alleged sovereign and quasi-sovereign injuries. (Dkt. No. 51 at 4–5). The Court sees no reason to depart from its earlier ruling as to these arguments. However, also in its May 31 Order, the Court found that Texas had standing due to the nonrecoverable compliance costs that the Final Rule would impose. The Court reasoned that Texas would suffer injury in the form of compliance costs incurred by its agencies—e.g., state law enforcement—being forced to comply with the Final Rule. (Dkt. No. 51 at 5). In reaching this conclusion, the Court noted that injury via compliance costs is often recognized in the context of government defendants who enjoy sovereign immunity from monetary damages. *See Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1142 (5th Cir. 2021); *see also Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (holding that "complying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs") (emphasis in the original). With the benefit of time and supplemental briefing, the Court now reevaluates whether Texas

18

has provided evidence of an injury-in-fact in the form of nonrecoverable compliance costs.[8]

To establish standing for preliminary injunction purposes, Texas must make "a clear showing" of injury-in-fact under the Final Rule. *Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017). In proving up its alleged compliance costs, Texas fails to make a "clear showing," and instead, asks the Court to speculate. Texas initially argued that its state law enforcement officers who "possess previously legal handguns with stabilizing braces will have to expend resources to register those weapons." (Dkt. No. 16 at 29–30). However, Defendants pointed out that Texas had not submitted any actual evidence to "substantiat[e] the allegation that any of its law enforcement agencies possess pistols with stabilizing braces in their inventories." (Dkt. No. 22 at 60). Texas did not address this point in its Reply. (Dkt. No. 29).

At this juncture, Texas has not even stated, let alone provided concrete evidence, that any of its law enforcement agencies actually own a braced pistol subject to the Final Rule. And according to Texas, it does not need to. (Dkt. No. 45 at 5). Because the ATF estimates that there are at least three million attached braces in circulation, Texas asks the Court to "find as a commonsense matter that Texas is highly likely either now or in the future to incur compliance costs as a result of the rule." (*Id.*). Essentially, Texas argues

---

[8]    Throughout the briefing, each Party seems to conflate the injury-in-fact standing requirement with the irreparable harm showing required for a preliminary injunction. At this stage of the case, the Court agrees that they are essentially two sides of the same coin. Compliance costs, regardless of who suffers them, will not be recoverable because Defendants are protected from monetary damages by sovereign immunity. *See* 5 U.S.C. § 702. Thus, any finding of injury-in-fact due to compliance costs would also support a finding of irreparable harm, and vice versa.

that because so many braces exist, surely at least one brace is owned by a Texas law enforcement agency.  The Court rejects Texas's request to infer harm; this does not constitute a "clear showing" of an injury.  Texas has failed to meet its Article III burden of establishing injury-in-fact under the Final Rule in order to merit injunctive relief.

The Court notes that this is only the preliminary injunction stage of this case. Accordingly, any Party will be able to supplement the record with actual evidence satisfying the standing requirement at the final merits stage.

B.  **PRELIMINARY INJUNCTION**

The Court will next evaluate the merits of Plaintiffs' Motion by working through the four preliminary injunction factors articulated by the Fifth Circuit.  *Clark*, 812 F.2d at 993.

1.  <u>**Substantial Likelihood of Success**</u>

The first inquiry is whether a Plaintiff that has standing has established a substantial likelihood of prevailing on the merits.  *Id.*  The Fifth Circuit has already decided "that the Final Rule fails the logical-outgrowth test and violates the APA."  *Mock*, 75 F.4th at 578.  Because that holding pertained to the ATF's rulemaking process, any plaintiff challenging the Final Rule on APA grounds in the Fifth Circuit has the same likelihood of success.[9]  Therefore, Plaintiffs have a substantial likelihood to succeed on the merits of their logical-outgrowth claim.

---

[9]    Both parties agree that the Court is bound by the Fifth Circuit's decision in *Mock v. Garland*.  (Dkt. No. 73 at 5); (Dkt. No. 74 at 1).

Plaintiffs argue in their supplemental briefing that the Court's analysis should not stop there and should address the remaining grounds for setting the Final Rule aside. (Dkt. No. 73 at 5). Defendants respond that evaluating other grounds would run contrary to "[f]undamental rules of judicial restraint." (Dkt. No. 74 at 2). At this stage of the litigation, the Court agrees with Defendants.

