**No. 23-11157**

# In the United States Court of Appeals for the Fifth Circuit

CASE NO. 23-11157

SECOND AMENDMENT FOUNDATION, INCORPORATED; RAINIER ARMS, L.L.C.; SAMUEL WALLEY; WILLIAM GREEN,

*Plaintiffs-Appellants,*

*v.*

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; STEVEN DETTELBACH, *in his official capacity Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives*; UNITED STATES DEPARTMENT OF JUSTICE; MERRICK GARLAND, *U.S. Attorney General*,

*Defendants-Appellees*

consolidated with

*caption continued on following page*

On Appeal from the United States District Court
for the Northern District of Texas in Nos. 3:21-cv-116, 4:23-cv-95, 2:23-cv-19, and 4:23-cv-578; and from the United States District Court for the Southern District of Texas in No. 6:23-cv-13

## BRIEF FOR APPELLEES THE STATE OF TEXAS, GUN OWNERS OF AMERICA, INC., GUN OWNERS FOUNDATION, AND BRADY BROWN

*Counsel Listed on Inside Cover*

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

AARON L. NIELSON
Solicitor General

LANORA C. PETTIT
Principal Deputy Solicitor General

KATELAND R. JACKSON
Assistant Solicitor General
Kateland.Jackson@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

*Counsel for Appellee State of Texas*

STEPHEN D. STAMBOULIEH
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
stephen@sdslaw.us

ROBERT J. OLSON
William J. Olson, PC
370 Maple Ave. W., Ste. 4
Vienna, VA 22180
rob@wjopc.com

*Counsel for Appellees Brady Brown, Gun Owners of America, Inc., and Gun Owners Foundation*

Case No. 23-11199

––––––––

William T. Mock; Christopher Lewis; Firearms Policy Coalition, Incorporated, *a nonprofit corporation;* Maxim Defense Industries, L.L.C.,

*Plaintiffs-Appellees,*

*v.*

Merrick Garland, *U.S. Attorney General, in his official capacity as Attorney General of the United States;* United States Department of Justice; Bureau of Alcohol, Tobacco, Firearms and Explosives; Steven Dettelbach, *in his official capacity as the Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives,*

*Defendants-Appellants*

consolidated with

––––––––

Case No. 23-11203

––––––––

Darren A. Britto; Gabriel A. Tauscher; Shawn M. Kroll,

*Plaintiffs-Appellees,*

*v.*

Bureau of Alcohol, Tobacco, Firearms and Explosives,

*Defendant-Appellant*

consolidated with

––––––––

Case No. 23-11204

––––––––

Texas Gun Rights, Incorporated; National Association for Gun Rights, Incorporated,

*Plaintiffs-Appellees,*

*v.*

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES,

*Defendant-Appellant*

consolidated with

————

CASE NO. 23-40685

————

STATE OF TEXAS; GUN OWNERS OF AMERICA, INCORPORATED;
GUN OWNERS FOUNDATION; BRADY BROWN,

*Plaintiffs-Appellees,*

*v.*

BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES;
UNITED STATES DEPARTMENT OF JUSTICE;
STEVEN M. DETTELBACH, *Director of ATF,*

*Defendants-Appellants.*

# Certificate of Interested Persons

No. 23-11157

Second Amendment Foundation, Incorporated; Rainier Arms, L.L.C.; Samuel Walley; William Green,

*Plaintiffs-Appellants,*

*v.*

Bureau of Alcohol, Tobacco, Firearms and Explosives; Steven Dettelbach, *in his official capacity Director of the Bureau of Alcohol Tobacco Firearms and Explosives*; United States Department of Justice; Merrick Garland, *U.S. Attorney General,*

*Defendants-Appellees.*

The undersigned counsel of record certifies that, in addition to the persons and entities listed in Plaintiffs-Appellees' Certificate of Interested Persons, and the Defendants-Appellants' Certificate of Interested Persons, the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so the judges of this Court may evaluate possible disqualification or recusal (governmental parties not listed):

Brady Brown

Gun Owners of America, Inc. ("GOA") is a non-profit, non-stock corporation. GOA has no parent corporation or subsidiaries, and no publicly held corporation holds any stock in GOA.

Gun Owners Foundation ("GOF") is a non-profit, non-stock corporation. GOF has no parent corporation or subsidiaries, and no publicly held corporation holds any stock in GOF.

Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654

Robert J. Olson
William J. Olson, PC
370 Maple Ave. W., Ste. 4
Vienna, VA 22180

Gilbert J. Ambler
Ambler Law Offices, LLC
20 S. Braddock St
Winchester, VA 22601

Anthony R. Napolitano
Bergin, Frakes, Smalley & Oberholtzer, PLLC
4343 E. Camelback Road, Suite 210
Phoenix, Arizona 85018

/s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh
*Counsel for Plaintiffs-Appellees Brady Brown, Gun Owners of America, Inc., and Gun Owners Foundation*

## Statement Regarding Oral Argument

Designed to provide stability and control, pistol braces have long been a vital tool for certain Americans to exercise their Second Amendment right to bear arms. This case asks whether a federal agency may, by regulatory fiat, declare them unlawful and those who own or use them felons. Appellees agree with Appellants that oral argument would help this Court's decisional processes in resolving the interlocking statutory and constitutional issues.

# Table of Contents

Page

Certificate of Interested Persons ...................................................................... i

Statement Regarding Oral Argument ............................................................... iii

Table of Authorities .......................................................................................... v

Introduction ....................................................................................................... 1

Statement of Jurisdiction .................................................................................. 3

Issues Presented ................................................................................................ 3

Statement of the Case ....................................................................................... 4

    I.   Regulatory History ............................................................................. 4

    II.  Procedural History ............................................................................. 7

Summary of the Argument ................................................................................ 9

Standard of Review ........................................................................................... 10

Argument ........................................................................................................... 11

    I.   Appellees Are Likely to Succeed on the Merits. ............................... 11

        A.  This Court already held that the Rule violates the APA. ........... 11

            1.  The Rule is procedurally invalid because its definition of a "rifle" is not a logical outgrowth of the proposed rule ............... 12

            2.  The Rule is substantively invalid because it is arbitrary and capricious. ...............................................................................16

            3.  The Rule is inconsistent with the NFA. ...................................... 20

                a.  For nearly a century, the NFA has taxed certain types of *weapons*, not accessories that could theoretically be misused. ..................................... 20

                b.  Even assuming an ambiguity in the NFA, the rule of lenity requires the Court to reject the agency's interpretation ...................................................... 21

        B.  The Rule violates the Second Amendment. ............................... 25

        C.  The Rule violates the limits on Congress's taxing power. ................. 28

    II.  Equitable Factors Support Preliminary Injunctive Relief. .........................31

    III.  The District Court's Preliminary Relief Is Not Overly Broad. ................. 34

Conclusion ............................................................................................ 38

Certificate of Service............................................................................ 39

Certificate of Compliance .................................................................... 39

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Agostini v. Felton*,
   521 U.S. 203 (1997) ....................................................................21, 25

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
   458 U.S. 592 (1982) ......................................................................... 33

*All. for Hippocratic Med. v. FDA*,
   78 F.4th 210 (5th Cir. 2023)........................................................31, 34

*Bailey v. Drexel Furniture Co. (Child Labor Tax Case)*,
   259 U.S. 20 (1922) ........................................................................... 28

*Baird v. Bonta*,
   81 F.4th 1036 (9th Cir. 2023) ...........................................................31

*Bittner v. United States*,
   598 U.S. 85 (2023) ..................................................................... 18, 22

*Bouie v. City of Columbia*,
   378 U.S. 347 (1964) ......................................................................... 22

*BST Holdings, L.L.C. v. OSHA*,
   17 F.4th 604 (5th Cir. 2021) ................................................. 31, 33, 34

*Caetano v. Massachusetts*,
   577 U.S. 411 (2016) ......................................................................... 26

*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ......................................................................... 34

*Cargill v. Garland*,
   57 F.4th 447 (5th Cir. 2023) ......................................................... 3, 4

*Cargill v. Garland*,
   57 F.4th 447, 469 (5th Cir. 2023), *cert. granted*, 144 S. Ct. 374 (2023) ........21, 23

*Chapman v. United States*,
   500 U.S. 453 (1991) ......................................................................... 25

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) .................................................. 21

*Chrysler Corp. v. Brown*,
    441 U.S. 281 (1979) .................................................. 13

*CIC Servs., LLC v. IRS*,
    141 S. Ct. 1582 (2021) .............................................. 28

*Clean Water Action v. EPA*,
    936 F.3d 308, 313 n.10 (5th Cir. 2019) .................... 11

*CSX Transp., Inc. v. Surface Transp. Bd.*,
    584 F.3d 1076 (D.C. Cir. 2009) ............................... 13

*Def. Distributed v. U.S. Dep't of State*,
    838 F.3d 451 (5th Cir. 2016) .................................... 34

*Dep't of Revenue of Mont. v. Kurth Ranch*,
    511 U.S. 767 (1994) ............................................. 28, 29

*DHS v. Regents of the Univ of Cal.*,
    140 S. Ct. 1891 (2020) ......................................... 16, 18

*Disability Rights Wisconsin, Inc. v. Walworth Cnty. Bd. of Supervisors*,
    522 F.3d 796 (7th Cir. 2008) .................................... 36

*District of Columbia v. Heller*,
    554 U.S. 570 (2008) ............................................. 25, 26