"It goes without saying that constitutional questions should be avoided if there are independent 'ground[s] upon which the case may be disposed of.'" *Teltech Sys., Inc. v. Bryant*, 702 F.3d 232, 235 (5th Cir. 2012) (quoting *Ashwander v. TVA*, 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936)). Since the Fifth Circuit has already decided that the Final Rule violates the APA, it would be improper for this Court to now evaluate constitutional issues. Further, the Supreme Court has encouraged lower courts to avoid expending "'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236–37, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)). A finding that any of Plaintiffs' additional claims are likely to succeed on the merits would not affect the Court's analysis regarding whether to issue a preliminary injunction.

Again, this case is only at the preliminary injunction phase. Should the case be in a different posture at the final merits stage, the Court may find it appropriate to address the additional claims brought by Plaintiffs at that time.

23-40685.1045

2.      **Irreparable Harm**[10]

Plaintiff Brown, according to his declaration, personally owns at least one "AR-15 style firearm in pistol configuration equipped with a stabilizing brace" that would now constitute an SBR under the Final Rule.  (Dkt. No. 16–14 at 2).  Plaintiff Brown also owns a business inventory consisting of at least one more such firearm.  (*Id.*).  Plaintiff GOA is a non-profit organization who, in this suit, represents the interests of its members and supporters.[11]  (Dkt. No. 16–13 at 2).   GOA exists to advocate for the Second Amendment rights of its members and supporters, and "routinely litigate[s] cases across the country in furtherance of [its] mission." (*Id.* at 3).   These members and supporters include gun owners across the nation, some of whom "purchase, transfer, possess, own, customize, accessorize, and utilize" stabilizing braces or weapons equipped with stabilizing braces. (*Id.*).   Absent an injunction, the Court finds that Brown and the similarly situated individuals represented by the GOA would be forced to comply with the Final Rule and therefore suffer irreparable harm.

"A showing of irreparable harm requires a demonstration of 'harm for which there is no adequate remedy at law.'" *Louisiana v. Biden*, 55 F.4th 1017, 1033–34 (5th Cir. 2022) (quoting *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th

---

[10]     Having found that only Plaintiffs Brown and GOA have established standing, the Court will not address possible harms to the other Plaintiffs.

[11]     The Government seems to insist that GOA must assert exactly which individuals are being represented and how each of them are being irreparably harmed.  (Dkt. No. 47 at 5).  The Supreme Court has rejected this requirement.  *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546, 116 S. Ct. 1529, 1532, 134 L. Ed. 2d 758 (1996) (explaining that "individual participation is not normally necessary when an association seeks prospective or injunctive relief for its members" (cleaned up)).

Cir. 2013)). Harm is generally irreparable "if it cannot be undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (cleaned up). And in lawsuits arising from potentially invalid federal rules and regulations, the federal government "generally enjoy[s] sovereign immunity for any monetary damages." *Wages & White Lion Invs.*, 16 F.4th at 1142. Thus, in the Fifth Circuit, "nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm." *Rest. L. Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023).

Under the Final Rule, compliance will almost always come at a cost. When the Fifth Circuit sent *Mock* back to the district court, the court evaluated the irreparable harm, if any, that several private plaintiffs in the case would suffer. *Mock*, 2023 WL 6457920, at *7. Because the *Mock* plaintiffs owned firearms and stabilizing braces that the Final Rule would classify as an SBR, the plaintiffs had "no trouble establishing a substantial threat of irreparable harm in the form of nonrecoverable compliance costs." *Id*. That logic is equally applicable here.