*Duncan v. Bonta*,
    83 F.4th 803 (9th Cir. 2023) .................................... 34

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) .................................... 31

*FCC v. Fox TV Stations, Inc.*,
    556 U.S. 502 (2009) .................................................. 17

*Free Speech Coal., Inc. v. Colmenero*,
    2023 WL 5655712 (W.D. Tex. Aug. 31, 2023) ......... 35

*Friends of the Earth, Inc. v. Chevron Chem. Co.*,
    129 F.3d 826 (5th Cir. 1997) ................................. 36-37

*Harrison v. Young*,
    48 F.4th 331 (5th Cir. 2022) .................................... 10

*Huawei Techs. USA, Inc. v. FCC*,
    2 F.4th 421 (5th Cir. 2021) ...................................... 12

*Huddleston v. United States*,
    415 U.S. 814, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974) ......... 25

*Inhance Techs., L.L.C. v. United States Envtl. Prot. Agency*,
\_\_\_ F.4th \_\_\_, 2024 WL 1208967, at \*3 (5th Cir. Mar. 21, 2024)..................11

*In re Bonvillian Marine Serv., Inc.*,
19 F.4th 787 (5th Cir. 2021) ...........................................................11

*Kiewit Offshore Servs. v. U.S. Dep't of Labor*,
2023 WL 417486 (S.D. Tex. Jan. 25, 2023) ......................................31

*Lion Health Services, Inc. v. Sebelius*,
635 F.3d 693 (5th Cir. 2011) ........................................................ 34

*Liparota v. United States*,
471 U.S. 419 (1985) ...................................................................... 21

*Luis v. United States*,
578 U.S. 5 (2016) ......................................................................... 27

*Mexican Gulf Fishing Co. v. United States DOC*,
60 F.4th 956 (5th Cir. 2023) ..........................................................15

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*,
460 U.S. 575 (1983)...................................................................... 29

*Missouri v. Biden*,
83 F.4th 350 (5th Cir. 2023).......................................................... 34

*Mock v. Garland*,
75 F.4th 563 (5th Cir. 2023) ......................................... 8, 9, 13, 14, 15, 16, 28, 31

*Mock v. Garland*,
No. 4:23-CV-00095, \_\_\_ F. Supp. 3d \_\_\_, 2023 WL 2711630 (N.D.
Tex. Mar. 30, 2023), *rev'd and remanded*, 75 4th 563 (5th Cir. 2023) ............... 7

*Mock v. Garland*,
No. 4:23-CV-00095-O, \_\_\_ F. Supp. 3d \_\_\_, 2023 WL 6457920, at \*
7 (N.D. Tex. Oct. 2, 2023) ............................................................. 8

*Moskal v. United States*,
498 U.S. 103 (1990)...................................................................... 25

*Murdock v. Pennsylvania*,
319 U.S. 105 (1943) ...................................................................... 29

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) .................................................................25, 26, 27

*NAACP v. Alabama ex rel. Patterson*,
357 U.S. 449 (1958)..................................................................35, 36

*NFIB v. Sebelius*,
567 U.S. 519 (2012) ...................................................................... 29

*Perez v. Mortg. Bankers Ass'n*,
   575 U.S. 92 (2015) ......................................................................... 13

*PCI Transp., Inc. v. Fort Worth & W. R. Co.*,
   418 F.3d 535, 545 (5th Cir. 2005) ............................................... 10

*Planned Parenthood of Greater Tex. Family Plan. & Preventative Health
   Servs., Inc. v. Kauffman*,
   981 F.3d 347 (5th Cir. 2020) (en banc) ...................................... 10

*R.J. Reynolds Vapor Co. v. FDA*,
   65 F.4th 182 (5th Cir. 2023) ......................................................... 12

*Rollins v. Home Depot USA*,
   8 F.4th 393 (5th Cir. 2021) ........................................................... 10

*Russello v. United States*,
   464 U.S. 16 (1983) .......................................................................... 23

*Sonzinsky v. United States*,
   300 U.S. 506 (1937) ........................................................................ 29

*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*,
   600 U.S. 181 (2023) ........................................................................ 35

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*
   (Harvard Corp.), 261 F. Supp. 3d 99 (D. Mass. 2017) ................ 37

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
   37 F.4th 1078 (5th Cir. 2022) ....................................................... 36

*Trans World Airlines v. Mattox*,
   897 F.2d 773 (5th Cir. 1990) ......................................................... 31

*United States v. Cooper*,
   38 F.4th 428 (5th Cir. 2022) ......................................................... 21

*United States v. Daniels*,
   77 F.4th 337 (5th Cir. 2023) ......................................................... 25

*United States v. Gresham*,
   118 F.3d 258 (5th Cir. 1997) ......................................................... 28

*United States v. Kaluza*,
   780 F.3d 647 (5th Cir. 2015) ......................................................... 21

*United States v. Kay*,
   513 F.3d 432 (5th Cir. 2007) ......................................................... 22

*United States v. Orellana*,
   405 F.3d 360 (5th Cir. 2005) ......................................................... 21

*United States v. Pa. Indus. Chem. Corp.*,
    411 U.S. 655 (1973) ............................................................... 22
*United States v. Parker*,
    960 F.2d 498 (5th Cir. 1992) ........................................... 4, 28
*United States v. Rahimi*,
    61 F.4th 443 (5th Cir. 2023), *cert. granted*, 143 S. Ct. 2688 (2023) .................... 11
*United States v. Thompson/Ctr. Arms Co.*,
    504 U.S. 505 (1992) ............................................. 2, 4, 20, 22, 28
*Valley v. Rapides Parish Sch. Bd.*,
    118 F.3d 1047 (5th Cir. 1997) ............................................ 31
*VanDerStok v. Garland*,
    86 F.4th 179 (5th Cir. 2023) ............................................ 3, 4
*Wages & White Lion Invs., L.L.C. v. FDA*,
    90 F.4th 357 (5th Cir. 2024) ....................................... 2, 12, 17
*Wages & White Lion Invs., LLC, v. FDA*,
    16 F.4th 528 (5th Cir. 2021) ............................................ 33
*Winter v. Nat'l Res. Def. Council*,
    555 U.S. 7 (2008) ......................................................... 10
*Women's Med. Ctr. of Nw. Hous. v. Bell*,
    248 F.3d 411 (5th Cir. 2001) ............................................ 10
*Wrenn v. District of Columbia*,
    864 F.3d 650 (D.C. Cir. 2017) ......................................... 31-32

**Constitutional Provisions & Statutes:**

U.S. Const. art. I, § 8, cl. 1 ................................................ 28
18 U.S.C.:
    § 3571(b)(3) ............................................................ 3, 5
    § 921(a)(8) ............................................................... 4
    § 921(a)(25) .............................................................. 23
    § 922(a)(4) ............................................................... 18
26 U.S.C.:
    § 5845(a)(3) ............................................................... 4
    § 5845(a)(4) ............................................................... 4
    § 5845(b) ................................................................ 23
    § 5845(c) .......................................................... 20, 21, 22, 23

§ 5845(i) .................................................................................................. 5

§ 5861(d) ................................................................................................. 5

§ 5861(f) .................................................................................................. 5

§ 5861(i) ................................................................................................... 5

§ 5871 ...................................................................................................... 3

§ 7801 ...................................................................................................... 5

§§ 5801–72 .............................................................................................. 1

§§ 5821 .................................................................................................... 5

§5822 ....................................................................................................... 5

27 C.F.R.:

§ 479.102(a)(1) ........................................................................................ 5

§478.11 .................................................................................................... 6

§479.11 .................................................................................................... 6

§ 478.28 .................................................................................................. 18

28 U.S.C.:

§ 1292(a)(1) ............................................................................................. 3

§ 1331 ...................................................................................................... 3

5 U.S.C.:

§ 702 ........................................................................................................ 3

§ 706 ...................................................................................................... 11

§ 706(2)(D) ............................................................................................ 15

86 Fed. Reg. 30826 (June 10, 2021) ................................................ 13, 14, 26

88 Fed. Reg. 6478 (Jan. 31, 2023)....1, 2, 3, 6, 7, 13, 14, 15, 17, , 18, 19, 20, 21, 22, 23, 26, 27, 28, 29, 31

H.R. 9741, 73d Cong., 48 Stat. 1236 (1934) .......................................... 30

Tex. Penal Code § 46.05(a)(1)(C) ............................................................ 31

**Other Authorities:**

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of
    Legal Texts 299 (2012) ................................................................ 24-25

ATF Classification Letter (Nov. 26, 2012) ................................................ 5

Complaint, *FRAC v. Garland*, No. 1:23-cv-00024-DLH-CRH (D.N.D.
    Feb. 9, 2023) ......................................................................................... 1

*FACT SHEET: Biden-Harris Administration Announces Initial Actions to Address the Gun Violence Public Health Epidemic*, White House (Apr. 7, 2021), https://tinyurl.com/5n8cwbnv ............................................................... 17

Letter from ATF to Roland Damasco (June 24, 2018) ......................................................................................... 5

Letter from ATF to Sergeant Joe Bradley (Mar. 5, 2014) ........................................ 5

Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121 (2020) .................................................... 35

Nicholas J. Johnson et al., Firearms Law and the Second Amendment: Regulation, Rights, and Policy 570-71 (3d ed. 2021) .......................................... 4

*Oversight of ATF, Hearing Before the H. Judiciary Comm.*, 118th Cong. (Apr. 26, 2023), https://tinyurl.com/ywf7z8yt ............................................... 24

*The Biden Plan to End Our Gun Violence Epidemic*, Biden Harris (2022), https://perma.cc/L2QU-TGTM ...................................................................... 17

# Introduction

Originally developed to "assist a veteran and service-connected amputee with firing" a pistol one-handed, ROA.23-40685.455, stabilizing braces have become a popular accessory to improve stability and control for Americans with disabilities seeking to exercise their Second Amendment rights and for enthusiasts seeking a better shooting experience, *see generally, Factoring Criteria for Firearms with Attached "Stabilizing Braces,"* 88 Fed. Reg. 6478, 6496 (Jan. 31, 2023) (the "Rule"); *see also* ROA.23-40685.458-552. One brace manufacturer alone reported selling more than 2.3 million units since 2020,[1] and the Congressional Research Service puts the total number between 10 and 40 million. ROA.23-40685.456. Although ATF insists the number is closer to 3 million, 88 Fed. Reg. at 6560, by any estimation, a rule change requiring regulation of stabilizing braces "would likely affect millions of owners." ROA.23-40685.456.