The ATF gave affected gun owners until May 31, 2023, to register their stabilizing braces. 88 Fed. Reg. at 6570. Because that deadline has now passed, complying with the Final Rule would require the private Plaintiffs to do one of four things: (1) permanently modify their weapon to remove it from the scope of the NFA, (2) dispose of or "alter" their stabilizing brace so that it can never be reattached, (3) turn over their weapon to the ATF, or (4) destroy their weapon completely. *Id*. As the ATF acknowledges, each of these

23

avenues come at a cost to gun owners. [12]  Furthermore, even if a gun owner had registered their weapon with the ATF prior to the May 31 deadline, the weapon must still be "marked," to reflect its new classification.  *Id.*  The ATF estimates that each engraving, or marking, would cost gun owners anywhere from $30 to $65.  *Id.* at 6563.  And as the Fifth Circuit noted regarding these engraving costs, "[t]here is no given process for undoing or recouping those compliance costs."  *Mock*, 75 F.4th at 576 n.29.  Thus, under the Final Rule, Plaintiffs would incur costs regardless of their chosen method of compliance.  And because sovereign immunity would prevent them from recouping their costs from the ATF, *see* 5 U.S.C. § 702, GOA and Brown would be irreparably harmed absent injunctive relief.

### 3.      Balance of Equities and Public Interest

"[T]he balance of equities and consideration of the public interest [] are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent."  *Winter*, 555 U.S. at 32, 129 S.Ct. at 381.  This means the Court must "explore the relative harms to [Plaintiffs] and [Defendants], as well as the interests of the public at large."  *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580, 137 S.Ct. 2080, 2087, 198 L.Ed.2d 643 (2017) (quoting *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305, 112 S. Ct. 1, 3, 115 L. Ed. 2d 1087 (1991) (Scalia, J., in chambers)).

---

[12]   For example, in the ATF's "Final Regulatory Impact Analysis and Final Regulatory Flexibility Analysis," (Dkt. No. 16-9), it estimates the various harms that an individual would incur by complying with the statute past the registration date: (1) $270 for disposing of a stabilizing brace, (*id.* at 60), (2) $567 for adding barrel length to a weapon to remove it from the "short barrel rifle" classification, (*id.* at 44), and (3) $2,500 to destroy or turn in the firearm and brace altogether, (*id.* at 38).

23-40685.1048

Plaintiffs argue that no harm befalls the ATF if the Final Rule is enjoined because that would merely maintain the status quo prior to its promulgation.  (Dkt. No. 16 at 30).  In contrast, Plaintiffs urge that they will suffer substantial harm if the Final Rule stays in effect, citing the threat of prosecution, the destruction of their property that was originally legal when purchased, and compliance costs for a regulatory scheme that is unconstitutional, among their concerns.  (Dkt. No. 16 at 31); (Dkt. No. 29 at 39–40).  Additionally, they assert "there is no public interest in the perpetuation of unlawful agency action." (Dkt. No. 16 at 31 (quoting *Wages & White Lion Invs.*, 16 F.4th at 1143).  Defendants respond that the Final Rule benefits public safety by clarifying the law Congress passed to regulate firearms it determined pose a greater risk to public safety.  (Dkt. No. 22 at 61).  In other words, Defendants contend that the public benefits from greater clarity by the ATF about which weapons are considered SBRs.  Defendants further urge that enjoining the Final Rule would create ambiguity about SBRs that would make the public less safe.  (*Id.*).  Plaintiffs reply that Defendants cannot point to any concrete public harm prevented by the Final Rule remaining in effect while this suit pends, and that in the end, the only harm to Defendants is a delay in processing paperwork and collecting a tax that it has already agreed to waive.  (Dkt. No. 29 at 39–40).

The Court finds that the balance of equities tips in Plaintiffs favor because the Final Rule's effect on Plaintiffs is immediate and imminent while the effect on Defendants, especially the ATF, is more administrative and speculative.  Defendants' arguments of harm to the public are unavailing.  Although Defendants can point to a few incidents where pistols with stabilizing braces were used to harm the public, *see* (Dkt. No. 22 at 23);

(Dkt. No. 74 at 5–6), the NFA regulates, *but does not ban*, gun owners from possessing these weapons.  So, permitting the Final Rule to continue in effect would not necessarily protect the public from any like incidents recurring.  Further, the fact that the Final Rule clarifies for gun owners which criteria the ATF uses to classify braced weapons as SBRs is beneficial, but its absence—*i.e.*, a return to the lack of direction provided by the ATF for the last ten years—does not create a public harm if the Final Rule is temporarily enjoined from enforcement.  Conversely, Plaintiffs, who represent a portion of the public, will suffer imminent harm, as discussed above.  *See supra* III.B.2.  While Defendants are eager to provide improved guidance to gun owners about which weapons are classified as SBRs, that does not mean that public harm necessarily results absent such guidance.  But for Plaintiffs, a pause in the Final Rule's effect provides a safe harbor from immediate injury.  Further, Plaintiffs are correct that "there is generally no public interest in the perpetuation of unlawful agency action," *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (cleaned up), and the Fifth Circuit has already found that the Final Rule is likely unlawful, *see Mock*, 75 F.4th at 578.  Therefore, the public interest and balance of equities favor Plaintiffs.