This exponential growth in the use of stabilizing braces was no accident. For a decade, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") repeatedly assured the American public that purchasing, owning, and attaching a stabilizing brace to their pistols would not affect its legal classification under the National Firearms Act of 1934 ("NFA"), 26 U.S.C. §§ 5801–72. As recently as last January, ATF proclaimed "there are no existing statutes . . . that explicitly regulate firearms

---

[1] Complaint ¶ 173, *FRAC v. Garland*, No. 1:23-cv-00024-DLH-CRH (D.N.D. Feb. 9, 2023).

equipped with 'stabilizing braces.'" 88 Fed. Reg. at 6559; *see also* ROA.23-40685.458-552.

But in a recent "surprise switcheroo," *Wages & White Lion Invs., L.L.C. v. FDA*, 90 F.4th 357, 386 (5th Cir. 2024), ATF decided gun owners who relied on ATF's advice are now felons under a new Rule regulating firearms with attached stabilizing braces. 88 Fed. Reg. at 6478. Despite Congress having "clearly indicated" an intent to regulate narrow categories of purportedly "gangster[]" weapons, *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992), ATF decided—admittedly, at the President's instigation—that the NFA's taxing scheme and the Gun Control Act ("GCA") "may nonetheless" stretch to cover stabilizing braces. 88 Fed. Reg. at 6559. ATF now claims that virtually every stabilizing brace installed on a pistol creates an illegal, unregistered short-barreled rifle. ROA.23-40685.458-552.

ATF justifies pulling the rug out from under millions of law-abiding gun owners by claiming that the agency has suddenly now reached "the best interpretation of [a] statute" that has been in effect for 90 years. 88 Fed. Reg. at 6480. ATF now dismisses dozens of contrary opinion letters and agency actions[2] because they putatively "did not [] employ this correct understanding of the statutory terms," and therefore "all such prior classifications are no longer valid as of January 31, 2023." *Id.* Perhaps more troubling, although ATF openly acknowledges that its past representations led many "consumers and dealers [to] believe[] them[selves] not to be subject to the NFA when purchasing and selling" stabilizing braces, 88 Fed. Reg. at 6563, ATF

---

[2] *See, e.g.*, ROA.23-40685.432-51.

insists those consumers were in "violation[] of the NFA," *id.* at 6565—a felony violation carrying a possible penalty of imprisonment for up to ten years, fines up to $250,000, or both. 26 U.S.C. § 5871; 18 U.S.C. § 3571(b)(3). But, ATF insists, there is no reason to worry: The Rule provided an "opportunity to remedy" violations during a 120-day tax amnesty period. 88 Fed. Reg. at 6565. Now that the period has ended, though, gun owners are required to "dispos[e]" of their braces entirely, 88 Fed. Reg. at 6563, "surrender[] the[ir] firearm to law enforcement," *id.* at 6481, or become a felon in possession of a now-unlawful firearm.

This Court has rejected similar efforts by ATF to outlaw bump stocks or to declare by rule that unfinished and incomplete frames and receivers are "firearms,", which was also an attempt to change past practice by supposedly finding new authority in decades-old statutes. *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023) (en banc) (bump stocks); *VanDerStok v. Garland*, 86 F.4th 179 (5th Cir. 2023) (frames/receivers). The Court should do so again.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 and 5 U.S.C. § 702. This Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

## ISSUES PRESENTED

1.  Whether the district court properly held that Appellees, who include individual gun owners, Second Amendment rights groups, and the State of Texas, have demonstrated a likelihood of success on the merits because the Rule suffers serious statutory and constitutional flaws.

2.  Whether the district court abused its discretion in holding that equity favors injunctive relief to protect innocent Americans from being subject to arrest based on ATF's lawless actions pending a final resolution on the merits.

3.  Whether the district court abused its discretion in crafting its remedy by enjoining Defendants from enforcing and implementing the Rule against Appellees Brady Brown, GOA members, and their respective resident families.

## Statement of the Case

### I.  Regulatory History

In 1934, Congress passed the NFA out of concern about mobsters' ability to access dangerous weapons. *See* Nicholas J. Johnson et al., Firearms Law and the Second Amendment: Regulation, Rights, and Policy 570-71 (3d ed. 2021). Lacking a police power, Congress fashioned the NFA as "a tax statute," *Thompson/Ctr.*, 504 U.S. at 517; *see also United States v. Parker*, 960 F.2d 498, 500 (5th Cir. 1992), and imposed what was thought to be a prohibitively expensive duty on specific firearms, including "a rifle having a barrel or barrels of less than 16 inches in length" and "a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length." 26 U.S.C. § 5845(a)(3), (4). These weapons are statutorily defined as "short-barreled rifles." 18 U.S.C. § 921(a)(8).

The NFA defines the act of "making" a short-barreled rifle broadly to include not only manufacturing by the firearms industry, but also the conduct of ordinary persons in their own homes "putting together" or "altering" a weapon into a

regulated configuration. 26 U.S.C. § 5845(i). The NFA imposes a $200 tax on each short-barreled rifle "made" by unlicensed persons, which may not be done without first seeking ATF's permission and paying the tax. 26 U.S.C. §§ 5821, 5822. If ATF grants permission, it registers the short-barreled rifle in the National Firearms Registration and Transfer Record, and the maker must engrave on their rifle their name, location, and a serial number, if it does not already have one. 27 C.F.R. § 479.102(a)(1). Making or possessing a short-barreled rifle in violation of these requirements is a felony. 26 U.S.C. § 5861(f), (d), (i). Violators are subject to imprisonment for up to ten years, fines up to $250,000, or both. 26 U.S.C. § 5871; 18 U.S.C. § 3571(b)(3). ATF enforces the NFA. *See* 26 U.S.C. § 7801.

Fully aware of the growing use of stabilizing braces, in 2012, ATF began telling the public that pistols "equipped" with such braces "would not be subject to NFA controls." ATF Classification Letter (Nov. 26, 2012) (emphasis ATF's).[3] And ATF explained that using many types of particular braces would not change a pistol's non-NFA "classification," even if the owner "us[ed] the brace improperly" for shoulder firing. Letter from ATF to Sergeant Joe Bradley (Mar. 5, 2014).[4] ATF repeated that line for years, saying in 2018, for example, that ATF recognizes "a stabilizing brace is not designed to be shouldered" and that stabilizing braces are also generally "not considered a shoulder stock" resulting in short-barreled-rifle status. Letter from ATF to Roland Damasco at 2-3 (June 24, 2018).[5]

---

[3] https://tinyurl.com/2w8cj68j.

[4] https://tinyurl.com/j97j8wf3.

[5] https://tinyurl.com/5n7f5729.

The Rule reverses course and redefines what constitutes an NFA "rifle," now to include "a weapon that is equipped with an accessory, component, or other rearward attachment (*e.g.*, a 'stabilizing brace') that provides surface area that allows the weapon to be fired from the shoulder." 88 Fed. Reg. at 6574–75 (amending 27 C.F.R. §§478.11, 479.11). The Rule sets forth a list of factors that ATF will consider, in its unfettered discretion, to determine whether such a weapon does in fact amount to a regulated "rifle." *Id.* As ATF explained in its regulatory analysis, ROA.23-40685.297, the Rule redefines approximately 99% of handguns equipped with stabilizing braces as short-barreled rifles.

ATF gave affected gun owners until May 31, 2023, to comply (88 Fed. Reg. at 6478), promising that it will "exercis[e] its enforcement discretion" and give owners of braced handguns "options that they can choose from" to avoid criminal liability. *Id.* at 6480-81. For example, before May 31, "possessors of such weapons … [could] register the firearms to comply with the statutory requirements." *Id.* After May 31, "other options" for compliance now include "modifying affected weapons to remove them from the definition of a short-barreled rifle, destroying the firearm, or surrendering the firearm to law enforcement." *Id.* Under the Rule, gun owners who remove the brace and keep it unconnected to the handgun still own a "rifle," even if it is never reattached. *Id.* at 6570. If kept, the brace must be "alter[ed]" in a way that it could never be "reattached" to the handgun. *Id.*

As the district court explained, because ATF's effective "deadline has now passed," an individual seeking to comply with the Rule has only four options: "(1) permanently modify their weapon to remove it from the scope of the NFA,

(2) dispose of or 'alter' their stabilizing brace so that it can never be reattached, (3) turn over their weapon to the ATF, or (4) destroy their weapon completely." ROA.23-40685.1047 (citing 88 Fed. Reg. at 6570).