## C.    SCOPE OF RELIEF

Plaintiffs collectively seek a nationwide injunction.  (Dkt. No. 16 at 31).  GOA and GOF argue it is appropriate because their affected members live nationwide.  Texas joins in that request, arguing that piecemeal implementation across the country impacts criminal prosecutions and fundamental rights.  (*Id.* at 31); (Dkt. No. 29 at 34–35).  Defendants oppose such a broad injunction, asserting that principles of judicial restraint

23-40685.1050

counsel against granting relief to non-parties, particularly when the Final Rule is subject to litigation in several other jurisdictions. (Dkt. No. 22 at 62). The Court agrees with Defendants.

"Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Int'l Refugee Assistance Project*, 582 U.S. at 579, 137 S.Ct. at 2087. "The purpose of such interim equitable relief is not to conclusively determine the rights of the parties, . . . but to balance the equities as the litigation moves forward." *Id.* at 580, 137 S.Ct. at 2087. "[T]he scope of injunctive relief is dictated by the extent of the violation established[.]" *Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S. Ct. 2545, 2558, 61 L.Ed.2d 176 (1979). And the injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Id.* At this stage, only Plaintiffs GOA and Brown have shown a likelihood of irreparable harm with respect to their individual compliance costs. Injunctive relief nationwide or within the borders of the State of Texas would be overbroad to protect the interests of the Parties with standing before the Court. *See VanDerStok v. BlackHawn Mfg. Grp. Inc.*, No. 4:22-CV-00691, 2022 WL 16680915, at *2 (N.D. Tex. Nov. 3, 2022) (observing that "an injunction must redress the plaintiff's particular injury, and no more") (cleaned up).

In its May 31, 2023 Order, the Court held that the appropriate scope of the preliminary injunction pending resolution of the appeal in *Mock* was limited. (*See* Dkt. No. 51 at 7). Private Plaintiff organizations' members, including Brown, and those members' household family members were entitled to relief from the Final Rule as were

individuals employed directly by the State of Texas or its agencies. (*Id.*). However, after revisiting standing and irreparable harm, a different scope of relief is now required.

"Equitable remedies, like remedies in general, are meant to redress the injuries sustained by a particular plaintiff in a particular lawsuit." *Dep't of Homeland Sec. v. New York*, ____ U.S. ____, 140 S.Ct. 599, 600, 206 L.Ed.2d 115 (2020) (Gorsuch, J., concurring). To this end, "[w]hen a district court orders the government not to enforce a rule against the plaintiffs in the case before it, the court redresses the injury that gives rise to its jurisdiction in the first place." *Id.* "But when a court goes further than that, ordering the government to take (or not take) some action with respect to those who are strangers to the suit, it is hard to see how the court could still be acting in the judicial role of resolving cases and controversies." *Id.* Although preliminary injunctive relief is warranted, the Court declines to grant it on a nationwide basis and instead limits relief to Brown, GOA members, and their resident family members.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiffs' Motion for Preliminary Injunction. (Dkt. No. 16). Therefore, it is **ORDERED** that:

1.   Defendants and all their respective officers, agents, servants, employees, attorneys, and other persons who are in active concert or participation with them are hereby **ENJOINED** and **RESTRAINED** from enforcing and implementing the Final Rule against Plaintiffs Brady Brown and his resident family members, as well as GOA's current members and their resident family members.

2.   This preliminary injunction shall remain in effect pending a final resolution of the merits of this case or until a further Order from this Court, the United

States Court of Appeals for the Fifth Circuit, or the United States Supreme
Court.

No security bond is required under Federal Rule of Civil Procedure 65(c).

It is SO ORDERED.

Signed on October 27, 2023.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2024, I electronically filed the foregoing record excerpts with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.

*s/ Ben Lewis*

Ben Lewis