ATF acknowledges that each of these options come at a cost to gun owners. *See* ROA.23-40685.458-552. For example, ATF estimates the various financial harms that an individual would incur by complying with the statute past the registration date: (1) $270 for disposing of a stabilizing brace, ROA.23-40685.515-16, (2) $567 for adding barrel length to a weapon to remove it from the "short barrel rifle" classification, ROA.23-40685.501, and (3) $2,500 to destroy or turn in the firearm and brace altogether, ROA.23-40685.495.

## II. Procedural History

Several plaintiffs, including Appellees, filed lawsuits challenging the Rule. Appellees sued ATF, the United States Department of Justice, and ATF Director Steven Dettelbach in his official capacity. ROA.23-40685.13. Appellees' Complaint alleged that the Rule suffers multiple statutory and constitutional defects. ROA.23-40685.55-143. Specifically, Appellees argued the Rule: (1) exceeds ATF's statutory authority; (2) violates the Second Amendment; (3) is not a proper exercise of Congress's taxing power and unconstitutionally taxes the exercise of a constitutional right; (4) is arbitrary and capricious; and (5) is not a logical outgrowth of the noticed proposed rule. ROA.23-40685.55-143.

During the district court proceedings, the Northern District of Texas addressed the same question in another case challenging the Rule. *See Mock v. Garland*, 666 F. Supp. 3d 633 (N.D. Tex. 2023), *rev'd and remanded*, 75 F.4th 563 (5th Cir. 2023).

There, the court denied a substantially similar motion for preliminary injunction. *See id.* at 645. The gun-owner plaintiffs appealed and sought emergency injunctive relief. *See Mock v. Garland*, No. 23-10319, Dkt. No. 25 (5th Cir. May 17, 2023). This Court took the unusual step of enjoining the Rule in the first instance, expedited appellate review, No. 23-10319, Dkt. No. 52 (5th Cir. May 23, 2023), and reversed the district court's denial of the injunction. *See Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023). In reversing, the Court determined that "plaintiffs will likely succeed on the merits of their Administrative Procedure Act [] challenge," and that the Rule was not a logical outgrowth of the notice of proposed rulemaking. *Id.* at 567.

Considering this Court's decision in *Mock*, the district court found that "any plaintiff challenging the Rule on APA grounds in the Fifth Circuit has the same likelihood of success," holding that Appellees have "a substantial likelihood to succeed on the merits of their logical-outgrowth claim." ROA.23-40685.1044. The district court also determined that because Appellees "owned firearms and stabilizing braces that the Final Rule would classify," they "had 'no trouble establishing a substantial threat of irreparable harm in the form of nonrecoverable compliance costs.'" ROA.23-40685.1047 (quoting *Mock v. Garland*, No. 4:23-cv-00095, 2023 WL 6457920, at *7 (N.D. Tex. Oct. 2, 2023)). As the court acknowledged, the *Mock* Court's "logic is equally applicable here." ROA.23-40685.1047.

The district court declined to consider Appellees' remaining grounds for setting aside the Rule, explaining that its evaluation of Appellees' additional claims "would not affect the Court's analysis regarding whether to issue a preliminary injunction." ROA.23-40685.1045. The court noted that "this case is only at the preliminary

injunction phase," and that it might "find it appropriate to address [Appellees'] additional claims" at the merits stage. ROA.23-40685.1045. The district court partially granted Appellees' requested preliminary injunctive relief and enjoined Defendants from implementing or enforcing the Rule against Appellees Brady Brown, GOA members, and their respective families. ROA.23-40685.1052.

ATF appealed. Five cases, including this one, were consolidated on appeal.

## Summary of the Argument

As ATF acknowledges (at 17), this Court's prior decision in *Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023), makes Appellees likely to succeed on their challenge to the Rule "on the basis that it was procedurally unsound under the [APA]." In *Mock*, the Court focused on ATF's violations of the APA, including ATF's failure to comply with the APA's notice-and-comment requirement before issuing the Rule and ATF's error in finalizing the Rule even though it was not a logical outgrowth of the agency's proposed rule. Because ATF failed to comply with the APA in multiple respects, the Court determined it had exceeded its statutory authority. The same outcome applies to Appellees' APA claims here.

Appellees are also likely to succeed on their additional claims for two reasons: *First*, the Rule violates the Second Amendment because it infringes the right to keep and bear firearms for self-defense. And *second*, the Rule is an invalid exercise of Congress's taxing power because it seeks to unconstitutionally tax the exercise of a

constitutional right. Each of these reasons provides independent bases for this Court to affirm the district court's injunction.[6]

## STANDARD OF REVIEW

This Court "review[s] the district court's grant of [a] preliminary injunction for abuse of discretion, reviewing underlying factual findings for clear error and legal conclusions de novo." *Harrison v. Young*, 48 F.4th 331, 339 (5th Cir. 2022); *see also Planned Parenthood of Greater Tex. Family Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 354 (5th Cir. 2020) (en banc); *Women's Med. Ctr. of Nw. Hous. v. Bell*, 248 F.3d 411, 418-19 (5th Cir. 2001). A "preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion.'" *Harrison*, 48 F.4th at 342 (quoting *PCI Transp., Inc. v. Fort Worth & W. R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005)). A plaintiff "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 20 (2008).

---

[6] ATF argued below that "a facial APA challenge to the Rule is ill-suited," noting that Appellees had not asked the district court to rule on any "particular weapon" and its "proper[] classif[ication]." ROA.23-40685.629. ATF does not advance that argument on appeal, so it is waived. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). Still, Appellees' facial challenge to the Rule is appropriate.

**ARGUMENT**

## I. Appellees Are Likely to Succeed on the Merits.

Under the rule of orderliness, this Court "'may not overturn another panel's decision'" absent a change in the law. *United States v. Rahimi*, 61 F.4th 443, 450 (5th Cir. 2023), *cert. granted*, 143 S. Ct. 2688 (2023) (quoting *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 792 (5th Cir. 2021)). Here, the Court is bound by its earlier decision in *Mock* to hold that Appellees are likely to succeed on the merits of their APA claims. Even if that were not the case, the Court could affirm on Appellees' additional claims: that the Rule violates the Second Amendment because it attempts to regulate the constitutional right to keep and bear arms, and that the Rule is an invalid exercise of Congress's taxing power.

### A. This Court already held that the Rule violates the APA.

The APA generally "appl[ies] to review of a rule or order." *Inhance Techs., L.L.C. v. United States Envtl. Prot. Agency*, ____ F.4th ____, 2024 WL 1208967, at *3 (5th Cir. Mar. 21, 2024) (internal citation omitted); *see id.* at *5 (rejecting EPA's attempt to redefine rule with arbitrary new interpretation that contradicted earlier agency stance). Under the APA, a "reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … in excess of statutory jurisdiction, authority, or limitations … [or] without observance of procedure required by law." *Id.* (citing 5 U.S.C. § 706). As "mere creatures of statute," agencies "must point to explicit Congressional authority justifying their decisions." *Id.* at *4 (citing *Clean Water Action v. EPA*, 936 F.3d 308, 313 n.10 (5th Cir. 2019)). And they "cannot 'surprise' a party by penalizing it for 'good-faith' reliance on the agency's

11

prior positions" because regulated entities and individuals "are entitled to know the rules." *Id.* at \*6 (citing *R.J. Reynolds Vapor Co. v. FDA*, 65 F.4th 182, 189 (5th Cir. 2023)). The "Fifth Amendment's Due Process Clause" demands "that administrative agencies must give the public fair notice of their rules before finding a violation of them." *Id.* at \*5 (citing *Wages & White Lion Invs.*, 90 F.4th at 374-76). An agency is "not allowed to skirt the framework set by Congress by arbitrarily deeming" that a "decades-old" policy suddenly contradicts the agency's new "contrar[y] interpretation of the law. *Id.* at \*5-6. Thus, when an agency attempts to "redefine" the law, this Court "eschew[s]" agency interpretation and adopts the "more straightforward interpretation of the statute." *Id.*

The district court correctly recognized that this Court already held in *Mock v. Garland* that Appellees' APA claims are likely to succeed on the merits. ROA.23-40685.1044. Under this Court's rule of orderliness, the same outcome applies here.

### 1. The Rule is procedurally invalid because its definition of a "rifle" is not a logical outgrowth of the proposed rule.

Before the Court ever reaches the merits of the Rule, the Rule must be set aside because the ATF's proposed rulemaking provided no notice before criminalizing previously lawful property owned by millions of Americans. As this Court has recognized, notice under the APA "suffices if [a final rule] is a 'logical outgrowth' of the proposed rule, meaning the notice must 'adequately frame the subjects for discussion' such that the 'affected party should have anticipated'" the agency's final rule from the proposed rule. *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 447 (5th Cir. 2021). Consequently, "a final rule fails the logical outgrowth test and thus

violates the APA's notice requirement where interested parties would have had to divine [the agency's] unspoken thoughts, because the final rule was surprisingly distant from the proposed rule." *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1080 (D.C. Cir. 2009) (cleaned up). A final agency rule is subject to the logical-outgrowth test if it is legislative and not merely interpretative. *Chrysler Corp. v. Brown*, 441 U.S. 281, 315 (1979); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015).

This Court has already held that ATF violated this requirement in banning stabilizing braces. As *Mock* explained, "ATF issued a Proposed Rule indicating that the agency would use a point system to classify a firearm with a stabilizing brace as either a braced pistol or a rifle." *Mock*, 75 F.4th at 566-67; *see also Factoring Criteria for Firearms with Attached "Stabilizing Braces,"* 86 Fed. Reg. 30826, 30841-42 (June 10, 2021) (Proposed Rule). After a public comment period, "during which the agency received hundreds of thousands of negative comments," ATF published the Rule. *Mock*, 75 F.4th at 567. The Rule "scrapped the points-based approach of the Proposed Rule" and focused instead on a "six-factor balancing test considering everything from the weight of the firearm with the stabilizing brace attached to the prevalence of Youtubers' demonstrating the likely use of the weapon." *Id.* This vague six-part test was never suggested in the rulemaking process, and it includes factors making it impossible to fairly implement, based on "whether" the weapon is of an undefined weight or length, has an indeterminate "length of pull," has unspecified "eye relief" for sighting, and has some indefinite amount of "surface area" in the rear. 88 Fed. Reg. at 6569-70. The six-part test also considers "marketing and promotional

13

materials" and "information" about how the firearm is used in practice. 88 Fed. Reg. at 6569-70.

Tellingly, the Proposed Rule conceded that a weapon that "*could* be fired from the shoulder," "*may* be designed and intended to be fired from the shoulder," or "*is likely* designed and intended to be fired from the shoulder" is *not* a rifle. 86 Fed. Reg. at 30826, 30829 (June 10, 2021). Rather, only a weapon that "*is* designed and intended to be fired from the shoulder" is a "rifle." *Id*. In contrast, the Rule replaces "designed and intended" with the broader and atextual "allows" language that must be rejected. *See supra* 20.

The Rule is a wholesale change in methodology from the earlier Proposed Rule. In fact, application of the Rule and the Proposed Rule would yield conflicting results. For example, under the Proposed Rule, a firearm would be considered a short-barreled rifle if it had a "length of pull" over 13.5 inches, without any other considerations. 86 Fed. Reg. at 30833. Yet under the Rule, length of pull merely, "in combination with other features[,] could indicate" a short-barreled rifle. 88 Fed. Reg. at 6569-70. As ATF explains, one style of firearm may permissibly have a longer length of pull than another style of firearm. *Id.* at 6535 (compared to the Proposed Rule, which imposed the same length of pull measurements across-the-board). ATF cannot justify these conflicting results. And as this Court recognized in *Mock*, the Rule "affects individual rights, speaks with the force of law, and significantly implicates private interests," so "it is legislative in character." *Mock*, 75 F.4th at 578. It is therefore subject to the APA's notice-and-comment requirement and logical-outgrowth test, *id.* at 583, but "because the Final Rule bears almost no resemblance in manner

or kind to the Proposed Rule, the Final Rule fails" that test and "violates the APA," *id.*

ATF does admit that the Proposed Rule "was intended to ensure uniform consideration and application [but] … did not achieve these intended purposes." 88 Fed. Reg. at 6510. But rather than provide a notice-and-comment period for the novel final Rule as required by the APA, ATF simply adopted it. By "promulgating a requirement that is different in kind than the proposed requirement, [ATF] did not adequately frame the subjects for discussion" and violated the logical-outgrowth requirement. *Mexican Gulf Fishing Co. v. United States Dep't of Com.*, 60 F.4th 956, 975 (5th Cir. 2023). The Rule therefore should be set aside, having been adopted "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

Because this Court "has already decided 'that the Rule fails the logical-outgrowth test and violates the APA,'" ROA.23-40685.1044 (citing *Mock*, 75 F.4th at 578), that ends the matter. Indeed, "that holding pertained to the ATF's rulemaking process," so "any plaintiff challenging the Final Rule on APA grounds in the Fifth Circuit has the same likelihood of success." ROA.23-40685.1044. As a result, Appellees—who, like the plaintiffs in *Mock*, challenge the Rule under the APA and specifically under the logical-outgrowth test—"have a substantial likelihood to succeed on the merits" of those claims, too. ROA.23-40685.1044. The Court need look no further than *Mock* to decide the same inquiry here.

**2.  The Rule is substantively invalid because it is arbitrary and capricious.**

Even when a final rule complies with the APA's notice-and-comment requirement, it can be challenged if it is "arbitrary and capricious in violation of [the APA]." *Mock*, 75 F.4th at 579 n.38.[7] To avoid adopting an arbitrary and capricious rule, an agency must first "assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *DHS v. Regents of the Univ. of Calif.*, 140 S. Ct. 1891, 1915 (2020).

The reliance interests here are significant. Millions of people for years have possessed firearms with stabilizing braces under a regime in which ATF explicitly declared them *not* to be short-barreled rifles. In an attempt to trivialize those interests, ATF claims (at 26) that "the Rule itself does not reflect any fundamental shift in the agency's approach to classifying short-barreled rifles." According to ATF (at 27-28), "[b]oth before and after the Rule, ATF has understood that the majority of braced firearms are likely to be short-barreled rifles and has employed a case-by-case approach to determining whether any particular braced firearm is designed and intended to be fired from the shoulder." ATF "[n]evertheless" admits (at 28) that "the approach articulated in the Rule is not wholly consistent with the approach reflected in each classification letter issued before the Rule," and that "[i]t was precisely this inconsistency that the agency sought to remedy through the Rule." ATF's

---

[7] In *Mock*, this Court explained that "such a challenge [to the Rule] may have succeeded," but plaintiffs forfeited the argument by failing to assert it on appeal. *Mock*, 75 F.4th at 579 n.38. This Court should consider it here.

attempts to now minimize legitimate reliance interests that were based on its acknowledged past inconsistent statements should be rejected for three reasons.

*First*, ATF suggests that, because it can always change its mind, gun owners can never believe its pronouncements, and "any potential reliance interest is reduced." 88 Fed. Reg. at 6507. On the contrary, ATF must "provide a more detailed justification than what would suffice for a new policy created on a blank slate … when its prior policy has engendered serious reliance interests that must be taken into account." *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 515 (2009). An agency cannot change its mind without "good reasons," and "a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." *Id.* at 515-16; *Wages & White Lion Invs.,* 90 F.4th at 381.

Here, ATF changed its mind not because there had been a change to the 90-year-old statutory text but because *the President told it to*, following a rulemaking directive purportedly in response to *one* criminal shooting which "appear[ed] to have used a pistol with an arm brace."[8] If an outwardly anti-gun administration[9] can pretextually rest interpretive reversals and unilateral expansions of federal criminal law on isolated instances of criminal misuse, public confidence in the rule of law is lost.

---

[8] *FACT SHEET: Biden-Harris Administration Announces Initial Actions to Address the Gun Violence Public Health Epidemic*, White House (Apr. 7, 2021), https://tinyurl.com/5n8cwbnv.

[9] Indeed, President Biden campaigned on criminalizing tens of millions of commonly owned rifles and even magazines, suggesting they all should be added to the NFA. *The Biden Plan to End Our Gun Violence Epidemic*, Biden Harris (2022), https://perma.cc/L2QU-TGTM.

This Court should therefore treat ATF's newfound statutory interpretation with the utmost skepticism. After all, "when the government... speaks out of both sides of its mouth, no one should be surprised if its latest utterance isn't the most convincing." *Bittner v. United States*, 598 U.S. 85, 97 n.5 (2023).

*Second*, ATF states that gun owners have ample options to comply with the Rule. 88 Fed. Reg. at 6507-08. But that has nothing to do with reliance on the status quo, which, in any case, was "significant" here. *Regents*, 140 S. Ct. at 1915.  And even if it did, ATF's options for compliance themselves are capricious, as the Director's congressional testimony made clear. *See supra* 24.

*Third*, ATF's claim that the "only [reliance] interest identified is the avoidance of the NFA's making and transfer taxes," 88 Fed. Reg. at 6508, is false. ATF itself assured the public on multiple occasions that attaching a brace to a handgun was not a taxable, potentially criminal event; however, the Rule claims that millions of individuals who took ATF at its word have always been felons who are now subject, at best, to a $200 tax and, at worst, to ten years' imprisonment and a $250,000 fine. And it ignores that short-barreled rifles cannot be taken interstate without prior approval by ATF. *See* 18 U.S.C. § 922(a)(4); 27 CFR § 478.28.[10] Many people probably would not have acquired a stabilizing brace to begin with had they understood it would be subject to such onerous requirements.

Additionally, the APA demands reasoned analysis "when an agency rescinds a prior policy," including consideration of "the alternatives." *Regents*, 140 S. Ct. at

---

[10] *See also* https://www.atf.gov/file/11361/download (ATF Form 5320.20).

1913 (internal quotation marks removed). Yet ATF fails to explain the reasoning for changing its mind about whether braced pistols are short-barreled rifles. To the contrary, the Rule's six-part test begins by asking a threshold question of whether "a weapon … provides surface area that allows the weapon to be fired from the shoulder," 88 Fed. Reg. at 6569, but does not provide any guidance as to *how much* "surface area" is sufficient. Rather, the Rule lists six "factors" to be considered, the first four of which again begin by asking "<u>whether,</u>" giving no indication of how the factors described therein will be counted or the relative values assigned to any particular feature or characteristic. *Id.* For example, factor (i) considers "<u>whether</u> the weapon has a weight or length consistent with … similarly designed rifles," *implying* (but not stating) that heavier and longer firearms are more likely to be deemed rifles, and failing to detail how heavy or how long is too much or too little. *Id.* The Rule contains charts that show that rifle weights and lengths vary widely, demonstrating that any attempt to define rifles by these variables is arbitrary and capricious. 88 Fed. Reg. at 6514–18. ATF fails to give sufficient analysis as to why such a confusing standard is preferable to more predictable and empirical alternatives.

Similarly, the Rule asks "whether" rear surface area conducive to shouldering is created by a "necessary" component of a firearm, apparently meaning that ATF is unwilling to concede that even other gun features do not convert a pistol into a short-barreled rifle, even if the pistol does not have a stabilizing brace attached. *See* 88 Fed. Reg. at 6574, 6537-38; *see also id.* at 6484, 6496 (purporting to reclassify certain shotguns as possible NFA weapons even without stabilizing braces installed).

### 3.   The Rule is inconsistent with the NFA.

#### a.   For nearly a century, the NFA has taxed certain types of *weapons*, not accessories that could theoretically be misused.

Apart from and in addition to the reasons given by the district court, this Court should set aside the Rule because it violates the NFA's plain text, contrary to ATF's assertions (at 28-29). Under the NFA, a firearm is a rifle only if it is "designed or redesigned, made or remade, *and* intended to be fired from the shoulder." 26 U.S.C. § 5845(c) (emphasis added). It is not enough that a weapon is constructed in a way that merely *allows* a shooter to fire from the shoulder. It must be *designed* and *intended* to be fired from the shoulder.

The Rule rewrites this text by making criminal liability turn on whether a brace "*allows*" a shooter to fire from the shoulder. 88 Fed. Reg. at 6574–75 (emphasis added). But a weapon with a brace that is designed and intended to be fired from the forearm is *not* designed and intended to be fired from the shoulder, and is not a "rifle," irrespective of whether it is *capable* of being fired from the shoulder.

There is no statutory foundation for the word "allows" used in the Rule and, indeed, the Supreme Court already has rejected the argument that "intended" includes "allows," having concluded that the "possibility" that an "aggregation of parts" could be assembled into a short-barreled rifle is insufficient to come within the NFA's definitional text if the parts also have a different "useful purpose." *Thompson/Ctr.*, 504 U.S. at 512-13. Stabilizing braces do have such a useful purpose independent of "allow[ing]" a firearm to be shouldered—namely, they are "intended to assist persons with disabilities" by enabling them to use their lower arm

for additional stability. 88 Fed. Reg. at 6496. That independent use has nothing to do with shoulder-firing, or anything else plausibly connected to the statutory definition of "rifle." 26 U.S.C. § 5845(c). It is no wonder, then, that ATF candidly admits "there are no existing statutes . . . that explicitly regulate firearms equipped with 'stabilizing braces.'" 88 Fed. Reg. at 6559.

### b. Even assuming an ambiguity in the NFA, the rule of lenity requires the Court to reject the agency's interpretation.

Even if this Court were to conclude that the NFA is ambiguous (and it should not), because it carries criminal penalties, any discretion that the agency might otherwise have regarding how to interpret the statute is further limited by the rule of lenity.[11] The rule of lenity is a "time-honored interpretive guideline." *Liparota v. United States*, 471 U.S. 419, 427 (1985). This Court repeatedly applies the rule to construe an ambiguous criminal statute against imposing criminal liability to the accused. *See e.g., United States v. Cooper*, 38 F.4th 428, 434 (5th Cir. 2022); *United States v. Kaluza*, 780 F.3d 647, 669 (5th Cir. 2015); *United States v. Orellana*, 405 F.3d 360, 370-71 (5th Cir. 2005). The Court has already applied the rule in the Second Amendment context. *See Cargill*, 57 F.4th at 471 ("[A]ssuming the definition of machinegun is ambiguous, we are bound to apply the rule of lenity.");

---

[11] Appellees do not concede that ATF is entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837 (1984), and reserve their rights to seek further review should the Supreme Court choose to revisit that decision, *Agostini v. Felton*, 521 U.S. 203, 214, 217 (1997).

*Thompson/Ctr.*, 504 U.S. at 517-18 ("apply[ing] the rule of lenity" to conclude item is not "a short-barreled rifle").

More than a decade of ATF's repeated representations that stabilizing braces do not convert pistols into short-barreled rifles should be fatal to ATF's newfound contrary interpretation. And fair notice is lacking when an authoritative government body "retroactive[ly]" purports to "expan[d]" what is otherwise "narrow and precise statutory language." *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964) (so holding regarding judicial expansions); *United States v. Kay*, 513 F.3d 432, 440 (5th Cir. 2007) (same).

Despite ATF's assertions (at 7-11) to the contrary, the Rule retroactively expands the NFA's application by expressly reversing the agency's past representations about stabilizing braces dating back until at least 2012. As discussed above, *supra* 3-4, ATF has repeatedly assured the public that attaching a stabilizing brace to a pistol would *not* transform it into a rifle.[12] Changing its earlier position, ATF now concludes that its past representations "are no longer valid." 88 Fed. Reg. at 6480. ATF's inconsistency begs the "question whether its current position represents the best view of the law." *Bittner*, 598 U.S. at 97.

---

[12] As a matter of basic due process, ATF would not have been able to prosecute people for violating the NFA while its letters indicated the NFA did not apply. *See, e.g.*, *United States v. Pa. Indus. Chem. Corp.*, 411 U.S. 655, 670 (1973) (recognizing the cognizable "defense" that a company was "affirmatively misled" by regulator "into believing that its conduct was not criminal").

*Second*, the Rule adopts an interpretation of "rifle" under the NFA that imposes a constructive possession regime on gun owners that bears no resemblance to the statutory text, 26 U.S.C. § 5845(c), and cannot be squared with the principles of fair notice embodied in the rule of lenity. After all, the Rule reaches not only pistols equipped with stabilizing braces, but also detached stabilizing braces that are merely *in the same household* as a pistol to which one *could* be attached. According to the Rule, a brace owner who does not wish to register must "dispose of" his brace or "alter" the brace "such that it cannot be reattached"—*i.e.*, the owner must mutilate or destroy his own property such that it is unusable for its intended purpose. 88 Fed. Reg. at 6570. If the owner simply detaches the brace from the firearm and keeps it, he is still a felon. But no part of the statutory text defining a "rifle" plausibly reaches *parts* from which a rifle can be assembled.

The unlawfulness of ATF's constructive possession rule is made most clear by comparison to the NFA's "machinegun" definition, which does include mere "*parts* from which a machinegun can be assembled," 26 U.S.C. § 5845(b) (emphasis added), and the GCA's definition of "silencer," which likewise includes "any *part* intended only for use in" silencer assembly, 18 U.S.C. § 921(a)(25) (emphasis added). Notably, the NFA's "rifle" definition does not contain similar text reaching mere parts, and Congress's disparate language must be presumed to have been intentional. *See, e.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely."). The machinegun and silencer comparisons are also particularly

instructive because those items' parts have no other lawful firearm-related use, whereas even ATF admits a stabilizing brace could be used on a firearm that is not regulated by the NFA. *See* 88 Fed. Reg. at 6564.

*Third* and relatedly, ATF's own Director specifically assured Congress about the Rule's compliance requirements:

> [ATF] wrote the rule to make it easy to comply with. If somebody just, at their home, detaches the weapon from the brace and keeps them apart, … they do not have to register anything. They can keep the brace. They can keep the business end of the gun.[13]

But the Rule explicitly does not permit a person to "just" "detach[] the weapon from the brace" and then "keep" both at home without "hav[ing] to register anything." Instead, the Rule is written in such a way that a person who follows the Director's advice is a felon unless they further destroy or alter their brace "such that it cannot be reattached." 88 Fed. Reg. at 6570. If ATF's own Director does not understand his Rule, then ordinary citizens cannot be expected, subject to criminal penalty, to understand and keep up with ATF's ever-changing and mercurial interpretations.[14] Accordingly, "reasonable doubt" as to the statute's meaning and "grievous ambiguity" regarding its application caution against imposing criminal liability here. *See Cargill,* 57 F.4th at 469 (citing Antonin Scalia & Bryan A. Garner, Reading

---

[13] *Oversight of ATF, Hearing Before the H. Judiciary Comm.*, 118th Cong. (Apr. 26, 2023), https://tinyurl.com/ywf7z8yt.

[14] Appellees raised the ATF Director's false testimony in this litigation through a notice of supplemental authority, ROA.23-40685.774-78, and, tellingly, ATF never responded. To Appellees' knowledge, ATF has never attempted to reconcile the Director's testimony with the Rule.

Law: The Interpretation of Legal Texts 299 (2012) (quoting *Moskal v. United States*, 498 U.S. 103, 108(1990)); *Chapman v. United States*, 500 U.S. 453, 463, (1991) (quoting *Huddleston v. United States*, 415 U.S. 814, 831 (1974)).

### B.  The Rule violates the Second Amendment.

In addition to violating the relevant statutory scheme, and contrary to ATF's assertions (at 38), the Rule presents a considerable "risk of [an] immediate and significant injury to [plaintiffs'] Second Amendment right to keep and bear firearms for self-defense." After all, the Rule sweeps within the NFA's ambit millions of commonly owned weapons of the sort that were unregulated during the Founding Era, infringing constitutionally protected conduct. As such, the Rule fails to respect the constitutional limits that the Supreme Court reiterated in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

**1.**    The Second Amendment provides that the "right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Under *Bruen*, courts must decide "whether the Second Amendment applies by its terms" to challenged conduct. *United States v. Daniels*, 77 F.4th 337, 341 (5th Cir. 2023) (citing *Bruen*, 597 U.S. at 24). If the "Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. As the Supreme Court has recognized, "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding," and "that general definition covers modern instruments that facilitate armed self-defense." *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008); *Bruen*, 597 U.S. at 28. Accordingly, if a weapon can be carried, "the

Constitution presumptively protects" an individual's right to possess such a weapon, and any restrictions or prohibitions must find support in early historical tradition. *Bruen*, 597 U.S. at 24.

ATF cannot escape the Second Amendment by claiming that braced pistols are "dangerous and unusual" as some sort of premature textual matter, thereby relieving the government of its stringent historical burden. Indeed, each time the Supreme Court referenced in dicta restrictions on "dangerous and unusual" weapons, it did so in the context of an *assumed* historical tradition (*i.e.*, the government's burden to prove) of "affray" statutes affecting only *manner of carry* and not mere *ownership*. *See Heller*, 554 U.S. at 627 ("historical tradition of prohibiting the carrying"); *Caetano v. Massachusetts*, 577 U.S. 411, 412 (2016) (per curiam) (same); *Bruen*, 597 U.S. at 47 (same). To equate historical limitations on public carry ("bear[ing]") to an onerous prohibition on untaxed, unregistered ownership ("keep[ing]") spectacularly fails *Bruen*'s analogical "how" metric. *Bruen*, 597 U.S. at 29. ATF cannot escape its burden simply by declaring itself exempt from the plain text.

Stabilizing braces are "in common use for lawful purposes." *Heller*, 554 U.S. at 627. ATF has admitted as much: Conservatively, there are at least 3 million stabilizing brace/pistol combinations in circulation, 88 Fed. Reg. at 6560, with between 3 million and 40 million braces sold from 2013 to 2020. 86 Fed. Reg. at 30,845-46. That number far exceeds the *total number* of stun guns the Supreme Court found sufficient for "common use" constitutional protection in *Caetano*. *See* 577 U.S. at 420 (Alito, J., concurring) ("approximately 200,000 civilians owned stun guns"). And braced pistols are used for lawful purposes, such as allowing Americans with

disabilities to engage in self-defense. 88 Fed. Reg. at 6479. Even if ATF is correct that a braced pistol transforms into a short-barreled rifle, they are lawfully used in at least 46 states. *See* Amicus Br. for Texas Public Policy Foundation at 17.

**2.**    Because the Rule implicates constitutionally protected activity, *Bruen* instructs courts to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." 597 U.S. at 26. The federal government bears the burden of "affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. ATF cannot meet that burden.

ATF identifies no Founding-era precedent of regulating weapons based on barrel length—much less regulating handguns merely because the possessor attaches accessories designed to increase stability and accuracy. Indeed, prior to the 20th century, firearms faced no remotely analogous regulation pertaining to barrel length or the sort of attached accessory. *Id.* at 30 (requiring at least "analogous" historical regulation). The criminalization of mere barrel length or shouldering is a 20th-century invention, unmistakably foreign to those who ratified the Second Amendment.

The Rule fails under *Bruen* because it implicates the Second Amendment and restricts the possession of traditionally bearable arms. And constitutional protections "implicitly protect those closely related acts necessary to their exercise." *See Luis v. United States*, 578 U.S. 5, 26-27 (2016) (Thomas, J., concurring in the judgment). Under this logic, stabilizing braces protect the Second Amendment right to self-defense by making handguns safer and more accurate, and therefore enjoy protection all the same. *Mock*, 75 F.4th at 588 (Willett, J., concurring).

## C. The Rule violates the limits on Congress's taxing power.

Finally, the Rule constitutes an invalid exercise of Congress's taxing power. U.S. Const. art. I, § 8, cl. 1. As "a tax statute," *Thompson/Ctr.*, 504 U.S. at 517, the NFA's "constitutional bedrock" lies in "the power to tax rather than the commerce power." *Parker*, 960 F.2d at 500 (cleaned up). And, when the federal government exercises taxing power, there is a critical "difference between" permissible "revenue production" and "mere regulation." *Bailey v. Drexel Furniture Co. (Child Labor Tax Case)*, 259 U.S. 20, 38 (1922). To be sure, sometimes a valid taxing statute contains an ancillary "web of regulation [that] aid[s] enforcement of the" tax. *United States v. Gresham*, 118 F.3d 258, 262 (5th Cir. 1997). For example, the government can "require the submission of tax-related information that [the IRS] believes helpful in assessing and collecting taxes." *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1586-87 (2021). But when the government engages in regulatory mission creep, its nominal taxing measure can "lose[] its character as such and" attain the impermissible "characteristics of regulation and punishment." *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 779 (1994). Courts must carefully prevent such blurred lines to ensure the federal government does not "break down all constitutional limitation of [its] powers . . . and completely wipe out the sovereignty of the states." *Bailey*, 259 U.S. at 38. The Rule violates these limitations for at least three reasons.

*First*, ATF does not even try to maintain a pretense that the Rule is about revenue collection instead of regulation, which is the "essential feature of any tax." *NFIB v. Sebelius*, 567 U.S. 519, 564 (2012). After all, ATF decided to not "requir[e] that the $200 NFA making tax be paid upon registration during" an initial "120-day

window for compliance" for persons who already owned stabilizing braces. 88 Fed. Reg. at 6563. Now, unless ATF acts in its regulatory magnanimity to allow permission, the individual is subject to criminal prosecution even if they *were* willing to pay the tax. 88 Fed. Reg. at 6565. It is hard to imagine how the Rule could more nakedly regulate conduct, with no legitimate claim to revenue generation. *See NFIB*, 567 U.S. at 566 (indicating that, if "failure to purchase" insurance resulted in "criminal prosecution," the Affordable Care Act would not have been upheld as a taxing measure).

*Second*, the Rule violates the bedrock principle that as an exercise of Congress's taxing power, the NFA cannot employ the "characteristics of regulation and punishment." *Kurth Ranch*, 511 U.S. at 779. Knowing that its approvals often take "many months to even a year" to issue ATF has nonetheless extended new registration obligations to persons who lawfully purchased stabilizing braces. 88 Fed. Reg. at 6558. And, as noted, ATF also purports to retain unreviewable discretion to deny applications for reasons entirely unrelated to an owner's willingness to pay a tax on pain of becoming a felon.

*Third*, the Rule violates the principle that the federal government cannot tax the exercise of a constitutional right. *Murdock v. Pennsylvania*, 319 U.S. 105, 113 (1943). As the Supreme Court stated in the First Amendment context:

> A tax that burdens rights protected by the First Amendment cannot stand unless the burden is necessary to achieve an overriding governmental interest. Any tax that the press must pay, of course, imposes some "burden." But, as we have observed, this Court has long upheld economic regulation of the press. The cases approving such economic regulation, however, emphasized the general applicability of the challenged regulation to all businesses, [and] suggest[ed] that a regulation that singled out the press might place a heavier

burden of justification on the State, and we now conclude that the special problems created by differential treatment do indeed impose such a burden.

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 582-83 (1983). The Second Amendment is not a second class right merely because the current Administration finds it uncongenial. The NFA thus exceeds Congress's taxing power because it specifically taxes certain constitutionally protected firearms.

It is no response that the NFA does not regulate constitutionally protected conduct. True, in *Sonzinsky v. United States*, the Supreme Court upheld the NFA's "annual license tax on dealers [of] firearms" as a valid tax measure against arguments that the "legislative purpose" was to regulate instead of tax. 300 U.S. 506, 511 (1937). The Court concluded that this purpose was not relevant, because the law "on its face [was] an exercise of the taxing power." *Id.* at 513. In that case, a firearms dealer would simply make the annual payment on "July 1st of every year," H.R. 9741, 73d Cong., 48 Stat. 1236, 1237 (1934), and then be done with its tax obligation. The Court in *Sonzinsky* did not consider whether a tax that can only be paid if ATF allows registration of what is, at bottom, a handgun might violate the Second Amendment. And it certainly did not do so in light of *Heller* or *Bruen*, which post-date *Sonzinsky* by decades and hold that the ownership of handguns is an individual right. Indeed, as *Sonzinsky* did not even *mention* the Second Amendment, it cannot be read to uphold this Rule given that its tax is placed on the exercise of a constitutional right under *Bruen*'s historical framework.[15] And, whether taken alone or together with the

---

[15] The Rule is particularly troubling as ATF has admitted that stabilizing braces were designed to assist those with disabilities, 88 Fed. Reg. at 6496—perhaps those

reasons given by the district court, that constitutional infirmity means that Appellees are likely to succeed on the merits.

## II. Equitable Factors Support Preliminary Injunctive Relief.

The equitable factors also support relief. These factors hinge on whether the Rule suffers the statutory and constitutional infirmities described above. The likelihood of success on constitutional and statutory claims "carries with it a determination" that the other preliminary relief factors—namely, the irreparable harm and balance of equities and public interest factors—"have been satisfied." *See Trans World Airlines v. Mattox*, 897 F.2d 773, 783-84 (5th Cir. 1990); *All. for Hippocratic Med. v. FDA*, 78 F.4th 210, 252 (5th Cir. 2023); *see also Mock*, 75 F.4th at 577 (when government is a party, balance of equities and public interest factors merge).

**A.** To start, all Appellees suffer irreparable harm. A "loss of constitutional freedoms for even minimal periods of time … unquestionably constitutes irreparable injury." *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (internal quotation omitted). As courts have recognized, the loss of the constitutional right to bear arms under the Second Amendment creates such an injury. *See, e.g.*, *Baird v. Bonta*, 81 F.4th 1036, 1041-42 (9th Cir. 2023); *Wrenn v. District of Columbia*, 864 F.3d 650, 667 (D.C. Cir. 2017); *Ezell v. City of Chicago*, 651 F.3d 684, 700 (7th Cir. 2011).

---

least able to engage in the constitutionally protected right of self-defense through other means—to use a firearm.

Here, Appellees have demonstrated they suffer irreparable harm. Appellee Brown is suffering and will continue to suffer irreparable harm at the hands of the Rule. ROA.23-40685.583-88; ROA.23-40685.589-91. If he and all other similarly situated individuals represented by the organizational Appellees lose their injunctive relief, they run the risk of felony arrest, prosecution, imprisonment, and accompanying loss of Second Amendment rights (by the "choice" to either destroy or modify firearms or become a felon). ROA.23-40685.50-91. Additionally, surrendering or destroying a firearm and stabilizing brace will cause irreparable economic loss as the United States does not appear to have waived sovereign immunity for the cost of compliance with the rule. ROA.23-40685.491-92 (estimating $471.3 million in costs from surrendering firearms, including $2,526 in costs to an average individual and $8,754 to the average federally licensed firearms dealer); *Kiewit Offshore Servs. v. U.S. Dep't of Labor*, 2023 WL 417486, at *9 (S.D. Tex. Jan. 25, 2023) ("Although the Fifth Circuit has yet to speak directly as to this issue, case law from other district courts suggests that where economic losses are unrecoverable because of sovereign or governmental immunity, the harm may be irreparable.").

The State of Texas, too, suffers irreparable harm from ATF's unlawful Rule, which violates its sovereign and quasi-sovereign interests in its own territory and the welfare of its own citizens, thousands of whom are arbitrarily and capriciously declared felons by the Rule. For example, Texas criminalizes the possession, manufacture, transportation, repair, or sale of short-barreled rifles that are not properly registered with ATF, but it does not criminalize handguns with attached stabilizing braces. Tex. Penal Code § 46.05(a)(1)(C). To the extent that ATF declares that

millions of previously lawful handguns are now illegal short-barreled rifles, the Rule significantly and negatively affects the operation of Texas law. Moreover, "a State has a quasi-sovereign interest in the health and well-being—both physical and economic of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982). The Rule adversely affects Texans' health and well-being by criminalizing the possession of previously lawful weapons, diminishing Texans' ability to defend themselves.

**B.**   The same is true for the balance of equities and public interest factors. A court must weigh whether "the threatened injury outweighs any harm that may result from the injunction to the non-movant" and whether "the injunction will not undermine the public interest." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051, 1056 (5th Cir. 1997).

As noted, there is no harm to ATF from pausing enforcement of the Rule and maintaining the status quo. The Rule claims to "enhance[] public safety," 88 Fed. Reg. at 6481, yet ATF pointed to only two braced pistols (out of millions) that have been criminally misused, *see* 88 Fed. Reg. at 6495. Even then, there is no evidence that those crimes could not have been committed using a different firearm.

Instead, the public interest is served when the law is followed, and "there is generally no public interest in the perpetuation of unlawful agency action." *Wages & White Lion Invs.*, 16 F.4th at 560 (citation omitted). Additionally, "[t]he public interest is … served by maintaining our constitutional structure." *BST Holdings*, 17 F.4th at 618. And protecting constitutional rights is "the highest public interest at issue in a case." *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 458 (5th Cir.

2016). In the Second Amendment context, "any conversation about the importance of [the government's] interests in public safety and the prevention of gun violence ends when the means used to further them violate the Constitution." *Duncan v. Bonta*, 83 F.4th 803, 822 (9th Cir. 2023) (en banc) (Bumatay, J., dissenting).

Likewise, ATF suffers "no harm whatsoever" when it is prevented from "enforc[ing] an unlawful (and likely unconstitutional)" regulation, *BST Holdings*, 17 F.4th at 618, because agencies have no interest in "enforcing a regulation that violates federal law." *All. for Hippocratic Med.*, 78 F.4th at 252. The balance of equities and public interest weigh heavily in favor of an injunction.

## III. The District Court's Preliminary Relief Is Not Overly Broad.

Finally, ATF is wrong to assert (at 48) that the district court erred by issuing an "extension of relief to unidentified members of the plaintiff organizations," namely "the members of the Gun Owners of America." The district court has broad discretion in fashioning injunctive relief so as to provide complete relief to the party. *Lion Health Services, Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 702 (1979)). The Court will not vacate an injunction as overbroad simply because it might have drawn the injunction slightly more narrowly. *See, e.g.*, *Missouri v. Biden*, 83 F.4th 350, 396 (5th Cir. 2023) ("The mere fact that the injunction protects non-parties" is not grounds to vacate.).

Here, the district court likely could have enjoined the Rule entirely. When preliminary injunctive relief is granted under the APA, it can "suspend federal regulatory action universally." *See* Mila Sohoni, *The Power to Vacate a Rule*, 88 Geo. Wash. L. Rev. 1121, 1160 (2020). It didn't. Instead, it narrowed its relief to prevent

Defendants from enforcing or implementing the Rule against Appellees Brady Brown and his resident family and GOA's members and their resident families. There is no authority for the proposition that the court was required to narrow its ruling yet further or to require all of GOA's members and supporters be identified before relief may attach.

To the contrary, the settled doctrine of representational standing definitively does not require the identification of all individual members in order to obtain relief on their behalf. *See Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 200-01 (2023). And, as the district court observed, ROA.23-40685.1046, to hold otherwise now would violate associational freedoms inherent in anonymous membership. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) ("Compelled disclosure of membership in an organization engaged in advocacy of particular beliefs is" an "effective … restraint on freedom of association.").

To the extent "an association does have to identify a member with individual standing," Appellees already have with specificity. *Free Speech Coal., Inc. v. Colmenero*, 2023 WL 5655712, at *4 (W.D. Tex. Aug. 31, 2023). After all, the record reflects that "Plaintiff Brady Brown is … a member of Gun Owners of America, Inc.," *see* ROA.23-40685.18, and only one qualifying member is needed to satisfy this requirement, *Disability Rights Wisconsin, Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 801-02 (7th Cir. 2008). ATF no doubt may desire a nationwide list of gun owners who possess pistols with stabilizing braces, but no legal precedent requires that for representational plaintiffs to obtain relief. Indeed, precedent forecloses it. *See NAACP*, 357 U.S. 449.

In arguing to the contrary, ATF makes one factual claim and one legal claim. Neither has merit. *First*, on the facts, ATF asserts (at 50) that there is nothing in the "record [that] suggest[s] that the organizations' 'members' control—or are even aware of— this litigation that is purportedly on their behalf." ATF again ignores Brady Brown, who filed a declaration in this case, ROA.23-40685.589, as a "member of Gun Owners of America, Inc." Erich Pratt, the Senior Vice President of GOA and Gun Owners Foundation, similarly filed a declaration in which he stated that "[o]ur members desire and overwhelmingly support GOA and GOF's involvement in litigation to protect the rights that are being unconstitutionally infringed by the [Rule]," ROA.23-40685.146, and described one member who "is an honorably discharged former paratrooper" with a disability and who needs a stabilizing brace "for him to be able to" "safely, and accurately" shoot a pistol, ROA.23-40685.147. Pratt also described other members who live in states where "possession of short-barreled rifles is illegal unless properly registered with the ATF[,]" and military members who are subject to the Uniform Code of Military Justice and vulnerable to court martial for violations of the Rule. ROA.23-40685.148.

*Second*, on the law, ATF cites (at 49) one case, *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997), for the proposition that this Court must apply the "indicia of membership" test for associational standing. But this Court's holding in *Friends of the Earth* is "inapposite." *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1085 (5th Cir. 2022). There, the Court "applied the indicia-of-membership test to a nonprofit corporation that had violated its own bylaws and D.C. law by failing to set membership requirements." *Id.* In

contrast, there is no allegation here that GOA "violated its own bylaws" or any law, and as ATF concedes (at 50), "any individual may join through a small donation on the organization's website." Nor is this a situation where an association has "asserted standing on behalf of non-members or had factual circumstances, not present here, that called for a functional analysis of its constituents"—the only circumstances in which "*Hunt*'s membership test [has been] applied to actual membership organizations" like GOA. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll. (Harvard Corp.)*, 261 F. Supp. 3d 99, 109 (D. Mass. 2017). Because GOA had standing to represent its own members who were harmed by the Rule, the district court did not exceed its discretion to order relief that remedied that entire injury.

## Conclusion

The Court should affirm the district court's preliminary injunction.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Aaron L. Nielson
Solicitor General

Lanora C. Pettit
Principal Deputy Solicitor General

/s/ Kateland R. Jackson
Kateland R. Jackson
Assistant Solicitor General
Kateland.Jackson@oag.texas.gov

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

*Counsel for Appellee State of Texas*

/s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
stephen@sdslaw.us

Robert J. Olson
William J. Olson, PC
370 Maple Ave. W., Ste. 4
Vienna, VA 22180
rob@wjopc.com

*Counsel for Appellees Brady Brown,
Gun Owners of America, Inc., and
Gun Owners Foundation*

## Certificate of Service

On March 22, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Kateland R. Jackson
Kateland R. Jackson

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,105 words, excluding the parts of the brief exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Kateland R. Jackson
Kateland R. Jackson